**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRUCE RAUNER, Governor of the State of Illinois, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AMERICAN FEDERATION OF STATE, COUNTY, | ) |
| AND MUNICIPAL EMPLOYEES COUNCIL 31, | ) |
| AFL-CIO; TEAMSTERS DOWNSTATE ILLINOIS | ) |
| STATE EMPLOYEE NEGOTIATING COMMITTEE; | ) |
| TEAMSTERS LOCAL 700, AFFILIATED WITH THE | ) |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS | ) |
| COOK COUNTY; LOCAL #330, GENERAL | ) |
| CHAUFFEURS, SALES DRIVERS AND HELPERS | ) |
| (FOX VALLEY) INCLUDING TEAMSTERS LOCAL | ) |
| 705; GENERAL TEAMSTERS/ | ) |
| PROFESSIONAL & TECHNICAL EMPLOYEES | ) |
| LOCAL UNION NO. 916; INTERNATIONAL UNION | ) |
| OF BAKERY, CONFECTIONERY AND TOBACCO | ) |
| WORKERS; INTERNATIONAL BROTHERHOOD OF | ) |
| BOILER MAKERS – IRON SHIPBUILDERS, | ) |
| BLACKSMITHS, FORGERS, AND HELPERS; | ) |
| ILLINOIS STATE BRICKLAYERS AND ALLIED | ) |
| CRAFTWORKERS; UNITED BROTHERHOOD OF | ) |
| CARPENTERS AND JOINERS OF AMERICA (ON | ) |
| BEHALF OF CHICAGO REGIONAL COUNCIL OF | ) |
| CARPENTERS, MID-CENTRAL ILLINOIS REGIONAL | ) |
| COUNCIL, ST. LOUIS MISSOURI DISTRICT | ) |
| COUNCIL; INTERNATIONAL BROTHERHOOD OF | ) |
| ELECTRICAL WORKERS; SERVICE EMPLOYEES | ) |
| INTERNATIONAL UNION, LOCAL 1, FIREMAN AND | ) |
| OILERS DIVISION; INTERNATIONAL UNION OF | ) |
| UNITED FOOD AND COMMERCIAL WORKERS; | ) |
| LABORER'S INTERNATIONAL UNION OF NORTH | ) |
| AMERICA; INTERNATIONAL ASSOCIATION OF | ) |
| MACHINIST AND AEROSPACE WORKERS; | ) |
| INTERNATIONAL UNION OF OPERATING | ) |
| ENGINEERS; INTERNATIONAL UNION OF | ) |
| PAINTERS AND ALLIED TRADES; UNITED | ) |
| ASSOCIATION OF JOURNEYMEN AND | ) |
| APPRENTICES OF THE PLUMBING AND | ) |
| PIPEFITTING INDUSTRY OF U.S.A. AND CANADA; | ) |

METROPOLITAN ALLIANCE OF POLICE, CHAPTER )
294; INTERNATIONAL ASSOCIATION OF SHEET )
METAL, AIR, RAIL, & TRANSPORTATION )
WORKERS (SMART); ILLINOIS NURSES )
ASSOCIATION; SERVICE EMPLOYEES )
INTERNATIONAL UNION, LOCAL 73; LABORERS' )
INTERNATIONAL UNION OF NORTH AMERICA – )
ILLINOIS STATE EMPLOYEES ASSOCIATION, )
LOCAL 2002 AND THE SOUTHERN AND CENTRAL )
ILLINOIS LABORERS' DISTRICT COUNCIL; )
ILLINOIS FEDERATION OF PUBLIC EMPLOYEES, )
LOCAL 4408, AFT/IFT; ILLINOIS FEDERATION OF )
TEACHERS, AFL-CIO LOCAL #919; CONSERVA- )
TION POLICE LODGE, IL PBPA; IL FRATERNAL )
ORDER OF POLICE – LABOR COUNCIL; )
 TROOPERS' LODGE NO. 41, FOP; )
)
Defendants. )

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Governor Bruce Rauner (the "Governor") states and alleges as follows:

## NATURE OF ACTION

1.      The Governor brings this action to resolve a controversy between his office and the various public sector labor unions named as Defendants in this case (the "Unions") regarding the legality of the Governor's Executive Order 15-13.  The Governor issued the executive order to address the unconstitutionality of a provision within certain of the collective bargaining agreements that state agencies have entered into with the Unions, as currently permitted by the Illinois Public Labor Relations Act ("IPLRA"), 5 ILCS 315/6.

2.      It is the Governor's sworn duty to faithfully execute the laws and support the United States and Illinois Constitutions.  Under the IPLRA, it is currently permissible for collective bargaining agreements covered by the IPLRA to require state employees who are not full members of the Unions ("nonmembers") to pay what are called "fair share" union fees.  *See* 5 ILCS 315/6.

2

3.     As currently permitted by the IPLRA, the Illinois Department of Central Management Services ("CMS"), an agency within the direction and control of the Governor, has entered into collective bargaining agreements that require the deduction of "fair share" fees from the earnings of the nonmembers, with the fees then paid to the contracting unions (hereinafter, "Fair Share Contract Provisions").

4.     The constitutionality of such provisions was first considered by the United States Supreme Court in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977).  However, since *Abood*, the Supreme Court has repeatedly acknowledged that compelling a state employee to financially support a public sector union seriously impinges upon free speech and association interests protected by the First Amendment of the United States Constitution.

5.     More recently, in *Harris v. Quinn*, __ U.S. __, 134 S. Ct. 2618 (2014), a majority of the Supreme Court outlined an interpretation of the First Amendment that, in light of the current circumstances of Illinois public sector collective bargaining, is incompatible with nonmembers being compelled to pay "fair share" fees such as those required by the Fair Share Contract Provisions.

6.     In light of these circumstances, the Governor has concluded these nonmember fee deductions are coerced political speech, in violation of the First Amendment of the United States Constitution.  Pursuant to his oath of office under Article XIII, Section 3 of the Illinois Constitution, and his duty to execute the laws under Article V, Section 8 of the Illinois Constitution, the Governor cannot condone this unconstitutional coercion of speech.

7.     Under the Supremacy Clause contained in Article VI of the United States Constitution, the First Amendment supersedes any inconsistent purported requirements within

Illinois statutes, thus rendering *ultra vires* any public union collective bargaining agreement provision that would violate nonmembers' First Amendment rights.

8.     The Governor has thus promulgated Executive Order 15-13, which directs CMS to suspend the deduction and remittance of fees imposed by the Fair Share Contract Provisions.

9.     The Unions' legal interests are adverse to the Governor's interests and obligations under the Illinois and U.S. Constitutions, in light of the unconstitutionality of the Fair Share Contract Provisions, because, pursuant to Executive Order 15-13, the Governor has directed CMS to suspend such deductions, thereby preventing the Unions from collecting fees under those provisions.

10.     The Governor therefore seeks a declaratory judgment that deducting fees under the Fair Share Contract Provisions from the earnings of nonmember public employees is unconstitutional under the First Amendment of the United States Constitution, and that Executive Order 15-13 was within the Governor's powers under the Illinois Constitution.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction to adjudicate this case pursuant to 28 U.S.C. § 1331, because it arises under the United States Constitution.  This Court has jurisdiction over any state law issues pursuant to 28 U.S.C. § 1367.  This Court has the authority under 28 U.S.C. § 2201 to grant declaratory relief.

12.     Venue is proper in this district under 28 U.S.C. § 1391.  A number of Unions reside within this district pursuant to Section 1391(c)(2) and (d), because they conduct their business and have offices within the Northern District of Illinois, including but not limited to: (a) American Federation of State, County, and Municipal Employees Council 31; (b) Teamsters

Local 700; and (c) United Brotherhood of Carpenters and Joiners of America, Chicago Regional Council of Carpenters, and all of the other defendants are residents of Illinois.

13.     Further, a substantial part of the events giving rise to this action took place in this judicial district because, among other reasons, some of the state employees who have been subject to the improper Fair Share Contract Provision deductions work and/or reside within the district.

14.     An actual controversy currently exists between the parties concerning the constitutionality of the Fair Share Contract Provisions and the legality of the Governor's Executive Order ceasing such deductions.  Executive Order 15-13 renders null and void certain provisions in the collective bargaining contracts between CMS and Defendants.  CMS is an agency that reports to the Governor, and its obedience to Executive Order 15-13 necessarily creates a controversy with Defendants, which will no longer receive these payments.

15.     The Executive Order is based on the unconstitutionality of the Fair Share Provisions, and is in direct conflict with the terms of Defendants' collective bargaining agreements that require the continued deduction and remittance of those fees.  This controversy is substantial, between parties having adverse legal interests, and sufficiently real and immediate to warrant the issuance of a declaratory judgment.

16.     Declaratory relief is also necessary to prevent the unnecessary harm and distraction to the Office of the Governor, to personnel within the executive branch of the State of Illinois, and to all people of the State of Illinois that will result from the continuing dispute between the Unions and the Governor concerning the issuance of his Executive Order ceasing these unconstitutional deductions.

## PARTIES

17.     Plaintiff Bruce Rauner is the Governor of the State of Illinois and its chief executive officer.

18.     The American Federation of State, County, and Municipal Employees Council 31 ("AFSCME"), AFL-CIO, is a labor union and non-profit organization affiliated with the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO"), who collectively represent over 35,000 employees under the jurisdiction of the Governor, with an office located at 205 N. Michigan Ave., Suite 2100, Chicago, Illinois 60601.

19.     Teamsters Downstate Illinois State Employee Negotiating Committee is a labor union representing certain employees in collective bargaining covering all Illinois counties excluding Cook, DuPage, Kane, Kankakee, Kendall, Lake, McHenry, and Will, who represents more than 1,400 employees under the jurisdiction of the Governor, including but not limited to highway workers and temporary snow and ice workers, with an office located at 7101 North Allen Road, Peoria, Illinois 61614.

20.     Teamsters Local 700, Affiliated with the International Brotherhood of Teamsters Cook County, represents more than 600 employees under the jurisdiction of the Governor, including but not limited to state police master sergeants, highway workers and temporary snow and ice workers, with an office located at 1300 West Higgins Road, Suite 301, Park Ridge, Illinois 60068.

21.     Local No. 330, General Chauffeurs, Sales Drivers and Helpers (Fox Valley), including Teamsters Local 705, represents more than 200 employees under the jurisdiction of the Governor, including but not limited to highway workers and temporary snow and ice workers, with an office located at 2400 Big Timber Road, Building B, Suite 201, Elgin, Illinois 60123.

6

22.     General Teamsters/Professional & Technical Employees Local Union No. 916 represents more than 2,700 employees under the jurisdiction of the Governor, including but not limited to technical managers, attorneys, and engineers at the Illinois Departments of Transportation, Central Management Services, and Natural Resources, with an office located at 3361 Teamster Way, Springfield, Illinois 62702.

23.     International Union of Bakery, Confectionery, and Tobacco Workers represents 2 employees under the jurisdiction of the Governor, including but not limited to bakers, with an office located at 7310 West 39th Street, Suite 200, Lyons, Illinois 60534.

24.     International Brotherhood of Boiler Makers – Iron Shipbuilders, Blacksmiths, Forgers, and Helpers represents more than 10 employees under the jurisdiction of the Governor, including but not limited to boiler safety specialists, with an office located at 2941 Archer Avenue, Chicago, Illinois 60608.

25.     Illinois State Bricklayers and Allied Craftworkers represents 4 employees under the jurisdiction of the Governor, including but not limited to bricklayers, with a mailing address located at Post Office Box 347, Belleville, Illinois 62222.

26.     United Brotherhood of Carpenters and Joiners of America (on behalf of Chicago Regional Council of Carpenters, Mid-Central Illinois Regional Council, St. Louis Missouri District Council) represents more than 120 employees under the jurisdiction of the Governor, including but not limited to carpenters, with an office located at 300 South Ashland, Room 102, Chicago, Illinois 60607.

27.     International Brotherhood of Electrical Workers represents more than 140 employees under the jurisdiction of the Governor, including but not limited to electricians, with an office located at 8174 Cass Avenue, Darien, Illinois 60561.

28.     Service Employees International Union, Local 1, Fireman and Oilers Division, represents more than 130 employees under the jurisdiction of the Governor, including but not limited to stationary firemen, with an office located at 111 East Wacker Drive, 25th Floor, Chicago, Illinois 60601.

29.     International Union of United Food and Commercial Workers represents more than 40 employees under the jurisdiction of the Governor, including but not limited to barbers, with an office located at 10400 West Higgins Road, Suite 500, Rosemont, Illinois 60018.

30.     Laborer's International Union of North America represents more than 20 employees under the jurisdiction of the Governor, including but not limited to laborers, with an office located at 8770 West Bryn Mawr Avenue, Suite 1212, Chicago, Illinois 60631.

31.     International Association of Machinist and Aerospace Workers represents 4 employees under the jurisdiction of the Governor, including but not limited to machinists, with an office located at 16W361 South Frontage Road, Suite 127, Burr Ridge, Illinois 60527.

32.     International Union of Operating Engineers represents more than 440 employees under the jurisdiction of the Governor, including but not limited to stationary engineers, with an office located at 2260 South Cottage Grove Street, Chicago, Illinois 60616.

33.     International Union of Painters and Allied Trades represents more than 80 employees under the jurisdiction of the Governor, including but not limited to painters, with an office located at 7234 Parkway Drive, Hanover, Maryland 21076.

34.     United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of U.S.A. and Canada represents more than 130 employees under the jurisdiction of the Governor, including but not limited to plumbers, with an office located at 45 North Ogden Avenue, Chicago, Illinois 60607.

35.     Metropolitan Alliance of Police, Chapter 294, represents over 10 employees under the jurisdiction of the Governor, including but not limited to internal security investigators at the Illinois Department of Corrections, with an office located at 215 Remington, Suite C, Bolingbrook, IL 60440.

36.     International Association of Sheet Metal, Air, Rail, & Transportation Workers (SMART) represents 2 employees under the jurisdiction of the Governor, including but not limited to tinsmiths, with an office located at 4550 Roosevelt Road, Hillside, Illinois 60162.

37.     Illinois Nurses Association represents more than 1,200 employees under the jurisdiction of the Governor, including but not limited to Registered Nurses and correctional nurses, with an office located at 105 West Adams, Suite 1420, Chicago, Illinois 60603.

38.     Service Employees International Union, Local 73, represents over 40 employees under the jurisdiction of the Governor, including but not limited to blasting specialists, military security police, and military crash fire and rescue employees, with an office located at 300 South Ashland Avenue, #400, Chicago, Illinois 60607.

39.     Laborers' International Union of North America – Illinois State Employees Association, Local 2002 and the Southern and Central Illinois Laborers' District Council represents over 300 employees under the jurisdiction of the Governor, including but not limited to shift commanders, forensic science administrators, and automotive shop supervisors, with an office located at 534 South 2nd Street, Suite 201, Springfield, Illinois 62701.

40.     Illinois Federation of Public Employees, Local 4408, American Federation of Teachers/Illinois Federation of Teachers, represents over 850 employees under the jurisdiction of the Governor, including but not limited to site superintendents, security officers, mechanics, and

meat & poultry inspectors, with an office located at 4 Lawrence Square, Springfield, Illinois 62704.

41.     Illinois Federation of Teachers, AFL-CIO Local #919, represents over 40 employees under the jurisdiction of the Governor, including but not limited to teachers at the Illinois School for the Deaf, with an office located at 4 Lawrence Square, Springfield, Illinois 62704.

42.     Conservation Police Lodge, associated with the Illinois Police Benevolent and Protective Association, represents over 100 employees under the jurisdiction of the Governor, including but not limited to conservation police officers, with an office located at 840 South Spring Street, Suite A, Springfield, Illinois 62704.

43.     Illinois Fraternal Order of Police – Labor Council represents over 10 employees under the jurisdiction of the Governor, including but not limited to conservation police sergeants, with an office located at 974 Clock Tower Drive, Springfield, Illinois 62704.

44.     Troopers Lodge No. 41, Fraternal Order of Police, represents over 1,500 employees under the jurisdiction of the Governor, including but not limited to troopers, special agents, and lieutenants employed at the Illinois State Police, with an office located at 5880 South Sixth Street Road, Springfield, Illinois 62703.

## FACTS

### The Governor's Constitutional Obligations

45.     The Governor has the duty to faithfully execute the laws and support the United States and Illinois Constitutions, as recognized in both his sworn oath of office under Article XIII, Section 3 of the Illinois Constitution, and in the recognition of his "supreme executive power" in Article V, Section 8.

46.     Accordingly, the Governor is charged with performing his duties so as to protect the First Amendment rights of freedom of expression and association of all people in the State of Illinois.  Those duties include an obligation to faithfully support the rights of state employees to engage in, or refrain from, political speech, including speech on issues concerning public sector labor relations.

### The Illinois Public Labor Relations Act and Fair Share Contract Provisions

47.     Section 6 of the IPLRA, 5 ILCS 315/6, recognizes the rights of covered employees to engage in self-organization and collective bargaining through a chosen representative, or other concerted activities not otherwise prohibited by law, for the purpose of collective bargaining or other mutual aid or protection.

48.     Under Section 6 of the IPLRA, a labor union designated "as the representative of the majority of public employees in an appropriate unit in accordance with the procedures herein or recognized by a public employer as the representative of the majority of public employees in an appropriate unit is the exclusive representative for the employees of such unit."  5 ILCS 315/6(c).

49.     Section 6 of the IPLRA also recognizes the rights of covered employees to refrain from such activities.  5 ILCS 315/6(a).

50.     Under Section 6 of the IPLRA, nonmembers can be required to pay certain fees under Fair Share Contract Provisions.   Specifically, Section 6 provides that a collective bargaining agreement may include "a provision requiring employees covered by the agreement who are not members of the organization to pay their proportionate share of the costs of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and conditions of employment."  5 ILCS 315/6(e).

51.    Even those nonmembers who object to the payment of the so-called "fair share" fees because of bona fide religious beliefs may nonetheless "be required to pay an amount equal to their fair share, determined under a lawful fair share agreement, to a nonreligious charitable organization mutually agreed upon by the employees affected and the exclusive bargaining representative to which such employees would otherwise pay such service fee."   5 ILCS 315/6(g).

### CMS's Collective Bargaining Agreements with the Unions

52.    CMS has entered into collective bargaining agreements with the Unions containing the Fair Share Contract Provisions described above, with such deductions then paid to the Unions.  5 ILCS 315/6(e); *see, e.g.*, *AFSCME Master Contract 2012-2015*, Art. IV Sec. 3, *available at* http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_afscme1.pdf (last visited Jan. 30, 2015).

53.    The Unions represent over 45,000 state employees collectively, or about 93% of the state employees covered by the Unions' bargaining agreements, including, among others, managers, attorneys, accountants, economists, and actuaries.

54.    The fees paid by nonmembers are not to exceed the amount of dues uniformly required by members, and the organizations must certify to the employer that the deductions do not exceed the dues uniformly required by members.  5 ILCS 315/6(e).

55.    The Unions do not, however, provide an accounting of how these fees are calculated.

56.    AFSCME states in a publicly-posted document entitled "Notice to All Nonmember Fair Share Fee Payors" that, among other uses, its "fair share" fees are used for "lobbying for the negotiation, ratification, or implementation of a collective bargaining

agreement," "paying technicians in labor law, economics, and other subjects for services used (a) in negotiating and administering collective bargaining agreements; and (b) in processing grievances," "supporting and paying affiliation fees to other labor organizations which do not negotiate the collective bargaining agreements governing the fair share payor's employment," "organizing within the bargaining unit in which fair share fee payors are employed," "organizing other bargaining units," "seeking to gain representation rights in units not represented by AFSCME," and "lobbying for purposes other than the negotiation, ratification, or implementation of a collective bargaining agreement."

57.     AFSCME's fair share fees constitute approximately 79% of the total dues charged to members.

58.     ISEA Laborers Local 2002's fair share fees constitute approximately 99% of the total dues charged to members.

59.     Teamsters Local 916's fair share fees constitute approximately 98% of the total dues charged to members.

60.     Teamsters Downstate's fair share fees constitute approximately 98% of the total dues charged to members.

61.     Upon information and belief, the remaining Unions collect fair shares fees that amount to between 79% and 100% of the total dues charged to members.

62.     According to recent pay records, approximately 6,582 out of 46,573 Illinois State employees covered by collective bargaining agreements have chosen to be nonmembers, yet are compelled to fund the Unions' activities under the Fair Share Contract Provisions.

63. Since 2004, the Unions have negotiated wage increases of approximately 80% during collective bargaining negotiations. By comparison, total inflation over the same time period was approximately 26%, and private sector employee salaries increased by a total of 31%.

64. Under the current collective bargaining agreements negotiated by the Unions, the State pays on average $1,181 per employee for premiums on individual health care coverage, yet requires its employees to contribute only 12% toward the payment of those premiums.

65. Union wages and benefits are largely funded with state general fund revenues, and, therefore, the compensation packages secured by Unions have contributed to a staggering structural budget deficit.

66. Additionally, a state government employee represented by the Unions who earns an average annual salary of $38,979 over the course of a 26-year state government career contributes approximately $40,539 to the State's pension system, but is entitled to receive $821,588 over a twenty-year retirement, plus retiree health care.

67. In fiscal year 2015, general fund pension costs total over $7.5 billion, which consumes 24% of state-source general fund revenues, and the overall unfunded liability of the pension system is now in excess of $111 billion.

68. As a result of the State's deficits, the State must implement emergency financial measures that could include reduced or eliminated state services, among other consequences.

69. When Unions expend dollars collected pursuant to the Fair Share Contact Provisions to lobby or bargain against reductions to their own benefits packages or to shift more significant reductions to other state programs or services, there is no principled distinction between the Unions and the various special interest groups who must expend money on political activities to protect their own favored programs and services.

14

70.     Indeed, the significant impact that Illinois public sector labor costs have imposed and will continue to impose on the State's financial condition clearly demonstrates the degree to which Illinois state employee collective bargaining is an inherently political activity.

**Unconstitutionality of Fair Share Contract Provisions**

71.     In *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), the United States Supreme Court considered and approved "fair share" provisions under a public sector labor contract.  But since *Abood*, the Supreme Court has repeatedly recognized that compelling a state employee to financially support a public sector union seriously impinges upon the free speech and association interests protected by the First Amendment.

72.     The Supreme Court in *Abood* distinguished between "chargeable" union expenditures, which may be recouped even from employees who choose not to join a union, and "non-chargeable" expenditures, which can be recouped only from the union's members.

73.     But in the years following the *Abood* decision, the Supreme Court "struggled repeatedly with" interpreting *Abood* and determining what qualified as a "chargeable" expenditure and what qualified as a "non-chargeable," or political and ideological, expenditure. *Harris v. Quinn*, __ U.S. __, 134 S. Ct. 2618, 2633 (2014) (citing *Ellis v. Railway Clerks*, 466 U.S. 435 (1984); *Teachers v. Hudson*, 475 U.S. 292 (1986); *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507 (1991); *Locke v. Karass*, 555 U.S. 207 (2009)).

74.     In addition, in *Knox v. Service Employees International Union, Local 1000*, __ U.S. __,132 S. Ct. 2277, 2289 (2012), the Supreme Court also recognized that "a public-sector union takes many positions during collective bargaining that have powerful political and civic consequences."  For that reason, "compulsory fees constitute a form of compelled speech and association that imposes a significant impingement on First Amendment rights." *Id.* (internal

15

quotation marks omitted). *Knox* emphasized the "general rule" that "individuals should not be compelled to subsidize private groups or private speech." *Id.*

75. Most recently, in *Harris v. Quinn*, the Supreme Court held that "fair share" contract provisions entered into under the IPLRA that required non-union Medicaid-funded home-care personal assistants to pay fees to the union violated the First Amendment, because the provisions served no compelling state interest that could not be achieved through significantly less restrictive means. *See Harris*, 134 S. Ct. at 2640.

76. Even though *Harris* did not involve the employees represented by the Unions in this suit, a majority of the Supreme Court disagreed with the legal and factual bases of *Abood*'s ruling that state employees may be compelled to pay "fair share" fees, such as those required by the Fair Share Contract Provisions.

77. Regarding the "fair share" provisions at issue in that case, the *Harris* majority noted that "'[t]he primary purpose' of permitting unions to collect fees from nonmembers is 'to prevent nonmembers from free-riding on the union's efforts, sharing the employment benefits obtained by the union's collective bargaining without sharing the costs incurred.'" *Harris*, 134 S. Ct. at 2627 (quoting *Knox*, 132 S. Ct. at 2289). The Court continued, however, that "'[s]uch free-rider arguments . . . are generally insufficient to overcome First Amendment objections.'" *Harris*, 134 S. Ct. at 2627 (quoting *Knox*, 132 S. Ct. at 2289).

78. A majority of the Supreme Court also recognized in *Harris* that "fair share" provisions in public employee collective bargaining agreements impose First Amendment concerns not necessarily presented in the private sector, because the collective bargaining process *itself* is political when taxpayer funds go to pay the negotiated wages and benefits, especially given the great power of unions in electoral politics and the size of public employee

payrolls. In coordination with their express political advocacy, the Unions routinely take positions in the collective-bargaining process that greatly affect the State's budget.

79. Since *Abood*, the facts and circumstances of Illinois public sector bargaining since its inception in 1984 under the IPLRA have caused the Fair Share Contract Provisions to impose a significant infringement on the First Amendment rights of Illinois state employees who do not wish to become members of the Unions.

80. Like the petitioners in *Harris*, the nonmembers in Illinois have "the right not to be forced to contribute to the union, with which they broadly disagree." *Harris*, 134 S. Ct. at 2640.

81. The Governor has therefore concluded that the Fair Share Contract Provisions, while permitted by the IPLRA, are nonetheless unconstitutional because they significantly infringe on nonmember Illinois state employees' First Amendment rights, while serving no compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms.

82. There is no justification, much less a compelling one, for mandating that the nonmembers support the Unions, which are some of the most powerful and politically active organizations in the State.

83. In addition, the inherently political nature of collective bargaining and its consequences in Illinois has further infringed on nonmembers' First Amendment rights to refrain from supporting public sector unions in their organization and collective bargaining activities. Therefore, the First Amendment forbids coercing any money from the nonmembers to pay fees pursuant to Fair Share Contract Provisions.

84. Under Article V, Section 8 and Article XIII, Section 3 of the Illinois Constitution, the Governor is charged with performing his duties so as to protect the First Amendment rights

of freedom of expression and association of all people in the State of Illinois. Because deducting fees pursuant to the Fair Share Contract Provisions is unconstitutional under the First Amendment, the Governor has determined that he cannot continue deducting these fees without violating his oath of office and duty to protect the First Amendment rights of all people in the State of Illinois.

85.     Because Executive Order 15-13 renders null and void certain provisions within the collective bargaining contracts between CMS and all Defendants, and because those provisions purported to impose upon CMS the obligation to make payroll deductions and remittances to Defendants for the benefit of Defendants, CMS's required obedience to Executive Order 15-13 necessarily entails a controversy between Defendants and the Governor, by virtue of CMS being an agency reporting to the Governor.

86.     The Governor has a substantial legal interest in resolving such a controversy immediately in order to expeditiously achieve finality and certainty that will, among other things:

a.  Prevent potentially costly distractions to CMS personnel, to bargaining unit personnel ultimately reporting to the Governor who are affected by Executive Order 15-13, and to other Executive Branch personnel reporting to the Governor, resulting from a protracted and public dispute between the Governor and Defendants regarding the legal validity of Executive Order 15-13;

b.  Prevent the possible unnecessary expense and inefficiency that could result from an extended period in which the Executive Branch commits itself to the implementation of Executive Order 15-13, only to have its validity thrown into question by multiple challenges from the various separate and independent Defendant unions; and

     c.    Establish the validity of Executive Order 15-13 so as to insulate Executive Branch employees in agencies reporting to the Governor from any wrongful assertions by Defendants that such employees still individually owe fair share amounts because Defendants do not recognize Executive Order 15-13.

87.    There is a direct conflict between the Governor's Executive Order and the Fair Share Provisions in all of Defendants' collective bargaining agreements, and a present concrete disagreement between the Governor and Defendants regarding the application of the First Amendment to Fair Share Contract Provisions.

88.    For example, Defendants AFSCME and Service Employees International Union, Local 73 have publicly announced their position that Fair Share Contract Provisions are constitutional under the First Amendment as interpreted by *Abood*. Thus AFSCME's and Service Employees International Union, Local 73 have a concrete disagreement with the Governor on the basis for Executive Order 15-13.

89.    Specifically, Defendants AFSCME and Service Employees International Union, Local 73 argued to the United States Supreme Court in *Harris v. Quinn* that the First Amendment permits "fair share" fees charged to public sector workers who do not wish to be union members. AFSCME claimed that a system including "fair share" fees had a "limited" "impact on public employees' First Amendment rights"; that such "fees serve the government's significant interests"; and that the "burdens of the system are minimized by limits . . . to costs germane to contract negotiation and administration." Brief of Respondent SEIU Healthcare Illinois & Indiana, *Harris v. Quinn*, No. 11-681, 2013 WL 6805686, at *10-11 (U.S. December 23, 2013), expressly incorporated by reference within Brief for Respondents AFSCME Council

31 and SEIU Local 73, *Harris v. Quinn*, No. 11-681, 2013 WL 6805687, at *2 (U.S. December 23, 2013).

90.    On information and belief, officers of Defendants AFSCME and other Defendants have made public statements criticizing the Supreme Court's First Amendment analysis in *Harris v. Quinn*, further indicating the concrete disagreement that exists between Defendants and the Governor on the application of the First Amendment and the constitutional basis for Executive Order 15-13.

## COUNT I

## <u>DECLARATORY JUDGMENT</u>

91.    The Governor incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully realleged here.

92.    An actual controversy exists between the parties.  This Court has jurisdiction to enter a declaratory judgment concerning the respective rights and duties of the parties.

93.    The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."

94.    The Fourteenth Amendment to the United States Constitution incorporates the protections of the First Amendment against the States: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

95.    Enforcing the Fair Share Contract Provisions would require the Governor to violate his duty to uphold both the United States and Illinois Constitutions.

96.    As Unions will no longer receive payments to which they are purportedly entitled under the IPLRA and various collective bargaining agreements, a clear controversy exists between the parties regarding their respective obligations under the collective bargaining agreements.  Further, the Governor has a substantial legal interest in resolving these issues expeditiously in order to: (a) avoid unnecessary and costly expenses and distractions; and (b) establish the validity of Executive Order 15-13.

97.    It is necessary and proper under the circumstances alleged herein that this Court adjudicate and declare that: (a) the Fair Share Contract Provisions, as required under the IPLRA, impose a significant infringement on Illinois State employees' First Amendment rights and serve no compelling State interest that cannot be achieved through means significantly less restrictive of associational freedoms; (b) the Governor's Executive Order 15-13 ceasing deduction and remittance of Fair Share Contract Provision fees is within the Governor's powers under the Article V, Section 8, or other provisions of the Illinois Constitution.

98.    The Governor has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, the Governor respectfully requests that that this Court enter an order declaring that:

(1) The Fair Share Contract Provisions under the IPLRA are unconstitutional under the First Amendment of the United States Constitution; and

(2) The Governor's Executive Order 15-13 is within the Governor's powers under the Illinois constitution.

The Governor further respectfully requests that the Court grant any other relief to the Governor that the Court deems just and proper.

Respectfully submitted,

BRUCE RAUNER


By: ____Dennis Murashko_____
            One of His Attorneys


Dennis Murashko
Special Assistant Attorney General
Deputy Counsel
Office of Governor Bruce Rauner
100 W. Randolph Street – Suite 16-100
Chicago, IL  60601