IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Bruce Rauner, Governor of the State of Illinois,   )<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)<br>American Federation of State, County, and   )<br>Municipal Employees, Council 31, *et al.*,   )<br>)<br>Defendants.   ) | Case No. 1:15-CV-01235<br><br>Judge:<br>   Honorable Robert W. Gettleman<br><br>Magistrate Judge:<br>   Honorable Daniel G. Martin |

**DEFENDANTS' MEMORANDUM IN
SUPPORT OF JOINT MOTION TO DISMISS**

**INTRODUCTION**

Illinois law provides that the State's contracts with public-employee unions may include a provision that requires all employees in a bargaining unit to pay their fair share for the costs of the union's collective bargaining representation. The Governor of Illinois seeks a declaration from this Court that these fair-share provisions violate the First Amendment.

As demonstrated below, the Court must dismiss this action for lack of jurisdiction. The Governor's claim does not "aris[e] under" federal law within the meaning of 28 U.S.C. §1331, because the federal question the Governor identifies – whether fair-share fees violate the First Amendment – would be raised only as a defense to a state law proceeding to enforce the fair-share provisions. The Governor also lacks standing to bring this suit in federal court because the state law and state contracts do not affect him in his personal capacity.

Alternatively, the Court should dismiss the complaint for failure to state a claim, because fair-share provisions are a constitutional means of preventing free riding in a system of exclusive representative collective bargaining. "The First Amendment permits the government to require both public sector and private sector employees who do not wish to join a union designated as the exclusive collective-bargaining representative at their unit of employment to pay that union a service fee." *Locke v. Karass*, 555 U.S. 207, 213 (2009) (unanimous decision).

**BACKGROUND**

The Illinois Public Labor Relations Act ("IPLRA") provides that a labor organization chosen by a majority of public employees in a bargaining unit "is the exclusive representative for the employees of such unit for the purpose of collective bargaining with respect to rates of pay, wages, hours and other conditions of employment." 5 ILCS 315/6(c). A labor organization acting as an exclusive representative is "responsible for representing the interests of all public employees in the unit." 5 ILCS 315/6(d). To help cover the cost of that representation, an exclusive representative "may include in the agreement a provision requiring employees covered by the agreement who are not members of the organization to pay their proportionate share of the costs of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and conditions of employment." 5 ILCS 315/6(e). The Supreme Court held in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), that such fair-share provisions are consistent with the First Amendment.

When a collective bargaining agreement includes a fair-share provision, the IPLRA requires state agencies to honor that provision. *See* 5 ILCS 315/6(e) ("the proportionate share payment . . .

shall be deducted by the employer from the earnings of the nonmember employees and paid to the employee organization"). The IPLRA further provides that the IPLRA and "any collective bargaining agreement negotiated thereunder" shall "prevail and control" over "any . . . executive order or administrative regulation." 5 ILCS 315/15(a).

On February 9, 2015, the Governor of Illinois issued Executive Order 15-13 directing state agencies to disobey the IPLRA by refusing to enforce the fair-share contractual provisions in state employee collective bargaining agreements. *See* Complaint (Doc. 1) ¶¶ 6, 8, 9.[1] That same day, the Governor filed this federal court lawsuit against 28 labor organizations (the "Unions") that represent state employees. *Id*. ¶¶ 18-44. The complaint alleges that the State entered into collective bargaining agreements with the Unions that include fair-share provisions, *id*. ¶ 52, which the Governor acknowledges are valid under the IPLRA, *id*. ¶ 81. The complaint pleads a single cause of action under the Declaratory Judgment Act, *id*. ¶¶ 91-98, and seeks a declaration that "[t]he Fair Share Contract Provisions under the IPLRA are unconstitutional under the First Amendment" and that "Executive Order 15-13 is within the Governor's powers under the Illinois constitution," *id*. at 21.

**ARGUMENT**

**I.     The Complaint Must Be Dismissed for Lack of Jurisdiction.**

"Federal courts must determine that they have jurisdiction before proceeding to the merits." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Without jurisdiction the court cannot proceed at

---

1      Executive Order 15-13 is available at www.illinois.gov/Government/ExecOrders/Documents/2015/ExecutiveOrder2015-3.pdf.

all . . . [and] the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citation and quotation marks omitted); *see also* Fed. R. Civ. P. 12(h)(3). The plaintiff has the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### A. The Governor's Claim Does Not "Aris[e] Under" Federal Law.

The Governor's complaint does not fall within the Court's subject-matter jurisdiction. The complaint asserts jurisdiction on the basis of 28 U.S.C. §1331, which gives the district courts jurisdiction over claims "arising under" federal law, because the Governor alleges that fair-share fees violate the First Amendment. Ordinarily, a claim "arise[s] under" federal law if a federal question appears on the face of the plaintiff's well-pleaded complaint; whereas the existence of a potential federal defense to that complaint "is inadequate to confer federal jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). But the test for federal question jurisdiction is reversed in declaratory judgment actions.

The Declaratory Judgment Act "allows a party . . . who expects to eventually be sued, to determine his rights and liabilities without waiting for his adversary, the presumptive plaintiff, to bring suit. That act, however, is not an independent grant of federal subject-matter jurisdiction, so jurisdiction depends upon the nature of the anticipated claims." *DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009) (citations omitted). "[A]lthough the presence or absence of a federal question normally turns on an examination of the face of the plaintiff's complaint, in an action for declaratory judgment the positions of the parties are reversed: the declaratory-judgment plaintiff would have been the defendant in the anticipated suit whose character determines the district court's jurisdiction." *Id*. This rule stems from *Skelly Oil Co. v. Phillips Petroleum Co.*, 339

U.S. 667 (1950), which "has come to stand for the proposition that if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16 (1983) (citation, quotation marks omitted).

Thus, "[t]o decide whether a declaratory-judgment action comes within federal jurisdiction" the court must "look at the underlying controversy." *NewPage Wis. Sys. Inc. v. United Steel Workers*, 651 F.3d 775, 777 (7th Cir. 2011). Only "[i]f a well-pleaded complaint by the defendant" – in this case the Unions – "would have arisen under federal law," does the "court ha[ve] jurisdiction when" the plaintiff – here, the Governor – "brings a declaratory-judgment suit." *Id*. at 777-78.

The only federal issue identified in the Governor's declaratory judgment complaint is whether fair-share fees violate the First Amendment. That First Amendment issue would arise only as a defense to the Unions' hypothetical state law action to enforce the fair-share provisions of their contracts or to set aside the Governor's Executive Order as inconsistent with the IPLRA.

The Unions' hypothetical, well-pleaded claim for breach of contract would not present a federal question. *See Minn. Elevator, Inc. v. Imperial Elevator Servs.*, 758 F. Supp. 2d 533, 537 (N.D. Ill. 2010) (elements of a breach of contract claim under Illinois law). The issue whether provisions of the contract are unconstitutional would be raised, if at all, only as a defense to the state-law breach-of-contract claim. *See Employers Ins. of Wausau v. Titan Int'l, Inc.*, 400 F.3d 486, 900 (7th Cir. 2005) (illegality of the contract is an affirmative defense under Illinois law); *Am. Buyers Club of Mt. Vernon, Ill. Inc. v. Grayling*, 368 N.E.2d 1057, 1059 (5th Dist. 1977); *see also Narkiewicz-Laine v. Scandinavian Airlines Sys.*, 587 F. Supp. 2d 888, 890 (N.D. Ill. 2008) ("Plaintiff brought state-law breach of contract claims. Because the conditions and limits of the Montreal

Convention are defenses to the state-law claims raised by plaintiff, they do not provide a basis for federal-question subject matter jurisdiction.").

Nor would a hypothetical, well-pleaded claim by the Unions to set aside the Executive Order as contrary to the IPLRA present a federal question. The IPLRA states on its face that it prevails over executive orders, 5 ILCS 315/15(a), and state statutes are presumed to be constitutional, *see People v. Garcia*, 770 N.E.2d 208, 209 (Ill. 2002). An argument that the fair-share provisions of the IPLRA are not valid would be raised, if at all, only as a defense to the Unions' claim. *See, e.g.*, *In re Marriage of Miller*, 879 N.E.2d 292, 296 (Ill. 2007) (unconstitutionality of state statute raised as an affirmative defense).

A federal defense does not establish federal-question jurisdiction "even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). State courts adjudicate constitutional defenses all the time.

Nor is this a case like *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), in which the plaintiff's well-pleaded state-law claim necessarily included a federal-law element. Here, the First Amendment issue is purely a defense and, as the Seventh Circuit has explained, *Grable* does not "alter the rule that a potential federal defense is not enough to create federal jurisdiction under §1331." *Chicago Tribune Co. v. Bd. of Trustees of Univ. of Ill.*, 680 F.3d 1001, 1003 (7th Cir. 2012). "*Grable* has nothing to do with using federal defenses to move litigation to federal court. In *Grable* the federal issue was part of the plaintiff's own claim." *Id.*; *see also Illinois v. McGraw-Hill Co.*, 2013 WL 1874279, at *5 (N.D. Ill. May 2, 2013) (remanding for lack of federal question jurisdiction a state law misrepresentation claim and noting that "Defendants'

argument that S & P's statements constitute protected speech under the First Amendment is . . . an affirmative defense," "not something that a plaintiff must prove").

## B. The Governor Lacks Standing To Challenge the Constitutionality of State Law.

This case must also be dismissed for lack of jurisdiction because the Governor does not have standing to bring an action in federal court challenging the constitutionality of the IPLRA and the fair-share contractual provisions that the IPLRA authorizes.

State officials lack standing to challenge the constitutionality of state law in federal court where the officials are not personally adversely affected – that is, where their interest is official, rather than personal. For example, in *Smith v. Indiana*, 191 U.S. 138 (1903), a county auditor brought an action alleging that a state property tax statute was unconstitutional. The Supreme Court dismissed the appeal, reasoning that

> the jurisdiction of this court . . . can only be invoked by a party having a personal interest in the litigation. It follows that he cannot sue out a writ of error in behalf of third persons. . . . It is evident that the auditor had no personal interest in the litigation. He had certain duties as a public officer to perform. The performance of those duties was of no personal benefit to him. Their nonperformance was equally so. He neither gained nor lost anything by invoking the advice of the supreme court [of Indiana] as to the proper action he should take. He was testing the constitutionality of the law purely in the interest of third persons, viz., the taxpayers. . . . We think the interest of an appellant in this court should be a personal, and not an official, interest.

*Id*. at 148-49. The Seventh Circuit, in *D'Amico v. Schweiker*, 698 F.2d 903 (7th Cir. 1983), similarly "dismissed for want of standing a suit brought by administrative law judges of the Social Security Administration who were complaining that a directive by their superiors required them to decide social security cases in a manner contrary to law," because "they did not suggest that compliance

with the directive would reduce their pay or benefits or increase their work or anything of the sort." *Cronson v. Clark*, 810 F.2d 662, 664 (7th Cir. 1987) (discussing *D'Amico*). *D'Amico* determined that "these administrative law judges . . . are the wrong people to be raising with us the question whether the challenged instruction is lawful." *D'Amico,* 698 F.2d at 906; *see also Finch v. Miss. St. Med. Ass'n,* 585 F.2d 765, 774 (5th Cir. 1978) (Governor of Mississippi lacked standing to challenge constitutionality of state law).

Here, the Governor's complaint does not identify any personal interest in this case sufficient to confer standing. The Governor is not personally subject to a fair-share requirement. Indeed, Governor Rauner is not even a party to the collective bargaining agreements with the defendant Unions; they were entered into by a state agency. *See* Complaint ¶ 14. Nor would the Governor receive any additional money if he prevailed in this litigation. The complaint, instead, alleges that this litigation is an exercise of the Governor's "duty to protect the First Amendment rights . . . of all people in the State of Illinois," and his desire not to "violat[e] his oath of office." Complaint ¶ 84. But those are classic "official[] interest[s]" long held to be insufficient to confer standing. *Smith*, 191 U.S. at 149.

As the Seventh Circuit has made clear, alleged "[i]ndignation that the law is not being obeyed, sympathy for the victims of that disobedience, a passionate desire to do one's legal duty – none of these emotions . . . will support a federal lawsuit." *Cronson*, 810 F.2d at 664; s*ee also Finch*, 585 F.2d at 774 ("The Governor, as an elected official, is in no danger of expulsion from office as a result of any action that he alone believes may have violated his oath."); *City of S. Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency*, 625 F.2d 231, 235-39 (9th Cir. 1980) (rejecting argument that a state official has standing to challenge state law based merely on duty to follow oath

of office); *cf. Bd. of Educ. v. Allen*, 392 U.S. 236, 241 n.5 (1968) (suggesting that school board members had standing to challenge the constitutionality of state law because they faced "expulsion from office and also a reduction in state funds for their school districts" if they refused to comply).

The Governor cannot confer standing upon himself to challenge the constitutionality of state law by issuing Executive Order 15-13 to instruct his subordinates to disobey the IPLRA. *See D'Amico*, 698 F.2d at 906 ("[I]f administrative law judges do not have standing to bring such a suit they cannot confer it on themselves, bootstrap fashion, by disobeying the instruction and then complaining that their disobedience laid them open to discipline."). The Governor is free to rescind his Executive Order at any time. In essence, "[t]he mental disposition of the Governor is all that gives him cause to complain; were he to change his mind tomorrow and decide, rightly or wrongly, that the state statute is valid, he would no longer have any interest in the case. He has no personal stake in the outcome of this case; he will not be affected favorably by a decision that the statute is unconstitutional nor adversely by a decision that it is valid." *Finch*, 585 F.2d at 774.

## II. The Complaint Fails To State a Claim for Relief.

Even if the Court has jurisdiction, the complaint still must be dismissed for failure to state a claim. The complaint seeks a declaration that "[t]he Fair Share Contract Provisions under the IPLRA are unconstitutional under the First Amendment." Complaint at 21. At the same time, the complaint accurately states that "[i]n *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), the United States Supreme Court considered and approved 'fair share' provisions under a public sector labor contract." Complaint ¶ 71. That concession is fatal to the request that fair share provisions be declared unconstitutional. "If a precedent of [the Supreme] Court has direct application in a case," the obligation of a lower court is to "follow the case which directly controls, leaving to [the

Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989). There is no question that *Abood* squarely held that fair share agreements are constitutional "insofar as the service charge is used to finance expenditures by the Union for the purposes of collective bargaining, contract administration, and grievance adjustment." 431 U.S. at 225-26. And just recently, the Supreme Court refused to even consider the "argument that *Abood* should be overruled." *Harris v. Quinn*, 134 S. Ct. 2618, 2638 n.19 (2014).

The complaint suggests that *Abood* is certain to be overruled, because "since *Abood*, the Supreme Court has repeatedly recognized that compelling a state employee to financially support a public sector union seriously impinges upon the free speech and association interests protected by the First Amendment." Complaint ¶ 71. Far from suggesting that *Abood* should be overruled, however, the Court's precedents have carefully erected a set of legal rules to ensure fair share agreements are applied in a manner that does not infringe the First Amendment rights of fee payers. Thus, the Court has carefully distinguished the representational activities to which objecting fee payers can be compelled to contribute from other union activities to which they may not be compelled to contribute. *See Locke*, 555 U.S. at 217-21; *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507 (1991). And the Court has described what sort of procedures a union must adopt to ensure that objecting fee payers are not compelled to contribute to nonrepresentational activities. *See Knox v. Service Employees*, 132 S. Ct. 2277 (2012); *Chicago Teachers v. Hudson*, 475 U.S. 292 (1986). This long line of precedent demonstrates the Court's continued commitment to effectuating *Abood*'s holding that objecting nonmembers cannot be required to provide financial support "for the expression of political views, on behalf of political candidates, or toward the advancement of other

ideological causes not germane to [the union's] duties as collective-bargaining representative." 431 U.S. at 235.

The premise of the complaint is the Governor's assertion that "using compelled fair share' fees" to represent employees with regard to "mandatory subjects of collective bargaining," such as "wages, pensions, and benefits," violates the First Amendment. Ex. Ord. 15-13 at 2. But the whole point of the precedents elaborating *Abood* has been to ensure that the compelled fees are used only for such bargaining. From the outset, there has never been any question that compelling represented employees to contribute to the costs of representation on matters germane to collective bargaining does not violate the First Amendment. Contrary to the Governor's assertion, no case, including *Harris*, suggests that the Supreme Court will overturn the decades of precedent that establish that proposition.

The *Harris* Court did not find fault with what it described as "the best argument . . . in support of *Abood*," 134 S. Ct. at 2637 n. 18 (opinion of the Court). That argument holds that "[w]hat justifies the agency fee . . . is the fact that the State compels the union to promote and protect the interests of nonmembers." *Id.* at 2636. As the *Harris* Court observed, Justice Scalia expressed that view in his separate opinion in *Lehnert*. *Id.* (citing *Lehnert*, 500 U.S. at 556 (opinion of Scalia, J.)). In that opinion, Justice Scalia explained that, although the government normally cannot compel individuals to provide financial support to a private organization even though they may benefit from the organization's activities, "[w]hat is distinctive … about the 'free riders' who are nonunion members of the union's own bargaining unit is that, in some respects, *they* are free riders whom the law *requires* the union to carry." *Lehnert*, 500 U.S. at 556 (opinion of Scalia, J.) (emphasis in original). Justice Scalia identified this as "[t]he 'compelling state interest' that justifies th[e]

constitutional rule" permitting a requirement that nonmembers must pay their share of the union's bargaining-related expenses. *Id.*

Far from rejecting that conclusion, in *Harris* the Court stated that "[t]his argument has little force *in the situation now before us*," 134 S. Ct. at 2637 (emphasis added) – a situation where the individuals in the bargaining unit (personal assistants who provided in-home care to disabled persons) were "quite different from full-fledged public employees." *Id.* at 2638. The *Harris* Court declined to extend *Abood* to that situation precisely because, in the Court's view, the personal assistants' union did not have representational obligations comparable to those of unions in traditional public employment settings such as had been presented in *Abood*. *See id*. at 2635-37. *Harris* casts no doubt on the constitutionality of agency fees for unions that represent "full-fledged public employees."

In sum, the authorization of fair-share provisions by the Illinois Public Labor Relations Act is clearly constitutional. That being so, Executive Order 15-13 prohibiting the enforcement of fair-share provisions authorized by the IPLRA is without any legal basis and is preempted by the provisions of the IPLRA. *See* 5 ILCS 315/15(a).

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed.

Dated: March 5, 2015                    Respectfully submitted,


/s/ Stephen A. Yokich                   /s/ Joel Abbott D'Alba

Stephen A. Yokich, Esq.                 Joel Abbott D'Alba, Esq.
Melissa J. Auerbach, Esq.               Asher, Gittler, Greenfield, Cohen & D'Alba,
Cornfield and Feldman LLP               Ltd.
25 East Washington Street, Suite 1400   200 West Jackson Boulevard, Suite 1900
Chicago, Illinois  60602-1803           Chicago, IL  60606
312-236-7800                            (312) 263-1500

Attorneys for American Federation of State,   Troopers' Lodge No. 41, FOP; International
County, and Municipal Employees, Council      Association of Machinist and Aerospace
31, AFL-CIO; Illinois Federation of Public    Workers District 8; United Association of
Employees, Local 4408, IFT/AFT; Illinois      Journeymen and Apprentices of the Plumbing
Federation of Teachers, Local #919; and       and Pipefitting Industry of U.S.A. and Canada;
International Union of Bakery,                Service Employees International Union, Local
Confectionery and Tobacco Workers             73; Conservation Police Lodge, Illinois Police
                                              Benevolent and Protective Association


Stanley Eisenstein, Esq.                Ellen J. Schanzle-Haskins
Joshua M. File, Esq.                    General Counsel to the Vice President &
Katz, Friedman, Eagle,                  Regional Manager
   Eisenstein & Johnson, PC             Midwest Region Laborers' International Union
77 West Washington Street - 20th Floor  of North America
Chicago, Illinois 60602-2801            1 North Old State Capitol Plaza, Suite 525
(312) 263-6330                          Springfield, Illinois  62701
                                        (217) 331-5528
Attorneys for Illinois Nurses Association
                                        Attorneys for Illinois State Employees
                                        Association, Local 2002

Joseph V. Healy, Esq.
Law Offices of Joseph V. Healy
1341 North Halsted, Suite 2S
Chicago, Illinois 60642
(312) 841-1092

Attorneys for Laborer's International Union of North America

Terrance Bryan McGann, Esq.
Whitfield McGann & Ketterman
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 251-9700

Attorneys for United Brotherhood of Carpenters and Joiners of America (on behalf of Chicago Regional Council of Carpenters, Mid-Central Illinois Regional Council, and St. Louis Missouri District Council)

Emil Patrick Totonchi
General Counsel, IBT Local 705
1645 West Jackson Boulevard, 7th Floor
Chicago, IL 60612
(312) 738-5264

Attorneys for Teamsters Local 705

Carl R. Draper, Esq.
FeldmanWasser
1307 South 7th Street
Springfield, Illinois 62703
P.O. Box 2418
Springfield, Illinois 62705
(217) 544-3403

Attorneys for General Teamsters/ Professional & Technical Employees Local Union No. 916

James S. Beall, Esq.
Linda Martin, Esq.
Alaine S. Williams, Esq.*
Amy R. Rosenberger, Esq.*
Willig, Williams & Davidson, Of Counsel
*motions for pro hac vice admission to be filed
77 West Washington Street, Suite 2120
Chicago, IL 60602
(312) 818-6700

Attorneys for Teamsters Illinois Downstate Employee Negotiating Committee; Teamsters Local 700; and Teamsters Local 330

Tamara Cummings, General Counsel
John R. Roche, Jr., Esq.
5600 South Wolf Road, Suite 120
Western Springs, Illinois 60558-2268
(708) 784-1010

Attorneys for Illinois Fraternal Order of Police Labor Council

Robert E. Bloch, Esq.
Ronald M. Willis, Esq.
Dowd, Bloch & Bennett
8 South Michigan Avenue, 19th Floor
Chicago, IL 60603
(312) 372-1361

Attorneys for Service Employees
International Union, Local 1


Martin Phillip Barr, Esq.
William A. Widmer III, Esq.
Carmell Charone Widmer Moss & Barr
One East Wacker Drive, Suite 3300
Chicago, Illinois 60601
(312) 236-8033

Brian A. Powers
General Counsel
International Union of Operating Engineers
1125 17th Street, NW
Washington, DC 20036
Of Counsel
(202) 775-2675

Attorneys for International Union of
Operating Engineers


John J. Toomey, Esq.
Arnold and Kadjan
203 North LaSalle Street, Suite 1650
Chicago, Illinois 60601
(312) 236-0415

Attorneys for International Union of Painters
and Allied Trades

Jonathan D. Karmel, Esq.
Karmel Law Firm
221 North LaSalle Street, Suite 1307
Chicago, Illinois 60601
(312) 641-2910

Attorneys for International Union of United
Food and Commercial Workers


Margaret A. Angelucci, Esq.
Asher, Gittler, Greenfield, Cohen & D'Alba,
Ltd.
200 West Jackson Boulevard, Suite 1900
Chicago, IL 60606
(312) 263-1500

Attorneys for International Union Bricklayers
and Allied Craftworkers, Local 8, Illinois; and
International Brotherhood of Electrical
Workers


Victoria Louise Bor
Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300

Attorneys for International Brotherhood of
Electrical Workers

## **CERTIFICATE OF SERVICE**

I, Stephen A. Yokich, an attorney, hereby certify that on March 5, 2015, I caused the foregoing **Defendants' Memorandum in Support of Joint Motion to Dismiss** to be filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

I further certify that as of March 5, 2015, there are no nonregistered participants upon whom service by U.S. Mail is required.

/s/ Stephen A. Yokich
Stephen A. Yokich