IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRUCE RAUNER, in his official capacity as Governor of the State of Illinois, | ) ) ) |
| Plaintiff, | ) ) Case No. 15 cv 1235 |
| v. | ) ) Hon. Judge Robert W. Gettleman |
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 31, AFL-CIO, *et al.*, | ) ) ) ) |
| Defendants. | ) |

**ILLINOIS ATTORNEY GENERAL'S UNOPPOSED MOTION TO INTERVENE**

Pursuant to Rules 5.1 and 24 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2403(b), the People of the State of Illinois, *ex rel.* Lisa Madigan, Attorney General of the State of Illinois (the "Attorney General"), move to intervene in this case, in which Illinois Governor Bruce Rauner draws into question the constitutionality of Section 6(e) of the Illinois Public Labor Relations Act (the "IPLRA"), 5 ILCS 315/6(e), and seeks a federal court judgment prohibiting state officials from complying with contractual commitments they made under the authority of Section 6(e). Plaintiff and Defendants do not oppose intervention by the Attorney General. In support of this motion, the Attorney General states:

**Introduction and Summary**

1. On February 9, 2015, Governor Rauner, who took office on January 12, 2015, filed this declaratory judgment suit against more than two dozen labor organizations that represent Illinois state employees who work for agencies under the Governor's jurisdiction (the "Unions"). His Complaint seeks to challenge the constitutionality of "fair share fees," which are collected from non-members of public sector unions and paid to those unions to cover the non-members' share of the unions' expenses for negotiating and administering collective bargaining agreements.

2. The Attorney General moves to intervene pursuant to Fed. R. Civ. P. 5.1 and 28 U.S.C. § 2403 because this suit calls into question the constitutionality of a state statute. The Attorney General alternatively moves for leave to intervene under Fed. R. Civ. P. 24 in light of the issues involved in the case.

**Factual Background**

*The Governor's Complaint*

3. Governor Rauner's Complaint alleges the following: Section 6 of the IPLRA recognizes the right of certain public-sector employees in Illinois to engage in collective bargaining through a chosen representative, as well as the right of individual employees to refrain from such activities. (Complaint ¶¶ 47-49.) Section 6(e) also provides that nonmembers of a union can be required by a collective bargaining agreement to pay "their proportionate share of the costs of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and conditions of employment." (*Id.* ¶ 50.) The Illinois Department of Central Management Services ("CMS"), an agency under the Governor's jurisdiction, "has entered into collective bargaining agreements that require the deduction of 'fair share' fees from the earnings of the nonmembers, with the fees then paid to the contracting unions" (defined in the Complaint as the "Fair Share Contract Provisions"). (*Id.* ¶ 3.)

4. Based on his reading of the United States Supreme Court's decisions in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), and *Harris v. Quinn*, 134 S. Ct. 2618 (2014), Governor Rauner "has concluded these nonmember fee deductions are coerced political speech, in violation of the First Amendment of the United States Constitution" (*id.* ¶ 6), and violate the First Amendment rights of the non-members of the unions who are parties to these collective bargaining agreements (the "CBAs") with CMS (the "Unions") (*id.* ¶¶ 79, 81).

5. Governor Rauner alleges that he has a "duty to protect the First Amendment rights of all people in the State of Illinois" (Complaint ¶ 84; see also *id.* ¶ 46) and a "sworn duty to faithfully execute the laws and support the United States and Illinois Constitution." (*Id.* ¶¶ 2, 6.) The Governor also claims that, as a result of these alleged duties, he "cannot condone this unconstitutional coercion of speech." (*Id.*)

6. Based on his view of the First Amendment and of his duties as Governor, Governor Rauner issued Executive Order 15-13 (the "Executive Order"). (*Id.* ¶ 8.) The Executive Order "directs CMS to suspend the deduction and remittance of fees imposed by the Fair Share Contract Provisions." (*Id.*)

7. According to the Complaint, "[a]n actual controversy currently exists between the parties concerning the constitutionality of the Fair Share Contract Provisions and the legality of the Governor's Executive Order ceasing such deductions" because the Executive Order "renders null and void certain provisions in the collective bargaining contracts between CMS and Defendants." (*Id.* ¶ 14.) The Complaint further alleges that "CMS is an agency that reports to the Governor," and CMS's "obedience to Executive Order 15-13 necessarily creates a controversy with Defendants, which will no longer receive these payments." (*Id.*)

8. The Complaint "seeks a declaratory judgment that deducting fees under the Fair Share Contract Provisions from the earnings of nonmember public employees is unconstitutional under the First Amendment of the United States Constitution, and that Executive Order 15-13 was within the Governor's powers under the Illinois Constitution." (*Id.* ¶ 10; Prayer for Relief.)

***The Unions' State-Court Suit***

9. On March 5, 2015, the Unions filed a two-count complaint in Illinois state court against the Governor, the CMS Director and other state officials asserting claims under state law. Count I, which seeks declaratory and injunctive relief, alleges that the Executive Order violates

Section 6(e) of the IPLRA and exceeds the Governor's authority under Illinois law. Count II alleges that the Executive Order violates the fair-share fee provisions of the CBAs and requests an "injunction in aid of arbitration" in light of the Unions' initiation of grievance proceedings under the CBAs challenging that violation.

### Discussion

10. The Attorney General is the chief legal officer of the State of Illinois, Ill. Const., Art. V, § 15; see also *Scachitti v. UBS Financial Servs.*, 831 N.E.2d 544, 561 (Ill. 2005); *Envtl. Prot. Agency v. Pollution Control Bd.*, 372 N.E.2d 50, 51 (Ill. 1977) ("As the chief legal officer of the State, the Attorney General . . . has the prerogative of conducting legal affairs for the State."). Among the Attorney General's principal responsibilities is to defend the constitutionality of Illinois statutes in litigation in which their validity is challenged. Reflecting this role, Rule 19 of the Illinois Supreme Court Rules, which was patterned after Section 2403 of the Judicial Code (discussed below), requires notice to the Attorney General in specified circumstances when the validity of a state statute is challenged, and expressly states that "[t]he purpose of such notice shall be to afford the State . . . the opportunity . . . to intervene in the cause or proceeding for the purpose of defending the law or regulation challenged." See also *Downtown Disposal Servs., Inc. v. City of Chicago*, 943 N.E.2d 185, 193 (Ill. App. 2011) ("The purpose of [Rule 19] rule is to permit the Attorney General to intervene in the proceeding to defend the constitutionality of the statute.").

11. Under Illinois law, the Attorney General also has the constitutional "common law duty to protect the public purse." *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 170 (Ill. 1992); see also 15 ILCS 205/4 (providing that the Attorney General has the responsibility "[t]o enforce the proper application of funds appropriated to the public institutions of the State [and] prosecute breaches of trust in the administration of such funds").

12. In light of the claims asserted in this case and the Attorney General's official role as the chief legal officer of the State of Illinois, the Attorney General seeks leave to intervene as of right pursuant to Federal Rule of Civil Procedure 5.1, or alternatively to intervene pursuant to Federal Rule of Civil Procedure 24.

13. Rule 5.1(a) provides that a party in a federal court suit who "files a pleading, written motion, or other paper drawing into question the constitutionality of a . . . state statute must promptly: (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if . . . (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity." In such a case, Rule 5.1(b) also requires the court to "certify to the appropriate attorney general that a statute has been questioned." Rule 5.1(c) provides that, "[u]nless the court sets a later time, the attorney general may intervene within 60 days after the notice is filed or after the court certifies the challenge, whichever is earlier.

14. Rule 5.1 operates in tandem with Section 2403(b) of the Judicial Code (28 U.S.C. § 2403(b)), which provides, in relevant pert:

> In any action . . . to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.

15. The purpose of Rule 5.1 and Section 2403(b) is to permit a State's Attorney General to defend the constitutionality of a state statute whose validity is drawn into question in federal court litigation when that position is not represented by a responsible state official who is already a party. Although Governor Rauner, the plaintiff, is a party to this case, because he is challenging the validity of a state statute, he is not in a position also to defend that statute's constitutionality. The purpose of Rule 5.1 and Section 2403(b) would be frustrated by giving it an excessively technical

5

interpretation pursuant to which, in that circumstance, the only state official in the case seeks to have that statute declared unconstitutional, and only private parties, not the Attorney General, would have the right and responsibility to defend the validity of that statute.

16. The Attorney General's ability to intervene as of right is not precluded by the fact that Governor Rauner's complaint does not *expressly* seek a declaratory judgment declaring Section 6(e) of the IPLRA unconstitutional, and instead seeks only a declaration that complying with the fair-share fee provisions of the CBAs entered into between CMS and the Unions is unconstitutional. The Complaint unquestionably "draw[s] into question the constitutionality of a . . . state statute." Indeed, the Complaint specifically quotes the part of Section 6(e) that authorizes the fair-share fees (Complaint ¶ 50) and alleges that such fees violate the First Amendment (*id.* ¶¶ 6-7, 79, 81, 83, 84, 95).

17. Section 6(e) expressly provides that when a collective bargaining agreement includes a provision requiring nonmembers of the labor union to pay fair-share fees, the union shall certify the amount of those fees, and they "shall be deducted by the employer from the earnings of the nonmember employees and paid to the employee organization." 315 ILCS 5/6(e). CMS's implementation of the fair-share fee provisions of the CBAs it entered into could not be unconstitutional, as the Complaint alleges, unless the very statutory provision authorizing those fees, Section 6(e) of the IPLRA, were also unconstitutional. Because the Complaint draws into question the constitutionality of Section 6(e), the Attorney General should be granted leave to intervene as of right under Rule 5.1 and Section 2403.

18. In the alternative, the Attorney General should be given leave to intervene pursuant to Fed. R. Civ. P. 24, either as of right under Rule 24(a)(2), or permissively under Rule 24(b). Rule 24(a)(s) allows intervention as of right, if timely sought, by a person who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the

6

action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." That standard is met here.

19. As the Governor's Complaint makes clear, the subject of this suit relates to his Executive Order directing CMS — based on the Governor's conclusion that fair-share fees are unconstitutional — to disregard the provisions of Section 6(e) of the IPLRA and CMS's contractual commitments in the current CBAs made under the authority of that statute. Obviously, Governor Rauner, as the plaintiff challenging the validity of fair-share fees under Section 6(e) of the IPLRA, does not represent the State's interest in defending the validity of that statute. The Unions, named as defendants, can be expected to represent their own interests in upholding those statutory and contractual provisions. In these circumstances, the Attorney General uniquely represents the interest of the People of the State of Illinois concerning the validity of statutes enacted by the Illinois legislature and the scope of the Governor's authority, under Illinois law, to issue executive orders. The Attorney General also has a particular interest in addressing the scope of the Governor's authority under Illinois law to issue executive orders.

20. Especially relevant in this regard is the fact that the Attorney General recently addressed the federal constitutional issue the Governor wants this Court to decide (and, necessarily, the validity of Section 6(e) of the IPLRA) in *Harris*, where that issue was extensively briefed and argued. (The *Harris* briefs are available at *www.scotusblog.com/case-files/cases/harris-v-quinn*, last accessed Mar. 9, 2015.) The Attorney General therefore brings both a unique perspective and unique resources to that issue.

21. Intervention is also supported by considerations relevant to the Governor's asserted state-law authority, invoked in the Executive Order, to order CMS and other agencies under his jurisdiction to create an "escrow" account to hold disputed funds that CMS is obligated to pay the Unions under Section 6(e) and the CBAs. The Attorney General has a unique responsibility "to

protect the public purse" *E & E Hauling, Inc.*, 607 N.E.2d at 170, and to "enforce the proper application of funds appropriated to the public institutions of the State," 15 ILCS 205/4. The defendant Unions' claims against CMS do not depend on, or share, that same concern.

22. Intervention is alternatively justified on a permissive basis under Rule 24(b), which authorizes such intervention on timely motion by a person who "has a claim or defense that shares with the main action a common question of law or fact." A common question of law is the constitutionality of fair-share fees and, consequently, of Section 6(e) of the IPLRA.

23. Governor Rauner, the plaintiff, and the Unions, the defendants, do not oppose the Attorney General's request to intervene in this suit.

24. The Attorney General submits with this motion her proposed initial filings directed at the Complaint: a motion to dismiss the Complaint and a memorandum of law in support of that motion. Briefly, the motion argues that:

> (a) the Court lacks subject matter jurisdiction over the Governor's Complaint because it represents an improper attempt to seek preemptive relief against anticipated state-law claims as to which federal law provides only a defense;

> (b) the Governor lacks standing because he has not suffered any cognizable injury and instead is seeking to assert the constitutional rights of other persons;

> (c) even if the Court has jurisdiction over the Governor's claim, it should decline to exercise that jurisdiction under the Declaratory Judgment Act in light of the circumstances presented, including that this suit is intended as a preemptive defense against state-law claims and asks the Court to resolve a significant question of state constitutional law;

> (d) in the alternative, the Court should stay this case under abstention principles.

For each of these issues, intervention and argument by the Attorney General is warranted an in the public interest.

WHEREFORE, the Attorney General respectfully requests leave to intervene, either as of right or in the Court's discretion.

March 9, 2015                                           Respectfully submitted,

  /s/ *Richard Huszagh*
Richard S. Huszagh
R. Douglas Rees                                         *rhuszagh@atg.state.il.us*
Gary S. Caplan                                          Assistant Attorney General
Assistant Attorneys General                             100 W. Randolph St., 12th Floor
100 W. Randolph St.                                     Chicago, IL 60601
Chicago, IL 60601                                       (312) 814-2587

9