**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRUCE RAUNER, in his official capacity as Governor of the State of Illinois, | ) ) | |
| Plaintiff, | ) ) | Case No.  15 cv 1235 |
| v. | ) ) | |
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 31, AFL-CIO, *et al.*, | ) ) ) ) | Hon. Judge Robert W. Gettleman |
| Defendants. | ) | |

## ILLINOIS ATTORNEY GENERAL'S MOTION TO DISMISS OR STAY

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Section 2201 of the Judicial Code (28 U.S.C. § 2201), and the Court's inherent authority, the People of the State of Illinois, *ex rel.* Lisa Madigan, Attorney General of Illinois (the "Attorney General"), respectfully move for entry of an order (1) dismissing this action for lack of subject matter jurisdiction, (2) dismissing this suit pursuant to the Court's discretion under Section 2201 not to entertain a declaratory judgment claim, or (3) staying this action pending resolution of a parallel proceeding in state court. In support of this motion, the Attorney General submits an accompanying memorandum of law and states as follows:

1.      This case relates to Illinois Governor Bruce Rauner's attempt to challenge the validity of "fair-share fees" paid to public-sector unions by non-union members who benefit from collective bargaining and contract administration by the unions. That attempt does not belong in federal court.

2.      Even though fair-share fees are valid under controlling Supreme Court precedent, are authorized by Illinois statute, and are provided for in current collective bargaining agreements (the "CBAs") entered into between the defendant unions (the "Unions") and the Illinois Department of

Central Management Services ("CMS"), which is under the Governor's jurisdiction, he has declared his personal conclusion that these fees are unconstitutional. (Complaint ¶ 6.) Based on that conclusion, he issued an Executive Order directing CMS to stop remitting the fair-share fees to the Unions pursuant to the provisions in the CBAs requiring CMS to do so. (*Id.* ¶ 6, 81, 84-85.) A copy of the Executive Order is attached to this motion as Exhibit A.

3.    On the same day that he issued this Executive Order, Governor Rauner filed his Complaint in this action, in which he asks this Court to issue a declaratory judgment that:

(1)    The Fair Share Contract Provisions under the IPLRA are unconstitutional under the First Amendment of the United States Constitution; and

(2)    The Governor's Executive Order 15-13 is within the Governor's powers under the Illinois constitution.

(*Id.* at 21.)

4.    As the Governor's Complaint anticipated (*id.* ¶ 86), the Unions have now filed a state-court suit asserting various state-law challenges to the Governor's direction to CMS not to honor the fair-share fee provisions in the CBAs.  A copy of the complaint in this action (without exhibits) is attached to this motion as Exhibit B.

5.    Because this action calls into question the constitutionality of the Illinois statute that authorizes fair-share fee provisions in collective bargaining agreements with public employers and requires the public employer to implement such provisions, 5 ILCS 315/6(e) ("Section 6(e)"), the Attorney General moved for leave to intervene and to submit this motion.

6.    As detailed in the accompanying memorandum, this Court lacks subject-matter jurisdiction for multiple reasons. *First*, the Court does not have subject-matter jurisdiction under the "well-pleaded complaint" rule because the Governor's Complaint does not assert a valid federal-law claim. Instead, it seeks to raise the First Amendment as a preemptive federal-law *defense* to anticipated *state-law claims* contesting his Executive Order.

2

7.      *Second*, there is no federal jurisdiction under Article III of the Constitution because the Governor lacks standing to assert a First Amendment claim on behalf of other persons — i.e., non-members of the Unions who pay fair-share fees, and who are not before this Court. The Governor's personal opinion about the constitutionality of fair-share fees does not establish a concrete or particularized "injury in fact" to him. In addition, prudential standing rules prevent the Governor from using this action to assert, vicariously, the First Amendment rights of third parties.

8.      Apart from its jurisdictional defects, this action should be dismissed in the exercise of the Court's discretion under 28 U.S.C. § 2201 for three reasons. First, the case was filed as a forum-shopping tactic in anticipation of state court litigation concerning the same basic dispute. Second, the Complaint asks the Court to rule on unique state-law issues. Federal court adjudication of those issues while the same controversy is pending in state court would result in needless friction between the two judicial systems. Third, CMS's entry into the CBAs may constitute a waiver of any claim that they are unconstitutional. Under principles of constitutional avoidance, a finding of waiver could prevent the Court from ever addressing the First Amendment issue the Governor wants the Court to decide.

9.      If the Court does not dismiss this case, the Court should stay it based on *Pullman* and *Colorado River* abstention. The Unions' parallel action in Illinois state court alleges that the Governor's Executive Order exceeds his authority under Illinois law. The Governor's Complaint in this case also expressly asks this Court to determine that issue of state law. That question of state law should be resolved by an Illinois state court. And if the state court presiding over the Unions' suit determines, as a matter of state law, that the Governor does not have that authority, that would eliminate his asserted basis for claiming the existence of a federal-law controversy that this Court should decide.

10.     In addition, although federal courts generally must decide affirmative claims within their jurisdiction despite the existence of parallel state court litigation, that duty can be overcome in situations where, as here, both suits involve significant questions of state law, the federal case has not significantly progressed, federal-law rights can be adequately protected in the state court case, there are difficulties in the federal court's ability to resolve the entire controversy, and the basis for filing the federal court suit is contrived.

WHEREFORE, for the foregoing reasons and those in the accompanying memorandum, the Attorney General respectfully moves for entry of an order dismissing or staying this action.


March 9, 2015                                              Respectfully submitted,

                                                           /s/ *Richard Huszagh*
                                                          Richard S. Huszagh
R. Douglas Rees                                           *rhuszagh@atg.state.il.us*
Gary S. Caplan                                            Assistant Attorney General
Assistant Attorneys General                               100 W. Randolph St., 12th Floor
100 W. Randolph St.                                        Chicago, IL 60601
Chicago, IL 60601                                         (312) 814-2587
(312) 814-3000

# Exhibit A

Illinois Governor Rauner Executive Order 15-13, February 9, 2015

**STATE OF ILLINOIS**

**EXECUTIVE DEPARTMENT**

FILED
INDEX DEPARTMENT
FEB 0 9 2015

IN THE OFFICE OF
SECRETARY OF STATE

**SPRINGFIELD, ILLINOIS**

**EXECUTIVE ORDER**                                                                 **15-13**

## EXECUTIVE ORDER RESPECTING
## STATE EMPLOYEES' FREEDOM OF SPEECH

**WHEREAS,** the First Amendment to the United States Constitution protects the freedom of speech and association; and

**WHEREAS,** on numerous occasions, most recently in *Harris v. Quinn*, 134 S. Ct. 2618 (2014), in enforcing the First Amendment's rights, the United States Supreme Court recognized a "bedrock principle" that "no person in this country may be compelled to subsidize speech by a third party that he or she does not wish to support," because "compelled funding of the speech of other private speakers or groups presents the same dangers as compelled speech"; and

**WHEREAS,** together with the people of this State and throughout the nation, every state employee enjoys the freedoms of speech and association enshrined in the Constitutions of the United States and the State of Illinois; and

**WHEREAS,** the Governor of the State of Illinois has a duty under Article V, Section 8 and Article XIII, Section 3 of the Illinois Constitution, and upon taking office swears an oath, to "support the Constitution of the United States, and the Constitution of the State of Illinois," including those provisions that protect speech and association; and

**WHEREAS,** under Article VI, Clause 2 of the United States Constitution (the "Supremacy Clause"), the Constitution "shall be the supreme law of the land," preempting "anything in the Constitution or laws of any State to the contrary"; and

**WHEREAS,** consistent with the Supremacy Clause, the Governor of the State of Illinois must exercise his executive powers under Article V, Section 8 of the Illinois Constitution by resolving all conflicts between the United States Constitution and state law in favor of the Constitution; and

**WHEREAS,** employees of the State of Illinois must not be forced, against their will, to participate in or fund public sector labor union activities to which they object; and

**WHEREAS,** collective bargaining agreements, to which the State of Illinois is a party, currently compel some state employees to subsidize the political speech of public sector labor unions of which they have chosen to not be members; and

**WHEREAS,** under the Illinois Public Labor Relations Act ("Illinois Labor Act"), 5 ILCS 315/6, a public sector labor union unilaterally determines the so-called "fair share" fees to be paid by those who choose not to be members of the union; and

**WHEREAS,** by requiring non-union members to pay "fair share" fees to unions by imposing automatic paycheck deductions without any regard to whether an employee objects to the views and actions of public labor unions' representatives, the collective bargaining agreements force some employees to subsidize and enable union activities that they do not support; and

**WHEREAS,** the State engages in this practice through actions of Executive Branch agencies, under the direction of the Governor, pursuant to collective bargaining agreements negotiated under the Illinois Labor Act; and

**WHEREAS,** one of those executive agencies, the Illinois Department of Central Management Services ("CMS"), has entered into collective bargaining agreements that contain provisions requiring CMS, pursuant to the Illinois Labor Act, to deduct "fair share" fees from state employees' paychecks and deliver those deductions to the contracting unions ("Fair Share Contract Provisions"); and

**WHEREAS,** the United States Supreme Court first addressed such "fair share" arrangements for state government employees in the case of *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977); and

**WHEREAS,** since its decision in *Abood*, the Supreme Court has repeatedly acknowledged that compelling state employees to financially support public sector unions seriously impinges upon free speech and association interests protected by the United States Constitution; and

**WHEREAS,** in *Harris v. Quinn*, the Supreme Court held that "fair share" provisions, which required nonmember Medicaid-funded home-care personal assistants to pay "fair share" fees to the union, violated the First Amendment; and

**WHEREAS,** the Supreme Court in *Harris* ruled that such "fair share" provisions served no compelling state interest; and

**WHEREAS,** in *Harris*, a majority of the Supreme Court also questioned the legal and factual bases of *Abood*'s ruling that public sector employees may be compelled to pay "fair share" fees, calling the analysis in *Abood* "questionable on several grounds" and labeling the decision "an anomaly"; and

**WHEREAS,** the aforementioned criticisms of *Abood* and the present facts and circumstances of Illinois public sector collective bargaining leave no doubt that the Fair Share Contract Provisions, as permitted by the Illinois Labor Act, violate Illinois state employees' freedoms of speech and association; and

**WHEREAS,** for instance, Illinois state employee unions are using compelled "fair share" fees to fund inherently political activities to influence the outcome of core public sector issues, such as wages, pensions, and benefits, that are all currently mandatory subjects of collective bargaining under the Illinois Labor Act; and

**WHEREAS,** the negotiation of these core public sector issues has a direct impact on the level of public services, priorities within the state budget, creation of bond indebtedness, and tax rates, among other things, thereby influencing the debate over these political issues of paramount importance; and

**WHEREAS,** at least in part because of the cost of wage, benefits, and pension packages obtained by state employee unions in previous administrations with the use of compelled "fair share" fees, the State of Illinois currently has a staggering structural budget deficit and unfunded pension liability of $111 billion, the largest such deficit as a percentage of state revenue in the country; and

**WHEREAS,** these dire financial conditions are likely to usher in a bleak future of emergency measures that could include reduced or eliminated state services, increased taxes, insolvent public entities, and empty pension accounts; and

**WHEREAS,** the significant impact that Illinois public sector labor costs have imposed and will continue to impose on the State's financial condition demonstrates the degree to which Illinois state employee collective bargaining is an inherently political activity; and

**WHEREAS,** in light of the foregoing facts and circumstances and insofar as constitutionally-protected freedoms of speech and association are concerned, there is no reasonable basis for distinguishing Illinois public sector collective bargaining activities from Illinois public sector union political activities; and

**WHEREAS,** in order to preserve employees' fundamental rights of speech and association, and to avoid violations of the First Amendment of the United States Constitution and Article I, Sections 4 and 5 of the Illinois Constitution; and

**WHEREAS,** the Supremacy Clause prohibits the Governor of the State of Illinois from enforcing state law and contractual agreements that violate the First Amendment of the United States Constitution;

**THEREFORE,** I, Bruce Rauner, Governor of Illinois, pursuant to the executive authority vested in me by Section 8 of Article V of the Constitution of the State of Illinois, and faithfully supporting the freedoms protected by the United States and Illinois Constitutions, hereby order as follows:

I.      **DEFINITIONS**

As used in this Executive Order:

"**CMS**" means the Illinois Department of Central Management Services.

"**Fair Share Contract Provisions**" means provisions in collective bargaining agreements that require a State Agency, pursuant to the Illinois Labor Act, to deduct "fair share" fees from state employees' paychecks and deliver those deductions to the contracting unions.

"**Illinois Labor Act**" means the Illinois Public Labor Relations Act, 5 ILCS 315/6.

"**State Agency**" means any officer, department, agency, board, commission, or authority of the Executive Branch of the State of Illinois under the jurisdiction of the Governor.

"**State Employee**" means any State Agency employee covered by a collective bargaining agreement.

II.     **PROHIBITION AGAINST STATE AGENCIES EXACTING FAIR SHARE FEES FROM STATE EMPLOYEES**

1.      CMS is hereby directed to immediately cease enforcement of the Fair Share Contract Provisions.

2.      All other State Agencies are hereby prohibited from enforcing such Fair Share Contract Provisions.

3.  CMS and all other State Agencies are directed to place all "fair share" deductions in an escrow account for as long as any contracting union's collective bargaining agreement requires such deductions and to maintain an accounting of the amount deducted from each State Employee's wages for each contracting union, so that each such State Employee will receive the amount deducted from his or her wages upon the determination by any court of competent jurisdiction that the Fair Share Contract Provisions are unconstitutional.

## III.  PRIOR EXECUTIVE ORDERS

This Executive Order supersedes any contrary provision of any prior Executive Order.

## IV.  SAVINGS CLAUSE

Nothing in this Executive Order shall be construed to contravene any state or federal law. Nothing in this Executive Order shall affect or alter the existing statutory powers of any State Agency or be construed as a reassignment or reorganization of any State Agency. This Savings Clause shall not apply to parts of the Illinois Labor Act that enable the Fair Share Contract Provisions, or to collective bargaining agreements containing such provisions, as the Illinois Labor Act and the collective bargaining agreements are invalid under the United States and Illinois Constitutions.

## V.  SEVERABILITY

If any provision of this Executive Order or its application to any person or circumstance is held invalid by any court of competent jurisdiction, this invalidity does not affect any other provision or application of this Executive Order, which can be given effect without the invalid provision or application. To achieve this purpose, the provisions of this Executive Order are declared to be severable.

## VI.  EFFECTIVE DATE

This Executive Order shall take effect immediately upon filing with the Secretary of State.

Bruce Rauner, Governor

Issued by Governor: February 9, 2015
Filed with Secretary of State: February 9, 2015

# Exhibit B

March 5, 2015 Complaint in St. Clair County, Illinois, Case No. 2015 CH 171;

*Illinois AFL-CIO, et al. v. Bruce Rauner, Governor of the State of Illinois, et al.*

# IN THE CIRCUIT COURT OF THE 20TH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS

Illinois AFL-CIO; American Federation of State, )
County, and Municipal Employees, Council 31, )
AFL-CIO; Troopers' Lodge No. 41, FOP; Illinois )
Nurses Association; Illinois Federation of Public )
Employees, Local 4408, AFT/IFT; Illinois )
Federation of Teachers, AFL-CIO Local #919; )
Teamsters Illinois Downstate Employee )
Negotiating Committee; Teamsters Local 700; )
Teamsters Local 330; Teamsters Local Union 705, )
affiliated with the International Brotherhood of )
Teamsters; General Teamsters/Professional & )
Technical Employees Local Union No. 916; )
Service Employees International Union, Local 73; )
Laborers' International Union of North America – )
Illinois State Employees Association, Local 2002 )
and the Southern and Central Illinois Laborers' )
District Council; Conservation Police Lodge, )
Illinois Police Benevolent and Protective )
Association; Illinois Fraternal Order of Police – )
Labor Council; International Union of Bakery, )
Confectionery and Tobacco Workers; International )
Union Bricklayers and Allied Craftworkers, )
Local 8, Illinois; United Brotherhood of Carpenters )
and Joiners of America (on behalf of Chicago )
Regional Council of Carpenters, Mid-Central )
Illinois Regional Council, and St. Louis Missouri )
District Council); International Brotherhood of )
Electrical Workers; Service Employees )
International Union, Local 1, International Union )
of United Food and Commercial Workers; )
Laborer's International Union of North America; )
International Association of Machinist and )
Aerospace Workers District 8; International Union )
of Operating Engineers; International Union of )
Painters and Allied Trades; United Association )
of Journeymen and Apprentices of the Plumbing )
and Pipefitting Industry of U.S.A. and Canada; )
Metropolitan Alliance of Police, Chapter 294; )
)
　　　　　　Plaintiffs, )
)
　　　v. )

*15 CH 171*



FILED
ST. CLAIR COUNTY
MAR 0 5 2015
_____ a Clerk
CIRCUIT CLERK

Bruce Rauner, Governor of the State of Illinois;  )
Tom Tyrrell, Acting Director of the Illinois       )
Department of Central Management Services;         )
Illinois Department of Central Management          )
Services; Leo Schmitz, Director of the Illinois    )
State Police; and the Illinois State Police,       )
                                                   )
                          Defendants.              )

## VERIFIED COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

The Plaintiffs complain against Defendants as follows:

## I.    INTRODUCTION

1.    The Plaintiffs in this case are 26 labor unions, and the Illinois AFL-CIO.  The Plaintiff Unions represent more than 40,000 State employees who work in the executive branch of the government under the Governor.  The members of the Unions provide public services to the citizens of Illinois.  Among other services, they shield the public from crime, care for the sick, protect the abused from neglect, guard criminals,  and maintain the infrastructure necessary to the economy of the State.  These employees have overwhelmingly selected the Plaintiffs to represent them with respect to their wages, hours and terms and conditions of employment. The Illinois AFL-CIO is an umbrella organization that represents nearly 900,000 working men and women and their unions in the State.

2.    Defendant, Governor Bruce Rauner, believes State employees are overpaid and receive excessive benefits for their public service.  He wants to cut their wages and benefits.  He wants to weaken their labor organizations and force concessions in labor agreements set to expire on June 30, 2015.

-2-

3.      To that end, Defendant Rauner promulgated Executive Order 15-13. The purpose of this Order is to cut the resources the Plaintiff Unions have for collective bargaining. The Order is patently illegal. It directly conflicts with Section 6 and Section 15 of the Illinois Public Labor Relations Act. It is outside the Governor's executive authority under the Illinois Constitution. And, it violates each of the labor agreements that Plaintiffs have with the State.

4.      This lawsuit seeks a declaration that the order is invalid because it violates State law and is beyond the Governor's Constitutional authority. It also seeks preliminary injunctive relief to protect the Plaintiff Unions from harm during the pendency of these proceedings and while the Unions seek to enforce their labor agreements in final and binding arbitration.

## II.    NATURE OF THE CONTROVERSY

5.      Plaintiff American Federation of State County and Municipal Employees, Council 31 ("AFSCME" or "Council 31" ) is a union that represents employees of the State of Illinois with respect to their wages, hours, and terms and conditions of employment. AFSCME Council 31 is the exclusive bargaining representative of approximately 38,000 employees of the State who work in approximately 51 departments, boards, authorities, and/or commissions that are subject to the authority of the Governor.

6.      The employees represented by Council 31 work in prisons, mental health facilities, facilities for the developmentally disabled, veterans homes and in the offices that administer State programs such as public aid, unemployment insurance, public health and child welfare. These facilities and offices are located in every part of the State. Nearly every county in the State of Illinois has State employees represented by Council 31 who live or work there. Council 31 represents

hundreds of employees who work for the State in St. Clair County at more than a dozen different facilities and offices. While the vast majority of these employees are members of AFSCME, they include some who pay only fair share to the Union.

7.      As described below, the other Plaintiff Unions represent thousands of employees who work all over the State. Plaintiff Illinois Nurses Association ("INA") represents nurses who work in State prisons and in facilities for the mentally ill and developmentally disabled. Troopers Lodge 41 of the Fraternal Order of Police represents highly trained State Police Officers who lead crime-fighting in every region of the State and Teamsters Local 700 represents the Master Sergeants who guide those State Police Officers. And the Teamsters Illinois Downstate Employees Negotiating Committee, Teamsters Local 700, and Teamsters Local 330 represent thousands of members who work all over the State who are responsible for maintaining and clearing its roads. Each of these Unions, along with the others set forth below, maintains collective bargaining agreements that apply on a state-wide basis. There are more than 1,000 State employees who live or work in St. Clair County. They benefit from the representation of Plaintiff Unions.

8.      Plaintiff, Illinois AFL-CIO ("Illinois AFL-CIO" or "the State Federation") is a state-wide labor body which provides aid, cooperation and assistance to over 1,500 affiliated unions located throughout Illinois. It assists workers and their unions in their efforts to secure improved wages, hours and working conditions.

9.      The State Federation receives affiliation fees from its affiliated unions to fund assistance to unions in collective bargaining activities. If the membership or income of affiliated unions declines one result is reduced affiliation fees. The affiliates of the State Federation have

approximately12,500 members who live or work in St. Clair County and more than 3,100 retired members who live there.

10.     Defendant Rauner is the Governor of Illinois. Illinois is a large, diverse, wealthy and populous State which is an agricultural, industrial, financial and transportation center. As Governor, Rauner has the authority to direct the departments, boards, authorities, and/or commissions in the executive branch of government, subject to the limitations of the laws and Constitution of the State. This lawsuit is brought against Rauner in his official capacity.

11.     Defendant Tom Tyrrell is the Acting Director of the Illinois Department of Central Management Services ("CMS"). As Acting Director of CMS, Tyrrell represents the State of Illinois in the administration and negotiation of collective bargaining agreements with Council 31 and with other labor organizations. Defendant Tyrrell directs the administration of the Personnel Code of the State of Illinois, the Personnel Rules of the State of Illinois, and the Pay Plan of the State of Illinois. The Personnel Code, the Personnel Rules and the Pay Plan apply on a statewide basis. This lawsuit is brought against Tyrrell in his official capacity.

12.     Defendant State of Illinois, Department of Central Management Services ("CMS"), is a public employer as defined by the Illinois Public Labor Relations Act, 5 ILCS 315(o). CMS maintains offices in many regions of the State and has an office in St. Clair County. It is also ultimately responsible for labor relations at the facilities and offices of the State wherever they are located.

13.     Defendant Illinois State Police ("ISP") is a Department in the executive branch of government in the State of Illinois and a public employer as defined by the Illinois Public Labor Relations Act, 5 ILCS 315(o). The ISP operates and has offices in St. Clair County.

14. Defendant Leo Schmitz is the Director of the Illinois State Police. This lawsuit is brought against him in his official capacity.

15. Plaintiff AFSCME and Defendant CMS are parties to a Master collective bargaining agreement that is effective from July 1, 2012, to June 30, 2015. This Agreement covers eight different bargaining units of employees. In addition, AFSCME and CMS are parties to the CU-500 Agreement which covers Lieutenants and other employees of equivalent rank employed by the Illinois Department of Corrections. The full collective bargaining agreements between AFSCME and CMS are posted on the Internet website of CMS at http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_afscme1.pdf. Relevant excerpts of this Agreement are attached as Exhibit 1.

16. Article I of the Agreement provides that the Employer recognizes AFSCME as the exclusive bargaining representative for the employees covered by the agreement with respect to their wages, hours, and terms and conditions of employment.

17. Article V of the Agreement contains a grievance and arbitration procedure culminating in final and binding arbitration. AFSCME Agreement, pp. 10-22. The contract broadly defines a grievance as "any difference, complaint or dispute between the Employer and the Union or any employee regarding the application of this agreement or arising out of other circumstances or conditions of employment." AFCSME Agreement, p. 11.

18. In 1983, the Illinois General Assembly passed the Illinois Public Labor Relations Act ("IPLRA"). A Republican Governor, James Thompson, signed it into law. Section 6 of the Act requires labor organizations to represent all of the employees in a bargaining unit, whether or not they are members of the union that represents that bargaining unit. It provides in relevant part that:

"Labor organizations recognized by a public employer as the exclusive representative or so designated in accordance with the provisions of this Act are responsible for representing the interests of all public employees in the unit." 5 ILCS 315/6(d).

19.     Paragraph 3(g) of the IPLRA defines a "fair share agreement" as: "an agreement between the employer and an employee organization under which all or any of the employees in a collective bargaining unit are required to pay their proportionate share of the costs of the collective bargaining process, contract administration, and pursuing matters affecting wages, hours, and other conditions of employment, but not to exceed the amount of dues uniformly required of members." The calculation of the "proportionate share" cannot include contributions related to the election or support of candidates for political office. 5ILCS 315/3(g).

20.     Section 6(e) of the IPLRA authorizes agreements between a labor organization and a public employer which allow the union to collect agency fees from the earnings of nonmembers to defray the costs of representing them. The Section provides in relevant part:

> When a collective bargaining agreement is entered into with an exclusive representative, it may include in the agreement a provision requiring employees covered by the agreement who are not members of the organization to pay their proportionate share of the costs of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and conditions of employment, as defined in Section 3 (g), but not to exceed the amount of dues uniformly required of members.

5 ILCS 315/6(e).

21.     In addition to authorizing agreements which require the payment of proportionate share fees, the IPLRA requires the employer to remit those fees to the exclusive bargaining representative. It provides that "the proportionate share payment in this Section shall be deducted

-7-

by the employer from the earnings of the nonmember employees and paid to the employee organization." 5 ILCS 315/6(e).

22.     Pursuant to these statutory provisions, the Agreement between AFSCME and CMS contains a provision requiring the State to deduct proportionate-share fees from the earnings of nonmembers represented by AFSCME.  This provision provides:

> Pursuant to Section 3 (g) of the Illinois Public Labor Relations Act, effective July 1, 1984, the parties agree that the Union certified proportionate share, which shall not exceed the amount of dues uniformly required of members, shall be deducted from the earnings of the non-member employees as their share of the cost of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and conditions of employment subject to the terms and conditions of the parties fair share agreement. The amount so deducted shall be remitted semi-monthly to the Union.

AFSCME Agreement, p. 10.

23.     On the morning of February, 9, 2015, Council 31 and CMS officially began negotiations for a new collective bargaining agreement.   Council 31 was the first union to commence such negotiations for the agreements that expire on June 30, 2015. The agreements made by Council 31 and CMS often set the "pattern" for the economic benefits of the agreements negotiated by other unions that represent executive branch employees.

24.     During the bargaining session with AFSCME in the afternoon of February 9, 2015, Defendant Rauner issued Executive Order 15-13. The Executive Order directs CMS and other state agencies subject to the Governor to immediately cease enforcement of fair share contract provisions and directs that fair share deductions be placed into an escrow account.

25.     Each of the Plaintiff Unions represents members who work for executive branch agencies subject to the Governor.

26.     Each of the Plaintiff Unions has agreements with the State that require the deduction and remittance of fair-share payments in accordance with Sections 3(g) and 6(e) of the Illinois Public Labor Relations Act.

27.     Defendant Rauner requested the Illinois Comptroller to create the escrow account required by the Executive Order. The Comptroller refused to do so. Defendant Rauner then announced that the agencies in the Executive Branch would take action without the Comptroller to implement the Executive Order.

28.     Defendants are proceeding with plans to develop procedures that will enable them to withhold fair share fees from Plaintiff Unions.

29.     The effective representation of thousands of employees on a statewide basis is costly.

(A)     Plaintiff Unions handle thousands of grievances annually. To properly handle these grievances, the Plaintiffs must employ staff representatives who travel throughout the state to gather information, meet with union members and meet with members of management from the various state departments and CMS. It is often the case that early intervention by Union staff prevents a more serious labor dispute from emerging. With disputes that cannot be resolved at the earliest stages of the grievance procedure, Plaintiff Unions must regularly invoke the right to have grievances resolved by impartial arbitrators.

(B)     In addition to the costs of representing employees when the State violates the collective bargaining agreements with Plaintiff Unions, the effective negotiation of collective bargaining agreements is costly as well. To properly represent their members, the Plaintiff Unions

must establish bargaining committees that are representative of the various work locations and types of jobs held by members of a particular bargaining unit. Bargaining can be a lengthy and costly process and Plaintiff Unions need resources to defray the costs of maintaining representative and well-informed negotiating committees. In addition, the Plaintiff Unions must often employ experts to assist in the negotiation of benefits such as health care. Such experts are often instrumental to the goal of maintaining the quality of the health care received by State employees while containing the costs of that care. The negotiation of health care issues is particularly complicated in a large, diverse State such as Illinois.

(C)     The bargaining process is an uncertain one, and adequate resources are necessary to prepare for all of the results that may occur - working without a contract, submission of unresolved issues to arbitration or the use of economic force.

(D)     The proper representation of thousands of employees through the bargaining process requires a strong communications structure, which must function on a statewide basis. This structure is essential to inform employees and union members of the issues that arise during negotiations, the positions of the parties and the measures that might be taken in response.

30.     The Executive Order purposefully attempts to weaken Plaintiff Unions.

(A)     The express purpose of the Executive Order is to deprive the Plaintiff Unions of resources that they need for effective collective bargaining. The Executive Order states that it is intended to prevent public sector unions in Illinois from using fair share fees to influence wages, pensions and benefits, which are mandatory subjects of bargaining under the IPLRA. If this tactic is successful, and the Plaintiff Unions make concessions on wages, benefits or other working

-10-

conditions in bargaining, the effects of these concessions will not be remedied by a final favorable decision in this case.

(B)     The Executive Order will also deprive the Plaintiff Unions of resources needed to contest violations of the existing collective bargaining agreements between the Unions and CMS and other State agencies in the grievance and arbitration procedure. Once grievances or arbitrations are concluded, they cannot be re-opened later if Plaintiff Unions receive the fair share fees required by their agreements.

(C)     The Executive Order creates financial incentives that the State will use to entice some union members to resign to potentially save paying fair share fees. The promulgation of the Order will also cause some new employees, unfamiliar with the benefits of Union membership, to refrain from joining the union in the first place. It is impossible to predict the exact number of people who will make such decisions to calculate the financial harm to the Unions caused by this effect of the Executive Order. It is also difficult to quantify the negative effect of such losses in membership on the Unions' strength in negotiations.

(D)     The Executive Order also sends a public message that Defendant Rauner will act illegally and unilaterally to undermine the Plaintiff Unions. Defendant Rauner's conduct will reduce the confidence that the members of the Plaintiff Unions have in the ability of their Unions to withstand such an assault and undermine the solidarity of the membership. This effect cannot be quantified and remedied by damages or restitution from a final favorable decision for the Unions.

31.     These ill effects will occur wherever Plaintiff Unions represent employees. They will occur in St. Clair County.

-11-

32.     In response to the refusal of the Comptroller to create escrow accounts for the fair-share deductions required by the collective bargaining agreements of the Plaintiff Unions, Defendant Rauner has indicated that Defendants will create "reserve funds" at individual agencies of the executive branch to hold fair-share deductions.

(A)     The individual agencies have no statutory authority to create and maintain such "reserve funds" with respect to payrolls. Under the law of the State, the Comptroller is the payroll officer of the State and must supervise all payroll warrants. 15 ILCS 405/12. Other executive branch agencies have no power to assume this function.

(B)     This means that any "reserve funds" will be an accounting fiction composed of General Revenue Funds which have been appropriated for other budgetary purposes by the General Assembly. See 30 ILCS 105/13.

(C)     Given the financial condition of the State, it is likely that the funds which are "reserved" will have to be spent for the purposes for which they have been appropriated by the end of the 2015 Fiscal Year on June 30th. Thus, the money in the "reserves" may not be available if the Plaintiff Unions receive a favorable final decision on the merits in this case. If that happens, Plaintiff Unions will lose the money owed to them and will have no legal remedy to recover it.

(D)     Under the State Finance Act, State budgetary appropriations "lapse" at the end of the fiscal year. This means expenditures from General Revenue Fund appropriations for 2015 must occur by August 31, 2015 or else they will not longer be possible. 30 ILCS 105/25. This is another reason why the funds in the " reserve funds" may not be available if the Plaintiffs receive a favorable final decision in this case.

-12-

33.    Defendant Rauner will implement the illegal plan and will continue to withhold proportionate share fees unless enjoined by the Court.


III.    **PLAINTIFF UNIONS AND THEIR COLLECTIVE BARGAINING AGREEMENTS**

34.    Plaintiff General Teamsters/Professional & Technical Employees Local Union No. 916 ("Teamsters Local 916") is a labor union which represents a bargaining unit of employees in professional and technical classifications who work for the Illinois Departments of Transportation and Natural Resources. Local 916 has an agreement with these Departments and with CMS, which has a term from July 1, 2012, to June 30, 2015. This Agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/ emp_pt916.PDF.

35.    The Teamsters Local 916 Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Pursuant to Section 3(g) of the Illinois Labor Relations Act, effective July 1, 1984, the parties agree that effective July 1, 1988, if Teamsters Local # 916 Professional and Technical bargaining unit has a majority of union members, fair share payments shall be deducted from the earnings of non-members.

Teamsters Local 916 Agreement, p. 7.

36.    Plaintiff Teamsters Local 700 represents a bargaining unit of employees who work for the Departments of CMS, Transportation, Human Services, and Employment Security. Local 700 has a collective bargaining agreement with these Departments which has a term from July 1,

2012, to June 30, 2015. The employees primarily work in classifications that require them to operate large trucks, snow plows, and other heavy transportation equipment. The unit contains employees who are employed in Cook County, Illinois. Thes Agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/ emp_teamstersck.PDF.

37. The Teamsters Local 700 Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Pursuant to Section 3(g) of the Illinois Public Labor Relations Act, effective July 1, 1984, the parties agree that effective July 1, 1984, if any or all of the three units has a majority of union members, as verified by the Comptroller's Office through the calculation of employees making dues deductions, non-union members in those units shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and of pursuing matters affecting wages, hours and terms and conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's pay check. Such fair share provisions shall remain in effect for the duration of the labor agreement or until it can be demonstrated that fewer than a majority of employees are union members.

Teamsters Local 700 Agreement, p. 5.

38. Teamsters Local 700 is also the exclusive bargaining representative for the Master Sergeants who work for Defendant Illinois State Police. These Master Sergeants work in every part of Illinois, including St. Clair County. Teamsters Local 700 has a collective bargaining agreement

with the Illinois State Police which has a term from July 1, 2012 to June 20, 2015. Excerpts from this Agreement are attached as Exhibit 2.

39.     The Teamsters Local 700 Master Sergeant Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment.  It provides:

> Any present Master Sergeant who does not join the Union within 30 days of the signing of this contract shall, as a condition of employment, be required to pay a fair share (not to exceed the amount of unions dues) of the cost of the collective bargaining process and contract administration.  All Master Sergeants promoted on or after the effective date of this Agreement and who have not made application for membership shall be required, thirty (30) days after the later of the execution of this Agreement or their promotion date, to pay a fair share of the costs of the collective bargaining process and contract administration and pursing matters affecting wages, hours and terms and conditions of employment.

Teamsters Local 700 Master Sergeant Agreement, p. 17

40.     Plaintiff Teamsters Local 330, represents a bargaining unit of employees who work for the Departments of Transportation, CMS, Corrections, Human Services, State Police and Veterans Affairs.  Local 330 has a collective bargaining agreement with these Departments which has a term from July 1, 2012, to June 30, 2015. The employees primarily work in classifications that require them to operate large trucks, snow plows, and other heavy transportation equipment.  The unit covers employees outside of Cook County, Illinois, in the counties of DuPage, Kane, Kankakee, Kendall, Lake, McHenry, and Will.    This Agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_teamstersfv.PDF.

41.     The Teamsters Local 330 Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Pursuant to Section 3(g) of the Illinois Public Labor Relations Act, effective July 1, 1984, the parties agree that effective July 1, 1984, if any or all of the three units has a majority of union members, as verified by the Comptroller's Office through the calculation of employees making dues deductions, non-union members in those units shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and of pursuing matters affecting wages, hours and terms and conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's pay check. Such fair share provisions shall remain in effect for the duration of the labor agreement or until it can be demonstrated that fewer than a majority of employees are union members.

Teamsters Local 330 Agreement, p. 4.

42.     Plaintiff Teamsters Illinois Downstate Employees Negotiating Committee ("Downstate Teamsters") represents a bargaining unit of employees who work in the Department of Transportation, CMS, and the Departments of Corrections, Human Services, State Police, Veterans Affairs, and Natural Resources. Downstate Teamsters has a collective bargaining agreement with these Departments which has a term from July, 2012 to June 30, 2015. The employees primarily work in classifications that require them to operate large trucks, snow plows, and other heavy transportation equipment. The unit covers employees outside of the metropolitan Chicago area and the "collar counties," namely employees that work outside of Cook, DuPage, Kane, Kankakee, Kendall, Lake, McHenry, and Will counties. The employees in this unit work in every other county

-16-

in Illinois, including St. Clair County. This agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/ emp_teamstersds.PDF.

43.     Teamsters Local 916, the Downstate Teamsters, Teamsters Local 700, and Teamsters Local 330 have executed the following agreement with CMS regarding the collection of proportionate-share fees from bargaining unit members who choose not to be members of the Unions:

> Pursuant to Section 3(g) of the Illinois Public Labor Relations Act, effective July 1, 1984, the parties agree that if the Teamsters Downstate Illinois State Negotiating Committee, Teamsters Local 700, Teamsters Local 330 and its affiliate General Teamsters/ Professional Technical Local 916 has or attains majority Union membership of those employees covered by these agreements or receives a majority decision by referendum as set forth below, subsequent to July 1, 1984, the following shall be applicable: Employees covered by these agreements who are not members of the union or do not make application for membership within fifteen (15) days of employment, shall be required to pay, in leiu of dues, their proportionate share of the cost of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and conditions of employment, but not to exceed the amount of dues uniformly required of members. The proportionate share payment as certified by the Union pursuant to Section 6(e) of the Illinois Public Labor Relations Act shall be deducted by the Comptroller from the earnings of the non-member employees and shall be remitted semi-monthly to the Union.

Downstate Teamsters Agreement, p. 42; Teamsters Local 330 Agreement, pp. 44-45; Teamsters Local 700 Agreement, pp. 43-44.

44.     Plaintiff Teamsters Local Union No. 705, Affiliated with the International Brotherhood of Teamsters, ("Local 705 IBT") represents approximately 35 employees that work under the Agreement between IBT Local 330 and the State. These employees have recourse to the

grievance procedures of the IBT Local 330 Agreement and are covered by the fair-share provisions of that Agreement as well.

45.     Plaintiff Illinois Troopers Lodge No. 41, Fraternal Order of Police ("Troopers Lodge 41") has a collective bargaining agreement with the Illinois State Police which covers Police Troopers, Special Agents, and Sergeants.  The term of the Agreement runs from July, 1, 2012, to June 30, 2015.  Excerpts from this Agreement are attached as Exhibit 3 hereto.

46.     The Agreement between the State and Troopers Lodge 41 contains a provision that requires the State to deduct and to remit fair-share payments from bargaining unit members who are not members of the Union, to defray the cost to the Union of representing those individuals in matters relating to collective bargaining.  That provision provides:

> Pursuant to Section 3(g) of the Illinois Public Labor relations Act, effective July 1, 1984, the parties agree that the Lodge certified proportionate share, which shall not exceed the amount of dues uniformly required of members, shall be deducted from the earnings of the non-member employees as their share of the cost of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and conditions of employment subject to the terms of any such fair share agreement. The amount so deducted shall be remitted semi-monthly to the Union.

In addition, the Agreement provides:

> Officers covered by this Agreement who are not members of the Lodge or do not make application for membership, shall be required to pay, in lieu of dues, their proportionate share of the cost of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and conditions of employment, but not to exceed the amount of dues uniformly required of members.  The proportionate share payment as certified by the Lodge pursuant to Section 6(e) of the Illinois Public Labor Relations Act shall be deducted by the Comptroller form the earnings of non-member officers and shall be remitted semi-monthly to the Lodge. Majority status shall be verified by the Comptroller's Office or by

> mutually agreeable means through the calculation of employees
> making dues deductions as of January 1, 1988, or any time thereafter.
> If such certification by the Comptroller's Office or other mutually
> agreeable means shows a majority status of bargaining unit
> employees being Lodge members, the proportionate share provision
> shall be implemented during the pay period following such
> certification.

Trooper Lodge 41 Agreement, pp. 17-18; Exhibit 10.

47.    Plaintiff Illinois Nurses Association ("INA") represents nurses and attorneys

employed at State facilities. The INA has collective bargaining agreements for two bargaining units.

One unit is called RC-23 and covers nurses in the classifications of Child Welfare Nurse Specialist,

Corrections Nurse I and II, Health Facilities Surveillance Nurse, Registered Nurse I and II, Nursing

Act Assistant Coordinator, Correctional Nurse Trainee and Registered Nurse Advanced Practice.

The Agreement for the RC-23 unit covers the period from July 1, 2012, to June 30, 2015. This

agreement is posted on the public Internet website of CMS at the address of: http://

www2.illinois.gov/cms/Employees/Personnel/Documents/emp_rc23.pdf.

48.    The INA RC-23 Agreement contains an agreement by the parties to deduct a

proportionate share from the earnings of employees in the bargaining unit who are not union

members to defray the costs of representing those employees with respect to their terms and

conditions of employment. It provides:

> Pursuant to Section 3(g) of the Illinois Public Labor Relations Act
> (P.A. 83-1012), effective July 1, 1984, the parties agree that effective
> July 1, 1984, if the RC-23 unit has a majority of Association
> members, as verified by the Comptroller's Office through the
> calculation of employees making dues deductions, non-Association
> members in the respective unit shall be required to pay their
> proportionate share of the costs of the collective bargaining process,
> contract administration and other costs legally chargeable as
> determined and defined by the ILRB and/or courts of appropriate

> jurisdiction, affecting wages, hours and terms and other conditions of
> employment, but not to exceed the amount of dues uniformly required
> of members. Such proportionate share, once certified by the
> exclusive bargaining agent, shall be deducted from the employee's
> paycheck. Such fair share provisions shall remain in effect for the
> duration of the labor agreement or until it can be demonstrated that
> fewer than a majority of employees are Association members.

INA RC-23 Agreement, p.2.

49. The INA also represents a group of attorneys classified as Public Service
Administrators in a bargaining unit known as RC-36. The collective bargaining agreement for this
unit has a term from July 1, 2012, to June 30, 2015. This agreement is posted on the public Internet
website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/
emp_rc36.pdf.

50. The INA RC-36 Agreement contains an agreement by the parties to deduct a
proportionate share from the earnings of employees in the bargaining unit who are not union
members to defray the costs of representing those employees with respect to their terms and
conditions of employment. It provides:

> Pursuant to Section 3(g) of the Illinois Public Labor Relations Act
> (P.A. 83-1012), employees in the respective unit shall be required to
> pay their proportionate share of the costs to the collective bargaining
> process, contract administration and other costs legally chargeable as
> determined and defined by the Illinois Labor Relations Board and/or
> courts of appropriate jurisdiction, affecting wages, hours and terms
> and other conditions of employment, but not to exceed the amount of
> dues uniformly required of members. Such proportionate share, once
> certified by the exclusive bargaining agent, shall be deducted from the
> employee's paycheck. Such fair share provisions shall remain in
> effect for the duration of the labor agreement.

INA RC-36 Agreement, p.11.

-20-

51.     Plaintiff Local 4408 of the Illinois Federation of Public Employees ("Local 4408") is a labor union and an affiliate of the Illinois Federation of Teachers.  Local 4408 has three collective bargaining agreements with the State of Illinois.  One is called RC-29 and is a statewide bargaining unit of paraprofessional protective and regulatory employees.  Since 2014, the RC-29 unit has also contained employees classified as Meat and Poultry Inspectors and Meat and Poultry Inspector Trainees. The RC-45 unit  covers employees classified as Automotive Attendant I and II, Auto and Body Repairer, Automotive Mechanic, Automotive Parts Warehouser, Automotive Parts Warehouser Specialist, Small Engine Mechanic and Storekeeper I and II. The RC-56 unit contains employees who work in the Departments of Agriculture, Human Services, Natural Resources and in the Historic Preservation Agency who are classified as Agricultural Executive, Agricultural Land and Water Resource Supervisor, Natural Resources Education Program Coordinator, Natural Resources Grant Coordinator, Natural Resources Manager I, II and III, Natural Resources Site Manager I and II, Plant and Pesticide Specialist Supervisor, Security Officer Chief, Security Officer Lieutenant, Site Superintendent I, II and III, Veterinary Consumer Safety Officer, Veterinary Pathologist, Veterinary Supervisory I and II and Warehouse Examiner Supervisor.   These Agreements comprehensively cover the wages, hours and other conditions of employment for the employees in these bargaining units.  Each Agreement is effective for the term July 1, 2012, to June 30, 2015. Each Agreement can be accessed from the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

52.     The Local 4408 RC-29 Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union

-21-

members to defray the costs of representing those employees with respect to their terms and conditions of employment. The provision states:

> Pursuant to section 3(g) of the Illinois Public Labor Relations Act effective July 1, 1984, the parties agree that effective July 1, 1984, if the IFPE RC-29 unit has a majority of union members, as verified by the Comptroller's Office through the calculation of employees making dues deductions or other mutually agreed upon method of verification, non-union members in the unit shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and/or pursuing matters affecting wages, hours and other conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's paycheck.

Local 4408 RC-29 Agreement, pp. 5-6. This agreement also requires the State to promptly remit the deductions made pursuant to the Agreement. Local 4408 RC-29 Agreement, p. 6.

53. The Local 4408 RC-45 Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. The provision states:

> Pursuant to section 3(g) of the Illinois Public Labor Relations Act effective July 1, 1984, the parties agree that effective July 1, 1984, if the IFPE RC-45 unit has a majority of union members, as verified by the Comptroller's Office through the calculation of employees making dues deductions or other mutually agreed upon method of verification, non-union members in the unit shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and/or pursuing matters affecting wages, hours and other conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's paycheck.

Local 4408 RC-45 Agreement, pp. 9-10.

-22-

54.     The Local 4408 RC-56 Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. The provision states:

> Pursuant to section 3(g) of the Illinois Public Labor Relations Act, if this IFPE unit has a majority of union members, as verified by the Comptroller's Office through the calculation of employees making dues deductions or other mutually agreed upon method of verification, non-union members in the unit shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and/or pursuing matters affecting wages, hours and other conditions of employment, but not to exceed the amount of dues uniformly required of members.    Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's paycheck.

Local 4408 RC-56 Agreement, p. 7. This agreement also requires the Employer to promptly remit the deductions made pursuant to the Agreement. Local 4408 RC-56 Agreement, p. 8.

55.     Plaintiff Illinois Federation of Teachers Local 919 ("IFT Local 919") is a labor union and an affiliate of the Illinois Federation of Teachers. Local 919 represents employees classified as Educators who teach at the Illinois School for the Deaf in Jacksonville, Illinois, and it maintains a collective bargaining agreement with CMS that covers those employees. The Agreement has a term from August 12, 2012, to June 30, 2015. The Agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_ift.pdf.

56.     The Agreement between IFT Local 919 and CMS contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Pursuant to Section 3(g) of the Illinois Public Labor Relations Act, effective July 1, 1984, the parties agree that effective July 22, 1984, if the IFT Local 919 has a majority of union members, as verified by the Comptroller's Office through the calculation of Educators making dues deductions, non-union members in the unit shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and of pursuing matters affecting wages, hours and terms and conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the Educator's pay check. Such fair share provision shall remain in effect for the duration of the labor agreement or until it can be demonstrated to the Employer that fewer than a majority of Educators are union members.

IFT Local 919 Agreement, p. 1.

57.     Plaintiff Laborers International Union of North America – Illinois State Employees Association, Local 2002 of the Southern and Central Laborers District Council of the Laborers International Union of North America ("Laborers Local 2002") is a labor union and an affiliate of the Southern and Central Illinois Laborers District Council.    It is the exclusive bargaining representative of several hundred employees of the State of Illinois in two state-wide bargaining units.   One unit is called VR-704 and is a statewide unit containing employees in five State agencies subject to the Governor who are classified as Shift Supervisors, Chief of Security, Public Service Administrator, Senior Public Service Administrator, Forensic Science Administrator, Nuclear Safety Staff Attorney, Food Program Service Administrator/Superintendents, Clinical Services Supervisors and Police Lieutenant.   The VR-704 contract is effective from July 1, 2012, to June 30, 2015. A second collective bargaining unit is called VR-706 and covers Meat and Poultry Inspector Supervisors, Automotive Shop Supervisors, and Assistant Automotive Shop Supervisors. The VR-706 contract is also effective from July 1, 2012, to June 30, 2015.   Both collective bargaining

agreements can be accessed from the public Internet website of CMS at the address of: http://
www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

58. The VR-704 Agreement contains an agreement by the parties to deduct proportionate-
share fees from the wages of employees who are not members of Laborers Local 2002 to defray the
costs of representing those employees with respect to their terms and conditions of employment.
It provides:

> Employees who are covered by this agreement who are not members
> of the Union and paying dues by voluntary payroll deduction pursuant
> to the provisions contained herein, shall be required to pay a
> proportionate "fair share" of the costs of the collective bargaining
> process, contract administration and the pursuance of matters
> affecting wages, hours and terms and conditions of employment,
> which have been incurred by the Union in representing such
> employee without regard to non-membership. Such "fair share"
> amount shall be certified by the Union to the Employer prior to it
> being deducted from the earnings of such non-member employee and
> shall be remitted to the Union on a semi-monthly basis. The "fair
> share" amount, as certified by the Union, shall not exceed regular
> membership dues uniformly required of Union members within the
> bargaining unit.

Local 2002 VR-704 Agreement, p. 6.

59. The VR-706 Agreement contains an agreement by the parties to deduct proportionate-
share fees from the wages of employees who are not members of Local 2002 to defray the costs of
representing those employees with respect to their terms and conditions of employment. It provides:

> Employees who are covered by this agreement who are not members
> of the Union and paying dues by voluntary payroll deduction pursuant
> to the provisions contained herein, shall be required to pay a
> proportionate "fair share" of the costs of the collective bargaining
> process, contract administration and the pursuance of matters
> affecting wages, hours and terms and conditions of employment,
> which have been incurred by the Union in representing such
> employee without regard to non-membership. Such "fair share"
> amount shall be certified by the Union to the Employer prior to it

-25-

> being deducted from the earnings of such non-member employee and shall be remitted to the Union on a semi-monthly basis. The "fair share" amount, as certified by the Union, shall not exceed regular membership dues uniformly required of Union members within the bargaining unit.

Laborers Local 2002 VR-706 Agreement, pp. 5-6.

60.     Plaintiff Service Employees International Union, Local 73 ("SEIU Local 73") represents a bargaining unit of Public Service Administrators who work at the Illinois Department of Natural Resources. It has a collective bargaining agreement with the CMS with a term from July 1,2012, to June 30, 2015. This agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_rc184.pdf.

61.     The SEIU Local 73 Agreement for the Public Service Administrators contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Pursuant to the Illinois Public Labor Relations Act, bargaining unit employees who are not union members shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and other conditions of employment, but shall not exceed the amount of dues required of members ("Fair Share Fee"). The Union shall certify to the appropriate employer representative the amount of the Fair Share fee. The Fair Share fee payment shall be deducted in accordance with the law and procedures of the Comptroller from the earnings of the non-member employees and paid to the Union in the manner set forth above.

SEIU Local 73 Agreement, p. 8.

62.     SEIU Local 73 also  represents a bargaining unit of employees who work for the Department of Military Affairs, which consists of employees classified as Military Security Police

-26-

I and II and Military Crash Fire Rescue I and II. This collective bargaining agreement has a term from July 1, 2012, to June 30, 2015. Relevant excerpts of this agreement as attached as Exhibit 4.

63.    The Agreement between SEIU Local 73 and the Department of Military Affairs contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. The provision states:

> Pursuant to section 3(g) of the Illinois Public Labor Relations Act effective July 1, 1984, the parties agree that effective with this Agreement if the unit has a majority of union members, as verified by the Comptroller's Office through the calculation of employees making dues deductions or other mutually agreed upon method of verification, non-union members in the unit shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and/or pursuing matters affecting wages, hours and other conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's paycheck.

SEIU Local 73 Military Affairs Agreement, p. 2-3

64.    Plaintiff Metropolitan Alliance of Police, Chapter # 294 ("MAP"), represents a bargaining unit of employees classified as Internal Security Investigator I and II who work in the Illinois Department of Corrections. These employees are covered by a collective bargaining agreement between MAP and CMS that covers the period from July 1, 2012, to June 30, 2015. This agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_rc90.

65.    The MAP Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray

the costs of representing those employees with respect to their terms and conditions of employment.

It provides:

> Employees covered by this Agreement who are not members of the Union and paying dues by voluntary payroll deduction pursuant to the provisions herein, shall be required to pay a proportionate "fair share" of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and conditions of employment, which have been incurred by the Union in representing such Employee without regard to such non-membership. Such "fair share" amount shall be certified by the Union to the Employer prior to it being deducted from the earnings of such non-member Employee and shall be remitted to the Union on a semi-monthly basis. The "fair share" amount, as certified by the Union shall not exceed regular membership dues uniformly required of Union members within the bargaining unit.

MAP Agreement, p. 2.

66.     Plaintiff Illinois Fraternal Order of Police Labor Council ("FOP Labor Council") represents a bargaining unit of employees classified as Conservation Police–Sergeants and Conservation Police–Lieutenants who work in the Illinois Department of Natural Resources. The FOP Labor Council has an agreement with the Department of Natural Resources and CMS that covers the period from July 1, 2012, through June 30, 2015. This agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/ Documents/emp_rc104.PDF.

67.     The FOP Labor Council Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Employees covered by this Agreement who are not members of the Union and paying dues by voluntary payroll deduction pursuant to the

> provisions herein, shall be required to pay a proportionate "fair share" of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and conditions of employment, which have been incurred by the Union in representing such Employee without regard to such non-membership. Such "fair share" amount shall be certified by the Union to the Employer prior to it being deducted from the earnings of such non-member Employee and shall be remitted to the Union on a semi-monthly basis. The "fair share" amount, as certified by the Union shall not exceed regular membership dues uniformly required of Union members within the bargaining unit.

FOP Labor Council Agreement, pp. 4.

68.     Plaintiff Conservation Police Lodge of the Police Benevolent and Protective Association ("Conservation Police Lodge") represents a bargaining unit of employees classified as Conservation Police Officer Trainee and Conservation Police Officer I and II who work at the Illinois Department of Natural Resources. It has a collective bargaining agreement with the Department of Natural Resources and CMS. The term of this Agreement is from July 1, 2012, to June 30, 2015. The 2008-2012 Agreement between these parties is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_cpl.PDF. The terms of the contract cited in the next two paragraphs are identical in the 2008-2012 Agreement and the 2012-2015 Agreement.

69.     The Conservation Police Lodge Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Pursuant to Section 3(g) of the Illinois Public Labor Relations Act, effective July 1, 1984, the parties agree that effective July 1, 2000, if the unit has a majority of union members, as verified by the Comptroller's Office through the calculation of employees making

> dues deductions, or other mutually agreed upon method of
> verification, non-union members in the unit shall be required to pay
> their proportionate share of the costs of the collective bargaining
> process, contract administration and/or pursuing matters affecting
> wages, hours and terms and conditions of employment, but not to
> exceed the amount of dues uniformly required of members. Such
> proportionate share, once certified by the exclusive bargaining agent,
> shall be deducted from the employee's pay check. Such fair share
> provisions shall remain in effect for the duration of the labor
> agreement or until it can be demonstrated that fewer than a majority
> of employees are union members.

2008-2012 Conservation Police Lodge Agreement, p. 4.

70. Plaintiff International Union of Bakery, Confectionery and Tobacco Workers ("Bakery Workers") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State who are classified as Bakers. The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

71. The collective bargaining agreement between the Bakery Workers and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union
> members, as verified by a mutually agreeable method, non-union
> members, in the unit shall be required to pay their proportionate share
> of the costs or the collective bargaining process, contract
> administration and the pursuance of matters affecting wages, hours
> and working conditions, but not to exceed the amount of dues
> uniformly required of members.

-30-

Bakery Workers Agreement, p.15. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." Bakery Workers Agreement, p. 15.

72.     Plaintiff International Union of Bricklayers and Allied Craftworkers, Local 8, Illinois ("BAC") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications of Brick Mason, Brick Mason (Foreman), Cement Finisher, Cement Finisher (Foreman), and Plasterer. BAC is improperly named in the collective bargaining agreement as "Illinois State Bricklayers & Allied Craftworkers," rather than Local 8. There is no entity named "Illinois State Bricklayers" and Local 8 has historically been party to the Agreement with CMS. The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations. aspx. This Agreement was executed by the principal officer of Local 8, David Toenjes. As reflected in the Agreement, the office of Local 8 is in Belleville, Illinois.

73.     The collective bargaining agreement between the BAC and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

BAC Agreement, p. 15. The agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." BAC Agreement, p. 16.

74.    Plaintiff United Brotherhood of Carpenters and Joiners of America ("Carpenters") maintains a collective bargaining agreement on behalf of the Chicago Regional Council of Carpenters, the Mid-Central Illinois Regional Council of Carpenters, and the St. Louis Missouri District Council of Carpenters with Defendant CMS.   The Agreement is for prevailing-rate employees of the State in the classifications of Carpenter, Carpenter (Foreman), and Carpenter (General Foreman).   The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations. aspx.

75.    The collective bargaining agreement between the Carpenters and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

Carpenters Agreement, p. 14. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." Carpenters Agreement, p. 14.

76.     Plaintiff International Brotherhood of Electrical Workers ("IBEW") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications of Electrician, Electrician (Foreman), and Electrician (General Foreman). The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

77.     The collective bargaining agreement between the IBEW and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

IBEW Agreement, pp.14-15. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." IBEW Agreement, p. 15.

78.     Plaintiff Service Employees International Union, Local 1, Fireman and Oilers Division ("SEIU Local 1"), maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications of Stationary Fireman and Maintenance Worker (Power Plant). The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of CMS at the

-33-

address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

79. The collective bargaining agreement between SEIU Local 1 and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

SEIU Local 1 Agreement, p.14. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." SEIU Local 1Agreement, p. 14.

80. Plaintiff International Union of Food and Commercial Workers ("UFCW") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications of Beautician, Barber, Beautician (Charge), Barber (Charge), Teacher of Beauty Culture, and Teacher of Barbering. The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/ PersonnelLaborRelations.aspx.

81. The collective bargaining agreement between the UFCW and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union

> members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

UFCW Agreement, p.14. The agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." UFCW Agreement, pp. 14-15.

82. Plaintiff Laborer's International Union of North America ("LIUNA") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications of Laborer, Laborer (Building), Laborer Foreman, and Trade Tender. The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of DCMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

83. The collective bargaining agreement between LIUNA and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

LIUNA Agreement, p. 14. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." LIUNA Agreement, p. 15.

84.     Plaintiff International Association of Machinists and Aerospace Workers District 8 ("IAM") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications of Machinist and Machinist (Foreman). The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/ Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

85.     The collective bargaining agreement between the IAM and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

IAM Agreement, p.14. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." IAM Agreement, p. 15.

86.     Plaintiff International Union of Operating Engineers ("IUOE") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications of Sewage Plant Operator, Water Plant Operator, Stationary Engineer, Stationary Engineer – Assistant Chief, and Stationary Engineer – Chief. The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public

Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/
Pages/PersonnelLaborRelations.aspx.

87.     The collective bargaining agreement between the IUOE and CMS provides for
nonmembers to pay their proportionate share to defray the costs of representing them regarding their
terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union
> members, as verified by a mutually agreeable method, non-union
> members, in the unit shall be required to pay their proportionate share
> of the costs or the collective bargaining process, contract
> administration and the pursuance of matters affecting wages, hours
> and working conditions, but not to exceed the amount of dues
> uniformly required of members.

IUOE Agreement, p. 15.   The Agreement also requires that the proportionate share "shall be
deducted from non-member paychecks and remitted to the Union at the same time the Union check-
off is submitted." IUOE Agreement, p. 16.

88.     Plaintiff International Union of Painters and Allied Trades ("IUPAT") maintains a
collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in
the classifications of Painter, Painter (Foreman), Painter (Spray), Sign Painter, Sign Painter Helper,
and Sign Painter (Foreman).   The term of the Agreement is from July 1, 2012 to June 30, 2015.
This collective bargaining agreement can be accessed from the public Internet website of CMS at
the   address   of:   http://www2.illinois.gov/cms/Employees/Personnel/Pages/
PersonnelLaborRelations.aspx.

89.     The collective bargaining agreement between IUPAT and CMS provides for
nonmembers to pay their proportionate share to defray the costs of representing them regarding their
terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

IUPAT Agreement, p. 14. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." IUPAT Agreement, p. 15.

90. Plaintiff United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of USA and Canada ("UA") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications Plumber, Plumber (Foreman), Steam Fitter, and Steam Fitter (Foreman). The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

91. The collective bargaining agreement between the UA and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

UA Agreement, p. 14. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." UA Agreement, p. 15.

## COUNT I

### ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF
### AGAINST PUBLIC OFFICIALS EXCEEDING THEIR AUTHORITY

This Count seeks a declaration by all Plaintiffs that Defendant Rauner exceeded his constitutional and statutory authority when he promulgated the Executive Order. It also seeks an injunction against all of the Defendants to restrain implementation of that Order and an order requiring Defendants to continue to honor their statutory and contractual duties to remit dues and fair share fees to the Plaintiffs on a timely basis.

Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 91 of the Complaint as Paragraphs 1 to 91 of Count I.

92.     The language of Section 6(e) of the Illinois Public Labor Relations Act, 5 ILCS 315/6(e) imposes a mandatory duty on public employers to remit the money collected from employees under an agreed-to fair-share agreement to the exclusive bargaining representative of those employees.

93.     Section 15 of the Illinois Public Labor Relations Act provides that the terms of the Act supersede any contrary Executive Orders. Specifically, it states:

    Sec. 15. Act takes precedence.

\*   \*   \*

-39-

> (a)    In case of any conflict between the provisions of this Act and any other law (other than Section 5 of the State Employees Group Insurance Act of 1971 and other than the changes made to the Illinois Pension Code by Public Act 96-889 and other than as provided in Section 7.5), executive order or administrative regulation relating to wages, hours and conditions of employment and employment relations, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control.

5 ILCS 315(a).

94.    Executive Order 15-13 purports to negate the statutory provisions of the Illinois Public Labor Relations Act, which explicitly authorize labor organizations and public employers such as the State to negotiate fair-share agreements and which require public employers to remit the money collected under such agreements to the appropriate labor organizations.

95.    The provisions of Section 15 explicitly prohibit the type of Executive Order issued by Defendant Rauner.

96.    The Constitution of the State of Illinois requires the separation of powers between the branches of the Government. Article IV, Section 1, of the Illinois Constitution vests the legislative power in the General Assembly. Article V, Section 8, of the Illinois Constitution vests the "supreme executive power" in the Governor and states that the Governor "shall be responsible for the faithful execution of the laws."

97.    The Illinois Constitution prohibits one branch of government from exercising the powers granted to another. Article II of the Illinois Constitution states that: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another."

98.    Defendant Rauner has usurped the constitutional power of the legislative branch by promulgating an Executive Order that effectively repeals a duly passed Public Act. The Executive

Order is squarely inconsistent with the provisions of both Section 6 and Section 15 of the Illinois Public Labor Relations Act.

99.  Defendant Rauner has unlawfully exercised the executive power vested in the Governor.  The executive power is the power to faithfully execute the laws enacted through the legislative process, not to refuse to implement the laws that have been properly enacted by the State.

100.  The purpose of the doctrine of separation of powers is to prevent one branch of government from exercising all of the power of the State.  Defendant Rauner's Executive Order violates that purpose because it places excessive power in the executive branch of State government.

101.  Defendant Rauner will seek to implement the unlawful Executive Order until restrained by a court.  Such continuing exercise of unlawful authority justifies preliminary and permanent injunctive relief.


WHEREFORE, Plaintiffs seek the following relief against Defendant Rauner and the other Defendants:

(a)  a declaration that Defendant Rauner's Executive Order 15-13 is invalid because it was not within his statutory and constitutional authority as Governor and because its issuance violates the constitutional separation of powers in Illinois;

(b)  the issuance of an injunction forbidding the implementation and enforcement of Executive Order 15-13;

(c)  the issuance of a mandatory injunction requiring Defendants to remit membership dues and non-member proportionate-share fees to the appropriate exclusive

-41-

bargaining representatives as required by collective bargaining agreements and State law;

(d)      an order requiring Defendants to reimburse Plaintiffs for the costs and reasonable attorney fees of pursuing this litigation; and

(e)      any other relief the Court deems equitable and just.


## COUNT II

## ACTION FOR INJUNCTION IN AID OF ARBITRATION

This Count is brought pursuant to the Illinois Uniform Arbitration Act and the Illinois Public Labor Relations Act. Defendants CMS and Illinois State Police have violated the collective bargaining agreements that are set out in the following Paragraphs. Prior to seeking judicial enforcement of those contracts, the Arbitration Act and the Labor Act require the exhaustion of contractual remedies, such as arbitration. This Count seeks an injunction in aid of arbitration to maintain the status quo pending the decision of an arbitrator on the issue of whether the Executive Order violates the labor agreements between the Plaintiffs and the State.

Plaintiffs re-allege and incorporate by reference the allegations of Paragraphs 1 to 101 as Paragraphs 1 to 101 of this Count.

102.    This Court has jurisdiction over this claim under the Illinois Uniform Arbitration Act, 710 ILCS 5/1 et seq, and under Sections 8 and 16 of the Illinois Public Labor Relations Act, 5ILCS 315/8, 16. Section 16 of the Labor Relations Act provides:

> After the exhaustion of any arbitration mandated by this Act, or any procedures mandated by a collective bargaining agreement, suits for violations of agreements including agreements entered into pursuant to Section 13(c) of the Urban Mass Transportation Act, between a

public employer and a labor organization representing public employees may be brought by the parties to such agreement in the circuit court in the county in which the public employer transacts business or has its principal office.

103.    The Executive Order violates the Agreement between CMS and AFSCME Council 31.

104.    On March 5, 2015, AFSCME filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. The grievance also requested that the State refrain from implementing the Executive Order until an arbitrator rendered a decision on the issue of whether the Executive Order violates the Agreement between Council 31 and CMS. This grievance is attached hereto as Exhibit 5.

105.    CMS has not yet acted on the grievance.

106.    Council 31 is likely to succeed on the merits of the grievance.

107.    CMS is proceeding to implement the Executive Order.

108.    The Agreement between Teamsters Local 916 and the CMS defines a grievance as a dispute, difference, or complaint involving the meaning, interpretation, or application of the express provisions of the Agreement. The contract requires the parties to process grievances through a multi-step grievance procedure which culminates in final and binding arbitration. Teamsters Local 916 Agreement, pp. 25-31.

109.    Executive Order 15-13 violates the Teamsters Local 916 Agreement.

110.    On March 5, 2015, Teamsters Local 916 filed grievances setting forth the violation of the Agreement and requesting expedited consideration of the grievances. These grievances are attached hereto as Exhibit 6.

111.    Defendants have not yet acted on the grievances.

112.     Teamsters Local 916 is likely to succeed on the merits of the grievances.

113.     The Agreement between the Teamsters Local 700 and the State broadly defines a grievance as any dispute with respect to the meaning, interpretation or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. Teamsters Local 700 Agreement, pp. 6-10.

114.     Executive Order 15-13 violates the Teamsters Local 700 Agreement.

115.     On March 5, 2015, Teamsters Local 700 filed grievances setting forth a violation of the Agreement and requesting expedited consideration of the grievances. These grievances are attached hereto as Group Exhibit 8.

116.     Defendants have not yet acted on the grievances.

117.     Teamsters Local 700 is likely to succeed on the merits of the grievances.

118.     The Agreement between the Teamsters Local 700 and the Illinois State Police defines a grievance as any dispute with respect to the meaning, interpretation or application of the Agreement. Unresolved grievances may be submitted to an arbitrator for a final and binding decision. Teamsters Local 700 Master Sergeants Agreement, pp. 28-31.

119.     Executive Order 15-13 violates the Teamsters Local 700 Agreement with the State Police.

120.     On March 5, 2015, Teamsters Local 700 filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 8.

121.     Defendants have not yet acted on the grievance.

-44-

122.    Teamsters Local 700 is likely to succeed on the merits of the grievance.

123.    The Agreement between the Teamsters Local 330 and the State broadly defines a grievance as any dispute with respect to the meaning, interpretation, or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. Teamsters Local 330 Agreement, pp. 5-10.

124.    Executive Order 15-13 violates the Teamsters Local 330 Agreement.

125.    On March 5, 2015, Teamsters Local 330 filed grievances setting forth a violation of the Agreement and requesting expedited consideration of the grievances. These grievances are attached hereto as Group Exhibit 9.

126.    Defendants have not yet acted on the grievances.

127.    Teamsters Local 330 is likely to succeed on the merits of the grievances.

128.    The Agreement between the Downstate Teamsters and the State broadly defines a grievance as any dispute with respect to the meaning, interpretation, or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. Downstate Teamsters Agreement, pp. 6-9.

129.    Executive Order 15-13 violates the Downstate Teamsters Agreement.

130.    On March 5, 2015, the Downstate Teamsters filed grievances with the State setting forth a violation of the Agreement and requesting expedited consideration of the grievances. These grievances are attached hereto as Group Exhibit 10.

131.    Defendants have not yet acted on the grievances.

132.    The Downstate Teamsters are likely to succeed on the merits of the grievances.

-45-

133.    On March 5, 2015, IBT Local 705 filed grievances with the State setting forth the violation of the Agreement and requesting expedited consideration of the grievances. These grievances are attached hereto as Exhibit 11.

134.    Defendants have not yet acted on the grievances.

135.    IBT Local 705 is likely to succeed on the merits of the grievances.

136.    The Troopers Lodge Agreement contains a multi-step grievance procedure for the resolution of disputes regarding the meaning, interpretation, or application of the provisions of the Agreement. Unresolved grievances may be submitted to an impartial arbitrator and the decision of the arbitrator is final and binding. Troopers Lodge 41 Agreement, p. 34; Exhibit 9.

137.    Executive Order 15-13 violates Article 6 of the Agreement between the State and Troopers Lodge 41.

138.    On March 5, 2015, Troopers Lodge 41 filed a grievances setting forth the violation of the Agreement and requesting expedited consideration of the grievances. These grievances are attached hereto as Exhibit 12.

139.    The State has not yet acted on the grievance.

140.    Troopers Lodge 41 is likely to succeed on the merits of the grievance.

141.    The RC-23 Agreement between the INA and CMS contains a grievance procedure for the resolution of written complaints by members of the unit that allege violations of the specific provisions of the Agreement or the Personnel Rules of CMS. The grievance procedure culminates in final and binding arbitration. INA RC-23 Agreement, pp. 6-11.

142.    The INA RC-36 Agreement with CMS contains a grievance procedure for the resolution of disputes concerning bargaining unit members. It broadly defines a grievance as any

-46-

dispute with respect to the meaning, interpretation, or application of the Agreement or arising out of other terms and conditions of employment. The procedure culminates in final and binding arbitration. INA RC-36 Agreement, pp. 13-16.

143.    Executive Order 15-13 violates the INA RC-23 Agreement and the INA RC-36 Agreement.

144.    On March 5, 2015, the INA filed grievances setting forth the violations of the RC-23 Agreement and the RC-36 Agreement and requesting expedited consideration of the grievances. These grievances are attached hereto as Group Exhibit 13.

145.    CMS has not yet acted on the grievances.

146.    The INA is likely to succeed on the merits of the grievances.

147.    The Local 4408 RC-29 Agreement broadly defines a grievance as any dispute with respect to the meaning, interpretation, or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. The decision of the arbitrator with respect to the Agreement is final and binding. Local 4408 RC-29 Agreement, p. 18-24.

148.    Executive Order 15-13 violates the RC-29 agreement between CMS and Local 4408.

149.    On March 5, 2015, Local 4408 filed a grievance setting forth the violation of the RC-29 Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 14.

150.    CMS has not yet acted on the grievance.

151.    Local 4408 is likely to succeed on the merits of the grievance.

-47-

152. The Local 4408 RC-45 Agreement broadly defines a grievance as any dispute with respect to the meaning, interpretation, or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. The decision of the arbitrator with respect to the Agreement is final and binding. Local 4408 RC-45 Agreement, pp. 5-8.

153. Executive Order 15-13 violates the RC-45 agreement between CMS and Local 4408.

154. On March 5, 2015, Local 4408 filed a grievance setting forth the violation of the RC-45 Agreement and requesting expedited consideration of the grievance. This grievance is attached as Exhibit 15.

155. CMS has not yet acted on the grievance.

156. Local 4408 is likely to succeed on the merits of the grievance.

157. The Local 4408 RC-56 Agreement broadly defines a grievance as any dispute with respect to the meaning, interpretation, or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. The decision of the arbitrator with respect to the Agreement is final and binding. Local 4408 RC-56 Agreement, pp. 14-20.

158. Executive Order 15-13 violates the RC-56 agreement between CMS and Local 4408.

159. On March 5, 2015, Local 4408 filed a grievance setting forth the violation of the RC-56 Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 16.

160. CMS has not yet acted on the grievance.

161. Local 4408 is likely to succeed on the merits of the grievance.

-48-

162.    The Laborers Local 2002 VR-704 Agreement broadly defines a grievance as any dispute with respect to the meaning, interpretation, or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. The decision of the arbitrator with respect to the Agreement is final and binding. Laborers Local 2002 VR-704 Agreement, pp. 14-18.

163.    The Laborers Local VR-706 Agreement broadly defines a grievance as any dispute with respect to the meaning, interpretation, or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. The decision of the arbitrator with respect to the Agreement is final and binding. Laborers Local 2002 VR-706 Agreement, pp. 12-16.

164.    Executive Order 15-13 violates the VR-704 and the VR-706 Agreements between CMS and Laborers Local 2002.

165.    On March 5, 2015, Laborers Local 2002 filed grievances setting forth the violation of the Agreements and requesting expedited consideration of the grievances. These grievances are attached hereto as Exhibit 17.

166.    CMS has not yet acted on the grievances.

167.    Local 2002 is likely to succeed on the merits of the grievances.

168.    The Agreement between SEIU Local 73 and CMS contains a multi-step grievance procedure. The Agreement broadly defines a grievance as any dispute between the Union and the Employer over the meaning, interpretation, or application of the Agreement or with respect to other circumstances or conditions of employment. If the parties cannot resolve a grievance they may

-49-

submit the issue to an impartial arbitrator. The decision of the arbitrator is final and binding on the parties. SEIU Local 73 Agreement, pp. 15-18.

169.   Executive Order 15-13 violates the agreement between CMS and SEIU Local 73.

170.   On March 5, 2015, SEIU Local 73 filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 18.

171.   CMS has not yet acted on the grievance.

172.   SEIU Local 73 is likely to succeed on the merits of the grievance.

173.   The Agreement between SEIU Local 73 and the Department of Military Affairs contains a multi-step grievance procedure. The Agreement defines a grievance as any difference, complaint or dispute between the Union and the Employer over the meaning, interpretation, or application of the Agreement. If the parties cannot resolve a grievance they may submit the issue to an impartial arbitrator. The decision of the arbitrator is final and binding on the parties. SEIU Local 73 Agreement, pp. 3-8.

174.   Executive Order 15-13 violates the agreement between the Department of Military Affairs and SEIU Local 73.

175.   On March 5, 2015, SEIU Local 73 filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 19.

176.   The State has not yet acted on the grievance.

177.   SEIU Local 73 is likely to succeed on the merits of the grievance.

-50-

178.     The Agreement between MAP and CMS contains a multi-step grievance procedure which culminates in arbitration.   It defines a grievance as a difference with respect to the interpretation, application, or compliance with the Agreement.  Unresolved grievances may be taken to final and binding arbitration. MAP Agreement, pp. 19-22.

179.     Executive Order 15-13 violates the agreement between the State and MAP.

180.     On or about March 5, 2015, MAP  filed a grievance setting forth the violation of the agreement and requesting expedited consideration of the grievance.

181.     The State has not yet acted on the grievance.

182.     MAP is likely to succeed on the merits of the grievance.

183.     The FOP Labor Council Agreement contains a multi-step grievance procedure for the resolution of disputes concerning the contract.  The Agreement broadly defines a grievance as any dispute between the Union and the Employer over the meaning, interpretation, or application of the Agreement or with respect to other circumstances or conditions of employment.  If the parties cannot resolve a grievance, they may submit the issue to an impartial arbitrator.  The decision of the arbitrator is final and binding on the parties.  FOP Labor Council Agreement, pp. 10-13.

184.     Executive Order 15-13 violates the Agreement between the State and the FOP Labor Council.

185.     On March 5, 2015, the FOP Labor Council filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance.  This grievance is attached hereto as Exhibit 20.

186.     The State has not yet acted on the grievance.

187.     The FOP Labor Council is likely to succeed on the merits of the grievance.

-51-

188.    The Conservation Police Lodge Agreement contains a multi-step grievance procedure. The Agreement broadly defines a grievance as any dispute between the Union and the Employer over the meaning, interpretation, or application of the Agreement or with respect to other circumstances or conditions of employment. If the parties cannot resolve a grievance, they may submit the issue an impartial arbitrator. The decision of the arbitrator is final and binding on the parties. 2008-2012 Conservation Police Lodge Agreement, pp. 20-24.

189.    Executive Order 15-13 violates the Agreement between the State and the Conservation Police Lodge.

190.    On March 5, 2015, the Conservation Police Lodge filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 21.

191.    The State has not yet acted on the grievance.

192.    The Conservation Police Lodge is likely to succeed on the merits of the grievance.

193.    The Carpenters Agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." Carpenters Agreement, p. 10-13.

194.    Executive Order 15-13 violates the Agreement between CMS and the Carpenters.

195.    On March 5, 2015, the Carpenters filed grievances setting forth the violation of the Agreement and requesting expedited consideration of the grievances. These grievance are attached hereto as Exhibit 22.

196.    CMS has not yet acted on the grievance.

197.    The Carpenters are likely to succeed on the merits of the grievance.

198.    The IBEW collective bargaining agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." IBEW Agreement, p.10-13.

199.    Executive Order 15-13 violates the Agreement between CMS and the IBEW.

200.    On March 5, 2015, the IBEW filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 23.

201.    CMS has not yet acted on the grievance.

202.    The IBEW is likely to succeed on the merits of the grievance.

203.    The SEIU Local 1 collective bargaining agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." SEIU Local 1 Agreement, p. 10-13.

204.    Executive Order 15-13 violates the Agreement between CMS and SEIU Local 1.

205.    On March 5, 2015, SEIU Local 1 filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 24.

206.    CMS has not yet acted on the grievance.

207.    SEIU Local 1 is likely to succeed on the merits of the grievance.

208. The UFCW collective bargaining agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." UFCW Agreement, p.10-13.

209. Executive Order 15-13 violates the Agreement between CMS and the UFCW.

210. On March 5, 2015, the UFCW filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 25.

211. CMS has not yet acted on the grievance.

212. The UFCW is likely to succeed on the merits of the grievance.

213. The LIUNA collective bargaining agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." LIUNA Agreement, p. 10-13.

214. Executive Order 15-13 violates the Agreement between CMS and LIUNA.

215. On March 5, 2015, LIUNA filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 26.

216. CMS has not yet acted on the grievance.

217. LIUNA is likely to succeed on the merits of the grievance.

218. The IUOE collective bargaining agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the

Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." IUOE Agreement, p. 11-14.

219.    Executive Order 15-13 violates the Agreement between CMS and the IUOE.

220.    On March 5, 2015, the IUOE filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 27.

221.    DCMS has not yet acted on the grievance.

222.    The IUOE is likely to succeed on the merits of the grievance.

223.    The IUPAT collective bargaining agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." IUPAT Agreement, p. 10-13.

224.    Executive Order 15-13 violates the Agreement between CMS and IUPAT.

225.    On March 5, 2015, IUPAT filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 28.

226.    CMS has not yet acted on the grievance.

227.    IUPAT is likely to succeed on the merits of the grievance.

228.    The Bakery Workers Agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." Bakery Workers Agreement, p. 11-14.

229. Executive Order 15-13 violates the Agreement between CMS and the Bakery Workers.

230. On March 5, 2015, the Bakery Workers filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 29.

231. CMS has not yet acted on the grievance.

232. The Bakery Workers are likely to succeed on the merits of the grievance.

233. The UA has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." UA Agreement, p. 10-13.

234. Executive Order 15-13 violates the Agreement between CMS and the UA.

235. On March 5, 2015, the UA filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 30.

236. CMS has not yet acted on the grievance.

237. The UA is likely to succeed on the merits of the grievance.

238. The BAC has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." BAC Agreement, p. 11-14.

239. Executive Order 15-13 violates the Agreement between CMS and the BAC.

240. On March 5, 2015, the BAC filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 31.

241. CMS has not yet acted on the grievance.

242. The BAC is likely to succeed on the merits of the grievance.

243. Defendant Rauner and his representatives have publicly stated that they will violate the collective bargaining agreements they maintain with Plaintiff Unions by refusing to remit the fair-share fees they have collected from nonmembers as required by those agreements. Defendant Rauner directed State officials to act immediately when he promulgated the Executive Order.

244. State employees are paid twice a month. Their checks are issued on different schedules depending on how their payroll is processed. Dues and fair share fees are deducted at the time paychecks are issued. The dues and fair share fees are then remitted to Plaintiff Unions.

245. Some Plaintiff Unions have received requests from State officials regarding the identity of members and fair share fee payers in the bargaining units they represent. On information and belief, Plaintiff Unions believe that this information has been requested for payrolls that will be processed in the week of March 2, 2015. It is therefore likely that Defendants will soon violate the the collective bargaining agreements they have with Plaintiff Unions by failing to remit fair share fees.

246. Defendants will continue to violate the collective bargaining agreements while the grievances that have been filed by Plaintiff Unions are arbitrated and will likely continue to violate the contracts after adverse arbitration decisions until enjoined by a Court.

247. The express purpose of the Defendants' actions in violation of the collective bargaining agreements is to undermine the ability of the Plaintiff Unions to bargain fair collective bargaining agreements for the employees they represent by demonstrating the Defendants' willingness to breach their agreements, by creating financial incentives for the members of Plaintiff Unions to resign and by diminishing the resources the Plaintiff Unions have to represent their members. If this illegal tactic is successful, enforcement of the fair-share provisions of the agreements at a later date will not remedy the harm done to the bargaining strength of the Plaintiff Unions.

248. The arbitration of the grievances that have been filed may take months and any proceedings to enforce arbitration awards in favor of the Plaintiff Unions may take months or years as well. During this time Plaintiff Unions will be deprived of resources that they could use to represent their members in the administration and negotiation of collective bargaining agreement. In addition, during this time Union members will have improper financial incentives to resign their membership and new State employees will have improper financial incentives not to join unions in the first place.

249. This damage to the Plaintiff Unions, their members and to the employees in the bargaining units represented by the Plaintiff Unions cannot be precisely calculated, nor can it be remedied after the fact by payment of the fair share fees. Thus, Plaintiff Unions have no adequate remedy at law for Defendants' conduct in violation of their Agreements.

250. Issuance of injunctive relief will not harm the Defendants because it will merely require them to comply with the existing collective bargaining agreements and state statutes. Thus,

Plaintiff Unions will suffer more from the denial of an injunction than the Defendant will from the issuance of one.

251.    The public interest will be served by the issuance of injunctive relief in this case. Injunctive relief will vindicate the rights of State workers and their unions under their collective bargaining agreements and will vindicate the State policy in favor of collective bargaining as set forth in the Illinois Public Labor Relations Act.

WHEREFORE, Plaintiff Unions seek the following relief from this Court:

(a)    the issuance of preliminary and permanent injunctive relief prohibiting the implementation of Executive Order 15-13 pending a final decision on the issue of whether the Executive Order illegally violated the collective bargaining agreements between Plaintiff Unions and the Defendants;

(b)    the issuance of an order compelling Defendants to honor the provisions of the collective bargaining agreements that they have with Plaintiff Unions that require Defendants to remit membership dues and non-member fair share fees pending final resolution of the grievances that have been filed by Plaintiff Unions;

(c)    an order compelling Defendants to agree to expedited arbitration of Plaintiff Unions' grievances

(d)     any other relief this court deems equitable and just.

Dated: March 5, 2015                              Respectfully submitted,

*Joel D'Alba*                                     *Stephen A. Yhm*
_____                       _____
Joel Abbott D'Alba, Esq.                          Stephen A. Yokich, Esq.
ARDC No. 0571121                                  ARDC No. 6181707
Asher, Gittler, Greenfield, Cohen & D'Alba, Ltd.  Melissa J. Auerbach, Esq.
200 West Jackson Boulevard, Suite 1900            ARDC No. 3126792
Chicago, IL  60606                                Cornfield and Feldman LLP
(312) 263-1500                                    25 East Washington Street, Suite 1400
                                                  Chicago, Illinois  60602-1803
                                                  312-236-7800
Attorneys for Illinois State Federation of Labor
and Congress of Industrial Organizations;         Attorneys for American Federation of State,
Troopers' Lodge No. 41, FOP; International         County, and Municipal Employees, Council
Union of Bricklayers and Allied Craftworkers,     31, AFL-CIO; Illinois Federation of Public
Local 8, Illinois; International Brotherhood of    Employees, Local 4408, AFT/IFT; Illinois
Electrical Workers; International Association of   Federation of Teachers, AFL-CIO Local #919;
Machinist and Aerospace Workers District 8;        and International Union of Bakery,
United Association of Journeymen and              Confectionery and Tobacco Workers
Apprentices of the Plumbing and Pipefitting
Industry of U.S.A. and Canada


Stanley Eisenstein, Esq.                          James S. Beall, Esq.
Katz, Friedman, Eagle,                            ARDC No. 6226493
  Eisenstein & Johnson, PC                        Alaine S. Williams, Esq.*
77 West Washington Street - 20th Floor            Amy R. Rosenberger, Esq.*
Chicago, Illinois 60602-2801                      Willig, Williams & Davidson, Of Counsel
(312) 263-6330                                    *motions for pro hac vice admission to be
                                                  filed
Attorneys for Illinois Nurses Association         77 West Washington Street, Suite 2120
                                                  Chicago, IL  60602
                                                  (312) 818-6700


                                                  Attorneys for Teamsters Illinois Downstate
                                                  Employee Negotiating Committee; Teamsters
                                                  Local 700; and Teamsters Local 330

-60-

Emil Patrick Totonchi
1645 West Jackson Boulevard, 7th Floor
Chicago, IL 60612
(312) 738-5264

Attorneys for Teamsters Local 705


Carl R. Draper, Esq.
FeldmanWasser
1307 South 7th Street
Springfield, Illinois 62703
P.O. Box 2418
Springfield, Illinois 62705
(217) 544-3403

Attorneys for General Teamsters/
Professional & Technical Employees Local
Union No. 916


Joel A. D'Alba, Esq.
ARDC No. 0571121
Tyson B. Roan, General Counsel
SEIU Local 73
300 South Ashland Avenue, Suite 400
Chicago, Illinois 60607
(312) 588-7498

Attorneys for Service Employees International
Union, Local 73


Ellen J. Schanzle-Haskins, Esq.
Brown Hay & Stephens LLP
205 S 5th Street, Suite 700
Springfield, Illinois 62701
(217) 544-8491

Attorneys for Illinois State Employees
Association, Local 2002 and the Southern and
Central Illinois Laborers' District Council

Joel A. D'Alba, Esq.
ARDC No. 0571121
Sean Smoot, Chief Legal Counsel
Policemen's Benevolent and Protective
Association
435 West Washington Street
Springfield, IL 62702
(217) 523-5141 x203

Attorneys for Conservation Police Lodge,
Illinois Police Benevolent and Protective
Association


Tamara Cummings, General Counsel
John R. Roche, Jr., Esq.
5600 South Wolf Road, Suite 120
Western Springs, Illinois 60558-2268
(708) 784-1010

Attorneys for Illinois Fraternal Order of
Police Labor Council


Terrance Bryan McGann, Esq.
Whitfield McGann & Ketterman
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 251-9700

Attorneys for United Brotherhood of
Carpenters and Joiners of America (on behalf
of Chicago Regional Council of Carpenters,
Mid-Central Illinois Regional Council, and St.
Louis Missouri District Council)

-61-

Robert E. Bloch, Esq.
Ronald M. Willis, Esq.
Dowd, Bloch & Bennett
8 South Michigan Avenue, 19th Floor
Chicago, IL 60603
(312) 372-1361

Attorneys for Service Employees International
Union, Local 1


Jonathan D. Karmel, Esq.
Karmel Law Firm
221 North LaSalle Street, Suite 1307
Chicago, Illinois 60601
(312) 641-2910

Attorneys for International Union of United
Food and Commercial Workers


Joseph V. Healy, Esq.
Law Offices of Joseph V. Healy
1341 North Halsted, Suite 2S
Chicago, Illinois 60642
(312) 841-1092

Attorneys for Laborer's International Union of
North America


William A. Widmer III, Esq.
Martin Phillip Barr, Esq.
Carmell Charone Widmer Moss & Barr
One East Wacker Drive, Suite 3300
Chicago, Illinois 60601
(312) 236-8033

Brian A. Powers
General Counsel
International Union of Operating Engineers
1125 17th Street, NW
Washington, DC 20036
Of Counsel
(202) 775-2675

Attorneys for International Union of
Operating Engineers


John J. Toomey, Esq.
Arnold and Kadjan
203 North LaSalle Street, Suite 1650
Chicago, Illinois 60601
(312) 236-0415

Attorneys for International Union of Painters
and Allied Trades


Joseph R. Mazzone, Chief Counsel
Metropolitan Alliance of Police
3033 West Jefferson Street, Suite 208
Joliet, Illinois 60435
(815) 725-7000

Attorneys for Metropolitan Alliance of Police,
Chapter 294