**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRUCE RAUNER, in his official capacity as Governor of the State of Illinois, ) ) ) Plaintiff, ) ) v. ) ) AMERICAN FEDERATION OF STATE, ) COUNTY AND MUNICIPAL EMPLOYEES, ) COUNCIL 31, AFL-CIO, *et al.*, ) ) Defendants. ) | Case No. 15 cv 1235 Hon. Robert W. Gettleman |

### ILLINOIS ATTORNEY GENERAL'S MEMORANDUM
### IN SUPPORT OF HER MOTION TO DISMISS OR STAY

"Fair-share fees" — monies paid to public-sector unions by non-members to cover their share of the unions' cost to represent them in collective bargaining and contract administration — are constitutional under controlling Supreme Court precedent, are authorized by Illinois statute, and are required by collective bargaining agreements entered into by the Illinois Department of Central Management Services ("CMS"). Based on his personal belief that such fees are unconstitutional, however, newly elected Illinois Governor Bruce Rauner issued an executive order directing CMS not to comply with the Illinois statute or with the fair-share fee provisions in those agreements (the "CBAs"). On the same day, he filed this action against the unions who are parties to those agreements (the "Unions") seeking a declaratory judgment that these fair-share fees violate the First Amendment rights of non-members of the Unions, who are not before this Court.

The Attorney General moved to intervene because this case draws into question the validity of a state statute. The Attorney General now moves to dismiss this case, either for lack of subject matter jurisdiction or pursuant to the Court's discretion not to hear a declaratory judgment claim. In the alternative, the Attorney General moves to stay this case on abstention grounds. As more fully

set forth below, her motion emphasizes the following points. *First*, the Governor may not use this suit as a preemptive strike against an anticipated state court lawsuit against him for violating state law in which he could assert federal law only as a *defense* to the state-law claims. *Second*, the Governor is not complaining of any violation of his *own* First Amendment rights, but instead has claimed the ability to vindicate the First Amendment rights of *other persons* who are not before this Court. *Third*, the Governor is inappropriately asking a federal court to declare the scope of his authority to issue executive orders *under state law*.

**Factual Background**

*The Illinois Public Labor Relations Act*

The Illinois Public Labor Relations Act, 5 ILCS 315/1 *et seq.* (the "IPLRA"), authorizes certain public-sector workers to engage in collective bargaining with their employer and enter into labor agreements through a chosen union. (Complaint ¶¶ 47-49.) The union must negotiate on behalf of all covered employees and otherwise represent their interests, but such employees are not required to be union members. (*Id.* ¶¶ 48-49.) Section 6(e) of the IPLRA provides that a collective bargaining agreement can require non-members to pay "their proportionate share of the costs of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and conditions of employment." (*Id.* ¶ 50.) Section 6(e) also states that when a collective bargaining agreement includes such a provision and the union certifies the amount of fair-share fees, those fees "shall be deducted by the employer from the earnings of the nonmember employees and paid to the employee organization the public employer." 5 ILCS 315/6(e).

*The 2012 Collective Bargaining Agreements and Fair-Share Provisions*

In 2012, CMS, an agency under the jurisdiction of the Illinois Governor, entered into the CBAs, which "require the deduction of 'fair share' fees from the earnings of the nonmembers, with the fees then paid to the contracting unions." (Complaint ¶ 3.) (The Complaint refers to these

provisions as the "Fair Share Contract Provisions.") Pursuant to Section 21.5 of the IPLRA, those agreements expire by law on June 30, 2015. 5 ILCS 315/21.5.

***Governor Rauner's Personal Belief that Fair-Share Fees Are Unconstitutional***

Governor Rauner took office on January 12, 2015. Based on his interpretation of the Supreme Court's decisions in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), and *Harris v. Quinn*, 134 S. Ct. 2618 (2014), he "has concluded" that the fair-share fees "are coerced political speech, in violation of the First Amendment of the United States Constitution." (Complaint ¶ 6.)[1]

***The Governor's Executive Order***

On February 9, 2015, Governor Rauner issued Executive Order 15-13 (the "Executive Order"). It "directs CMS to suspend the deduction and remittance of fees imposed by the Fair Share Contract Provisions," and to hold them "in an escrow account" pending "the determination by any court of competent jurisdiction." (*Id.* ¶ 8.)[2]

***Governor Rauner's Complaint***

On the same day he issued the Executive Order, Governor Rauner filed his Complaint in this case. Paragraph 1 alleges that he "issued the executive order to address the unconstitutionality of a provision within certain of the collective bargaining agreements that state agencies have entered into with the Unions, as currently permitted by . . . 5 ILCS 315/6," and that he brought this suit "to resolve a controversy between his office and the [Unions] regarding the legality of the Governor's

---

[1] *Abood* held that the First Amendment allows public sector labor agreements to require non-union members to pay fair-share fees to defray the costs of the union's representation of them in collective bargaining and contract administration. 431 U.S. at 241-242. Less than a year ago, in *Harris*, 134 S. Ct. at 2630-38, the Supreme Court explicitly declined to overrule *Abood*. Although neither this Court nor the Seventh Circuit has the authority to overrule Supreme Court precedent, see *Rodriguez de Quijas v. Shearson/American Exp., Ltd.*, 490 U.S. 477, 484 (1989), Governor Rauner asks this Court to do so.

[2] The Executive Order is not attached to the Complaint but is available on the Official Website for the State of Illinois at *www.illinois.gov/Government/ExecOrders/Documents/2015/ExecutiveOrder 2015-13.pdf* (last accessed Mar. 9, 2015). A copy is attached as Exhibit A to the Attorney General's motion to dismiss.

Executive Order 15-13." (Complaint ¶ 1.) In support of these requests, the Complaint alleges that the fair-share fees authorized by Section 6(e) of the IPLRA and required by the CBAs infringe the First Amendment rights of state workers who are not union members. (*Id*. ¶¶ 79, 81.) The Complaint alleges that Governor Rauner has a "duty to protect the First Amendment rights of all people in the State of Illinois." (*Id*. ¶ 84; see also *id*. ¶ 46.) It further alleges that, based on the Governor's "sworn duty to faithfully execute the laws and support the United States and Illinois Constitution," he "cannot condone th[e] unconstitutional coercion of speech" resulting from the fair-share fees. (*Id*. ¶¶ 2, 6.) The Complaint also alleges that Governor Rauner has "a substantial legal interest in resolving such a controversy immediately in order to . . ."

> [p]revent the possible unnecessary expense and inefficiency that could result from an extended period in which the Executive Branch commits itself to the implementation of Executive Order 15-13, only to have its validity thrown into question by *multiple challenges from the various separate and independent Defendant unions*; . . . . (*Id.* ¶ 86, emphasis added.)

The Complaint alleges that declaratory relief is necessary to prevent various types of "distraction" to the Governor, personnel within the executive branch, and "all people of the State of Illinois that will result from the continuing dispute between the Unions and the Governor concerning the issuance of his Executive Order." (*Id.* ¶ 16.) The prayer for relief seeks an order declaring that:

(1) The Fair Share Contract Provisions under the IPLRA are unconstitutional under the First Amendment of the United States Constitution; and

(2) The Governor's Executive Order 15-13 is within the Governor's powers under the Illinois constitution. (*Id.* p. 21.)

**The Unions' State-Court Action**

On March 5, 2015, the Unions filed a parallel action in Illinois state court (*Illinois AFL-CIO, et al. v. Bruce Rauner, Governor of the State of Illinois, et al.*, St. Clair County, Ill. Case No. 2015 CH 171). (The Court may take judicial notice of that complaint, see *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994), a copy of which is attached to the Attorney General's

4

motion to dismiss.) The Unions' Complaint names as plaintiffs 26 labor unions who are parties to the CBAs, and names as defendants Governor Rauner, the CMS Director, the Illinois State Police and its Director.

Count I of the Unions' Complaint alleges that the Executive Order exceeds the Governor's authority under Illinois law, and it seeks declaratory and injunctive relief prohibiting the defendants from implementing the Executive Order and violating the IPLRA. Count II alleges that the Executive Order violates the fair-share fee provisions of the CBAs, and that the Unions have begun grievance proceedings contesting that violation pursuant to the dispute resolution provisions of the CBAs and the IPLRA, which require arbitration as one step of the process. The Unions seek an "injunction in aid of arbitration" to protect the Unions' rights during the pendency of that dispute resolution process, which could be prolonged.

## Argument

I. **This Case Should Be Dismissed for Lack of Subject Matter Jurisdiction.**

  A. **Under the Well-Pleaded Complaint Rule, the Court Does Not Have Subject Matter Jurisdiction Over This Action.**

This action is not within the Court's subject matter jurisdiction under 28 U.S.C. § 1331 and should be dismissed under Fed. R. Civ. P. 12(b)(1). Section 1331 confers original jurisdiction on the federal courts to hear "all civil actions arising under the Constitution, laws, or treaties of the United States." Under the well-pleaded complaint rule, federal law must be an essential element of a claim for affirmative relief, and federal jurisdiction does not extend to attempts to bring a claim (including a claim for a declaratory judgment) in which federal law represents only an alleged *defense* to anticipated state-law claims. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8-12 (1983); *Chicago Tribune Co. v. Bd. of Trs. of Univ. of Ill.*, 680 F.3d 1001, 1005 (7th Cir. 2012). That is precisely the situation here. Governor Rauner's Complaint does not assert a valid federal-law cause of action, but instead improperly seeks to use a federal forum for a preemptive strike against

5

anticipated state-law claims to which the Governor allegedly has a federal-law defense.

The Governor's Complaint does not seek any affirmative relief against the Unions on the basis that they allegedly violated his First Amendment rights. On the contrary, through his Executive Order the Governor has directed CMS to breach the CBAs and to violate Section 6(e) of the IPLRA. Anticipating that the Unions would file suit based on his Executive Order, he attempts to rely on the First Amendment as a preemptive defense to claims against him and CMS for breaching the CBAs and violating Section 6(e) of the IPLRA. The Governor's Complaint essentially admits that the purpose of this action is to fend off such state-court suits when it alleges that declaratory relief is justified to prevent "distraction" to him and the People of Illinois and to prevent "unnecessary expense and inefficiency that could result from . . . multiple challenges [to the Executive Order] from the various . . . unions." (Complaint ¶¶ 16, 86.)

The Declaratory Judgment Act, 28 U.S.C. § 2201, does not cure this jurisdictional deficiency. The Declaratory Judgment Act provides a remedy where federal jurisdiction already exists but does not expand that jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-74 (1950); *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003); *Ceres Terminals, Inc. v. Industrial Comm'n of Ill.*, 53 F.3d 183, 185 (7th Cir. 1995) (rejecting effort to use Declaratory Judgment Act to avoid well-pleaded complaint rule); see also *Public Serv. Comm'n v. Wycoff*, 344 U.S. 237, 248 (1952). Because this Court has no jurisdiction in this case to grant declaratory relief, which is the only relief sought, this case should be dismissed.

**B. There Is No Article III Case or Controversy.**

This case should also be dismissed for lack of jurisdiction because the Governor lacks standing to bring this lawsuit, and therefore there is no justiciable controversy under Article III of the Constitution. A party invoking federal jurisdiction bears the burden of establishing its standing under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To establish the three

6

elements that comprise the "irreducible constitutional minimum of standing," the plaintiff must have suffered (1) an injury in fact, (2) that is fairly traceable to the action of the defendant, and (3) is redressable by a favorable decision. *Id.* at 560-61. The Article III case-or-controversy requirement applies equally to declaratory judgment suits. *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994).

The Governor has not suffered a legally cognizable "injury in fact" in this case. To satisfy this element of Article III standing, a plaintiff must suffer an "invasion of a legally protected interest" that is both "concrete" and "particularized," in the sense that "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 & n.1; see also *Raines v. Byrd*, 521 U.S. 811, 819 (1997). Article III is not satisfied by alleging an injury that is a "generally available grievance about government," or by asserting "only harm to [the plaintiff's] and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573-74. A party challenging a statute must show that "he has sustained or is in danger of sustaining some direct injury as a result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." *Id.* at 574 (citation and internal quotation marks omitted). A generalized claim to have the government "act in accordance with law" is not sufficient. *Id.* at 575-76. That is all the Governor alleges here.

The Governor's allegation that he seeks to protect the First Amendment rights of "all people in the State of Illinois" (Complaint ¶¶ 46, 84) does not give the Governor Article III standing. Significantly, the Governor does not allege an invasion of *his own* First Amendment rights. Instead, he repeatedly alleges that the fair-share fee provisions in the CBAs, authorized by Section 6(e) of the IPLRA, violate the First Amendment rights of non-members of the Unions. (*Id*. ¶¶ 79-81.) But he is not the legal representative of these non-members, and any First Amendment injury to them

7

does not injure him, as Governor, in any concrete and particularized way. He therefore lacks the requisite personal stake in resolution of the issue he wants adjudicated in this case. *Lujan*, 504 U.S. at 563. Governor Rauner's appeal to unspecified "distractions" to his office that result from his own Executive Order, not from any First Amendment injury arising from the fair-share fee provisions in the CBAs, also does not establish the type of "concrete" and "particularized" injury traceable to the defendants' conduct that is necessary to establish Article III standing. See *Id*. at 560-61 & n.1.

In an apparent attempt to overcome this jurisdictional defect, the Governor alleges that he has been injured by the fair-share fee provisions in the CBAs because he has a duty to "faithfully execute the laws and support the United States and Illinois Constitutions" pursuant to his oath of office and his supreme executive power under the Illinois Constitution. (Complaint ¶¶ 6, 45-46, 84.) But the Governor's stated desire to uphold his oath of office based on his personal beliefs about the First Amendment does not give him a sufficient stake to establish standing to challenge the validity of properly enacted state laws. See *Donelon v. Louisiana Div. of Admin. Law ex rel. Wise*, 522 F.3d 564, 566-68 (5th Cir. 2008); *Finch v. Miss. State Med. Ass'n.*, 585 F.2d 765, 774 (5th Cir. 1978); see also *Drake v. Obama*, 664 F.3d 774, 780 (9th Cir. 2011); *Cronson v. Clark*, 810 F.2d 662, 665 (7th Cir. 1987); *Legislature of the Virgin Islands v. DeJongh*, 645 F. Supp. 2d 452, 459-64 (D.V.I. 2009).

In *Finch*, for example, the governor of Mississippi challenged the constitutionality of a state statute on the ground that he believed it violated the Fourteenth Amendment. 585 F.2d at 769. Holding that the governor lacked Article III standing to challenge the statute based on his beliefs that it was unconstitutional and that enforcing it would violate his oath of office, the court stated: "He has no personal stake in the outcome of the case; he will not be affected favorably by a decision that the statute is unconstitutional nor adversely by a decision that it is valid." *Id.* The court added: "The mental disposition of the Governor is all that gives him cause to complain; were he to change his

8

mind tomorrow and decide, rightly or wrongly, that the state statute is valid, he would no longer have any interest in the case." *Id*. at 774.[3]

Likewise, in *Donelon*, the Court held that a public official lacked standing to challenge the constitutionality of a statute where he was not adversely affected by the statute and his only "interest in the litigation [was] official, rather than personal." 522 F.3d at 566. The Fifth Circuit added: "Donelon . . . is merely suing to ensure Louisiana law conforms to his *opinion* of what federal law requires." *Id.* at 568 (emphasis in original) (citing *Cronson*, 810 F.2d at 665).

And in *Cronson*, the Seventh Circuit held that the Illinois auditor general lacked standing to seek federal court relief in support of his claim that he had a state-law right to conduct a broader audit of the Illinois Supreme Court than it would permit. Holding that "[h]is dispute simply has no place in a federal court," the Court declared: "Indignation that the law is not being obeyed, sympathy for the victims of that disobedience, a passionate desire to do one's legal duty — none of these emotions, however laudable, sincere, and intense, will support a federal lawsuit." 810 F.2d at 665. This case is no different.

### C. Even If There Were Article III Jurisdiction, Prudential Standing Doctrines Require Dismissal.

The Governor's action also runs afoul of prudential standing limitations. Under those limitations, a federal court generally will not entertain jurisdiction over a plaintiff's assertion of the rights of others. *Marin-Garcia v. Holder*, 647 F.3d 666, 670 (7th Cir. 2011). As the Supreme Court instructed in *Warth v. Seldin*, 422 U.S. 490, 499 (1975), to have standing, "the plaintiff generally

---

[3] *Finch* demonstrates the Governor's lack of standing in the instant case in another way as well. There, the Mississippi governor chose to violate the law, rather than comply with what he felt was an unconstitutional command. 585 F.2d at 775. Because he refused to abide by the law he challenged, he could no longer claim that he had been injured by following it. *Id.* Here, too, Governor Rauner has declared that he does not consider himself bound by Section 6(e) or by the fair-share fees provisions in the CBAs, and he issued the Executive Order directing CMS to cease complying with those provisions — in effect, to breach them. Having done so, he cannot claim to be harmed by those provisions.

must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." The Declaratory Judgment Act likewise "provides a cause of action only to those seeking a declaration of their own legal rights." *Edgewood Manor Apartment Homes, LLC v. RSUI Idem. Co.*, 733 F.3d 761, 772 n.2 (7th Cir. 2013). This case does not present an exception to that rule on the basis that the plaintiff has "a close relation to the third party" and there is "some hindrance to the third party's ability to protect his or her own interest." *Marin-Garcia*, 647 F.3d at 670. Here, the Governor purports to vicariously protect the First Amendment rights of non-members of the Unions. That desire does not give him the type of close relationship necessary for standing, and that group is not hindered in its ability to assert its own rights.

II.     **In the Alternative, This Action Should Be Dismissed As an Inappropriate Case for Issuing a Declaratory Judgment.**

Even if the Court had jurisdiction, it should still dismiss this case because it does not present suitable circumstances for issuing relief under the Declaratory Judgment Act. Declaratory relief is a discretionary remedy a district court may decline to exercise. *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961); *Envision Healthcare, Inc. v. Preferred One Ins. Co.*, 604 F.3d 983, 985-86 (7th Cir. 2010). The Court has "wide discretion in deciding whether or not to exercise its authority" under the Declaratory Judgment Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995).

Here, this Court should decline to hear this case because a state court case on the same subject is now pending. In such circumstances, factors relevant to whether to entertain a declaratory judgment action include (1) whether the case presents novel state-law issues, *Sta-Rite Indus., Inc. v. Allstate Ins. Co.*, 96 F.3d 281, 287 (7th Cir. 1996); (2) how far the federal action has progressed, *id.*; (3) whether that action is being used "as an instrument of procedural fencing . . . to choose a forum," *Tempco Elec. Heater Corp.*, 819 F.2d at 750 (citation and internal quotation marks omitted); and (4) whether a declaratory action would "increase the friction between our federal and state

courts,"*NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994) (citation and internal quotation marks omitted); see generally *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 707 (7th Cir. 2014). In light of those factors, the Court should decline to entertain the Governor's request for declaratory relief.[4]

This case is a paradigmatic example of "procedural fencing" intended to win a race to the courthouse and preempt state court litigation involving the same controversy — a controversy created by the Governor's Executive Order. This case has not progressed to any meaningful degree. A complete adjudication of the relevant dispute, including any First Amendment defense by CMS, can be obtained in the state court litigation. And only a state court can, and should, give a definitive ruling on the Complaint's request for declaratory relief concerning the scope of the Governor's state-law authority to issue executive orders.

Further, because this action seeks a federal court ruling on the substance of state law regarding the scope of the Governor's power to issue an executive order that conflicts with a state statute, it represents an "intramural dispute" within Illinois government that this Court should avoid. Federal courts "should not get involved unnecessarily in what may be intramural struggles of state government even if invited to do so by one of the contenders." *Mazanec v. North Judson-San Pierre Sch. Corp.*, 763 F.2d 845, 848 (7th Cir. 1985). "[F]ederal courts do not sit to resolve intramural disputes among state officials over the bounds of their authority under state law." *Cronson*, 810 F.2d at 665. But that is exactly what this case presents.

---

[4] The Court's ability to dismiss a declaratory judgment suit that duplicates or overlaps with state court litigation does not depend on which suit is filed first. *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987). Moreover, "it is not the function of the declaratory judgment action merely to anticipate a defense that otherwise could be presented in a state action." 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2758 (3d ed. 1998). As the Supreme Court stated in *Public Service Commission*, "Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law." 344 U.S. at 248.

11

Even if the Governor could overcome the jurisdictional obstacles, he also does not have a clear path to a decision on the First Amendment claim he wants the Court to address. Principles of constitutional avoidance require the Court first to determine whether that issue has been waived. See *United States v. Percy*, 250 F.3d 720, 727 (9th Cir. 2001); *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1279 (6th Cir. 1995); see also *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1126 (7th Cir. 1995). It is well established that constitutional rights may be waived, such as by entering into a contract whose performance is inconsistent with a later assertion of the right. *Batagiannis v. West Lafayette Cmty. Sch. Corp.*, 454 F.3d 738, 741 (7th Cir. 2006); *United States ex rel. Simmons v. Lohman*, 228 F.2d 824, 826 (7th Cir. 1955); see also *Erie Telecommun. v. City of Erie*, 853 F.2d 1084 (3d Cir.1988) (waiver of First Amendment rights). Thus, even if Governor Rauner's First Amendment concerns were otherwise cognizable, there is a threshold issue — namely, whether CMS (which is under the Governor's jurisdiction) waived those concerns by entering into the very CBAs the Governor has now ordered it to breach — that may make a ruling on the ultimate First Amendment issue unnecessary, and thus unjustified. For this reason as well, the Court should decline to exercise any jurisdiction it may have to grant declaratory relief.

## III. The Court Should Abstain from Hearing this Case.

### A. *Colorado River* Abstention is Warranted.

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818 (1976), the Supreme Court held that in limited circumstances a federal court may stay an action when there is an ongoing parallel action in state court. See also *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1558 (7th Cir. 1989); *Pellico v. Mork*, 2014 WL 4948124 at *2-4 (N.D. Ill. Oct. 1, 2014). Separate actions are parallel if "substantially the same parties are litigating substantially the same issues" in both suits. *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (citation and internal quotation marks omitted). The presence of additional parties or issues in either

case does not preclude a finding that they are parallel. *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 701 (7th Cir.1992). Here, this suit and the Unions' state-court action readily satisfy that requirement for *Colorado River* abstention. Both actions share the same parties and address the same basic issue: whether the Governor Rauner's Executive Order violates the fair-share fee provisions of the CBAs, and whether the Governor exceeded his authority in promulgating the Executive Order.

The factors relevant to whether a court should abstain under the *Colorado River* doctrine include: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent fora; (5) the source of governing law; (6) the adequacy of state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 694-95 (7th Cir. 1985); *Pellico*, 2014 WL 4948124 at *3. No single factor is determinative, and the decision is based on the totality of the circumstances. *Pellico*, 2014 WL 4948124 at *3-4. Here, the relevant factors establish this as an exceptional case in which *Colorado River* abstention should be granted, and this case therefore should be stayed.

The contrived nature of the Governor's federal claim militates against having this Court be the forum for his attempt to turn what is, at best, a federal-law defense to anticipated state-law claims into a preemptive strike against those claims. The state-court suit cannot be removed under 28 U.S.C. § 1446 because it does not include any federal-law claim and involves non-diverse parties. Allowing this case to proceed at the same time therefore will create an unseemly "race to judgment" between state and federal courts. That prospect is all the more unjustified because one of the central issues raised by the Governor in this case is an issue of state law (*i.e.*, whether the Executive Order is

13

within the scope of the Governor' authority under Illinois law). Conversely, the state court can address all issues properly raised, including any First Amendment defense to the Unions' claims to enforce Section 6(e) and the fair-share fee provisions in the CBAs. Finally, the property in dispute — the monies affected by the Executive Order — should not be subject to judicial oversight by two courts simultaneously. The complications of having this Court oversee those funds pending this case, and then arranging their distribution either to the Unions or to their non-members, provides yet another reason to abstain. None of the other factors has any significance, much less tips the balance against abstention under *Colorado River*.

      B.    *Pullman* **Abstention is Warranted.**

Abstention is also warranted under the *Pullman* doctrine (named after the Supreme Court's decision in *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)), which applies when "the resolution of a federal constitutional question might be obviated if the state courts [are] given the opportunity to interpret ambiguous state law." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716-17 (1996); see also *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 365 (7th Cir.1998); *Gardner v. City of Chicago*, 2012 WL 716926, *3 (N.D. Ill. Mar. 2, 2012). Describing the Supreme Court's holding in *Pullman*, the Seventh Circuit in *International College of Surgeons* stated that "if the state court ruled in favor of the plaintiffs and held that the commission did not have the power under state law to issue the [challenged] regulation, the matter would be resolved, and the Court would avoid the unnecessary determination of a federal constitutional question." 153 F.3d at 365. Thus, the Seventh Circuit explained, in *Pullman* "abstention was appropriate . . . pending a state court determination whether the commission possessed the authority to issue the regulation" because it "would 'avoid the waste of a tentative decision' with respect to an uncertain issue of state law, 'as well as the friction of a premature constitutional adjudication.'" *Id.* (quoting *Pullman*, 312 U.S. at 500). The same situation is present here.

14

The Governor's Complaint alleges that the controversy between him and the Unions arises by virtue of his Executive Order, which directs CMS not to comply with Section 6(e) of the IPLRA and the fair-share fee provisions of the CBAs. (Complaint ¶ 14.) The Complaint also makes clear that whether the Governor's Executive Order exceeds his authority under Illinois law is uncertain and unsettled, which is why he seeks declaratory relief on that point of state law. (*Id.* ¶¶ 10, 97.) But a definitive ruling on that issue must necessarily come from a state court. And if the ultimate resolution on that issue is that the Executive Order exceeded the Governor's authority under Illinois law, the basis for his claim that there is a justiciable controversy concerning his vicarious constitutional claim would be gone. For that reason as well, the Court should abstain from proceeding with this case.

**Conclusion**

For the foregoing reasons, the Attorney General respectfully requests that this Court dismiss the Governor's complaint for lack of subject matter jurisdiction or in the exercise of its discretion under the Declaratory Judgment Act, or, in the alternative, that it stay this case pending resolution of the parallel state court action.

March 9, 2015

Respectfully submitted,

 /s/ *Richard Huszagh*

R. Douglas Rees
Gary S. Caplan
Assistant Attorneys General
100 W. Randolph St.
Chicago, IL 60601
(312) 814-3000

Richard S. Huszagh
*rhuszagh@atg.state.il.us*
Assistant Attorney General
100 W. Randolph St., 12th Floor
Chicago, IL 60601
(312) 814-2587