**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRUCE RAUNER, Governor of the State of Illinois, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:15-cv-01235 |
| v. ) | |
| ) | Hon. Judge Robert W. Gettleman |
| AMERICAN FEDERATION OF STATE, COUNTY, ) | |
| AND MUNICIPAL EMPLOYEES COUNCIL 31, ) | |
| AFL-CIO, et al., ) | |
| ) | |
| Defendants. ) | |

**GOVERNOR RAUNER'S MOTION TO
PLACE FAIR-SHARE FEES IN ESCROW**

Governor Bruce Rauner moves the Court for an order that accrued fair-share fees for non-union public employees must be placed into escrow pending the resolution of this litigation.

**FACTUAL BACKGROUND**

The Governor's motion concerns the disposition of accruing fair-share fees. The Illinois Public Labor Relations Act ("IPLRA") defines a fair-share fee as an amount paid to a union by non-union public employees that is the "proportionate share of the costs of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and conditions of employment. . . ." 5 ILCS 315/6.

On February 9, 2015, Governor Rauner issued Executive Order 15-13. [Ex. 1, Executive Order 15-13.] That Order prohibits State Agencies from exacting fair-share fees from non-union, public employees. [*Id.*] The Order also provides that State Agencies must place fair-share fees in escrow and only distribute those funds to the non-union public employees upon a court determination that fair-share fees are unconstitutional:

> CMS and all other State Agencies are directed to place all "fair share" deductions in an escrow account for as long as any contracting union's collective bargaining agreement requires such deductions and to maintain an accounting of the amount deducted from each State Employee's wages for each contracting union, so that each such State Employee will receive the amount deducted from his or her wages upon the determination by any court of competent jurisdiction that the Fair Share Contract Provisions are unconstitutional.

[*Id.* at II.3.]

The Comptroller of Illinois is the constitutional officer charged with disbursing public funds. Ill. Const. art. V, § 17. The Governor and agencies within his jurisdiction can withhold payment of the fair-share fees to the unions. But those agencies cannot place those funds into escrow without the Comptroller's involvement. On February 13, 2015, the Comptroller indicated that she would not place the fair-share fees in escrow as provided in Executive Order 15-13 absent a court order. She did so based on the advice of the Attorney General of Illinois that such an order was necessary.

The Governor and agencies within his jurisdiction have started the process for withholding fair-share fees from the unions. On March 17, 2015, the Governor put into place a process for withholding fair-share fees and accounting for those funds. To give effect to the Executive Order, each agency will reduce the gross pay to a non-union, public employee "by the exact amount of the Fair Share dues." [Ex. 2, Mar. 17, 2015, Mem. re Compliance with Executive Order 15-13, at 1.] The agency then "should enter $0 in the paycode field for Fair Share dues." [*Id.*] The memo sets forth an example demonstrating how the fees are calculated and tracked:

> For example, employee John Doe has a gross pay of $1,000 for a pay period, where $20 is normally sent in Fair Share dues to a union. Going forward, and until the court escrow order is obtained, John Doe's gross pay will be processed at $980, and the agency will enter $0 for Fair Share union dues for this employee.

[*Id.*]

In addition, the memo sets forth how the agencies will track the withholding of fair-share fees. First, State employees will print out a copy of the payroll report that reflects payment of fair-share fees. [*Id.* at 1-2] The agency will have a record of what the payment would have looked like if the employee had paid fair-share fees to the union. The agency then makes the changes to the payroll to withhold the fair-share fees and generates a second report reflecting the withholding of fair-share fees. [*Id.* at 2] The agency retains in its files the payroll report reflecting the withholding and the payroll report reflecting the payment of fair-share fees. [*Id.*] This before-and-after record tracks any fair-share withholdings by an agency. Over time, this record will provide a precise account of the funds that are owed to either the unions or the non-union, public employees.

**ARGUMENT**

**I. THE COURT HAS THE AUTHORITY TO ORDER THE GOVERNOR TO PLACE THE ACCRUING FAIR-SHARE FEES IN ESCROW**

The Governor moves for an order placing the accruing fair-share fees in escrow under the All Writs Act and Federal Rule of Civil Procedure 64.

Federal courts can issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Court has the discretion to issue any writ necessary for the exercise of its jurisdiction or to fashion "extraordinary remedies when the need arises." *See Pa. Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).

The policy of preserving a disputed sum in escrow pending the resolution of litigation is reflected in the Federal Rules. Federal Rule of Civil Procedure 67 allows a party to deposit money with the Court when "the disposition of a sum of money" is part of the relief sought. Fed. R. Civ. P. 67(a). Although Rule 67 provides for depositing money with the Court, the equitable

considerations are the same as ordering the Governor to place the fair-share fees in escrow: to secure money pending litigation involving that money. *See, e.g.*, *Kansas City S. Ry. Co. v. Borrowman*, No. 09-3094, 2009 WL 3188305, at *6 (C.D. Ill. Sept. 30, 2009); *Gulf States Utilities Co. v. Ala. Power Co.*, 824 F.2d 1465, 1474 (5th Cir. 1987), *amended*, 831 F.2d 557 (5th Cir. 1987).

In addition, Federal Rule of Civil Procedure 64 allows federal courts to employ "every remedy [that is available] under the law of the state where the court is located" for seizing property to secure satisfaction of a potential judgment. Fed. R. Civ. P. 64(a). Placing an undisputed amount of money in escrow pending resolution of litigation is a remedy available in Illinois. *Am. Re-Ins. Co. v. MGIC Inv. Corp.*, 73 Ill. App. 3d 316, 325, 391 N.E.2d 532, 539 (1979) ("[T]he fund at issue is composed of monies whose past and future payment under the re-insurance treaty is in dispute, and whose disposition will be dealt with in the trial court's final order. We cannot agree that by taking steps to insure that the monies are preserved until that final ruling, the court abused the exercise of its equitable discretion."); *see also* Ex. 3, Aug. 22, 2012, Mot. to Establish an Escrow, *Illinois v. American Federal of State, County and Municipal Employees, Council 31*, 11 CH 25352 (Cir. Ct. Cook Cnty.); Ex. 4, Dec. 10, 2012, Order, *Illinois v. American Federal of State, County and Municipal Employees, Council 31*, 11 CH 25352 (Cir. Ct. Cook Cnty.) (granting creation of escrow of money from state funds); *Bd. of Trustees of Cmty. Coll. Dist. No. 508 v. Bakalis*, 64 Ill. App. 3d 967, 973, 382 N.E.2d 26, 30 (1978) (ordering funds deposited with court where "those funds would lapse, revert back to the State's general treasury, and be forever lost prior to the final disposition of the case on its merits").

## II. ORDERING THE FUNDS INTO ESCROW SERVES THE INTERESTS OF ALL PARTIES AFFECTED BY THIS LITIGATION

*First*, placing the fair-share fees in escrow protects the ability of all interested parties to recover those fees following resolution of this litigation. Placing the funds in escrow is practical. If the Governor disburses the fair-share fees to the unions and the Court finds those fees unconstitutional, affected employees would have to seek legal recourse from the unions to recover the paid dues. Likewise, if the Governor refunds the fair-share fees to the non-union, public employees and the Court finds those fees constitutional, the unions would have to seek legal recourse from those employees for recovery (or the Governor and the public fisc). And if the Governor does nothing, the fees could revert to State funds in September 2015. Having the funds in escrow prevents all three possibilities. *See Bakalis*, 64 Ill. App. 3d at 973.

In addition, placing the funds in escrow protects State employees from potential lawsuits by the Defendants. One Defendant has claimed that State employees who process payroll and are involved in withholding the fair-share fees "could face legal jeopardy." [Ex. 5, Mar. 19, 2015, AFSCME Council 31 Statement.] A court order placing the fair-share fees in escrow would prevent these lawsuits against State employees while the Court resolves the underlying dispute. If the Court orders the funds into escrow, the Defendants cannot threaten State employees with "legal jeopardy" when they are just doing their jobs.

*Second*, an order from the Court is necessary to place those funds in escrow. The Governor has the authority to withhold payment of fair-share fees. But the Comptroller will not place these funds into escrow absent a court order. An order directing the disposition of funds by the Comptroller is proper. In analogous circumstances, an Illinois court has ordered the creation of an escrow account to hold money from State appropriations. [Ex. 3, Aug. 22, 2012 Mot. to

Establish an Escrow; Ex. 4, Dec. 10, 2012 Order (granting creation of escrow); Fed. R. Civ. P. 64.] This motion seeks an analogous order.

*Third*, the fair-share fees are a sum certain. As set out in the March 17, 2015, memorandum, the agencies are accounting for any withheld fair-share fees to the cent. State agencies are maintaining before-and-after records of any funds withheld to determine the exact amount of unpaid fair-share fees. As the withheld funds accrue, there will be a precise accounting of the amounts owed either to the unions or to non-union, public employees. Administration of an escrow arrangement to ensure accurate accounting will be straightforward and will not require ongoing Court involvement.

*Finally*, the Court's resolution of this litigation will dispose of the accruing funds. The only dispute between the parties is whether withholding all or some of the fair-share fees is required by the United States Constitution. Whatever portion of the fair-share fees is allowed under the Constitution will go to the unions. Whatever portion of the fair-share fees is prohibited under the Constitution will go to the non-union, public employees. Resolution of this litigation will dispose of all the funds the Governor asks the Court to order into escrow.

For these reasons, the Governor asks the Court to order that accrued fair-share fees for non-union public employees must be placed into escrow pending the resolution of this litigation.

Dated: March 20, 2015　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　BRUCE RAUNER


　　　　　　　　　　　　　　　　　　　　　　　By: /s Matthew R. Ford
　　　　　　　　　　　　　　　　　　　　　　　　　One of His Attorneys

6

Philip S. Beck
Matthew R. Ford
Rebecca T. Horwitz
Special Assistant Attorneys General
Bartlit Beck Herman Palenchar & Scott LLP
54 W. Hubbard Street
Suite 300
Chicago, IL 60654
312.494.4400
philip.beck@bartlit-beck.com
matthew.ford@bartlit-beck.com
rebecca.horwitz@bartlit-beck.com

Dennis Murashko
Special Assistant Attorney General
Deputy Counsel
Office of Governor Bruce Rauner
100 W. Randolph Street – Suite 16-100
Chicago, IL 60601

**CERTIFICATE OF SERVICE**

I, Matthew R. Ford, an attorney, hereby certify that on March 20, 2015, I caused the foregoing MOTION TO PLACE FAIR-SHARE FEES IN ESCROW to be filed electronically with the Court via CM/ECF. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

By: /s Matthew R. Ford