IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRUCE RAUNER, Governor of the State of Illinois, ) ) ) Plaintiff, ) ) ) v. ) ) ) AMERICAN FEDERATION OF ) STATE, COUNTY, AND MUNICIPAL ) EMPLOYEES, COUNCIL 31, et al., ) ) Defendants, ) ) ) ) LISA MADIGAN, Attorney General of ) the State of Illinois, ) ) Intervenor. ) | No. 1:15-CV-01235 Judge Robert W. Gettleman Magistrate Daniel G. Martin |

**MOVANT EMPLOYEES' BRIEF
IN SUPPORT OF THEIR MOTION TO INTERVENE**

This case concerns whether it is constitutional for the State of Illinois to force public employees to pay compulsory union fees in light of the Supreme Court's decision in *Harris v. Quinn*, 134 S. Ct. 2618 (2014). Illinois Governor Rauner, through this case and Executive Order 15-13, asserts that it is not. Defendant Unions and Intervenor Illinois Attorney General Lisa Madigan assert that it is.

Absent from this case, however, are individual employees whose First Amendment rights are at stake in this case. Movants Mark Janus, Marie Quigley, and Brian Trygg (the "Movant Employees") are just such individual Illinois public employees. They are being forced to financially support a union to keep their jobs. These "compulsory fees constitute a form of compelled speech and association that imposes a 'significant impingement on First Amendment rights.'"

1

*Knox v. SEIU*, 132 S. Ct. 2277, 2289 (2012) (quoting *Ellis v. Railway Clerks*, 466 U.S. 435, 455 (1984)). Movant Employees seek to intervene in this action under Federal Rule of Civil Procedure 24(a) or (b) to protect their First Amendment rights to free speech and association.

## FACTS

Movant Employees are public employees who are being forced to pay compulsory union fees against their will. Movants Mark Janus and Marie Quigley are employed by Illinois' Department of Healthcare and Family Services and Department of Public Health, respectively. Declaration of Mark Janus, attached hereto as Exhibit B, ¶ 1; Declaration of Marie Quigley, attached hereto as Exhibit C, ¶ 1. Each is required to pay compulsory fees to Defendant American Federation of State, County, and Municipal Employees Council 31 ("AFSCME Council 31") as a condition of their employment. Ex. B, ¶ 4; Ex. C, ¶ 5. AFSCME Council 31 currently takes approximately $23.48 per month in compulsory fees from Janus (for an approximate total of $4,228.36 to date, which includes some non-fair-share fees), Ex. B, ¶¶ 6-7, and takes approximately $19.75 per month in compulsory fees from Quigley (for an approximate total of $1,661.44 to date), Ex. C, ¶¶ 7-8.

Movant Brian Trygg is employed by Illinois' Department of Transportation, and is required to pay compulsory fees to General Teamsters/Professional & Technical Employees Local Union No. 916 ("Teamsters Local 916") as a condition of employment. Declaration of Brian Trygg, attached hereto as Exhibit D, ¶¶ 1, 5. Teamsters Local 916 currently takes approximately $60.86 per month in compulsory fees from Trygg (for an approximate total of $7,143.23 to date). *Id.* at ¶ 8.

Movant Employees oppose being compelled to support the union in power at their workplaces because, among other things, they object to many of the Unions' policy positions, includ-

ing positions taken in collective bargaining. Ex. B, ¶¶ 10-12; Ex. C, ¶¶ 13-16; Ex. D, ¶¶ 12-14. For example, Quigley objects to union negotiated tenure protections, which benefits senior employees who may be less effective. Ex. C, ¶¶ 13-14. All Movant Employees believe the positions taken by the Unions in collective bargaining are contributing to Illinois' dire fiscal condition. Ex. B ¶ 12; Ex. C, ¶¶ 16-17; Ex. D, ¶¶ 13-14.

On June 30, 2014, a majority of the Supreme Court in *Harris* cast into doubt whether it remains constitutional under the First Amendment for states and unions to force public employees, such as Movant Employees, to pay tribute to unions to keep their jobs. 134 S. Ct. at 2632-34. As a result, Illinois Governor Bruce Rauner issued Executive Order 15-13, which directs Illinois' Department of Central Management Services ("CMS") to cease enforcement of state contract provisions that require employees to pay compulsory union fees as a condition of employment, and to place those fees in an escrow account pending the completion of litigation. That same day, Governor Rauner filed this action seeking a declaratory judgment that deducting compulsory fees from nonmember public employees is unconstitutional under the First Amendment of the United States Constitution.

Movant Employees seek to intervene in this action not only to defend Executive Order 15-13, but to also seek damages and injunctive relief under 42 U.S.C. § 1983, because the Defendant Unions by compelling the Movant Employees to pay compulsory union fees have violated and continue to violate Movant Employees' First Amendment rights. *See* Movant Employees' Proposed Complaint (attached hereto as Exhibit A), Count I & Prayer for Relief.

**ARGUMENT**

Movant Employees should be permitted to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2) or, alternatively, granted permissive intervention under Fed. Rule. Civ. P. 24(b)

because their claims share common issues of law and fact with this case.

## I. Intervention as a Matter of Right under Federal Rule 24(a)(2)

Intervention as a matter of right under Rule 24(a)(2) requires that: (1) the application be timely; (2) the applicant have an interest relating to the subject matter of the action; (3) the disposition of the action may impair practically the applicant's ability to protect that interest; and (4) the existing parties do not adequately represent the applicant's interest. *See Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1994); *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 203 (7th Cir. 1982). These requirements are discussed in turn.

1. *Timeliness*. This intervention motion is timely because it was filed less than two months after the initial complaint, only eighteen (18) days after the Unions filed their Motion to Dismiss the Complaint on March 5, 2015 (Dkt. 42), and four days before Governor Rauner's response to the motion to dismiss is due on March 27, 2015. Permitting Employees to intervene will not delay the progress of this case or procedurally prejudice any party. *See, e.g.*, *Alarm Detection Sys., Inc. v. Bloomingdale Fire Protection Dist.*, No. 14 C 876, 2014 WL 4124251, at *2 (N.D. Ill. Aug. 20, 2014) (seeking to intervene two months after amended complaint "clearly satisfie[d]" timeliness requirement).

2. *Substantial Interest*. Intervention as of right requires a "direct, significant, and legally protectable" interest in the question at issue in the lawsuit. *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985). "Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, making comparison to other cases of limited value." *Security Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995).

Movant Employees have a First Amendment interest in not paying compulsory union fees as a condition of employment. This is not only a pecuniary interest—although the employees are

currently forced to pay between $19.75 and $60.86 in union fees per month—but is also a constitutional interest because compulsory unionism impinges on their freedom of association. *See, e.g., Harris*, 134 S. Ct. at 2632-34; *Knox*, 132 S. Ct. at 2289-90. "'Freedom of association . . . plainly presupposes a freedom not to associate.'" *Knox*, 132 S. Ct. at 2287 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984)). Thus, "[j]ust as the First Amendment clearly guarantees the right to join a union, it presupposes a freedom not to associate with a union." *Mulhall v. Unite Here Local 355*, 618 F.3d 1279, 1287 (11th Cir. 2010) (quotation and citation omitted) (holding that employees have a legally cognizable associational interest in not associating with unions sufficient to confer upon employees standing in a federal lawsuit).

More specifically, "compulsory [union] fees constitute a form of compelled speech and association that imposes a 'significant impingement on First Amendment rights,'" because "'[t]he dissenting employee is forced to support financially an organization with whose principles and demands he may disagree.'" *Knox,* 132 S. Ct. at 2289 (quoting *Ellis*, 466 U.S. at 455). While this type of impingement was deemed justified by state interests under *Abood v. Detroit Board of Education,* 431 U.S. 209 (1977), compulsory fees nonetheless constitute a "significant impingement" on employee associational rights. *Knox*, 132 S. Ct. at 2289. Moreover, just last term, a majority of the Supreme Court questioned the continuing validity of *Abood* on "several grounds," noting that the problems created by its decision have become "more evident" and "troubling." *Harris*, 134 S. Ct. at 2632.

In this suit challenging the constitutionality of compulsory fees, the employees who are being forced to pay those fees, such as the Movant Employees, are arguably the parties with the *greatest interest* at stake in the case. Their interest in this action exceeds that of the Defendant Unions, who have no constitutional interest in the outcome of this litigation whatsoever, but

5

merely a financial interest. *See Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 185 (2007) (reiterating that "unions have no constitutional entitlement to the fees of nonmember-employees").

    3. *Impairment*. An intervenor must show that the decision of a legal question threatens to impair his or her interest in the proceeding as a practical matter. *See Lake Investors Dev. Group, Inc. v. Egidi Dev. Group*, 715 F.2d 1256, 1258-60 (7th Cir. 1983). Movant Employees satisfy this burden because it is exceedingly likely that they will continue to be forced to pay compulsory fees to keep their jobs unless the compelled collection of these fees is held unconstitutional. *See* 5 ILCS 315/6(f).

    Moreover, judicial economy, which is highly relevant to the impairment inquiry, militates in favor of granting intervention here. If the Movant Employees cannot intervene and the Governor does not prevail, the Movant Employees would be required to inefficiently "start over" with a new separate lawsuit raising the very same core challenge to *Abood*'s continued validity, the result of which might be practically influenced by the resolution of this suit. *See, e.g.*, *Hanover Ins. Co. v. L & K Dev.*, No. 12 C 6617, 2013 WL 1283823, at *2 (N.D. Ill. Mar. 25, 2013) (finding impairment existed because an action by intervenors "to collect damages would involve the precise issue presently before this court, considerations of judicial economy requires this court to allow intervention"); *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 573 (7th Cir. 2009) ("to make the association start over, when all it really seeks by way of intervention . . . is an opportunity to litigate an appeal, would impose substantial inconvenience . . . with no offsetting gain . . . .").

    4. *Inadequate Representation*. A party may show inadequacy by presenting: (1) potential strategic differences between the intervenor and the original party; and (2) a substantial divergence of interests between the intervenors and the parties. *Meridian Homes*, 683 F.2d at 205. "The requirement of the Rule is satisfied if the applicant shows that representation of his interest

'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (citation omitted). The minimal burden can be met "by showing that the existing parties' interests are not completely identical to and may come into conflict with [the intervenor's] own interests." *Vision Church v. Village of Long Grove*, No. 03 C 5761, 2004 WL 742133, at *4 (N.D. Ill. Apr. 6, 2004).

Though Movant Employees agree with Governor Rauner's Executive Order and his position regarding the First Amendment, the Governor cannot adequately represent Movant Employees' interests, because he has brought suit based on different interests that may lead to strategic differences. The Governor sues in an official capacity, based on his official interests not only in faithfully observing the Constitution but also in "expeditiously achiev[ing] finality and certainty" as to the legal status of his executive action. Dkt. 1 ¶ 86. He does this in order to, among other things, "[p]revent potentially costly distractions," and prevent "unnecessary expense and inefficiency" for the Illinois State Government. Dkt. 1 ¶ 86(a)-(b). In light of the intervention of the Illinois Attorney General against the Governor in favor of the Unions, the Governor presumably also has an interest in resolving an intramural dispute between state officers, both on the First Amendment issue and potentially other issues. However legitimate the Governor's interests in this action, the Movant Employees have a different interest and goal: they seek to vindicate and protect *their own* First Amendment rights, neither more nor less.

Moreover, the Governor does not seek retroactive remedies. Movant Employees, by contrast, seek damages from the Unions for the compulsory fees seized from them. Thus, the Governor's representation is inadequate, no matter how legitimate his official interest in the action is.

The Movant Employees are also uniquely situated to demonstrate that *Abood* cannot legitimize the nonmember fees they have been forced to pay. *Harris* criticized *Abood* because,

7

among other things, *Abood* "did not foresee the practical problems that would face objecting nonmembers," such as the "heavy burden" employees must bear if they wish to challenge union fee calculations." 134 S. Ct. at 2633 (emphasis added). The Movant Employees, who are non-members subjected to the burdensome process of objecting and challenging a union's calculation, are uniquely situated to speak to this matter. *See Builders Ass'n of Greater Chi. v. Cnty. of Cook*, No. 96 C 1121, 1996 WL 520859, at *2 (N.D. Ill. Sep. 10, 1996) (movants permitted to intervene in part because they were "in a better position than the County to provide anecdotal evidence of discrimination").

For these reasons, Movant Employees satisfy all four prerequisites for intervention as a matter of right under Rule 24(a)(2).

5. The Defendant Unions may attempt to rely on *Ligas ex rel. Foster v. Maram*, 478 F.3d 771 (7th Cir. 2007), to oppose intervention. *Ligas* held that a party must show gross negligence or bad faith to render representation inadequate when "the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors." *Id.* at 774. *Ligas* applies where the government is aligned with and protects the intervenor. Thus *Ligas* can hardly apply here, where competing government officers—the Governor and Attorney General—oppose each other on whether the Movant Employees' federal constitutional rights are being violated. That is especially so where even the government actor who is aligned with the rights of the Movant Employees—the Governor—is not seeking damages while the Movant Employees are.

*Wisconsin Education Ass'n Council v. Walker*, 705 F.3d 640 (7th Cir. 2013), is also inapposite. There, the Seventh Circuit held that employees did not have a right under Rule 24(a)(2) to intervene in a case concerning Wisconsin's Act 10 which, among other things, prohibited the

8

seizure of compulsory fees from public employees. *Id.* at 657-59. The Court first held that the employees' constitutional interest in not paying compulsory fees did not give them an interest in the case because the constitutionality of the fees prohibited by Act 10 was not being challenged. *Id.* at 658. Here, by contrast, the Movant Employees challenge the constitutionality of compulsory fees and *Abood*'s validity, which are already at issue between the Governor and the Unions who are supported by the Attorney General. The *Walker* Court also held that the employees failed to prove inadequate representation because they did not seek any relief not sought by the state parties. *Id.* at 659. Here, by contrast, the Movant Employees seek damages for fees wrongfully seized from them in the past.

In any event, *Walker* did not address the propriety of permissive intervention under Rule 24(b). *See* 705 F.3d at 657 n.13. Even if intervention as a matter of right is denied, the Movant Employees should be granted permissive intervention.

**II.     Permissive Intervention under Federal Rule 24(b)(1)(B)**

Rule 24(b)(1)(B) states that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Accordingly, an applicant for permissive intervention must prove that (1) his or her motion for intervention is timely; (2) there is at least one common question of law or fact; and (3) the balancing of undue delay, prejudice to the original parties, and any other relevant factors favors intervention.

Here, Movant Employees' motion is timely for the reasons previously stated. *See*, *supra* Section I.1. Movant Employees "shares with the main action a common question of law," Fed. R. Civ. P. 24(b)(1)(B), namely whether *Abood* continues to be valid, and whether compulsory fee collections in the public sector violate the First Amendment. Moreover, the addition of the Em-

9

ployees as parties will not complicate matters or make the case more difficult to adjudicate, because although the employees seek to vindicate uniquely private interests not adequately represented, their claims largely turn on the same core legal and/or factual issues already in dispute between the parties.

Most importantly, considerations of judicial economy weigh in favor of permissive intervention. "[T]he most obvious benefits of intervention in general are the efficiency and consistency that result from resolving related issues in a single proceeding," avoiding additional litigation and the possibility of conflicting results. *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995) (finding permissive intervention appropriate where denial would create additional litigation). *See also Hanover Ins. Co. v. L & K Development*, 2013 WL 1283823 (N.D. Ill. Mar. 25, 2013) (Gettleman, J.) (same). Again, if the Movant Employees are denied intervention, they could be forced to file their own separate lawsuit to vindicate their First Amendment rights, creating additional litigation and burdens for all parties and this Court. For these reasons, if intervention as a matter of right is denied, permissive intervention should be granted.

## CONCLUSION

For the foregoing reasons, the Motion to Intervene should be granted.

Respectfully submitted this 23rd day of March, 2015.

/s/ Joseph J. Torres
Dan K. Webb
Lawrence R. Desideri
Joseph J. Torres
Brook R. Long
WINSTON & STRAWN LLP
35 West Wacker Dr.
Chicago, IL 60601
312.558.5600
312.558.5700 (fax)
dwebb@winston.com
ldesideri@winston.com
jtorres@winston.com
blong@winston.com

William L. Messenger*
Aaron B. Solem*
c/o National Right to Work Legal Defense Foundation
8001 Braddock Rd., Suite 600
Springfield, VA 22160
703.321.8510
703.321.9319 (fax)
wlm@nrtw.org
abs@nrtw.org

Jacob H. Huebert (#6305339)
Jeffrey M. Schwab (#6290710)
Liberty Justice Center
190 S. LaSalle St., Suite 1500
Chicago, IL 60603
312.263.7668
312.263.7702 (fax)
jhuebert@libertyjusticecenter.org
jschwab@libertyjusticecenter.org

*\* Pro Hac Vice Motions to Be Filed*

*Attorneys for Movant Employees*