# Exhibit 4

# IN THE CIRCUIT COURT OF THE 20TH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS

Illinois AFL-CIO; American Federation of State, )
County, and Municipal Employees, Council 31, )
AFL–CIO; Troopers' Lodge No. 41, FOP; Illinois )
Nurses Association; Illinois Federation of Public )
Employees, Local 4408, AFT/IFT; Illinois )
Federation of Teachers, AFL-CIO Local #919; )
Teamsters Illinois Downstate Employee )
Negotiating Committee; Teamsters Local 700; )
Teamsters Local 330; Teamsters Local Union 705, )
affiliated with the International Brotherhood of )
Teamsters; General Teamsters/Professional & )
Technical Employees Local Union No. 916; )
Service Employees International Union, Local 73; )
Laborers' International Union of North America – )
Illinois State Employees Association, Local 2002 )
and the Southern and Central Illinois Laborers' )
District Council; Conservation Police Lodge, )
Illinois Police Benevolent and Protective )
Association; Illinois Fraternal Order of Police – )
Labor Council; International Union of Bakery, )
Confectionery and Tobacco Workers; International )
Union Bricklayers and Allied Craftworkers, )
Local 8, Illinois; United Brotherhood of Carpenters )
and Joiners of America (on behalf of Chicago )
Regional Council of Carpenters, Mid-Central )
Illinois Regional Council, and St. Louis Missouri )
District Council); International Brotherhood of )
Electrical Workers; Service Employees )
International Union, Local 1, International Union )
of United Food and Commercial Workers; )
Laborer's International Union of North America; )
International Association of Machinist and )
Aerospace Workers District 8; International Union )
of Operating Engineers; International Union of )
Painters and Allied Trades; United Association )
of Journeymen and Apprentices of the Plumbing )
and Pipefitting Industry of U.S.A. and Canada; )
Metropolitan Alliance of Police, Chapter 294; )
)
    Plaintiffs, )
)
v. )

*15 CH 171*



FILED
ST CLAIR COUNTY

MAR 0 5 2015

*[signature]*
CIRCUIT CLERK

Bruce Rauner, Governor of the State of Illinois; )
Tom Tyrrell, Acting Director of the Illinois )
Department of Central Management Services; )
Illinois Department of Central Management )
Services; Leo Schmitz; Director of the Illinois )
State Police; and the Illinois State Police, )
)
                Defendants. )

## VERIFIED COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

The Plaintiffs complain against Defendants as follows:

## I.    INTRODUCTION

1.    The Plaintiffs in this case are 26 labor unions, and the Illinois AFL-CIO. The Plaintiff Unions represent more than 40,000 State employees who work in the executive branch of the government under the Governor. The members of the Unions provide public services to the citizens of Illinois. Among other services, they shield the public from crime, care for the sick, protect the abused from neglect, guard criminals, and maintain the infrastructure necessary to the economy of the State. These employees have overwhelmingly selected the Plaintiffs to represent them with respect to their wages, hours and terms and conditions of employment. The Illinois AFL-CIO is an umbrella organization that represents nearly 900,000 working men and women and their unions in the State.

2.    Defendant, Governor Bruce Rauner, believes State employees are overpaid and receive excessive benefits for their public service. He wants to cut their wages and benefits. He wants to weaken their labor organizations and force concessions in labor agreements set to expire on June 30, 2015.

3.      To that end, Defendant Rauner promulgated Executive Order 15-13. The purpose of this Order is to cut the resources the Plaintiff Unions have for collective bargaining. The Order is patently illegal. It directly conflicts with Section 6 and Section 15 of the Illinois Public Labor Relations Act. It is outside the Governor's executive authority under the Illinois Constitution. And, it violates each of the labor agreements that Plaintiffs have with the State.

4.      This lawsuit seeks a declaration that the order is invalid because it violates State law and is beyond the Governor's Constitutional authority. It also seeks preliminary injunctive relief to protect the Plaintiff Unions from harm during the pendency of these proceedings and while the Unions seek to enforce their labor agreements in final and binding arbitration.

## II.     NATURE OF THE CONTROVERSY

5.      Plaintiff American Federation of State County and Municipal Employees, Council 31 ("AFSCME" or "Council 31") is a union that represents employees of the State of Illinois with respect to their wages, hours, and terms and conditions of employment. AFSCME Council 31 is the exclusive bargaining representative of approximately 38,000 employees of the State who work in approximately 51 departments, boards, authorities, and/or commissions that are subject to the authority of the Governor.

6.      The employees represented by Council 31 work in prisons, mental health facilities, facilities for the developmentally disabled, veterans homes and in the offices that administer State programs such as public aid, unemployment insurance, public health and child welfare. These facilities and offices are located in every part of the State. Nearly every county in the State of Illinois has State employees represented by Council 31 who live or work there. Council 31 represents

hundreds of employees who work for the State in St. Clair County at more than a dozen different facilities and offices. While the vast majority of these employees are members of AFSCME, they include some who pay only fair share to the Union.

7.     As described below, the other Plaintiff Unions represent thousands of employees who work all over the State. Plaintiff Illinois Nurses Association ("INA") represents nurses who work in State prisons and in facilities for the mentally ill and developmentally disabled. Troopers Lodge 41 of the Fraternal Order of Police represents highly trained State Police Officers who lead crime-fighting in every region of the State and Teamsters Local 700 represents the Master Sergeants who guide those State Police Officers. And the Teamsters Illinois Downstate Employees Negotiating Committee, Teamsters Local 700, and Teamsters Local 330 represent thousands of members who work all over the State who are responsible for maintaining and clearing its roads. Each of these Unions, along with the others set forth below, maintains collective bargaining agreements that apply on a state-wide basis. There are more than 1,000 State employees who live or work in St. Clair County. They benefit from the representation of Plaintiff Unions.

8.     Plaintiff, Illinois AFL-CIO ("Illinois AFL-CIO" or "the State Federation") is a state-wide labor body which provides aid, cooperation and assistance to over 1,500 affiliated unions located throughout Illinois. It assists workers and their unions in their efforts to secure improved wages, hours and working conditions.

9.     The State Federation receives affiliation fees from its affiliated unions to fund assistance to unions in collective bargaining activities. If the membership or income of affiliated unions declines one result is reduced affiliation fees. The affiliates of the State Federation have

-4-

approximately12,500 members who live or work in St. Clair County and more than 3,100 retired members who live there.

10.     Defendant Rauner is the Governor of Illinois.  Illinois is a large, diverse, wealthy and populous State which is an agricultural, industrial, financial and transportation center.  As Governor, Rauner has the authority to direct the departments, boards, authorities, and/or commissions in the executive branch of government, subject to the limitations of the laws and Constitution of the State.  This lawsuit is brought against Rauner in his official capacity.

11.     Defendant Tom Tyrrell is the Acting Director of the Illinois Department of Central Management Services ("CMS").  As Acting Director of CMS, Tyrrell represents the State of Illinois in the administration and negotiation of collective bargaining agreements with Council 31 and with other labor organizations.  Defendant Tyrrell directs the administration of the Personnel Code of the State of Illinois, the Personnel Rules of the State of Illinois, and the Pay Plan of the State of Illinois.  The Personnel Code, the Personnel Rules and the Pay Plan apply on a statewide basis.  This lawsuit is brought against Tyrrell in his official capacity.

12.     Defendant State of Illinois, Department of Central Management Services ("CMS"), is a public employer as defined by the Illinois Public Labor Relations Act, 5 ILCS 315(o).  CMS maintains offices in many regions of the State and has an office in St. Clair County.  It is also ultimately responsible for labor relations at the facilities and offices of the State wherever they are located.

13.     Defendant Illinois State Police ("ISP") is a Department in the executive branch of government in the State of Illinois and a public employer as defined by the Illinois Public Labor Relations Act, 5 ILCS 315(o).  The ISP operates and has offices in St. Clair County.

14.     Defendant Leo Schmitz is the Director of the Illinois State Police. This lawsuit is brought against him in his official capacity.

15.     Plaintiff AFSCME and Defendant CMS are parties to a Master collective bargaining agreement that is effective from July 1, 2012, to June 30, 2015. This Agreement covers eight different bargaining units of employees. In addition, AFSCME and CMS are parties to the CU-500 Agreement which covers Lieutenants and other employees of equivalent rank employed by the Illinois Department of Corrections. The full collective bargaining agreements between AFSCME and CMS are posted on the Internet website of CMS at http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_afscme1.pdf. Relevant excerpts of this Agreement are attached as Exhibit 1.

16.     Article I of the Agreement provides that the Employer recognizes AFSCME as the exclusive bargaining representative for the employees covered by the agreement with respect to their wages, hours, and terms and conditions of employment.

17.     Article V of the Agreement contains a grievance and arbitration procedure culminating in final and binding arbitration. AFSCME Agreement, pp. 10-22. The contract broadly defines a grievance as "any difference, complaint or dispute between the Employer and the Union or any employee regarding the application of this agreement or arising out of other circumstances or conditions of employment." AFCSME Agreement, p. 11.

18.     In 1983, the Illinois General Assembly passed the Illinois Public Labor Relations Act ("IPLRA"). A Republican Governor, James Thompson, signed it into law. Section 6 of the Act requires labor organizations to represent all of the employees in a bargaining unit, whether or not they are members of the union that represents that bargaining unit. It provides in relevant part that:

-6-

"Labor organizations recognized by a public employer as the exclusive representative or so designated in accordance with the provisions of this Act are responsible for representing the interests of all public employees in the unit." 5 ILCS 315/6(d).

19.   Paragraph 3(g) of the IPLRA defines a "fair share agreement" as: "an agreement between the employer and an employee organization under which all or any of the employees in a collective bargaining unit are required to pay their proportionate share of the costs of the collective bargaining process, contract administration, and pursuing matters affecting wages, hours, and other conditions of employment, but not to exceed the amount of dues uniformly required of members." The calculation of the "proportionate share" cannot include contributions related to the election or support of candidates for political office. 5ILCS 315/3(g).

20.   Section 6(e) of the IPLRA authorizes agreements between a labor organization and a public employer which allow the union to collect agency fees from the earnings of nonmembers to defray the costs of representing them. The Section provides in relevant part:

> When a collective bargaining agreement is entered into with an exclusive representative, it may include in the agreement a provision requiring employees covered by the agreement who are not members of the organization to pay their proportionate share of the costs of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and conditions of employment, as defined in Section 3 (g), but not to exceed the amount of dues uniformly required of members.

5 ILCS 315/6(e).

21.   In addition to authorizing agreements which require the payment of proportionate share fees, the IPLRA requires the employer to remit those fees to the exclusive bargaining representative. It provides that "the proportionate share payment in this Section shall be deducted

by the employer from the earnings of the nonmember employees and paid to the employee organization." 5 ILCS 315/6(e).

22. Pursuant to these statutory provisions, the Agreement between AFSCME and CMS contains a provision requiring the State to deduct proportionate-share fees from the earnings of nonmembers represented by AFSCME. This provision provides:

> Pursuant to Section 3 (g) of the Illinois Public Labor Relations Act, effective July 1, 1984, the parties agree that the Union certified proportionate share, which shall not exceed the amount of dues uniformly required of members, shall be deducted from the earnings of the non-member employees as their share of the cost of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and conditions of employment subject to the terms and conditions of the parties fair share agreement. The amount so deducted shall be remitted semi-monthly to the Union.

AFSCME Agreement, p. 10.

23. On the morning of February, 9, 2015, Council 31 and CMS officially began negotiations for a new collective bargaining agreement. Council 31 was the first union to commence such negotiations for the agreements that expire on June 30, 2015. The agreements made by Council 31 and CMS often set the "pattern" for the economic benefits of the agreements negotiated by other unions that represent executive branch employees.

24. During the bargaining session with AFSCME in the afternoon of February 9, 2015, Defendant Rauner issued Executive Order 15-13. The Executive Order directs CMS and other state agencies subject to the Governor to immediately cease enforcement of fair share contract provisions and directs that fair share deductions be placed into an escrow account.

25.     Each of the Plaintiff Unions represents members who work for executive branch agencies subject to the Governor.

26.     Each of the Plaintiff Unions has agreements with the State that require the deduction and remittance of fair-share payments in accordance with Sections 3(g) and 6(e) of the Illinois Public Labor Relations Act.

27.     Defendant Rauner requested the Illinois Comptroller to create the escrow account required by the Executive Order. The Comptroller refused to do so. Defendant Rauner then announced that the agencies in the Executive Branch would take action without the Comptroller to implement the Executive Order.

28.     Defendants are proceeding with plans to develop procedures that will enable them to withhold fair share fees from Plaintiff Unions.

29.     The effective representation of thousands of employees on a statewide basis is costly.

(A)     Plaintiff Unions handle thousands of grievances annually. To properly handle these grievances, the Plaintiffs must employ staff representatives who travel throughout the state to gather information, meet with union members and meet with members of management from the various state departments and CMS. It is often the case that early intervention by Union staff prevents a more serious labor dispute from emerging. With disputes that cannot be resolved at the earliest stages of the grievance procedure, Plaintiff Unions must regularly invoke the right to have grievances resolved by impartial arbitrators.

(B)     In addition to the costs of representing employees when the State violates the collective bargaining agreements with Plaintiff Unions, the effective negotiation of collective bargaining agreements is costly as well. To properly represent their members, the Plaintiff Unions

-9-

must establish bargaining committees that are representative of the various work locations and types of jobs held by members of a particular bargaining unit. Bargaining can be a lengthy and costly process and Plaintiff Unions need resources to defray the costs of maintaining representative and well-informed negotiating committees. In addition, the Plaintiff Unions must often employ experts to assist in the negotiation of benefits such as health care. Such experts are often instrumental to the goal of maintaining the quality of the health care received by State employees while containing the costs of that care. The negotiation of health care issues is particularly complicated in a large, diverse State such as Illinois.

(C)     The bargaining process is an uncertain one, and adequate resources are necessary to prepare for all of the results that may occur - working without a contract, submission of unresolved issues to arbitration or the use of economic force.

(D)     The proper representation of thousands of employees through the bargaining process requires a strong communications structure, which must function on a statewide basis. This structure is essential to inform employees and union members of the issues that arise during negotiations, the positions of the parties and the measures that might be taken in response.

30.     The Executive Order purposefully attempts to weaken Plaintiff Unions.

(A)     The express purpose of the Executive Order is to deprive the Plaintiff Unions of resources that they need for effective collective bargaining. The Executive Order states that it is intended to prevent public sector unions in Illinois from using fair share fees to influence wages, pensions and benefits, which are mandatory subjects of bargaining under the IPLRA. If this tactic is successful, and the Plaintiff Unions make concessions on wages, benefits or other working

-10-

conditions in bargaining, the effects of these concessions will not be remedied by a final favorable decision in this case.

(B)     The Executive Order will also deprive the Plaintiff Unions of resources needed to contest violations of the existing collective bargaining agreements between the Unions and CMS and other State agencies in the grievance and arbitration procedure.  Once grievances or arbitrations are concluded, they cannot be re-opened later if Plaintiff Unions receive the fair share fees required by their agreements.

(C)     The Executive Order creates financial incentives that the State will use to entice some union members to resign to potentially save paying fair share fees. The promulgation of the Order will also cause some new employees, unfamiliar with the benefits of Union membership, to refrain from joining the union in the first place. It is impossible to predict the exact number of people who will make such decisions to calculate the financial harm to the Unions caused by this effect of the Executive Order. It is also difficult to quantify the negative effect of such losses in membership on the Unions' strength in negotiations.

(D)     The Executive Order also sends a public message that Defendant Rauner will act illegally and unilaterally to undermine the Plaintiff Unions.  Defendant Rauner's conduct will reduce the confidence that the members of the Plaintiff Unions have in the ability of their Unions to withstand such an assault and undermine the solidarity of the membership.  This effect cannot be quantified and remedied by damages or restitution from a final favorable decision for the Unions.

31.     These ill effects will occur wherever Plaintiff Unions represent employees. They will occur in St. Clair County.

-11-

32.     In response to the refusal of the Comptroller to create escrow accounts for the fair-share deductions required by the collective bargaining agreements of the Plaintiff Unions, Defendant Rauner has indicated that Defendants will create "reserve funds" at individual agencies of the executive branch to hold fair-share deductions.

(A)     The individual agencies have no statutory authority to create and maintain such "reserve funds" with respect to payrolls. Under the law of the State, the Comptroller is the payroll officer of the State and must supervise all payroll warrants. 15 ILCS 405/12. Other executive branch agencies have no power to assume this function.

(B)     This means that any "reserve funds" will be an accounting fiction composed of General Revenue Funds which have been appropriated for other budgetary purposes by the General Assembly. See 30 ILCS 105/13.

(C)     Given the financial condition of the State, it is likely that the funds which are "reserved" will have to be spent for the purposes for which they have been appropriated by the end of the 2015 Fiscal Year on June 30th. Thus, the money in the "reserves" may not be available if the Plaintiff Unions receive a favorable final decision on the merits in this case. If that happens, Plaintiff Unions will lose the money owed to them and will have no legal remedy to recover it.

(D)     Under the State Finance Act, State budgetary appropriations "lapse" at the end of the fiscal year. This means expenditures from General Revenue Fund appropriations for 2015 must occur by August 31, 2015 or else they will not longer be possible. 30 ILCS 105/25. This is another reason why the funds in the " reserve funds" may not be available if the Plaintiffs receive a favorable final decision in this case.

33. Defendant Rauner will implement the illegal plan and will continue to withhold proportionate share fees unless enjoined by the Court.

### III. PLAINTIFF UNIONS AND THEIR COLLECTIVE BARGAINING AGREEMENTS

34. Plaintiff General Teamsters/Professional & Technical Employees Local Union No. 916 ("Teamsters Local 916") is a labor union which represents a bargaining unit of employees in professional and technical classifications who work for the Illinois Departments of Transportation and Natural Resources. Local 916 has an agreement with these Departments and with CMS, which has a term from July 1, 2012, to June 30, 2015. This Agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_pt916.PDF.

35. The Teamsters Local 916 Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Pursuant to Section 3(g) of the Illinois Labor Relations Act, effective July 1, 1984, the parties agree that effective July 1, 1988, if Teamsters Local # 916 Professional and Technical bargaining unit has a majority of union members, fair share payments shall be deducted from the earnings of non-members.

Teamsters Local 916 Agreement, p. 7.

36. Plaintiff Teamsters Local 700 represents a bargaining unit of employees who work for the Departments of CMS, Transportation, Human Services, and Employment Security. Local 700 has a collective bargaining agreement with these Departments which has a term from July 1,

-13-

2012, to June 30, 2015. The employees primarily work in classifications that require them to operate large trucks, snow plows, and other heavy transportation equipment. The unit contains employees who are employed in Cook County, Illinois. Thes Agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/ emp_teamstersck.PDF.

37. The Teamsters Local 700 Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Pursuant to Section 3(g) of the Illinois Public Labor Relations Act, effective July 1, 1984, the parties agree that effective July 1, 1984, if any or all of the three units has a majority of union members, as verified by the Comptroller's Office through the calculation of employees making dues deductions, non-union members in those units shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and of pursuing matters affecting wages, hours and terms and conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's pay check. Such fair share provisions shall remain in effect for the duration of the labor agreement or until it can be demonstrated that fewer than a majority of employees are union members.

Teamsters Local 700 Agreement, p. 5.

38. Teamsters Local 700 is also the exclusive bargaining representative for the Master Sergeants who work for Defendant Illinois State Police. These Master Sergeants work in every part of Illinois, including St. Clair County. Teamsters Local 700 has a collective bargaining agreement

-14-

with the Illinois State Police which has a term from July 1, 2012 to June 20, 2015. Excerpts from this Agreement are attached as Exhibit 2.

39.     The Teamsters Local 700 Master Sergeant Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Any present Master Sergeant who does not join the Union within 30 days of the signing of this contract shall, as a condition of employment, be required to pay a fair share (not to exceed the amount of unions dues) of the cost of the collective bargaining process and contract administration. All Master Sergeants promoted on or after the effective date of this Agreement and who have not made application for membership shall be required, thirty (30) days after the later of the execution of this Agreement or their promotion date, to pay a fair share of the costs of the collective bargaining process and contract administration and pursing matters affecting wages, hours and terms and conditions of employment.

Teamsters Local 700 Master Sergeant Agreement, p. 17

40.     Plaintiff Teamsters Local 330, represents a bargaining unit of employees who work for the Departments of Transportation, CMS, Corrections, Human Services, State Police and Veterans Affairs. Local 330 has a collective bargaining agreement with these Departments which has a term from July 1, 2012, to June 30, 2015. The employees primarily work in classifications that require them to operate large trucks, snow plows, and other heavy transportation equipment. The unit covers employees outside of Cook County, Illinois, in the counties of DuPage, Kane, Kankakee, Kendall, Lake, McHenry, and Will. This Agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_teamstersfv.PDF.

41.     The Teamsters Local 330 Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Pursuant to Section 3(g) of the Illinois Public Labor Relations Act, effective July 1, 1984, the parties agree that effective July 1, 1984, if any or all of the three units has a majority of union members, as verified by the Comptroller's Office through the calculation of employees making dues deductions, non-union members in those units shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and of pursuing matters affecting wages, hours and terms and conditions of employment, but not to exceed the amount of dues uniformly required of members.   Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's pay check. Such fair share provisions shall remain in effect for the duration of the labor agreement or until it can be demonstrated that fewer than a majority of employees are union members.

Teamsters Local 330 Agreement, p. 4.

42.     Plaintiff Teamsters Illinois Downstate Employees Negotiating Committee ("Downstate Teamsters") represents a bargaining unit of employees who work in the Department of Transportation, CMS, and the Departments of Corrections, Human Services, State Police, Veterans Affairs, and Natural Resources.  Downstate Teamsters has a collective bargaining agreement with these Departments which has a term from July, 2012 to June 30, 2015.  The employees primarily work in classifications that require them to operate large trucks, snow plows, and other heavy transportation equipment.  The unit covers employees outside of the metropolitan Chicago area and the "collar counties," namely employees that work outside of Cook, DuPage, Kane, Kankakee, Kendall, Lake, McHenry, and Will counties.  The employees in this unit work in every other county

in Illinois, including St. Clair County. This agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/ emp_teamstersds.PDF.

43.     Teamsters Local 916, the Downstate Teamsters, Teamsters Local 700, and Teamsters Local 330 have executed the following agreement with CMS regarding the collection of proportionate-share fees from bargaining unit members who choose not to be members of the Unions:

> Pursuant to Section 3(g) of the Illinois Public Labor Relations Act, effective July 1, 1984, the parties agree that if the Teamsters Downstate Illinois State Negotiating Committee, Teamsters Local 700, Teamsters Local 330 and its affiliate General Teamsters/ Professional Technical Local 916 has or attains majority Union membership of those employees covered by these agreements or receives a majority decision by referendum as set forth below, subsequent to July 1, 1984, the following shall be applicable: Employees covered by these agreements who are not members of the union or do not make application for membership within fifteen (15) days of employment, shall be required to pay, in lieu of dues, their proportionate share of the cost of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and conditions of employment, but not to exceed the amount of dues uniformly required of members. The proportionate share payment as certified by the Union pursuant to Section 6(e) of the Illinois Public Labor Relations Act shall be deducted by the Comptroller from the earnings of the non-member employees and shall be remitted semi-monthly to the Union.

Downstate Teamsters Agreement, p. 42; Teamsters Local 330 Agreement, pp. 44-45; Teamsters Local 700 Agreement, pp. 43-44.

44.     Plaintiff Teamsters Local Union No. 705, Affiliated with the International Brotherhood of Teamsters, ("Local 705 IBT") represents approximately 35 employees that work under the Agreement between IBT Local 330 and the State. These employees have recourse to the

grievance procedures of the IBT Local 330 Agreement and are covered by the fair-share provisions of that Agreement as well.

45.     Plaintiff Illinois Troopers Lodge No. 41, Fraternal Order of Police ("Troopers Lodge 41") has a collective bargaining agreement with the Illinois State Police which covers Police Troopers, Special Agents, and Sergeants. The term of the Agreement runs from July, 1, 2012, to June 30, 2015. Excerpts from this Agreement are attached as Exhibit 3 hereto.

46.     The Agreement between the State and Troopers Lodge 41 contains a provision that requires the State to deduct and to remit fair-share payments from bargaining unit members who are not members of the Union, to defray the cost to the Union of representing those individuals in matters relating to collective bargaining. That provision provides:

> Pursuant to Section 3(g) of the Illinois Public Labor relations Act, effective July 1, 1984, the parties agree that the Lodge certified proportionate share, which shall not exceed the amount of dues uniformly required of members, shall be deducted from the earnings of the non-member employees as their share of the cost of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and conditions of employment subject to the terms of any such fair share agreement. The amount so deducted shall be remitted semi-monthly to the Union.

In addition, the Agreement provides:

> Officers covered by this Agreement who are not members of the Lodge or do not make application for membership, shall be required to pay, in lieu of dues, their proportionate share of the cost of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and conditions of employment, but not to exceed the amount of dues uniformly required of members. The proportionate share payment as certified by the Lodge pursuant to Section 6(e) of the Illinois Public Labor Relations Act shall be deducted by the Comptroller form the earnings of non-member officers and shall be remitted semi-monthly to the Lodge. Majority status shall be verified by the Comptroller's Office or by

-18-

> mutually agreeable means through the calculation of employees
> making dues deductions as of January 1, 1988, or any time thereafter.
> If such certification by the Comptroller's Office or other mutually
> agreeable means shows a majority status of bargaining unit
> employees being Lodge members, the proportionate share provision
> shall be implemented during the pay period following such
> certification.

Trooper Lodge 41 Agreement, pp. 17-18; Exhibit 10.

47.     Plaintiff Illinois Nurses Association ("INA") represents nurses and attorneys

employed at State facilities. The INA has collective bargaining agreements for two bargaining units.

One unit is called RC-23 and covers nurses in the classifications of Child Welfare Nurse Specialist,

Corrections Nurse I and II, Health Facilities Surveillance Nurse, Registered Nurse I and II, Nursing

Act Assistant Coordinator, Correctional Nurse Trainee and Registered Nurse Advanced Practice.

The Agreement for the RC-23 unit covers the period from July 1, 2012, to June 30, 2015. This

agreement is posted on the public Internet website of CMS at the address of: http://

www2.illinois.gov/cms/Employees/Personnel/Documents/emp_rc23.pdf.

48.     The INA RC-23 Agreement contains an agreement by the parties to deduct a

proportionate share from the earnings of employees in the bargaining unit who are not union

members to defray the costs of representing those employees with respect to their terms and

conditions of employment. It provides:

> Pursuant to Section 3(g) of the Illinois Public Labor Relations Act
> (P.A. 83-1012), effective July 1, 1984, the parties agree that effective
> July 1, 1984, if the RC-23 unit has a majority of Association
> members, as verified by the Comptroller's Office through the
> calculation of employees making dues deductions, non-Association
> members in the respective unit shall be required to pay their
> proportionate share of the costs of the collective bargaining process,
> contract administration and other costs legally chargeable as
> determined and defined by the ILRB and/or courts of appropriate

> jurisdiction, affecting wages, hours and terms and other conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's paycheck. Such fair share provisions shall remain in effect for the duration of the labor agreement or until it can be demonstrated that fewer than a majority of employees are Association members.

INA RC-23 Agreement, p.2.

49.     The INA also represents a group of attorneys classified as Public Service Administrators in a bargaining unit known as RC-36. The collective bargaining agreement for this unit has a term from July 1, 2012, to June 30, 2015. This agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_rc36.pdf.

50.     The INA RC-36 Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Pursuant to Section 3(g) of the Illinois Public Labor Relations Act (P.A. 83-1012), employees in the respective unit shall be required to pay their proportionate share of the costs to the collective bargaining process, contract administration and other costs legally chargeable as determined and defined by the Illinois Labor Relations Board and/or courts of appropriate jurisdiction, affecting wages, hours and terms and other conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's paycheck. Such fair share provisions shall remain in effect for the duration of the labor agreement.

INA RC-36 Agreement, p.11.

51.    Plaintiff Local 4408 of the Illinois Federation of Public Employees ("Local 4408")

is a labor union and an affiliate of the Illinois Federation of Teachers. Local 4408 has three

collective bargaining agreements with the State of Illinois. One is called RC-29 and is a statewide

bargaining unit of paraprofessional protective and regulatory employees. Since 2014, the RC-29 unit

has also contained employees classified as Meat and Poultry Inspectors and Meat and Poultry

Inspector Trainees. The RC-45 unit covers employees classified as Automotive Attendant I and II,

Auto and Body Repairer, Automotive Mechanic, Automotive Parts Warehouser, Automotive Parts

Warehouser Specialist, Small Engine Mechanic and Storekeeper I and II. The RC-56 unit contains

employees who work in the Departments of Agriculture, Human Services, Natural Resources and

in the Historic Preservation Agency who are classified as Agricultural Executive, Agricultural Land

and Water Resource Supervisor, Natural Resources Education Program Coordinator, Natural

Resources Grant Coordinator, Natural Resources Manager I, II and III, Natural Resources Site

Manager I and II, Plant and Pesticide Specialist Supervisor, Security Officer Chief, Security Officer

Lieutenant, Site Superintendent I, II and III, Veterinary Consumer Safety Officer, Veterinary

Pathologist, Veterinary Supervisory I and II and Warehouse Examiner Supervisor.    These

Agreements comprehensively cover the wages, hours and other conditions of employment for the

employees in these bargaining units. Each Agreement is effective for the term July 1, 2012, to June

30, 2015. Each Agreement can be accessed from the public Internet website of CMS at the address

of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

52.    The Local 4408 RC-29 Agreement contains an agreement by the parties to deduct a

proportionate share from the earnings of employees in the bargaining unit who are not union

-21-

members to defray the costs of representing those employees with respect to their terms and conditions of employment. The provision states:

> Pursuant to section 3(g) of the Illinois Public Labor Relations Act effective July 1, 1984, the parties agree that effective July 1, 1984, if the IFPE RC-29 unit has a majority of union members, as verified by the Comptroller's Office through the calculation of employees making dues deductions or other mutually agreed upon method of verification, non-union members in the unit shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and/or pursuing matters affecting wages, hours and other conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's paycheck.

Local 4408 RC-29 Agreement, pp. 5-6. This agreement also requires the State to promptly remit the deductions made pursuant to the Agreement. Local 4408 RC-29 Agreement, p. 6.

53.     The Local 4408 RC-45 Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. The provision states:

> Pursuant to section 3(g) of the Illinois Public Labor Relations Act effective July 1, 1984, the parties agree that effective July 1, 1984, if the IFPE RC-45 unit has a majority of union members, as verified by the Comptroller's Office through the calculation of employees making dues deductions or other mutually agreed upon method of verification, non-union members in the unit shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and/or pursuing matters affecting wages, hours and other conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's paycheck.

Local 4408 RC-45 Agreement, pp. 9-10.

-22-

54.     The Local 4408 RC-56 Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. The provision states:

> Pursuant to section 3(g) of the Illinois Public Labor Relations Act, if this IFPE unit has a majority of union members, as verified by the Comptroller's Office through the calculation of employees making dues deductions or other mutually agreed upon method of verification, non-union members in the unit shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and/or pursuing matters affecting wages, hours and other conditions of employment, but not to exceed the amount of dues uniformly required of members.     Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's paycheck.

Local 4408 RC-56 Agreement, p. 7. This agreement also requires the Employer to promptly remit the deductions made pursuant to the Agreement. Local 4408 RC-56 Agreement, p. 8.

55.     Plaintiff Illinois Federation of Teachers Local 919 ("IFT Local 919") is a labor union and an affiliate of the Illinois Federation of Teachers. Local 919 represents employees classified as Educators who teach at the Illinois School for the Deaf in Jacksonville, Illinois, and it maintains a collective bargaining agreement with CMS that covers those employees. The Agreement has a term from August 12, 2012, to June 30, 2015. The Agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_ift.pdf.

56.     The Agreement between IFT Local 919 and CMS contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

-23-

Pursuant to Section 3(g) of the Illinois Public Labor Relations Act, effective July 1, 1984, the parties agree that effective July 22, 1984, if the IFT Local 919 has a majority of union members, as verified by the Comptroller's Office through the calculation of Educators making dues deductions, non-union members in the unit shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and of pursuing matters affecting wages, hours and terms and conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the Educator's pay check. Such fair share provision shall remain in effect for the duration of the labor agreement or until it can be demonstrated to the Employer that fewer than a majority of Educators are union members.

IFT Local 919 Agreement, p. 1.

57.     Plaintiff Laborers International Union of North America – Illinois State Employees Association, Local 2002 of the Southern and Central Laborers District Council of the Laborers International Union of North America ("Laborers Local 2002") is a labor union and an affiliate of the Southern and Central Illinois Laborers District Council. It is the exclusive bargaining representative of several hundred employees of the State of Illinois in two state-wide bargaining units. One unit is called VR-704 and is a statewide unit containing employees in five State agencies subject to the Governor who are classified as Shift Supervisors, Chief of Security, Public Service Administrator, Senior Public Service Administrator, Forensic Science Administrator, Nuclear Safety Staff Attorney, Food Program Service Administrator/Superintendents, Clinical Services Supervisors and Police Lieutenant. The VR-704 contract is effective from July 1, 2012, to June 30, 2015. A second collective bargaining unit is called VR-706 and covers Meat and Poultry Inspector Supervisors, Automotive Shop Supervisors, and Assistant Automotive Shop Supervisors. The VR-706 contract is also effective from July 1, 2012, to June 30, 2015. Both collective bargaining

agreements can be accessed from the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

    58.    The VR-704 Agreement contains an agreement by the parties to deduct proportionate-share fees from the wages of employees who are not members of Laborers Local 2002 to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Employees who are covered by this agreement who are not members of the Union and paying dues by voluntary payroll deduction pursuant to the provisions contained herein, shall be required to pay a proportionate "fair share" of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and terms and conditions of employment, which have been incurred by the Union in representing such employee without regard to non-membership. Such "fair share" amount shall be certified by the Union to the Employer prior to it being deducted from the earnings of such non-member employee and shall be remitted to the Union on a semi-monthly basis. The "fair share" amount, as certified by the Union, shall not exceed regular membership dues uniformly required of Union members within the bargaining unit.

Local 2002 VR-704 Agreement, p. 6.

    59.    The VR-706 Agreement contains an agreement by the parties to deduct proportionate-share fees from the wages of employees who are not members of Local 2002 to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Employees who are covered by this agreement who are not members of the Union and paying dues by voluntary payroll deduction pursuant to the provisions contained herein, shall be required to pay a proportionate "fair share" of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and terms and conditions of employment, which have been incurred by the Union in representing such employee without regard to non-membership. Such "fair share" amount shall be certified by the Union to the Employer prior to it

-25-

> being deducted from the earnings of such non-member employee and
> shall be remitted to the Union on a semi-monthly basis. The "fair
> share" amount, as certified by the Union, shall not exceed regular
> membership dues uniformly required of Union members within the
> bargaining unit.

Laborers Local 2002 VR-706 Agreement, pp. 5-6.

60.     Plaintiff Service Employees International Union, Local 73 ("SEIU Local 73")

represents a bargaining unit of Public Service Administrators who work at the Illinois Department

of Natural Resources. It has a collective bargaining agreement with the CMS with a term from July

1, 2012, to June 30, 2015. This agreement is posted on the public Internet website of CMS at the

address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_rc184.pdf.

61.     The SEIU Local 73 Agreement for the Public Service Administrators contains an

agreement by the parties to deduct a proportionate share from the earnings of employees in the

bargaining unit who are not union members to defray the costs of representing those employees with

respect to their terms and conditions of employment. It provides:

> Pursuant to the Illinois Public Labor Relations Act, bargaining unit
> employees who are not union members shall be required to pay their
> proportionate share of the costs of the collective bargaining process,
> contract administration and pursuing matters affecting wages, hours
> and other conditions of employment, but shall not exceed the amount
> of dues required of members ("Fair Share Fee"). The Union shall
> certify to the appropriate employer representative the amount of the
> Fair Share fee. The Fair Share fee payment shall be deducted in
> accordance with the law and procedures of the Comptroller from the
> earnings of the non-member employees and paid to the Union in the
> manner set forth above.

SEIU Local 73 Agreement, p. 8.

62.     SEIU Local 73 also represents a bargaining unit of employees who work for the

Department of Military Affairs, which consists of employees classified as Military Security Police

-26-

I and II and Military Crash Fire Rescue I and II. This collective bargaining agreement has a term from July 1, 2012, to June 30, 2015. Relevant excerpts of this agreement as attached as Exhibit 4.

63.     The Agreement between SEIU Local 73 and the Department of Military Affairs contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. The provision states:

> Pursuant to section 3(g) of the Illinois Public Labor Relations Act effective July 1, 1984, the parties agree that effective with this Agreement if the unit has a majority of union members, as verified by the Comptroller's Office through the calculation of employees making dues deductions or other mutually agreed upon method of verification, non-union members in the unit shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and/or pursuing matters affecting wages, hours and other conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's paycheck.

SEIU Local 73 Military Affairs Agreement, p. 2-3

64.     Plaintiff Metropolitan Alliance of Police, Chapter # 294 ("MAP"), represents a bargaining unit of employees classified as Internal Security Investigator I and II who work in the Illinois Department of Corrections. These employees are covered by a collective bargaining agreement between MAP and CMS that covers the period from July 1, 2012, to June 30, 2015. This agreement is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_rc90.

65.     The MAP Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray

the costs of representing those employees with respect to their terms and conditions of employment.
It provides:

> Employees covered by this Agreement who are not members of the
> Union and paying dues by voluntary payroll deduction pursuant to the
> provisions herein, shall be required to pay a proportionate "fair share"
> of the costs of the collective bargaining process, contract
> administration and the pursuance of matters affecting wages, hours
> and conditions of employment, which have been incurred by the
> Union in representing such Employee without regard to such non-
> membership. Such "fair share" amount shall be certified by the
> Union to the Employer prior to it being deducted from the earnings
> of such non-member Employee and shall be remitted to the Union on
> a semi-monthly basis. The "fair share" amount, as certified by the
> Union shall not exceed regular membership dues uniformly required
> of Union members within the bargaining unit.

MAP Agreement, p. 2.

66.     Plaintiff Illinois Fraternal Order of Police Labor Council ("FOP Labor Council")
represents a bargaining unit of employees classified as Conservation Police–Sergeants and
Conservation Police–Lieutenants who work in the Illinois Department of Natural Resources. The
FOP Labor Council has an agreement with the Department of Natural Resources and CMS that
covers the period from July 1, 2012, through June 30, 2015. This agreement is posted on the public
Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/
Documents/emp_rc104.PDF.

67.     The FOP Labor Council Agreement contains an agreement by the parties to deduct
a proportionate share from the earnings of employees in the bargaining unit who are not union
members to defray the costs of representing those employees with respect to their terms and
conditions of employment. It provides:

> Employees covered by this Agreement who are not members of the
> Union and paying dues by voluntary payroll deduction pursuant to the

-28-

> provisions herein, shall be required to pay a proportionate "fair share"
> of the costs of the collective bargaining process, contract
> administration and the pursuance of matters affecting wages, hours
> and conditions of employment, which have been incurred by the
> Union in representing such Employee without regard to such non-
> membership. Such "fair share" amount shall be certified by the
> Union to the Employer prior to it being deducted from the earnings
> of such non-member Employee and shall be remitted to the Union on
> a semi-monthly basis. The "fair share" amount, as certified by the
> Union shall not exceed regular membership dues uniformly required
> of Union members within the bargaining unit.

FOP Labor Council Agreement, pp. 4.

68.　Plaintiff Conservation Police Lodge of the Police Benevolent and Protective Association ("Conservation Police Lodge") represents a bargaining unit of employees classified as Conservation Police Officer Trainee and Conservation Police Officer I and II who work at the Illinois Department of Natural Resources. It has a collective bargaining agreement with the Department of Natural Resources and CMS. The term of this Agreement is from July 1, 2012, to June 30, 2015. The 2008-2012 Agreement between these parties is posted on the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Documents/emp_cpl.PDF. The terms of the contract cited in the next two paragraphs are identical in the 2008-2012 Agreement and the 2012-2015 Agreement.

69.　The Conservation Police Lodge Agreement contains an agreement by the parties to deduct a proportionate share from the earnings of employees in the bargaining unit who are not union members to defray the costs of representing those employees with respect to their terms and conditions of employment. It provides:

> Pursuant to Section 3(g) of the Illinois Public Labor Relations Act,
> effective July 1, 1984, the parties agree that effective July 1, 2000, if
> the unit has a majority of union members, as verified by the
> Comptroller's Office through the calculation of employees making

-29-

> dues deductions, or other mutually agreed upon method of verification, non-union members in the unit shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration and/or pursuing matters affecting wages, hours and terms and conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's pay check. Such fair share provisions shall remain in effect for the duration of the labor agreement or until it can be demonstrated that fewer than a majority of employees are union members.

2008-2012 Conservation Police Lodge Agreement, p. 4.

70. Plaintiff International Union of Bakery, Confectionery and Tobacco Workers ("Bakery Workers") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State who are classified as Bakers. The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

71. The collective bargaining agreement between the Bakery Workers and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

-30-

Bakery Workers Agreement, p.15. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." Bakery Workers Agreement, p. 15.

72.    Plaintiff International Union of Bricklayers and Allied Craftworkers, Local 8, Illinois ("BAC") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications of Brick Mason, Brick Mason (Foreman), Cement Finisher, Cement Finisher (Foreman), and Plasterer. BAC is improperly named in the collective bargaining agreement as "Illinois State Bricklayers & Allied Craftworkers," rather than Local 8. There is no entity named "Illinois State Bricklayers" and Local 8 has historically been party to the Agreement with CMS. The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations. aspx. This Agreement was executed by the principal officer of Local 8, David Toenjes. As reflected in the Agreement, the office of Local 8 is in Belleville, Illinois.

73.    The collective bargaining agreement between the BAC and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

BAC Agreement, p. 15. The agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." BAC Agreement, p. 16.

74.     Plaintiff United Brotherhood of Carpenters and Joiners of America ("Carpenters") maintains a collective bargaining agreement on behalf of the Chicago Regional Council of Carpenters, the Mid-Central Illinois Regional Council of Carpenters, and the St. Louis Missouri District Council of Carpenters with Defendant CMS. The Agreement is for prevailing-rate employees of the State in the classifications of Carpenter, Carpenter (Foreman), and Carpenter (General Foreman). The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations. aspx.

75.     The collective bargaining agreement between the Carpenters and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

Carpenters Agreement, p. 14. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." Carpenters Agreement, p. 14.

-32-

76.     Plaintiff International Brotherhood of Electrical Workers ("IBEW") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications of Electrician, Electrician (Foreman), and Electrician (General Foreman). The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

77.     The collective bargaining agreement between the IBEW and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

IBEW Agreement, pp.14-15. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." IBEW Agreement, p. 15.

78.     Plaintiff Service Employees International Union, Local 1, Fireman and Oilers Division ("SEIU Local 1"), maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications of Stationary Fireman and Maintenance Worker (Power Plant). The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of CMS at the

-33-

address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

79.     The collective bargaining agreement between SEIU Local 1 and CMS provides for

nonmembers to pay their proportionate share to defray the costs of representing them regarding their

terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union
> members, as verified by a mutually agreeable method, non-union
> members, in the unit shall be required to pay their proportionate share
> of the costs or the collective bargaining process, contract
> administration and the pursuance of matters affecting wages, hours
> and working conditions, but not to exceed the amount of dues
> uniformly required of members.

SEIU Local 1 Agreement, p.14. The Agreement also requires that the proportionate share "shall be

deducted from non-member paychecks and remitted to the Union at the same time the Union check-

off is submitted." SEIU Local 1 Agreement, p. 14.

80.     Plaintiff International Union of Food and Commercial Workers ("UFCW") maintains

a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State

in the classifications of Beautician, Barber, Beautician (Charge), Barber (Charge), Teacher of Beauty

Culture, and Teacher of Barbering. The term of the Agreement is from July 1, 2012 to June 30,

2015. This collective bargaining agreement can be accessed from the public Internet website of

CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/

PersonnelLaborRelations.aspx.

81.     The collective bargaining agreement between the UFCW and CMS provides for

nonmembers to pay their proportionate share to defray the costs of representing them regarding their

terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union
> members, as verified by a mutually agreeable method, non-union

-34-

> members, in the unit shall be required to pay their proportionate share
> of the costs or the collective bargaining process, contract
> administration and the pursuance of matters affecting wages, hours
> and working conditions, but not to exceed the amount of dues
> uniformly required of members.

UFCW Agreement, p.14. The agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." UFCW Agreement, pp. 14-15.

82.     Plaintiff Laborer's International Union of North America ("LIUNA") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications of Laborer, Laborer (Building), Laborer Foreman, and Trade Tender. The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of DCMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

83.     The collective bargaining agreement between LIUNA and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union
> members, as verified by a mutually agreeable method, non-union
> members, in the unit shall be required to pay their proportionate share
> of the costs or the collective bargaining process, contract
> administration and the pursuance of matters affecting wages, hours
> and working conditions, but not to exceed the amount of dues
> uniformly required of members.

LIUNA Agreement, p. 14. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." LIUNA Agreement, p. 15.

84.     Plaintiff International Association of Machinists and Aerospace Workers District 8 ("IAM") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications of Machinist and Machinist (Foreman). The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/ Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

85.     The collective bargaining agreement between the IAM and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

IAM Agreement, p.14. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." IAM Agreement, p. 15.

86.     Plaintiff International Union of Operating Engineers ("IUOE") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications of Sewage Plant Operator, Water Plant Operator, Stationary Engineer, Stationary Engineer – Assistant Chief, and Stationary Engineer – Chief. The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public

Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/ Pages/PersonnelLaborRelations.aspx.

87.     The collective bargaining agreement between the IUOE and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

IUOE Agreement, p. 15. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." IUOE Agreement, p. 16.

88.     Plaintiff International Union of Painters and Allied Trades ("IUPAT") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications of Painter, Painter (Foreman), Painter (Spray), Sign Painter, Sign Painter Helper, and Sign Painter (Foreman). The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/ PersonnelLaborRelations.aspx.

89.     The collective bargaining agreement between IUPAT and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

IUPAT Agreement, p. 14. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." IUPAT Agreement, p. 15.

90.     Plaintiff United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of USA and Canada ("UA") maintains a collective bargaining agreement with Defendant CMS for prevailing-rate employees of the State in the classifications Plumber, Plumber (Foreman), Steam Fitter, and Steam Fitter (Foreman). The term of the Agreement is from July 1, 2012 to June 30, 2015. This collective bargaining agreement can be accessed from the public Internet website of CMS at the address of: http://www2.illinois.gov/cms/Employees/Personnel/Pages/PersonnelLaborRelations.aspx.

91.     The collective bargaining agreement between the UA and CMS provides for nonmembers to pay their proportionate share to defray the costs of representing them regarding their terms and conditions of employment as follows:

> If the bargaining agent of the employees has a majority of union members, as verified by a mutually agreeable method, non-union members, in the unit shall be required to pay their proportionate share of the costs or the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, but not to exceed the amount of dues uniformly required of members.

-38-

UA Agreement, p. 14. The Agreement also requires that the proportionate share "shall be deducted from non-member paychecks and remitted to the Union at the same time the Union check-off is submitted." UA Agreement, p. 15.

## COUNT I

### ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF
### AGAINST PUBLIC OFFICIALS EXCEEDING THEIR AUTHORITY

This Count seeks a declaration by all Plaintiffs that Defendant Rauner exceeded his constitutional and statutory authority when he promulgated the Executive Order. It also seeks an injunction against all of the Defendants to restrain implementation of that Order and an order requiring Defendants to continue to honor their statutory and contractual duties to remit dues and fair share fees to the Plaintiffs on a timely basis.

Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 91 of the Complaint as Paragraphs 1 to 91 of Count I.

92. The language of Section 6(e) of the Illinois Public Labor Relations Act, 5 ILCS 315/6(e) imposes a mandatory duty on public employers to remit the money collected from employees under an agreed-to fair-share agreement to the exclusive bargaining representative of those employees.

93. Section 15 of the Illinois Public Labor Relations Act provides that the terms of the Act supersede any contrary Executive Orders. Specifically, it states:

Sec. 15. Act takes precedence.

* * *

-39-

> (a)    In case of any conflict between the provisions of this Act and any other law (other than Section 5 of the State Employees Group Insurance Act of 1971 and other than the changes made to the Illinois Pension Code by Public Act 96-889 and other than as provided in Section 7.5), executive order or administrative regulation relating to wages, hours and conditions of employment and employment relations, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control.

5 ILCS 315(a).

94.    Executive Order 15-13 purports to negate the statutory provisions of the Illinois Public Labor Relations Act, which explicitly authorize labor organizations and public employers such as the State to negotiate fair-share agreements and which require public employers to remit the money collected under such agreements to the appropriate labor organizations.

95.    The provisions of Section 15 explicitly prohibit the type of Executive Order issued by Defendant Rauner.

96.    The Constitution of the State of Illinois requires the separation of powers between the branches of the Government.  Article IV, Section 1, of the Illinois Constitution vests the legislative power in the General Assembly.  Article V, Section 8, of the Illinois Constitution vests the "supreme executive power" in the Governor and states that the Governor "shall be responsible for the faithful execution of the laws."

97.    The Illinois Constitution prohibits one branch of government from exercising the powers granted to another.  Article II of the Illinois Constitution states that: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another."

98.    Defendant Rauner has usurped the constitutional power of the legislative branch by promulgating an Executive Order that effectively repeals a duly passed Public Act.  The Executive

-40-

Order is squarely inconsistent with the provisions of both Section 6 and Section 15 of the Illinois Public Labor Relations Act.

99.     Defendant Rauner has unlawfully exercised the executive power vested in the Governor. The executive power is the power to faithfully execute the laws enacted through the legislative process, not to refuse to implement the laws that have been properly enacted by the State.

100.    The purpose of the doctrine of separation of powers is to prevent one branch of government from exercising all of the power of the State. Defendant Rauner's Executive Order violates that purpose because it places excessive power in the executive branch of State government.

101.    Defendant Rauner will seek to implement the unlawful Executive Order until restrained by a court. Such continuing exercise of unlawful authority justifies preliminary and permanent injunctive relief.


WHEREFORE, Plaintiffs seek the following relief against Defendant Rauner and the other Defendants:

(a)     a declaration that Defendant Rauner's Executive Order 15-13 is invalid because it was not within his statutory and constitutional authority as Governor and because its issuance violates the constitutional separation of powers in Illinois;

(b)     the issuance of an injunction forbidding the implementation and enforcement of Executive Order 15-13;

(c)     the issuance of a mandatory injunction requiring Defendants to remit membership dues and non-member proportionate-share fees to the appropriate exclusive

bargaining representatives as required by collective bargaining agreements and State law;

(d)     an order requiring Defendants to reimburse Plaintiffs for the costs and reasonable attorney fees of pursuing this litigation; and

(e)     any other relief the Court deems equitable and just.

## COUNT II

### ACTION FOR INJUNCTION IN AID OF ARBITRATION

This Count is brought pursuant to the Illinois Uniform Arbitration Act and the Illinois Public Labor Relations Act. Defendants CMS and Illinois State Police have violated the collective bargaining agreements that are set out in the following Paragraphs. Prior to seeking judicial enforcement of those contracts, the Arbitration Act and the Labor Act require the exhaustion of contractual remedies, such as arbitration. This Count seeks an injunction in aid of arbitration to maintain the status quo pending the decision of an arbitrator on the issue of whether the Executive Order violates the labor agreements between the Plaintiffs and the State.

Plaintiffs re-allege and incorporate by reference the allegations of Paragraphs 1 to 101 as Paragraphs 1 to 101 of this Count.

102.     This Court has jurisdiction over this claim under the Illinois Uniform Arbitration Act, 710 ILCS 5/1 et seq, and under Sections 8 and 16 of the Illinois Public Labor Relations Act, 5ILCS 315/8, 16. Section 16 of the Labor Relations Act provides:

> After the exhaustion of any arbitration mandated by this Act, or any procedures mandated by a collective bargaining agreement, suits for violations of agreements including agreements entered into pursuant to Section 13(c) of the Urban Mass Transportation Act, between a

-42-

public employer and a labor organization representing public
employees may be brought by the parties to such agreement in the
circuit court in the county in which the public employer transacts
business or has its principal office.

103.    The Executive Order violates the Agreement between CMS and AFSCME
Council 31.

104.    On March 5, 2015, AFSCME filed a grievance setting forth the violation of the
Agreement and requesting expedited consideration of the grievance. The grievance also requested
that the State refrain from implementing the Executive Order until an arbitrator rendered a decision
on the issue of whether the Executive Order violates the Agreement between Council 31 and CMS.
This grievance is attached hereto as Exhibit 5.

105.    CMS has not yet acted on the grievance.

106.    Council 31 is likely to succeed on the merits of the grievance.

107.    CMS is proceeding to implement the Executive Order.

108.    The Agreement between Teamsters Local 916 and the CMS defines a grievance as
a dispute, difference, or complaint involving the meaning, interpretation, or application of the
express provisions of the Agreement. The contract requires the parties to process grievances through
a multi-step grievance procedure which culminates in final and binding arbitration. Teamsters Local
916 Agreement, pp. 25-31.

109.    Executive Order 15-13 violates the Teamsters Local 916 Agreement.

110.    On March 5, 2015, Teamsters Local 916 filed grievances setting forth the violation
of the Agreement and requesting expedited consideration of the grievances. These grievances are
attached hereto as Exhibit 6.

111.    Defendants have not yet acted on the grievances.

-43-

112.   Teamsters Local 916 is likely to succeed on the merits of the grievances.

113.   The Agreement between the Teamsters Local 700 and the State broadly defines a grievance as any dispute with respect to the meaning, interpretation or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. Teamsters Local 700 Agreement, pp. 6-10.

114.   Executive Order 15-13 violates the Teamsters Local 700 Agreement.

115.   On March 5, 2015, Teamsters Local 700 filed grievances setting forth a violation of the Agreement and requesting expedited consideration of the grievances. These grievances are attached hereto as Group Exhibit 8.

116.   Defendants have not yet acted on the grievances.

117.   Teamsters Local 700 is likely to succeed on the merits of the grievances.

118.   The Agreement between the Teamsters Local 700 and the Illinois State Police defines a grievance as any dispute with respect to the meaning, interpretation or application of the Agreement. Unresolved grievances may be submitted to an arbitrator for a final and binding decision. Teamsters Local 700 Master Sergeants Agreement, pp. 28-31.

119.   Executive Order 15-13 violates the Teamsters Local 700 Agreement with the State Police.

120.   On March 5, 2015, Teamsters Local 700 filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 8.

121.   Defendants have not yet acted on the grievance.

-44-

122. Teamsters Local 700 is likely to succeed on the merits of the grievance.

123. The Agreement between the Teamsters Local 330 and the State broadly defines a grievance as any dispute with respect to the meaning, interpretation, or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. Teamsters Local 330 Agreement, pp. 5-10.

124. Executive Order 15-13 violates the Teamsters Local 330 Agreement.

125. On March 5, 2015, Teamsters Local 330 filed grievances setting forth a violation of the Agreement and requesting expedited consideration of the grievances. These grievances are attached hereto as Group Exhibit 9.

126. Defendants have not yet acted on the grievances.

127. Teamsters Local 330 is likely to succeed on the merits of the grievances.

128. The Agreement between the Downstate Teamsters and the State broadly defines a grievance as any dispute with respect to the meaning, interpretation, or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. Downstate Teamsters Agreement, pp. 6-9.

129. Executive Order 15-13 violates the Downstate Teamsters Agreement.

130. On March 5, 2015, the Downstate Teamsters filed grievances with the State setting forth a violation of the Agreement and requesting expedited consideration of the grievances. These grievances are attached hereto as Group Exhibit 10.

131. Defendants have not yet acted on the grievances.

132. The Downstate Teamsters are likely to succeed on the merits of the grievances.

-45-

133.   On March 5, 2015, IBT Local 705 filed grievances with the State setting forth the violation of the Agreement and requesting expedited consideration of the grievances. These grievances are attached hereto as Exhibit 11.

134.   Defendants have not yet acted on the grievances.

135.   IBT Local 705 is likely to succeed on the merits of the grievances.

136.   The Troopers Lodge Agreement contains a multi-step grievance procedure for the resolution of disputes regarding the meaning, interpretation, or application of the provisions of the Agreement. Unresolved grievances may be submitted to an impartial arbitrator and the decision of the arbitrator is final and binding. Troopers Lodge 41 Agreement, p. 34; Exhibit 9.

137.   Executive Order 15-13 violates Article 6 of the Agreement between the State and Troopers Lodge 41.

138.   On March 5, 2015, Troopers Lodge 41 filed a grievances setting forth the violation of the Agreement and requesting expedited consideration of the grievances. These grievances are attached hereto as Exhibit 12.

139.   The State has not yet acted on the grievance.

140.   Troopers Lodge 41 is likely to succeed on the merits of the grievance.

141.   The RC-23 Agreement between the INA and CMS contains a grievance procedure for the resolution of written complaints by members of the unit that allege violations of the specific provisions of the Agreement or the Personnel Rules of CMS. The grievance procedure culminates in final and binding arbitration. INA RC-23 Agreement, pp. 6-11.

142.   The INA RC-36 Agreement with CMS contains a grievance procedure for the resolution of disputes concerning bargaining unit members. It broadly defines a grievance as any

dispute with respect to the meaning, interpretation, or application of the Agreement or arising out of other terms and conditions of employment. The procedure culminates in final and binding arbitration. INA RC-36 Agreement, pp. 13-16.

143. Executive Order 15-13 violates the INA RC-23 Agreement and the INA RC-36 Agreement.

144. On March 5, 2015, the INA filed grievances setting forth the violations of the RC-23 Agreement and the RC-36 Agreement and requesting expedited consideration of the grievances. These grievances are attached hereto as Group Exhibit 13.

145. CMS has not yet acted on the grievances.

146. The INA is likely to succeed on the merits of the grievances.

147. The Local 4408 RC-29 Agreement broadly defines a grievance as any dispute with respect to the meaning, interpretation, or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. The decision of the arbitrator with respect to the Agreement is final and binding. Local 4408 RC-29 Agreement, p. 18-24.

148. Executive Order 15-13 violates the RC-29 agreement between CMS and Local 4408.

149. On March 5, 2015, Local 4408 filed a grievance setting forth the violation of the RC-29 Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 14.

150. CMS has not yet acted on the grievance.

151. Local 4408 is likely to succeed on the merits of the grievance.

152. The Local 4408 RC-45 Agreement broadly defines a grievance as any dispute with respect to the meaning, interpretation, or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. The decision of the arbitrator with respect to the Agreement is final and binding. Local 4408 RC-45 Agreement, pp. 5-8.

153. Executive Order 15-13 violates the RC-45 agreement between CMS and Local 4408.

154. On March 5, 2015, Local 4408 filed a grievance setting forth the violation of the RC-45 Agreement and requesting expedited consideration of the grievance. This grievance is attached as Exhibit 15.

155. CMS has not yet acted on the grievance.

156. Local 4408 is likely to succeed on the merits of the grievance.

157. The Local 4408 RC-56 Agreement broadly defines a grievance as any dispute with respect to the meaning, interpretation, or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. The decision of the arbitrator with respect to the Agreement is final and binding. Local 4408 RC-56 Agreement, pp. 14-20.

158. Executive Order 15-13 violates the RC-56 agreement between CMS and Local 4408.

159. On March 5, 2015, Local 4408 filed a grievance setting forth the violation of the RC-56 Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 16.

160. CMS has not yet acted on the grievance.

161. Local 4408 is likely to succeed on the merits of the grievance.

162. The Laborers Local 2002 VR-704 Agreement broadly defines a grievance as any dispute with respect to the meaning, interpretation, or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. The decision of the arbitrator with respect to the Agreement is final and binding. Laborers Local 2002 VR-704 Agreement, pp. 14-18.

163. The Laborers Local VR-706 Agreement broadly defines a grievance as any dispute with respect to the meaning, interpretation, or application of the Agreement or with respect to issues arising out of other circumstances or conditions of employment. Unresolved grievances may be submitted to an arbitrator for decision. The decision of the arbitrator with respect to the Agreement is final and binding. Laborers Local 2002 VR-706 Agreement, pp. 12-16.

164. Executive Order 15-13 violates the VR-704 and the VR-706 Agreements between CMS and Laborers Local 2002.

165. On March 5, 2015, Laborers Local 2002 filed grievances setting forth the violation of the Agreements and requesting expedited consideration of the grievances. These grievances are attached hereto as Exhibit 17.

166. CMS has not yet acted on the grievances.

167. Local 2002 is likely to succeed on the merits of the grievances.

168. The Agreement between SEIU Local 73 and CMS contains a multi-step grievance procedure. The Agreement broadly defines a grievance as any dispute between the Union and the Employer over the meaning, interpretation, or application of the Agreement or with respect to other circumstances or conditions of employment. If the parties cannot resolve a grievance they may

submit the issue to an impartial arbitrator. The decision of the arbitrator is final and binding on the parties. SEIU Local 73 Agreement, pp. 15-18.

169.    Executive Order 15-13 violates the agreement between CMS and SEIU Local 73.

170.    On March 5, 2015, SEIU Local 73 filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 18.

171.    CMS has not yet acted on the grievance.

172.    SEIU Local 73 is likely to succeed on the merits of the grievance.

173.    The Agreement between SEIU Local 73 and the Department of Military Affairs contains a multi-step grievance procedure. The Agreement defines a grievance as any difference, complaint or dispute between the Union and the Employer over the meaning, interpretation, or application of the Agreement. If the parties cannot resolve a grievance they may submit the issue to an impartial arbitrator. The decision of the arbitrator is final and binding on the parties. SEIU Local 73 Agreement, pp. 3-8.

174.    Executive Order 15-13 violates the agreement between the Department of Military Affairs and SEIU Local 73.

175.    On March 5, 2015, SEIU Local 73 filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 19.

176.    The State has not yet acted on the grievance.

177.    SEIU Local 73 is likely to succeed on the merits of the grievance.

178.     The Agreement between MAP and CMS contains a multi-step grievance procedure which culminates in arbitration. It defines a grievance as a difference with respect to the interpretation, application, or compliance with the Agreement. Unresolved grievances may be taken to final and binding arbitration. MAP Agreement, pp. 19-22.

179.     Executive Order 15-13 violates the agreement between the State and MAP.

180.     On or about March 5, 2015, MAP filed a grievance setting forth the violation of the agreement and requesting expedited consideration of the grievance.

181.     The State has not yet acted on the grievance.

182.     MAP is likely to succeed on the merits of the grievance.

183.     The FOP Labor Council Agreement contains a multi-step grievance procedure for the resolution of disputes concerning the contract. The Agreement broadly defines a grievance as any dispute between the Union and the Employer over the meaning, interpretation, or application of the Agreement or with respect to other circumstances or conditions of employment. If the parties cannot resolve a grievance, they may submit the issue to an impartial arbitrator. The decision of the arbitrator is final and binding on the parties. FOP Labor Council Agreement, pp. 10-13.

184.     Executive Order 15-13 violates the Agreement between the State and the FOP Labor Council.

185.     On March 5, 2015, the FOP Labor Council filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 20.

186.     The State has not yet acted on the grievance.

187.     The FOP Labor Council is likely to succeed on the merits of the grievance.

-51-

188.    The Conservation Police Lodge Agreement contains a multi-step grievance procedure. The Agreement broadly defines a grievance as any dispute between the Union and the Employer over the meaning, interpretation, or application of the Agreement or with respect to other circumstances or conditions of employment. If the parties cannot resolve a grievance, they may submit the issue an impartial arbitrator. The decision of the arbitrator is final and binding on the parties. 2008-2012 Conservation Police Lodge Agreement, pp. 20-24.

189.    Executive Order 15-13 violates the Agreement between the State and the Conservation Police Lodge.

190.    On March 5, 2015, the Conservation Police Lodge filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 21.

191.    The State has not yet acted on the grievance.

192.    The Conservation Police Lodge is likely to succeed on the merits of the grievance.

193.    The Carpenters Agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." Carpenters Agreement, p. 10-13.

194.    Executive Order 15-13 violates the Agreement between CMS and the Carpenters.

195.    On March 5, 2015, the Carpenters filed grievances setting forth the violation of the Agreement and requesting expedited consideration of the grievances. These grievance are attached hereto as Exhibit 22.

196.    CMS has not yet acted on the grievance.

197.	The Carpenters are likely to succeed on the merits of the grievance.

198.	The IBEW collective bargaining agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." IBEW Agreement, p.10-13.

199.	Executive Order 15-13 violates the Agreement between CMS and the IBEW.

200.	On March 5, 2015, the IBEW filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 23.

201.	CMS has not yet acted on the grievance.

202.	The IBEW is likely to succeed on the merits of the grievance.

203.	The SEIU Local 1 collective bargaining agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." SEIU Local 1 Agreement, p. 10-13.

204.	Executive Order 15-13 violates the Agreement between CMS and SEIU Local 1.

205.	On March 5, 2015, SEIU Local 1 filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 24.

206.	CMS has not yet acted on the grievance.

207.	SEIU Local 1 is likely to succeed on the merits of the grievance.

208.   The UFCW collective bargaining agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." UFCW Agreement, p.10-13.

209.   Executive Order 15-13 violates the Agreement between CMS and the UFCW.

210.   On March 5, 2015, the UFCW filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 25.

211.   CMS has not yet acted on the grievance.

212.   The UFCW is likely to succeed on the merits of the grievance.

213.   The LIUNA collective bargaining agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." LIUNA Agreement, p. 10-13.

214.   Executive Order 15-13 violates the Agreement between CMS and LIUNA.

215.   On March 5, 2015, LIUNA filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 26.

216.   CMS has not yet acted on the grievance.

217.   LIUNA is likely to succeed on the merits of the grievance.

218.   The IUOE collective bargaining agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the

Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." IUOE Agreement, p. 11-14.

219.    Executive Order 15-13 violates the Agreement between CMS and the IUOE.

220.    On March 5, 2015, the IUOE filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 27.

221.    DCMS has not yet acted on the grievance.

222.    The IUOE is likely to succeed on the merits of the grievance.

223.    The IUPAT collective bargaining agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." IUPAT Agreement, p. 10-13.

224.    Executive Order 15-13 violates the Agreement between CMS and IUPAT.

225.    On March 5, 2015, IUPAT filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 28.

226.    CMS has not yet acted on the grievance.

227.    IUPAT is likely to succeed on the merits of the grievance.

228.    The Bakery Workers Agreement has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." Bakery Workers Agreement, p. 11-14.

229. Executive Order 15-13 violates the Agreement between CMS and the Bakery Workers.

230. On March 5, 2015, the Bakery Workers filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 29.

231. CMS has not yet acted on the grievance.

232. The Bakery Workers are likely to succeed on the merits of the grievance.

233. The UA has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." UA Agreement, p. 10-13.

234. Executive Order 15-13 violates the Agreement between CMS and the UA.

235. On March 5, 2015, the UA filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 30.

236. CMS has not yet acted on the grievance.

237. The UA is likely to succeed on the merits of the grievance.

238. The BAC has a grievance and arbitration procedure for the resolution of any complaints or disputes regarding "the application or interpretation" of the Agreement. It provides that the decision and award of the arbitrator in disputes between the parties "shall be final and binding." BAC Agreement, p. 11-14.

239. Executive Order 15-13 violates the Agreement between CMS and the BAC.

240. On March 5, 2015, the BAC filed a grievance setting forth the violation of the Agreement and requesting expedited consideration of the grievance. This grievance is attached hereto as Exhibit 31.

241. CMS has not yet acted on the grievance.

242. The BAC is likely to succeed on the merits of the grievance.

243. Defendant Rauner and his representatives have publicly stated that they will violate the collective bargaining agreements they maintain with Plaintiff Unions by refusing to remit the fair-share fees they have collected from nonmembers as required by those agreements. Defendant Rauner directed State officials to act immediately when he promulgated the Executive Order.

244. State employees are paid twice a month. Their checks are issued on different schedules depending on how their payroll is processed. Dues and fair share fees are deducted at the time paychecks are issued. The dues and fair share fees are then remitted to Plaintiff Unions.

245. Some Plaintiff Unions have received requests from State officials regarding the identity of members and fair share fee payers in the bargaining units they represent. On information and belief, Plaintiff Unions believe that this information has been requested for payrolls that will be processed in the week of March 2, 2015. It is therefore likely that Defendants will soon violate the the collective bargaining agreements they have with Plaintiff Unions by failing to remit fair share fees.

246. Defendants will continue to violate the collective bargaining agreements while the grievances that have been filed by Plaintiff Unions are arbitrated and will likely continue to violate the contracts after adverse arbitration decisions until enjoined by a Court.

247.    The express purpose of the Defendants' actions in violation of the collective bargaining agreements is to undermine the ability of the Plaintiff Unions to bargain fair collective bargaining agreements for the employees they represent by demonstrating the Defendants' willingness to breach their agreements, by creating financial incentives for the members of Plaintiff Unions to resign and by diminishing the resources the Plaintiff Unions have to represent their members. If this illegal tactic is successful, enforcement of the fair-share provisions of the agreements at a later date will not remedy the harm done to the bargaining strength of the Plaintiff Unions.

248.    The arbitration of the grievances that have been filed may take months and any proceedings to enforce arbitration awards in favor of the Plaintiff Unions may take months or years as well. During this time Plaintiff Unions will be deprived of resources that they could use to represent their members in the administration and negotiation of collective bargaining agreement. In addition, during this time Union members will have improper financial incentives to resign their membership and new State employees will have improper financial incentives not to join unions in the first place.

249.    This damage to the Plaintiff Unions, their members and to the employees in the bargaining units represented by the Plaintiff Unions cannot be precisely calculated, nor can it be remedied after the fact by payment of the fair share fees. Thus, Plaintiff Unions have no adequate remedy at law for Defendants' conduct in violation of their Agreements.

250.    Issuance of injunctive relief will not harm the Defendants because it will merely require them to comply with the existing collective bargaining agreements and state statutes. Thus,

-58-

Plaintiff Unions will suffer more from the denial of an injunction than the Defendant will from the issuance of one.

251.    The public interest will be served by the issuance of injunctive relief in this case. Injunctive relief will vindicate the rights of State workers and their unions under their collective bargaining agreements and will vindicate the State policy in favor of collective bargaining as set forth in the Illinois Public Labor Relations Act.

WHEREFORE, Plaintiff Unions seek the following relief from this Court:

(a)    the issuance of preliminary and permanent injunctive relief prohibiting the implementation of Executive Order 15-13 pending a final decision on the issue of whether the Executive Order illegally violated the collective bargaining agreements between Plaintiff Unions and the Defendants;

(b)    the issuance of an order compelling Defendants to honor the provisions of the collective bargaining agreements that they have with Plaintiff Unions that require Defendants to remit membership dues and non-member fair share fees pending final resolution of the grievances that have been filed by Plaintiff Unions;

(c)    an order compelling Defendants to agree to expedited arbitration of Plaintiff Unions' grievances

(d)     any other relief this court deems equitable and just.

Dated: March 5, 2015

Respectfully submitted,

_Joel D'Alba_

_Stephen A. Yokich_

Joel Abbott D'Alba, Esq.
ARDC No. 0571121
Asher, Gittler, Greenfield, Cohen & D'Alba, Ltd.
200 West Jackson Boulevard, Suite 1900
Chicago, IL  60606
(312) 263-1500

Attorneys for Illinois State Federation of Labor
and Congress of Industrial Organizations;
Troopers' Lodge No. 41, FOP; International
Union of Bricklayers and Allied Craftworkers,
Local 8, Illinois; International Brotherhood of
Electrical Workers; International Association of
Machinist and Aerospace Workers District 8;
United Association of Journeymen and
Apprentices of the Plumbing and Pipefitting
Industry of U.S.A. and Canada

Stanley Eisenstein, Esq.
Katz, Friedman, Eagle,
    Eisenstein & Johnson, PC
77 West Washington Street - 20th Floor
Chicago, Illinois 60602-2801
(312) 263-6330

Attorneys for Illinois Nurses Association

Stephen A. Yokich, Esq.
ARDC No. 6181707
Melissa J. Auerbach, Esq.
ARDC No. 3126792
Cornfield and Feldman LLP
25 East Washington Street, Suite 1400
Chicago, Illinois  60602-1803
312-236-7800

Attorneys for American Federation of State,
County, and Municipal Employees, Council
31, AFL-CIO; Illinois Federation of Public
Employees, Local 4408, AFT/IFT; Illinois
Federation of Teachers, AFL-CIO Local #919;
and International Union of Bakery,
Confectionery and Tobacco Workers

James S. Beall, Esq.
ARDC No. 6226493
Alaine S. Williams, Esq.*
Amy R. Rosenberger, Esq.*
Willig, Williams & Davidson, Of Counsel
*motions for pro hac vice admission to be
filed
77 West Washington Street, Suite 2120
Chicago, IL  60602
(312) 818-6700

Attorneys for Teamsters Illinois Downstate
Employee Negotiating Committee; Teamsters
Local 700; and Teamsters Local 330

-60-

Emil Patrick Totonchi
1645 West Jackson Boulevard, 7th Floor
Chicago, IL 60612
(312) 738-5264

Attorneys for Teamsters Local 705


Carl R. Draper, Esq.
FeldmanWasser
1307 South 7th Street
Springfield, Illinois 62703
P.O. Box 2418
Springfield, Illinois 62705
(217) 544-3403


Attorneys for General Teamsters/
Professional & Technical Employees Local
Union No. 916


Joel A. D'Alba, Esq.
ARDC No. 0571121
Tyson B. Roan, General Counsel
SEIU Local 73
300 South Ashland Avenue, Suite 400
Chicago, Illinois 60607
(312) 588-7498

Attorneys for Service Employees International
Union, Local 73


Ellen J. Schanzle-Haskins, Esq.
Brown Hay & Stephens LLP
205 S 5th Street, Suite 700
Springfield, Illinois 62701
(217) 544-8491

Attorneys for Illinois State Employees
Association, Local 2002 and the Southern and
Central Illinois Laborers' District Council

Joel A. D'Alba, Esq.
ARDC No. 0571121
Sean Smoot, Chief Legal Counsel
Policemen's Benevolent and Protective
Association
435 West Washington Street
Springfield, IL 62702
(217) 523-5141 x203


Attorneys for Conservation Police Lodge,
Illinois Police Benevolent and Protective
Association


Tamara Cummings, General Counsel
John R. Roche, Jr., Esq.
5600 South Wolf Road, Suite 120
Western Springs, Illinois 60558-2268
(708) 784-1010


Attorneys for Illinois Fraternal Order of
Police Labor Council


Terrance Bryan McGann, Esq.
Whitfield McGann & Ketterman
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 251-9700

Attorneys for United Brotherhood of
Carpenters and Joiners of America (on behalf
of Chicago Regional Council of Carpenters,
Mid-Central Illinois Regional Council, and St.
Louis Missouri District Council)

Robert E. Bloch, Esq.
Ronald M. Willis, Esq.
Dowd, Bloch & Bennett
8 South Michigan Avenue, 19th Floor
Chicago, IL 60603
(312) 372-1361

Attorneys for Service Employees International
Union, Local 1

Jonathan D. Karmel, Esq.
Karmel Law Firm
221 North LaSalle Street, Suite 1307
Chicago, Illinois 60601
(312) 641-2910

Attorneys for International Union of United
Food and Commercial Workers

Joseph V. Healy, Esq.
Law Offices of Joseph V. Healy
1341 North Halsted, Suite 2S
Chicago, Illinois 60642
(312) 841-1092

Attorneys for Laborer's International Union of
North America

William A. Widmer III, Esq.
Martin Phillip Barr, Esq.
Carmell Charone Widmer Moss & Barr
One East Wacker Drive, Suite 3300
Chicago, Illinois 60601
(312) 236-8033

Brian A. Powers
General Counsel
International Union of Operating Engineers
1125 17th Street, NW
Washington, DC 20036
Of Counsel
(202) 775-2675

Attorneys for International Union of
Operating Engineers

John J. Toomey, Esq.
Arnold and Kadjan
203 North LaSalle Street, Suite 1650
Chicago, Illinois 60601
(312) 236-0415

Attorneys for International Union of Painters
and Allied Trades

Joseph R. Mazzone, Chief Counsel
Metropolitan Alliance of Police
3033 West Jefferson Street, Suite 208
Joliet, Illinois 60435
(815) 725-7000

Attorneys for Metropolitan Alliance of Police,
Chapter 294

**Exhibit 1**

## PREAMBLE

In order to establish harmonious employment relations through a mutual process, to provide fair and equitable treatment to all employees, to promote the quality and continuance of public service, to achieve full recognition for the value of employees and the vital and necessary work they perform, to specify wages, hours, benefits, and working conditions, and to provide for the prompt and equitable resolution of disputes, the parties agree as follows:

## AGREEMENT

THIS AGREEMENT has been made and entered into by and between the DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, and all Departments, Boards and Commissions subject to the Personnel Code, and whose vouchers are subject to approval by the Department of Central Management Services, of the State of Illinois (hereinafter referred to as the "Employer") and the AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES COUNCIL 31, AFL-CIO (hereinafter referred to as the "Union") on behalf of its affiliated locals and the employees in the collective bargaining units described below and in Article I.

The Union has been duly certified by the Office of Collective Bargaining, State of Illinois, pursuant to Section 9, subsection (7) of the Personnel Code, and the Rules and Regulations which have been adopted by the Director of Central Management Services and the Civil Service Commission to implement that Section; and the Union is the historical representative pursuant to the Illinois Public Labor Relations Act, for the purposes of collective bargaining for the employees in: RC-6, a unit composed of correctional employees; RC-9, a unit composed of institutional employees; RC-10, a unit composed of Technical Advisors and Hearing Referees; RC-14, a unit composed of all clerical positions, and any paraprofessional positions involving administrative, data treating, technical, or applied science work; RC-28, a unit composed of positions involving direct services to clients and the public; RC-42, a unit

composed of maintenance employees; RC-62, a Statewide
Technical Unit; RC-63, a Statewide Professional Unit.

These units exclude temporary, emergency, and
provisional employees and those position titles and/or
individual positions excluded by order of the Illinois
State Labor Relations Board or by agreement of the
parties under the standards for exclusion of the Rules
and Regulations of that office referring to supervisory,
confidential and managerial employees, which order or
agreement shall be reduced to writing and may from time
to time be amended.

## DEFINITION OF TERMS

The following terms shall be interpreted as indicated
below when used in this Agreement:

      a)  "Agency Head" refers to the head of a
           department, agency, board or commission.

      b)  "Employer" refers to the Director of the
           Department of Central Management Services, the
           Agency Head, the Facility Head, or the
           Intermediate Administrator or their
           representatives collectively or singly, as the
           context may require.

      c)  Unless otherwise agreed "Intermediate
           Administrator" shall be defined as the
           individual with regional, divisional or
           facility-wide authority who is subordinate to
           the Agency Head and superior to first-level
           supervisors outside the bargaining unit,
           including, but not limited to, Local Office
           Administrators in Human Services, Public Aid,
           Regional Managers in Employment Security,
           Superintendents at institutional facilities,
           District Engineers in Transportation, Regional
           Land Managers in Natural Resources, Division
           of Land Management.

      d)  "Work Location" under RC-10, RC-14, RC-28, RC-
           62 and, RC-63 shall be defined as all of the
           premises of an Agency in a County, except that

each of the following shall be considered a work location, unless otherwise agreed to by the parties in supplemental negotiations.

1) A building or related group of buildings with more than twenty-five (25) employees in the bargaining unit;

2) A building or group of buildings which constitute a facility in the Departments of Human Services, Corrections, Children and Family Services, or Veterans' Affairs;

3) Branch offices of a central regional office in counties adjacent to such regional offices, and the regional office, which offices shall be grouped as a work location.

Provided that, for purposes of health and safety committees, where more than one Agency has offices within a building or related group of buildings, all such offices shall be considered together as a work location. The "Work Location" under RC-6 and RC-9 shall be defined as d) 2) above, unless otherwise agreed to by the parties in agency supplemental negotiations.

e) For RC-6, RC-9, RC-10, RC-14, RC-28, RC-42, RC-62 and RC-63, "Employee" refers only to a bargaining unit employee in a classification covered by this contract whether in a certified or probationary status, except that a probationary employee, an employee during an original six (6) month probationary period, has no right to use the grievance procedure in the event of discharge or demotion. The six (6) month probationary period may be extended up to six (6) additional months by mutual agreement of the parties.

f) "Facility Head" refers to the Head of a particular facility or institution of the Department of Corrections, Human Services, Children and Family Services, Veterans' Affairs, and Juvenile Justice, whichever is applicable.

3

g) "Working Supervisor" refers to an employee's bargaining unit supervisor identified in the Working Supervisor MOU in a classification covered by this agreement as indicated in Schedule A. Those working supervisors may perform managerial/supervisory responsibilities as historically performed within their job classification in a position identified in the Working Supervisor MOU prior to becoming bargaining unit members. The status as a Working Supervisor shall not be interpreted in a manner that would change the status of a public employee represented under the Illinois Public Labor Relations Act.

## ARTICLE I

### Recognition

### Section 1. Recognition

The Employer recognizes the Union as the sole and exclusive bargaining representative in all matters establishing and pertaining to wages and salaries, hours, working conditions and other conditions of employment for employees in the units described in "Agreement" and composed of classifications attached in Schedule A, and such other classifications as may be added in accordance with the provisions of this Agreement. The parties recognize that there are eight (8) bargaining units contained herein; each separately certified, and that the fact that they are all contained within this Agreement shall not imply that any provision or policy affecting or benefiting one unit applies to any other, unless otherwise so provided.

### Section 2. Abolition or Merger of Job Classification

The Employer may, establish new classifications, or abolish, or merge, or change existing classifications.

4

The Union shall be notified of the Employer's interest to establish new classifications, or abolish, or merge, or change existing classifications and discuss with it such intention at least twenty-one (21) days prior to making its recommendation to the Civil Service Commission.

If the Employer subsequently determines to establish new classifications, or abolish, or merge, or change existing classifications, it shall negotiate with the Union over the impact of such.

Such negotiations shall include good faith impact bargaining as required under the State Labor Relations Act.

In the event the parties are unable to reach agreement, the Union may appeal through the contractual grievance procedure (Art. V) including Arbitration. The issue before the Arbitrator shall be whether or not the employee's rights have been violated as provided in the Agreement, and if so what the remedy should be.

Nothing in this Section shall diminish any rights provided for in other Sections of this Agreement.

## Section 3. Integrity of the Bargaining Unit

A. The Employer recognizes the integrity of the bargaining unit and will not take any action having the effect of eroding bargaining unit work. Subject to the provisions of this Agreement, the Employer will continue to endeavor to assign bargaining unit work to bargaining unit employees. The hiring of temporary or emergency employees to supplement bargaining unit employees' work on a temporary basis or provisional employees appointed under Personnel Rule 302.150 or the use of an individual on a light duty assignment which has been agreed to by the Union shall not be considered erosion of the bargaining unit.

B. Emergency, temporary and provisional appointments shall be made in accordance with Section 8(b)(8); 8(b)(9); and 8(b)(10) of the

Personnel Code. The Union shall be notified in writing within 10 business days of the appointment by the Agency and on a monthly basis by the Department of Central Management Services of the name, agency, title and position allocation number of all emergency, temporary and provisional appointments made to bargaining unit positions.

C. In the event that a back-to-back emergency, temporary, or provisional appointment, or a combination of appointments, is operationally necessary, upon timely request the Union will be provided with the rationale for such back-to-back appointment. The provision of rationale to the Union will be made in a timely fashion.

D. Unless Agency operational needs so require, no emergency, temporary, provisional or contractual employee shall be assigned to work a schedule of hours or days off if there is an employee in the same position classification and work location who desires such a schedule of hours and days off.

## Section 4. Union Exclusivity

The Employer shall not meet, discuss, confer, subsidize or negotiate with any other employee organization or its representatives on matters pertaining to hours, wages, and working conditions. Nor shall the Employer negotiate with employees over their hours, wages and working conditions, except as provided herein.

## Section 5. Employer Neutrality

It is the policy of the Employer to support its employees' legal right to freely choose to be represented by a union. The Employer will not oppose efforts by any of its employees to be represented by a union; provided however, nothing herein shall limit the Employer's rights before the Illinois Labor Relations

Board to determine the appropriateness of an employee's placement in a bargaining unit.

## ARTICLE II

### Management Rights

## Section 1. Rights Residing in Management

Except as amended, changed or modified by this Agreement, the Employer retains the exclusive right to manage its operations, determine its policies, budget and operations, the manner of exercise of its statutory functions and the direction of its working forces, including, but not limited to: The right to hire, promote, demote, transfer, evaluate, allocate and assign employees; to discipline, suspend and discharge for just cause; to relieve employees from duty because of lack of work or other legitimate reasons; to determine the size and composition of the work force, to make and enforce reasonable rules of conduct and regulations; to determine the departments, divisions and sections and work to be performed therein; to determine the number of hours of work and shifts per workweek; to establish and change work schedules and assignments; to introduce new methods of operation; to eliminate, contract, and relocate or transfer work and maintain efficiency.

## Section 2. Statutory Obligations

Nothing in this Agreement shall be construed to modify, eliminate or detract from the statutory responsibilities and obligations of the Employer except that the exercise of its rights in the furtherance of such statutory obligations shall not be in conflict with the provisions of this Agreement.

## ARTICLE III

### Non-Discrimination

## Section 1. Prohibition Against Discrimination

7

Both the Employer and the Union agree not to discriminate against any employee on the basis of race, sex, sexual orientation, creed, religion, color, marital or parental status, age, national origin, political affiliation and/or beliefs, nor shall the parties discriminate against any employee with a disability, or for other non-merit factors.

## Section 2. Union Activity

The Employer and the Union agree that no employee shall be discriminated against, intimidated, restrained or coerced in the exercise of any rights granted by the Illinois Public Labor Relations Act, Illinois Revised Statutes, 5 ILCS 315/1 et seq, (P.A. 83-1012) or by this Agreement, or on account of membership or non-membership in, or lawful activities on behalf of the Union.

## Section 3. Membership Solicitation

Neither the Union nor its members shall solicit membership during an employee's work time.

## Section 4. Equal Employment/Affirmative Action/ADA/FMLA

The parties recognize the Employer's obligation to comply with federal and state Equal Employment Affirmative Action Laws, the Americans with Disabilities Act and the Family and Medical Leave Act (including intermittent leave as required).

## ARTICLE IV

### Checkoff/Fair Share

## Section 1. Deductions

The Employer agrees to deduct from the pay of those employees who individually request it any or all of the following:

a)   Union membership dues, assessments, or fees;
b)   Union sponsored credit union contributions;
c)   P.E.O.P.L.E. contributions.

Request for any of the above shall be made on a form agreed to by the parties and shall be made within the provisions of the State Salary and Annuity Withholding Act and/or other applicable State statutes and/or procedures established by the Comptroller.

An employee who has previously authorized payroll deductions pursuant to this Section shall continue to have such deductions made and shall not be required to reauthorize such deductions unless the employee has specifically authorized revocation of deductions pursuant to Section 2 of this Article or has to re-sign other payroll deduction authorizations.

Upon receipt of an appropriate written authorization from an employee, such authorized deductions shall be made in accordance with law and the procedures of the Comptroller and shall be remitted semi-monthly to the Union in accordance with the current procedures, and at the address designated in writing to the Comptroller by the Union.  The Local, State or International Union shall advise the Employer of any increase in dues or other approved deductions in writing at least fifteen (15) days prior to its effective date.

No later than July 1, 2005, when an employee has authorized payroll deductions for Union membership, the wage stub will state "Union dues" and the amount of deduction.  If the employee has not authorized payroll deductions for Union membership, the wage stub will state "non mbr fees" and the amount of deduction.

Any time an authorized deduction would otherwise be discontinued without the employee's specific authorization, the Employer shall notify the employee and shall provide the employee with the necessary cards and/or forms needed to continue said deduction.

## Section 2.  Revocation

All employees covered by this Agreement who have signed Union dues checkoff cards for AFSCME prior to the

effective date of this Agreement or who signed such cards after such date shall only be allowed to cancel such dues deduction within the prescribed procedures of the Comptroller.

### Section 3.  Fair Share

Pursuant to Section 3(g) of the Illinois Public Labor Relations Act effective July 1, 1984, the parties agree that the Union certified proportionate share, which shall not exceed the amount of dues uniformly required of members, shall be deducted from the earnings of the non-member employees as their share of the cost of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and conditions of employment subject to terms and provisions of the parties' fair share agreement.  The amount so deducted shall be remitted semi-monthly to the Union.

### Section 4.  Indemnification

The Union shall indemnify, defend and hold the Employer harmless against any claim, demand, suit or liability arising from any action taken by the Employer in complying with this Article.

### Section 5.  Availability of Cards

If the facility or work location supplies revocation cards, it shall also make available Union deduction cards.  Such cards shall be supplied by the Union and shall be made available only upon request of the employee.

### ARTICLE V

### Grievance Procedure

**Statement of Principle**. The parties agree that in order for the grievance procedure to function efficiently and effectively, all grievances must be resolved at the lowest possible level of the Grievance Procedure.

Therefore, the parties agree that all persons responsible for resolving grievances at all levels of the procedure shall be vested with sufficient authority to undertake meaningful discussions and to settle the grievance, if appropriate.

In order to reduce the number of grievances advanced to Step 4 of the Grievance Procedure, upon review, if an Agency or a local Union is found to have a large percentage of its grievances being advanced to the fourth level, a committee made up of representatives of the Union and CMS shall meet and endeavor to determine if all necessary means of resolving the grievances have been exhausted at the lower levels of the grievance procedure. If it is found that all necessary means to resolve a grievance(s) have not been exhausted, the committee will return the grievance(s) to the appropriate lower step for resolution.

### Section 1. Grievance

a) A grievance is defined as any difference, complaint or dispute between the Employer and the Union or any employee regarding the application, meaning or interpretation of this Agreement or arising out of other circumstances or conditions of employment.

b) A written grievance shall contain a statement of the grievant's complaint, the Section(s) of the Agreement allegedly violated, if applicable, the date of the alleged violation and the relief sought. The form shall be signed and dated by the grievant. Improper grievance form, date or section citation shall not be grounds for denial of the grievance.

c) Grievances may be processed by the Union on behalf of an employee or on behalf of a group of employees or itself setting forth name(s) or group(s) of the employee(s). Either party may have the grievant or one grievant representing group grievants present at any step of the grievance procedure, and the employee is entitled to Union representation at each and every step of the grievance

11

procedure. The resolution of a grievance filed on behalf of a group of employees shall be made applicable to the appropriate employees within that group. Where available, videoconferencing and teleconferencing may be used to conduct grievance meetings and/or Arbitration Hearings by mutual agreement of the parties.

d) Nothing shall diminish the rights of an employee under P.A. 83-1012 or the rights of the Union under this Agreement.

## Section 2. Grievance Steps

### Step 1: Immediate Supervisor

The employee and/or the Union shall orally raise the grievance with the employee's supervisor who is outside the bargaining unit. The employee shall inform the supervisor that this discussion constitutes the first step of the grievance procedure. All grievances must be presented not later than fifteen (15) working days from the date the grievant became aware of the occurrence giving rise to the complaint. The immediate supervisor shall render an oral response to the grievance within ten (10) working days after the grievance is presented. If the oral grievance is not resolved at Step 1, the immediate supervisor shall sign the written statement of grievance prepared for submission at Step 2 acknowledging discussion of the grievance. In those circumstances where securing the signature of the first level supervisor who is physically not available to sign would have adversely affected a timely submittal to the second level, the grievance will be submitted to the second level without such signature. A copy of the grievance shall subsequently be provided to the first level supervisor for such signature. The parties recognize that variations from the immediate supervisor, where mutually agreeable, may exist. Where there is no Employer representative outside a bargaining unit covered under this Agreement at Step 1, the grievance shall be filed at Step 2 and

12

the time limits for filing and responding
contained in Step 1 shall apply.

Notwithstanding the above, the employee and the
Union may discuss the problem with the bargaining
unit working supervisor, vested with the authority
by the Employer in lieu of filing a grievance. An
employee and the Union shall be allowed fifteen
(15) working days from becoming aware of the
problem, to raise it with the working supervisor
who shall have five (5) working days to respond.
If an employee or the Union wishes to file a
grievance at step 2 after the discussion with the
working supervisor, they may do so no later than
fifteen (15) working days after the working
supervisor's response is due.

### Step 2: Intermediate Administrator

In the event the grievance is not resolved in Step
1, it shall be presented in writing by the Union
to the Intermediate Administrator or his/her
designee within five (5) working days from the
receipt of the answer or the date such answer was
due, whichever is earliest. Within ten (10)
working days after the grievance is presented to
Step 2, the Intermediate Administrator shall meet,
discuss and attempt to resolve the grievance with
the Union. If the parties are unable to resolve
the grievance, the Intermediate Administrator
shall render a written answer to the grievance
within five (5) working days after such discussion
is held and provide a copy of such answer to the
Union. The written grievance shall be on an
agreed upon form which shall be provided by the
Union. The written grievance shall contain a
statement of the grievant's complaint, the
Section(s) of the Agreement allegedly violated, if
applicable, the date of the alleged violation and
the relief sought. The form shall be signed and
dated by the grievant. Improper grievance form,
date or section citation shall not be grounds for
denial of the grievance.

### Step 3: Agency Head

13

If the grievance is still unresolved, it shall be
presented by the Union to the Agency Head or
his/her designee in writing within fifteen (15)
working days after receipt of the Step 2 response
or after the Step 2 response is due, whichever is
earliest, or within fifteen (15) working days
after the Step 1 response, or after the Step 1
response is due, if Step 2 is not applicable. It
is agreed that appeals postmarked within the
fifteen (15) working days time limit are timely. A
copy of said grievance shall also be sent by the
local Union to the Union's Step 3 representative.
A grievance will not appear on the third level
agenda unless a signed and dated grievance has
been presented to the Agency Head or designee.

For the Department of Children and Family Services
the Union shall be represented by a committee in
each agency, made up of Union staff and four (4)
bargaining unit members. For the Department of
Human Services, the Union shall be represented by
a committee made up of Union staff and seven (7)
bargaining unit members. For the Department of
Corrections/Juvenile Justice, the Union shall be
represented by a committee made up of Union staff
and five (5) bargaining unit members. For all
other Departments, they will be divided into two
Multi-Agency Committees for which the Union shall
be represented by Union staff and a total of five
(5) bargaining unit members on each committee
representing all other Agencies on their
respective committee. The agencies will initially
be divided into the following committees:
Committee I shall consist of DVA, ISP, HFS, DNR,
DCEO, CMS, IEMA, AGE, AGR, DOI, ICC, ICDD, LETSB,
OSFM, and SRS. Committee II shall consist of IGB,
Lottery, IRB, DES, DPH, DHR, FPR, DOT, Arts
Council, CJIA, GAC, EPA, CDB, DMA, PTAB, PRB.
The placement of other agencies, including other
agencies not already assigned to a committee shall
be by mutual agreement of the parties. Each
agency shall be represented by the agency head or
his/her designee.

Agency level grievance meetings shall be convened
monthly at a time and place of mutual agreement.
The duration of the meeting shall be dictated by
the number of grievances pending, but shall be no

14

more than five (5) days per month. After a grievance has been discussed at a Step 3 meeting either party may place the grievance on hold status. There shall only be one hold per grievance and any deviation from same shall be on a case by case basis, following mutual consultation and agreement. If the grievance has been resolved or denied, the parties shall sign the resolution within ten (10) working days.

Attendance at such meetings shall be without loss of pay subject to reasonable attendance requirements. The bargaining unit members of the Committee shall be paid for one-half day travel, if they are traveling from the Chicago area to the Springfield area or equivalent of same. The Committee members will be in paid status the remainder of the work day while and if in preparation for the scheduled grievance meeting. Management reserves the right to verify the use of time for travel and preparation as is stated above.

**Step 4:**

a) If the matter is not resolved at Step 3, the Union, by written notice to the Employer within fifteen (15) working days of the grievance being signed-off by the parties at Step 3, may appeal the grievance(s) to a pre-arbitration staff meeting. It is agreed that appeals postmarked within the fifteen (15) working days time limit are timely.

Pre-Arbitration Staff Meeting – CMS staff and Union staff shall meet on a monthly basis in an attempt to resolve the grievance(s) which are capable of resolution. The duration of the meeting shall be dictated by the number of grievances pending, but shall be no more than five (5) days per month. Such staff shall have the full authority to resolve those cases moved to the pre-arbitration level. If the grievance has been resolved or moved to arbitration by the Union, the parties shall sign the resolution within ten (10) working days.

b) **Arbitration**

Expedited

1. The parties agree to use an expedited arbitration system for all non-priority grievances, except as otherwise provided herein. The arbitrator shall be assigned from a designated panel. The arbitrator shall be a member of the Expedited Panel agreed upon by the parties. After the parties have signed the Step 4 resolution moving the grievance to Expedited arbitration, the parties shall arrange a place and date to conduct the hearing within a period of not more than sixty (60) days. Nothing herein precludes multiple cases being heard on the same day before the same arbitrator.

2. If either party concludes that the issues involved are of such complexity or significance as to warrant referral to the Regular Arbitration Panel, that party shall notify the other party of same at least five (5) working days prior to the scheduled time for the expedited arbitration. If there is a cancellation fee, that party shall bear the cost.

3. The hearing shall be conducted in accordance with the following:
   a) the hearing shall be informal;
   b) no briefs shall be filed or transcripts made;
   c) there shall be no formal rules of evidence;
   d) the hearing shall normally be completed within one day;
   e) if the parties mutually agree at the hearing that the issues involved are of such complexity or significance as to warrant reference to the Regular Arbitration Panel, the case shall be referred to that panel and the parties shall split the arbitrator's cost; and
   f) the arbitrator may issue a bench decision at the hearing but in any event shall render a decision within two (2) working days after conclusion of the hearing. Such decision shall be based on the evidence before the arbitrator and shall

16

include a brief written explanation of
the basis for such conclusion. An
arbitrator who issues a bench decision
shall furnish a written copy of the award
to the parties within two (2) working
days of the close of the hearing;

g) the parties agree to attempt to arrive at
a joint stipulation of facts and issues
prior to arbitration;

h) the parties shall attempt to limit the
number of witnesses and the overall time
for the presentation of the grievance so
that additional grievances may be
presented on the same day. Discussion
for the purpose of limiting the length of
the arbitration shall take place prior to
the date of the arbitration.

4. A decision by a member of the Expedited
Panel shall be final and binding, except it
shall not be regarded as precedent or be
cited in any future proceeding.

**Regular Arbitration**

1. Only priority grievances as defined in the
MOU on Special Grievances, contract
interpretation cases or those other disputes
as may be mutually determined by the parties
shall be scheduled for Regular Arbitration.

2. Arbitrators shall be selected from a
permanent regular panel agreed upon by the
parties. Each such arbitrator shall commit
in advance to a minimum of two dates a month
for the calendar year. If the parties are
unable to agree on an arbitrator, the
parties shall meet to discuss an alternative
measure to select an arbitrator.

3. The parties shall make every effort to have
the dispute heard at an arbitration hearing
to be held within sixty (60) days following
the Step 4A signoff.

4. The arbitrator in any given case must render
an award therein within thirty (30) days of
the close of the record in the case.

c) **Arbitration Procedures**

Both parties agree to attempt to arrive
at a joint stipulation of the facts and

17

issues as outlined to be submitted to the arbitrator.

The Employer or Union shall have the right to request the arbitrator to require the presence of witnesses and/or documents. Each party shall bear the expense of its own witnesses who are not employees of the Employer.

Questions of arbitrability shall be decided by the arbitrator. If a question of arbitrability is raised, the arbitrator must first make a determination of the arbitrability of the dispute unless the issue is of such a nature that a determination cannot be made at the hearing. Once a determination is made that the matter is arbitrable or if such preliminary determination cannot be reasonably made, the arbitrator shall then proceed to determine the merits of the dispute. The arbitrator shall neither amend, modify, nullify, ignore, add or subtract from the provisions of this Agreement.

The expenses and fees of the arbitrator shall be paid by the losing party. In cases of split decisions the arbitrator shall determine what portion each party shall be billed for expenses and fees. If either party seeks to vacate an arbitrator's award, such party shall be responsible for all costs including reasonable attorney fees of both parties in seeking and defending against such action, unless the party attempting to vacate the award prevails, in which case each party shall bear its own costs. The cost of the hearing rooms, if any, shall be shared equally. Nothing in this Article shall preclude the parties from agreeing to the appointment of a permanent arbitrator(s) during the term of this Agreement or to use the expedited arbitration procedures of the American Arbitration Association.

The decision and award of the arbitrator shall be final and binding on the Employer, the Union, and the employee or employees involved.

18

If either party desires a verbatim record of the proceeding (Regular Arbitration only), it may cause such a record to be made, providing it pays for the record and makes a copy available without charge to the arbitrator. If the other party desires a copy it shall pay for the cost of its copy. If the parties agree to utilize a court reporter, the cost shall be shared.

## Section 3. Time Limits

a) Grievances may be withdrawn at any step of the Grievance Procedure without prejudice. Grievances not appealed within the designated time limits will be treated as withdrawn grievances.

b) The time limits at any step or for any hearing may be extended by mutual agreement of the parties involved at that particular step.

c) The Employer's failure to respond within the time limits shall not find in favor of the grievant, but shall automatically advance the grievance to the next steps.

d) If the grievant has filed an appeal with the Civil Service Commission or the Executive Ethics Commission over an identical issue and penalty to that employee's grievance, the parties agree that the Grievance Procedure will not be applicable and the grievance shall be treated as withdrawn, unless the employee withdraws his/her appeal prior to a hearing being held and the grievance was timely filed and processed by the Union through the contractual grievance procedure.

e) It is understood by the parties that the time limits for filing a grievance on a timely basis for disciplinary action shall begin on the date the employee receives the CMS-2.

## Section 4. Special Grievances/Memorandum of Understanding

Grievances concerning discharge, suspensions pending judicial verdict, demotions, geographical

19

transfers, reclassifications, layoffs, schedule changes
pursuant to Article XII, Section 19, and the salary
grade placement for new classifications pursuant to
Article XXVI, Section 8 shall be processed in accordance
with the Memorandum of Understanding.

**Section 5.  Number of Representatives and Jurisdictions**

The number of Union stewards and the facilities
they represent shall be agreed upon locally.  The Union
shall designate the Union stewards and representatives
and shall supply a list of names in writing to the
Department of Central Management Services and agency and
local level administrators on a quarterly basis.
Existing local agreements, except by mutual agreement,
shall not be changed.

**Section 6.  Time Off, Meeting Space and Equipment Use**

a) Time Off:  The grievant(s) and/or Union
grievance representative(s) will be permitted
reasonable time without loss of pay during their
working hours to investigate and process
grievances.  A grievant who is called back on a
different shift or on his/her day off as a
result of the Employer scheduling a grievance
meeting shall have such time spent in the
meeting considered as time worked.  Witnesses
whose testimony is pertinent to the Union's
presentation or argument will be permitted
reasonable time without loss of pay to attend
grievance meetings and/or respond to the Union's
investigation. No employee or Union
representative shall leave his/her work to
investigate, file or process grievances without
first notifying and making mutual arrangement
with his/her supervisor or designee as well as
the supervisor of any unit to be visited, and
such arrangements shall not be denied
unreasonably.  Employees attending grievance
meetings shall normally be those having direct
involvement in the grievance.  The Employer
reserves the right to require reasonable
documentation of time spent in processing
grievances including time spent using the

telephone for these purposes. The Employer agrees that such documentation of time shall not be construed to allow supervisors to question the content or merits of the grievance(s).

b) Meeting Space and Equipment Use: Upon request, the employee and Union representative shall be allowed the use of an available appropriate room while investigating or processing a grievance; and, upon prior general approval, shall be permitted the reasonable use of telephone facilities for the purpose of investigating or processing grievances. When feasible, and where equipment is currently available, Union stewards and/or officers may utilize electronic mail and/or facsimile equipment for the purpose of investigating or processing grievances. Such transmission will be primarily to expedite communication regarding such matters, will be reasonable with respect to time and volume, and will be consistent with this Article. Such use shall not include any long distance or toll calls at the expense of the Employer.

c) The Employer shall not be responsible for any travel or subsistence expenses incurred by employee or Union representatives in the processing of grievances.

d) Interpreters and Interpreting Equipment: The Employer will provide qualified interpreters and interpreting equipment as necessary for a reasonable accommodation.

## Section 7. Advanced Grievance Step Filing

Certain issues which by nature are not capable of being settled at a preliminary step of the grievance procedure or which would become moot due to the length of time necessary to exhaust the grievance steps, such as those pertaining to Article XXIII, Section 3, may by mutual agreement be filed at the appropriate advance step where the action giving rise to the grievance was initiated.

Mutual agreement shall take place between the appropriate Union representative and the appropriate

21

Employer representative at the step where it is desired
to initiate the grievance.

## Section 8. Pertinent Witnesses and Information

Except as otherwise provided in Steps 4(b) and
4(c), either party may request the production of
specific documents, books, papers or witnesses
reasonably available and substantially pertinent to the
grievance under consideration. Such request shall not
be unreasonably denied, and if granted shall be in
conformance with applicable laws, and rules issued
pursuant thereto, governing the dissemination of such
materials.

Requests to interview the other party's witnesses
shall be made through the appropriate representatives.
Each party shall have the right to have its
representatives present during all such interviews.

Once the Union has requested the information from
the Agency and the request is unreasonably denied, the
Union may petition the Director of Central Management
Services who shall subpoena the substantially pertinent
material and/or witnesses in conformance with the
provisions of this Section and his/her statutory powers
within ten (10) working days of receiving such request.
The operating Agency shall have ten (10) working days to
respond to the subpoena. Any delay shall not penalize
the grievant.

### ARTICLE VI

### Union Rights

## Section 1. Union Activity During Working Hours

Employees shall, after giving appropriate notice
to their supervisor(including the location and
approximate duration of the meeting), be allowed
reasonable time off with pay during working hours to
attend grievance hearings, labor/management meetings,
negotiations of their own agency and/or facility
supplemental agreements, meetings covering modifications

22

security institutions shall be placed on the maximum security schedule as long as they remain employees at a maximum security facility.

## Section 14. Academic Year Educators

Beginning with the 2013-2014 school year, steps and pay rates for Academic Year Educators at the Illinois School for the Visually Impaired and Illinois Center for Rehabilitation and Education Roosevelt shall be increased in accordance with Schedule A.

## Section 15. Direct Deposit

Effective July 1, 2004, all paychecks for new hires will be delivered via direct deposit.

## ARTICLE XXXIII

### No Strike or Lockout

## Section 1. No Strike

During the term of this Agreement there shall be no strikes, work stoppages or slow downs. No officer or representative of the Union shall authorize, institute, instigate, aid or condone any such activities.

## Section 2. Employer/Employee Rights

The Employer has the right to discipline, up to and including discharge, its employees for violating the provisions of this Article.

## Section 3. No Lockout

No lockout of employees shall be instituted by the Employer or their representatives during the term of this Agreement.

## ARTICLE XXXIV

### Authority of the Contract

#### Section 1.  Partial Invalidity

Should any part of this Agreement or any
provisions contained herein be Judicially determined to
be contrary to law, such invalidation of such part or
provision shall not invalidate the remaining portions
hereof and they shall remain in full force and effect.
The parties shall attempt to renegotiate the invalidated
part or provisions.  The parties recognize that the
provisions of this contract cannot supersede law.

#### Section 2.  Effect of Department of Central Management Services Rules and Pay Plan

Unless specifically covered by this Agreement, the
Rules of the Department of Central Management Services
and its Pay Plan shall control.  However, the parties
agree that the provisions of this Agreement shall
supersede any provisions of the Rules and Pay Plan of
the Director of Central Management Services relating to
any subjects of collective bargaining contained herein
when the provisions of such Rules or Pay Plan differ
with this Agreement.  In the event the Director of
Central Management Services proposes to change an
existing Rule or Pay Plan provision of the Department of
Central Management Services, and such Rule or Pay Plan
provision does not cover a matter contained in this
Agreement, the Union shall be notified of such proposed
change and shall have a right to discuss and negotiate
over the impact on wages, hours, and conditions of
employment, if any, of the change prior to its effective
date.

#### Section 3.  Increase or Decrease of Benefits

In the event the Director of Central Management
Services unilaterally grants an increase in fringe
benefits to every and all non-AFSCME bargaining unit
employees subject to the Personnel Code, such increase
shall be made applicable to the employees covered by
this Agreement.  Reduction in benefits, however, shall
not be made applicable, and the provisions of this
Agreement shall apply.

In the event the Employer voluntarily agrees to give any other bargaining unit under the jurisdiction of the Governor whose members are covered by the Illinois Pension Code or the State's Group Health and Life Plan a general wage increase greater than the increases provided for in this Agreement or gives more favorable treatment for insurance premiums and/or health care plan design, excluding unions opting out of the State's Group Health and Life Plan, in a contract that is negotiated after the effective date of this Agreement and expires on or before June 30, 2015, then such increases and/or favorable insurance treatment shall be afforded to the employees covered by this agreement.

Any employee who is not paid the negotiated wage rate as scheduled in this Agreement shall not be charged any increased cost for health insurance premiums, co-payments, or deductibles provided for in the Agreement during the period he/she is not being paid the negotiated rate established in the wage and salary schedule.

## Section 4.  Waiver

The parties acknowledge that during the negotiation which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter within the area of collective bargaining as defined in P.A. 83-1012 and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement.

However, the Employer agrees that during the period of this Agreement, it shall not unilaterally change any bona fide past practices and policies with respect to salaries, hours, conditions of employment, and fringe benefits enjoyed by members of the bargaining units without prior consultation and negotiations with the Union.  Where past practice conflicts with the express terms of the contract, the contract shall prevail.  In order to qualify as a bona fide past practice, such practice must be (1) unequivocal, (2) clearly enunciated and acted upon, and (3) readily ascertainable over a reasonable period of time as a fixed and established practice accepted by both parties.

## ARTICLE XXXV

### Termination

This Agreement shall be effective July 1, 2012, and shall continue in full force and effect until midnight June 30, 2015, and thereafter from year to year, unless not more than 180 days, but not less than 60 days prior to June 30, 2015, or any subsequent June 30, either party gives written notice to the other of its intention to amend or terminate this Agreement.

Exhibit 2

*Teamsters Local # 700*

# AGREEMENT

### between
### the

## ILLINOIS STATE POLICE

### and

## TEAMSTERS LOCAL 700

*Teamsters Local # 700*

# Contents

TABLE OF CONTENTS ................................................................ 2

AGREEMENT ......................................................................... 7

**ARTICLE 1**
    General Purpose .............................................................. 8

**ARTICLE 2**
    Recognition .................................................................. 9
        1. The Appropriate Bargaining Unit ............................... 9
        2. New Positions or Classification ................................. 9
        3. Bargaining Unit Integrity ........................................ 9
        4. Reorganization of Unit ........................................... 10
        5. Exclusive Bargaining Relationship ............................ 10

**ARTICLE 3**
    Non-Discrimination ......................................................... 11
        1. Prohibition Against Discrimination ........................... 11
        2. Equal Employment ............................................... 11
        3. Political Activity .................................................. 11
        4. Leaves of Absence ............................................... 11
        5. Use of Masculine Pronoun ...................................... 12

**ARTICLE 4**
    Management Rights .......................................................... 13

**ARTICLE 5**
    No Strike ..................................................................... 15
        1. No Strike Promise ................................................ 15
        2. Union Action ...................................................... 15
        3. Union Representative Discipline ............................... 15
        4. Officer Discipline ................................................ 15

**ARTICLE 6**
    Dues, Check-off and Fair Share ........................................... 16
        1. Union Dues ........................................................ 16
        2. New Deductions .................................................. 16
        3. Non-Association ................................................... 17
        4. Fair Share ......................................................... 17
        5. Drive .............................................................. 17
        6. Team Legal ........................................................ 17

**ARTICLE 7**
    Officer's Bill of Rights ...................................................... 19
        1. Internal Investigations .......................................... 19

2. Interrogations .......................................................... 19
3. Witness Interview ...................................................... 22
4. Polygraph .............................................................. 23
5. Dissemination of Information to the News Media...................... 23
6. Disclosure ............................................................ 24
7. Compulsion of Testimony .............................................. 24
8. Drug, Alcohol and Similar Testing ................................... 24
9. Random Drug Testing .................................................. 24
10. Psychiatric or Psychological Evaluations ........................... 25
11. Exercise of Rights................................................... 25
12. Criminal Investigations ............................................. 25
13. Summary Punishment and Intermediate Punishment ............. 26
14. Summary Punishment Appeals Process ................................. 26
15. Suspensions ......................................................... 27
16. Restricted Duty with Pay ............................................ 27

**ARTICLE 8**
**Grievance and Arbitration Procedure** ................................. 28
1. Procedure ............................................................. 28
2. Cases Involving Merit Board .......................................... 30
3. Expedited Arbitration ................................................ 31

**ARTICLE 9**
**Labor Management Conference** ......................................... 32

**ARTICLE 10**
**Maintenance of Benefits** ............................................. 33

**ARTICLE 11**
**Reductions in Force** ................................................. 34

**ARTICLE 12**
**Officer Security** .................................................... 36
1. Disciplinary Standard ................................................ 36
2. Inspection of Files .................................................. 36
3. Use of File Material ................................................. 36
4. Retention of Files ................................................... 37
5. Appeal of Discipline ................................................. 37

**ARTICLE 13**
**Indemnification** ..................................................... 38

**ARTICLE 14**
**Bulletin Boards** ..................................................... 39

**ARTICLE 15**
**General Provisions** .................................................. 40
1. Access and Use of Department Facilities .............................. 40
2. Notice of Personnel Transactions .................................... 40

Teamsters Local # 700

3. Repair/Replacement of Officer's Personal Property .............. 40

**ARTICLE 16**
**Union Representatives** ........................................... 41
   1. Attendance at Union Meetings ........................................ 41
   2. Grievance Processing ........................................... 41
   3. Conventions and Training Conferences ................................ 41
   4. Union Negotiating Team ........................................... 41

**ARTICLE 17**
  **Safety Issues** ................................................. 43
   1. Unsafe Conditions ........................................... 43
   2. Safety Committee ........................................... 43
   3. Training ........................................... 43

**ARTICLE 18**
  **Seniority** ................................................. 44
   1. Definition ........................................... 44
   2. Interruption of Seniority ........................................... 44
   3. Termination of Seniority ........................................... 44
   4. Seniority List ........................................... 45
   5. Filling of Positions........................................... 45

**ARTICLE 19**
  **Leaves of Absence** ................................................. 47
   1. Unpaid Leaves ........................................... 47
   2. Military Leaves ........................................... 47
   3. Jury Duty ........................................... 47
   4. Bereavement Leave ........................................... 48
   5. Maternity and Paternity Leave ........................................... 48

**ARTICLE 20**
  **Wages**........................................................... 49

**ARTICLE 21**
  **Working Out of Classification** ................................ 50
   1. Right of Temporary Assignment ................................ 50
   2. Pay for Temporary Assignments ................................ 50
   3. Successive Assignments ................................ 50

**ARTICLE 22**
  **Issued Clothing and Equipment** ................................ 51
   1. Provision ........................................... 51
   2. Maintenance Allowance ........................................... 51

**ARTICLE 23**
  **Training** ................................................. 53
   1. Tuition Reimbursement ........................................... 53
   2. Command School ........................................... 53

*Teamsters Local # 700*

3. Funding ............................................................... 53

**ARTICLE 24**
    **Vacations** ................................................................. 54
        1. Accumulation Rate ........................................... 54
        2. Scheduling .................................................... 55
        3. Vacation Cancellation ...................................... 55
        4. Vacation Call-Back .......................................... 55
        5. Maximum Accrual ........................................... 56

**ARTICLE 25**
    **Personal Time Off** ...................................................... 57

**ARTICLE 26**
    **Insurance** ................................................................ 58

**ARTICLE 27**
    **Pension Benefits** ....................................................... 59

**ARTICLE 28**
    **Holidays** ................................................................. 60
        1. Holidays .................................................... 60
        2. Scheduled Day Off ......................................... 60
        3. Work on Holidays .......................................... 61

**ARTICLE 29**
    **Overtime** ................................................................ 62
        1. Definitions .................................................. 62
        2. Overtime Compensation ................................... 62
        3. Compensatory Time Off ................................... 64
        4. Distribution of Non-Departmentally Funded Supervisory Hireback 64
           Overtime
        5. Standby Pay ................................................ 68
        6. Consecutive Hours of Work ............................... 68
        7. Zeroing the Overtime List ................................. 68

**ARTICLE 30**
    **Sick Leave** ............................................................. 69

**ARTICLE 31**
    **Quantitative Standards** ................................................ 70

**ARTICLE 32**
    **Secondary Employment** ............................................... 71

**ARTICLE 33**
    **Travel Time** ............................................................ 72

*Teamsters Local # 700*

**ARTICLE 34**
    Limited Duty ................................................................ 73

**ARTICLE 35**
    Savings Clause ................................................................ 74

**ARTICLE 36**
    Duration ................................................................ 75
        1. Term of Agreement ................................................ 75
        2. Notice of Intent to Terminate or Modify ................... 75

**ARTICLE 37**
    Transfers ................................................................ 76
        1. Voluntary Transfers .......................................... 76
        2. Involuntary Transfers ........................................ 76

**ARTICLE 38**
    PFIT ................................................................ 77

**ARTICLE 39**
    Scheduling ................................................................ 78
        1. Current Work Shift and Days Off Systems ............... 78
        2. Rotation of Schedules ....................................... 78
        3. Early and Late Shift Starts and Emergency Call Outs ... 79
        4. Splits Shifts ................................................ 80
        5. Exchange of Shifts, Days Off ............................. 80
        6. Daylight Saving Time ....................................... 80
        7. Promotional Exams and Assessments ...................... 80
        8. Interpreter Call Out ........................................ 80

**ARTICLE 40**
    Residency ................................................................ 81

**SIGNED AGREEMENT PAGE** ................................................ 82

**SIDE LETTERS**
    Sworn Affidavit ................................................ 83
    District 15 Travel ................................................ 84
    State Fair Agreements................................................ 85
    Union Representatives ................................................ 86

**SALARY SCHEDULES** ................................................ 87

## AGREEMENT

This Agreement has been made and entered into by and between the Illinois State
Police (hereinafter, "the Department") and Teamsters Local #700 (hereinafter, "the
Union") on behalf of itself and the officers in the collective bargaining unit herein
below described, signed <u>November 21, 2013</u>, for the contract period <u>July 1, 2012</u>
through June 30, 2015.

# ARTICLE 1

## General Purpose

It is the purpose of this Agreement and it is the intent of the Parties to establish and promote mutual harmonious understanding and relationships between the Department and the Union; to promote Departmental efficiency and effectiveness; to provide the Master Sergeants certain working conditions, rates of pay and other terms and conditions of employment by mutual agreement; and to provide for the peaceful and orderly adjustment of differences.

The Union recognizes that the primary purpose and responsibility of the Department is the safety and protection of the citizens of the State of Illinois and all personnel therein.

## ARTICLE 6

### Dues, Check-off and Fair Share

### 1. Union Dues

The Employer, upon receipt of a validly executed written authorization card, shall deduct Union dues and initiation fees from the payroll checks of all Master Sergeants so authorizing the deduction in any amount certified by the Union, and shall remit such deductions on a monthly basis to the Union. Authorization for such deductions shall be irrevocable unless revoked by written notice to the Employer and the Union during the fifteen (15) day period prior to the expiration of this Agreement. The Union shall indemnify, defend and hold the Employer harmless against any and all claims, demands, suits or other forms of liability, including, damages, attorney's fees and court or other costs, that shall arise out of, or by reason of action taken or not taken by the Employer for the purpose of complying with this Article, or in reliance on any list, notice, certification or assignment furnished under any of such provisions or in reliance upon Master Sergeant payroll deduction authorization cards submitted by the Union to the Employer.

The Employer shall provide to the Secretary-Treasurer and the President of the Union within thirty (30) days, name, address, classification, rate of salary and starting date of any new Master Sergeant promoted into the Union's bargaining unit.

### 2. New Deductions

It is further agreed that thirty (30) days after the date of the execution of the Agreement or the employees promotion to Master Sergeant, the Employer shall deduct from the earnings of Master Sergeants who are not members of the Union, a monthly amount as certified by the Union and shall remit such deductions to the Union at the same time that the dues check-off is remitted or on a monthly or quarterly basis as directed by the Union under terms and procedures as shall be agreed upon in negotiations between the Employer and Union. It is understood that the amount of deduction from said non-member bargaining unit Master Sergeants will not exceed the regular monthly union dues and represents the Master Sergeant's fair share cost of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and other conditions of employment.

*Teamsters Local # 700*

### 3. Non-Association

Nothing in this Agreement shall be inconsistent with Section 6(g) of the Illinois Public Labor Relations Act in protecting the right of non-association of Master Sergeants based upon the bona fide religious tenets or teachings of a Church or other religious body of which such Master Sergeants are members.

### 4. Fair Share

Each Master Sergeant who on the effective date of this Agreement is a member of the Union, and each Master Sergeant who becomes a member after that date, shall, as a condition of employment, maintain his/her membership in the Union during the term of this Agreement.

Any present Master Sergeant who does not join the Union within 30 days of the signing of this contract shall, as a condition of employment, be required to pay a fair share (not to exceed the amount of Union dues) of the cost of the collective bargaining process and contract administration. All Master Sergeants promoted on or after the effective date of this Agreement and who have not made application for membership shall be required, thirty (30) days after the later of the execution of this Agreement or their promotion date, to pay a fair share of the costs of the collective bargaining process and contract administration and pursuing matters affecting wages, hours and other conditions of employment.

### 5. DRIVE

The Employer agrees to deduct from the pay of those Master Sergeants who individually request it voluntary contributions to DRIVE. DRIVE shall notify the Employer of the amounts designed by each contributing Master Sergeant that are to be deducted from the Master Sergeant's paycheck on each payday, provided that all Master Sergeants contribute in the same amount. The Employer shall transmit such deductions to DRIVE National Headquarters on a monthly basis along with the name of each Master Sergeant on whose behalf a deduction is made, the Master Sergeant's Social Security number and amount deducted from the Master Sergeant's paycheck. The Union shall reimburse the Employer on an annual basis for the Employers' actual cost of the expenses incurred in administering this deduction.

### 6. Team Legal

The Employer agrees to deduct from the pay of those Master Sergeants who individually request it voluntary contributions to Team Legal. Teamsters Local 700 shall notify the Employer of the amounts designed by each contributing Master Sergeant that are to be deducted from the

Master Sergeant's paycheck on each payday, provided that all Master Sergeants contribute in the same amount. The Employer shall transmit such deductions to Teamsters Local 700 on a monthly basis along with the name of each Master Sergeant on whose behalf a deduction is made, the Master Sergeant's Social Security number and amount deducted from the Master Sergeant's paycheck. The Union shall reimburse the Employer on an annual basis for the Employers' actual cost of the expenses incurred in administering this deduction.

*Teamsters Local # 700*

# ARTICLE 8

## Grievance and Arbitration Procedure

### 1. Procedure

Any dispute or difference of opinion raised by the Union or any employee involving the meaning, interpretation or application of the provisions of this Agreement, except as otherwise provided in Section 2 and Section 3 hereof, shall be processed in accordance with the following procedure, it being mutually agreed that an earnest effort shall be made by the parties, predicated on the exercise of good faith, to settle such difference as expeditiously as possible. Each grievance filed under this Article shall be sent by the Department to the Union office.

Should any employee elect to file and process a grievance without the intervention of the Union according to his rights as set forth in the Act, the Union office shall be informed in writing by the Department that such a grievance has been raised. The Union shall also be notified by the Department and afforded the opportunity to be present at any meeting(s) concerning such grievance, and no settlement or adjustment of any grievance shall be inconsistent with the terms of this Agreement. Should the Union believe that any such adjustment is inconsistent with the terms of this Agreement the Union may file a grievance in accord with this Article.

At the second step, the Union may amend or modify the grievance as it was filed in the First Step. Such modified grievances may be returned by the Department to the First Step for further review in the appropriate case, but the time for processing the grievance shall continue to advance.

**Time Limits:** Any time period set forth herein is to be strictly enforced unless mutually extended in writing. Any failure by the Union or an officer to process a grievance within the time limits herein at the various steps shall be deemed a waiver of the grievance, unless good cause is established. Should the Department fail to respond within a time limit set forth at the various steps, it shall be deemed a denial of the grievance, and the Union may take the grievance to the next step of the procedure. All "days" expressed in this Article shall mean calendar days unless otherwise stated to the contrary.

**First Step:** The officer, with or without a Union Representative, at his discretion, must present the grievance in writing to his immediate

supervisor or, if unavailable, a Lieutenant within fourteen (14) calendar days of the events giving rise to the grievance or when the officer knew or reasonably should have known of the events giving rise thereto. Such written grievance shall set forth the alleged facts upon which the grievance is based, the article(s) alleged to be violated and a statement of the grievant's argument as to why such article(s) is/(are) violated by such alleged facts.

The supervisor shall then attempt to settle such grievance. Such settlement may not be collaterally attacked in any subsequent grievance. The supervisor shall answer the grievance within fourteen (14) calendar days of its submission.

If the supervisor denies the grievance, in whole or in part, it may be taken to the:

**Second Step:** Only the Union Representative may advance the grievance to the officer's Regional Commander, or equivalent, or his designee. Such action must be taken within ten (10) calendar days of the First Step answer. A meeting will be held within ten (10) days for the purpose of discussing the grievance after it has been referred to the Second Step. After the meeting and within ten (10) days, the Regional Commander will record his disposition and date and sign and serve upon the Union same. If the Union is not satisfied with the disposition, it may, within ten (10) calendar days of service, take the grievance to the:

**Third Step:** The Union may take the grievance to the Director or his designee and the meeting shall be held by the Director or his designee with Union representatives within ten (10) days after receipt of the grievance at a convenient time and place selected by the Department. The purpose of the meeting is to discuss the grievance. After said meeting and within ten (10) days, the Director or his designee shall rule on the grievance in writing.

**Arbitration:** If the matter remains unadjusted after the Third Step, the Union may take the grievance, within ten (10) days of service of the Third Step response, to impartial arbitration, provided it is the type of case on which the arbitrator is authorized to rule, before an arbitrator who shall be appointed by mutual agreement of the parties within ten (10) days from the date the Union has notified the Department in writing that it desires to submit the grievance to arbitration.

By joint agreement, the parties may establish a panel of arbitrators to

utilize. In the event the parties are unable to agree on the arbitrator, they shall request the Federal Mediation Conciliation Service (FMCS) to submit the names of seven (7) recognized and qualified arbitrators from Illinois, Indiana or Wisconsin who are members of the National Academy of Arbitrators. Each party shall have the right to reject one (1) entire panel received from FMCS. The order of alternate striking shall be determined by a coin toss. Such striking shall take place in a meeting of the parties' representatives which shall occur within ten (10) days of the receipt of the list from FMCS. The Union shall have the right to strike from this list three (3) names and the Department shall strike from the list three (3) names alternately, and the remaining person shall be designated arbitrator. The designation of the arbitrator shall be accomplished within ten (10) days of the receipt by the Department and the Union of the list from the FMCS.

The arbitrator shall hear the matter in controversy and shall take such evidence as he deems necessary. Grievances of a like nature may be consolidated upon agreement of the parties. The proceedings may be transcribed by a court reporter. If only one (1) party requests transcripts, that party shall bear the full cost associated with such transcription and shall be under no obligation to provide copy thereof to the other party. If the other party subsequently utilizes such transcript, it shall assume one-half (1/2) of the cost of such transcription and the arbitrator's copy. Each party shall bear its own costs of arbitration. The arbitrator shall render a written decision within thirty (30) days after the close of the hearing.

The decision of the arbitrator shall be final and binding on the parties.

Each party shall bear its own costs for the arbitration. The losing party shall pay all fees and expenses related to the room, court reporter, and arbitrator. Each party shall be responsible for compensating the person(s) representing each party's case, and its witnesses at the hearing. The parties shall agree upon the time and the place of the arbitration hearing.

Once the grievance is submitted to arbitration, each party shall designate in writing, no later than ten (10) days after the matter is submitted to arbitration, one (1) or more representatives vested with authority to settle the grievance. No other person shall be authorized to bind a party for purposes of settlement.

## 2. Cases Involving Merit Board

Notwithstanding the foregoing, any action which is subject to the Merit Board's jurisdiction, pursuant to 20 ILCS 2610/13 and 2610/14, shall not

be subject to arbitration under Section 1 unless and until the officer involved has petitioned the Merit Board for review of the action and, in those cases where it is permitted to do so, it declines review of the petition. While such a matter is pending before the Merit Board on the petition for review, processing of the grievance shall be suspended.

If the officer involved does not appeal to either the Merit Board or to an arbitration proceeding as provided in this Article, the officer shall be permitted to utilize up to thirty (30) days of accumulated time off which has been accrued as of the date of any suspension period, other than sick time, to satisfy the period of any suspension in lieu of days off without pay, without affecting his seniority dates as defined in Section 1, Article 18.

## 3. Expedited Arbitration

The Department and the Union shall create an expedited arbitration procedure for the purpose of resolving grievances that require resolution prior to the Department taking an action and that, during the term of this agreement, the parties mutually agree to present to expedited arbitration. The process of selecting and holding an expedited arbitration shall be agreed to by the parties. The arbitrator shall be instructed to issue the award prior to the commencement date of the protested employer action.

Exhibit 3

# AGREEMENT

between
the

## ILLINOIS STATE POLICE

and

## TROOPERS LODGE NO. 41

## FRATERNAL ORDER OF POLICE

# Contents

TABLE OF CONTENTS ....................................................................... 2

AGREEMENT ....................................................................... 8

**ARTICLE 1**
General Purpose ....................................................................... 9

**ARTICLE 2**
Recognition ....................................................................... 10
1. The Appropriate Bargaining Unit ....................................................................... 10
2. New Positions or Classification ....................................................................... 10
3. Bargaining Unit Integrity ....................................................................... 11
4. Reorganization of Unit ....................................................................... 11
5. Exclusive Bargaining Relationship ....................................................................... 11

**ARTICLE 3**
Non-Discrimination ....................................................................... 12
1. Prohibition Against Discrimination ....................................................................... 12
2. Equal Employment ....................................................................... 12
3. Political Activity ....................................................................... 12
4. Leaves of Absence ....................................................................... 12
5. Use of Masculine Pronoun ....................................................................... 13

**ARTICLE 4**
Management Rights ....................................................................... 14

**ARTICLE 5**
No Strike ....................................................................... 16
1. No Strike Promise ....................................................................... 16
2. Lodge Action ....................................................................... 16
3. Lodge Representative Discipline ....................................................................... 16
4. Officer Discipline ....................................................................... 16

**ARTICLE 6**
Dues Deduction and Fair Share Payments ....................................................................... 17
1. Dues Deduction ....................................................................... 17
2. Revocation ....................................................................... 17
3. Fair Share Payment ....................................................................... 17
4. Fair Share Obligation ....................................................................... 18
5. Liability ....................................................................... 20

**ARTICLE 7**
Officer's Bill of Rights ....................................................................... 21
1. Internal Investigations ....................................................................... 21
2. Interrogations ....................................................................... 21

3.    Polygraph ................................................................ 24
4.    Dissemination of Information to the News Media ........................ 25
5.    Disclosure ............................................................. 25
6.    Compulsion of Testimony ................................................ 25
7.    Drug, Alcohol and Similar Testing ...................................... 25
8.    Random Drug Testing .................................................... 26
9.    Psychiatric or Psychological Evaluations ............................... 26
10.   Exercise of Rights ..................................................... 26
11.   Criminal Investigations ................................................ 26
12.   Suspensions ............................................................ 27
13.   Global Positioning System (GPS) ........................................ 27

**ARTICLE 8**
Grievance and Arbitration Procedure ........................................ 29
1.    Procedure .............................................................. 29
2.    Cases Involving Merit Board ............................................ 32
3.    Cases Involving Summary Punishment ..................................... 32
4.    Expedited Arbitration .................................................. 34

**ARTICLE 9**
Labor Management Conferences ............................................... 35

**ARTICLE 10**
Maintenance of Benefits .................................................... 36

**ARTICLE 11**
Reductions in Force ........................................................ 37

**ARTICLE 12**
Officer Security ........................................................... 39
1.    Disciplinary Standard .................................................. 39
2.    Inspection of Files .................................................... 39
3.    Use of File Material ................................................... 39
4.    Retention of Files ..................................................... 40
5.    Appeal of Discipline ................................................... 40

**ARTICLE 13**
Indemnification ............................................................ 41

**ARTICLE 14**
Bulletin Boards ............................................................ 43

**ARTICLE 15**
General Provisions ......................................................... 44
1.    Access and Use of Department Facilities ................................ 44
2.    Notice of Personnel Transactions ....................................... 44
3.    Repair/Replacement of Officer's Personal Property ...................... 44

**ARTICLE 16**

**Lodge Representatives** ................................................................ 45
   1.   Attendance at Lodge Meetings ............................................... 45
   2.   Grievance Processing ........................................................... 45
   3.   Conventions and Conferences ............................................... 45
   4.   Lodge Negotiating Team ...................................................... 45

**ARTICLE 17**

**Safety Issues** ............................................................................. 47
   1.   Unsafe Conditions .............................................................. 47
   2.   Safety Committee ............................................................... 47
   3.   Training ............................................................................ 47

**ARTICLE 18**

**Seniority** .................................................................................. 48
   1.   Definition ......................................................................... 48
   2.   Probationary Period ............................................................ 48
   3.   Interruption of Seniority ...................................................... 48
   4.   Termination of Seniority ...................................................... 48
   5.   Seniority List .................................................................... 49
   6.   Current Work Shift and Days Off Systems .............................. 49
   7.   Rotation of Schedules ......................................................... 51
   8.   Early and Late Shifts Starts and Emergency Call Outs ............. 51
   9.   Split Shifts ....................................................................... 52
  10.   Exchange of Shifts, Days Off ............................................... 52
  11.   Daylight Saving Time ......................................................... 53
  12.   Promotional Exams ............................................................ 53
  13.   Interpreter Call Out ............................................................ 53

**ARTICLE 19**

**Leaves of Absence** ..................................................................... 54
   1.   Unpaid Leaves .................................................................. 54
   2.   Military Leaves ................................................................. 54
   3.   Jury Duty ......................................................................... 54
   4.   Bereavement Leave ........................................................... 55
   5.   Family and Medical Leave ................................................... 55
   6.   Maternity and Paternity ...................................................... 55

**ARTICLE 20**

**Wages** ...................................................................................... 57
   1.   Increases to Basic Salary ..................................................... 57
   2.   FTO/FTA Pay ................................................................... 57
   3.   Hazardous Duty Pay ........................................................... 57
   4.   Longevity Stipend .............................................................. 57
   5.   Shift Differential ............................................................... 58

**ARTICLE 21**
**Working Out of Classification** ................................................................. 59
   1.   Right of Temporary Assignment ................................................. 59
   2.   Pay for Temporary Assignments ................................................ 59
   3.   Specialty Assignment Pay ......................................................... 59
   4.   Successive Assignments ............................................................. 59

**ARTICLE 22**
**Issued Clothing and Equipment** ............................................................. 61
   1.   Provision ..................................................................................... 61
   2.   Maintenance Allowance ............................................................. 61
   3.   Additional Issued Equipment ..................................................... 62

**ARTICLE 23**
**Training** ................................................................................................... 63
   1.   Tuition Reimbursement .............................................................. 63
   2.   Funding ....................................................................................... 63

**ARTICLE 24**
**Vacations** ................................................................................................. 64
   1.   Accumulation Rate ..................................................................... 64
   2.   Scheduling .................................................................................. 65
   3.   Vacation Cancellation ................................................................ 65
   4.   Vacation Call-Back .................................................................... 66
   5.   Maximum Accrual ..................................................................... 66

**ARTICLE 25**
**Personal Time Off** ................................................................................... 67

**ARTICLE 26**
**Insurance** ................................................................................................. 68

**ARTICLE 27**
**Pension Benefits** ..................................................................................... 69

**ARTICLE 28**
**Seniority Positions** .................................................................................. 70
   1.   Position Subject to Seniority Bid ............................................... 70
   2.   Trooper/Agent Seniority Advancements ................................... 72

**ARTICLE 29**
**Holidays** ................................................................................................... 73
   1.   Holidays ...................................................................................... 73
   2.   Scheduled Day Off ..................................................................... 73
   3.   Work on Holidays ...................................................................... 74

**ARTICLE 30**
**Overtime** ................................................................................................. 75
   1.   Definitions .................................................................................. 75

2.   Overtime Compensation .......................................................... 75
3.   Compensatory Time Off .......................................................... 76
4.   Distribution of Scheduled Overtime ...................................... 77
5.   Standby Pay ........................................................................... 80
6.   Consecutive Hours of Work .................................................. 81

**ARTICLE 31**
  **Sick Leave** .......................................................................... 82

**ARTICLE 32**
  **Quantitative Standards** ...................................................... 83

**ARTICLE 33**
  **Secondary Employment** ...................................................... 84

**ARTICLE 34**
  **Travel Time** ........................................................................ 85

**ARTICLE 35**
  **Limited Duty** ...................................................................... 86

**ARTICLE 36**
  **Savings Clause** .................................................................... 87

**ARTICLE 37**
  **Duration** .............................................................................. 88
    1.   Term of Agreement ............................................................ 88
    2.   Notice of Intent to Terminate or Modify ........................... 88

**ARTICLE 38**
  **Transfers** ............................................................................ 89

**ARTICLE 39**
  **Selection for Investigative Assignments** ........................... 90

**ARTICLE 40**
  **Special Details of Short Duration** ...................................... 91

**ARTICLE 41**
  **Illinois State Fair/DuQuoin State Fair** ............................. 93

**SIGNED AGREEMENT PAGE** ................................................. 96

**SIDE LETTERS**
  **Compensation Day** ............................................................. 97
  **FLSA Compensatory Time Off, Accrual and Scheduling** ... 98
  **PFIT** .................................................................................... 99
  **Promotional Testing** ......................................................... 101
  **Promotions (4 years)** ........................................................ 102

Reassignments .................................................................... 103
Retroactivity ..................................................................... 104
Side Letters ....................................................................... 105
Travel Time ....................................................................... 106

## MEMORANDUM OF UNDERSTANDING

Arbitration ........................................................................ 108

SALARY SCHEDULES ................................................................. 109

## AGREEMENT

This Agreement has been made and entered into by and between the Illinois State Police (hereinafter, "the Department") and Troopers Lodge No. 41, Fraternal Order of Police (hereinafter, "the Lodge") on behalf of itself and the officers in the collective bargaining unit herein below described, signed August 21, 2014, for the contract period July 1, 2012 thru June 30, 2015.

# ARTICLE 1

## General Purpose

It is the purpose of this Agreement and it is the intent of the Parties to establish and promote mutual harmonious understanding and relationships between the Department and the Lodge; to promote Departmental efficiency and effectiveness; to provide the employees certain working conditions, rates of pay and other terms and conditions of employment by mutual agreement; and to provide for the peaceful and orderly adjustment of differences.

The Lodge recognizes that the primary purpose and responsibility of the Department is the safety and protection of the citizens of the State of Illinois and all other persons therein.

## ARTICLE 2

### Recognition

1. **The Appropriate Bargaining Unit**

   The Department does hereby recognize the Lodge as the sole and exclusive bargaining representative for the purpose of collective bargaining in any and all matters relating to wages, hours and other terms and conditions of employment of all officers in the bargaining unit as certified by the Illinois State Labor Relations Board including sworn probationary employees who may be discharged at the will of the Director during the probationary period of twelve (12) months of duty from the date of appointment, a copy of that certification being set forth in Appendix A, attached hereto and made a part hereof. Bargaining unit members may be referred to as "officers", "employees", or by their rank. The Director may in his sole discretion extend the probationary period for an officer up to an additional twelve (12) months, in six (6) month intervals, when it is deemed in the best interest of the Department to do so. Prior to extending the probationary period, the Department shall provide written notification to the Lodge office setting forth the reason(s).

2. **New Positions or Classification**

   Should the Department create new positions, ranks or classifications (hereinafter "position"), it shall notify the Lodge office in writing providing the position named, duties and proposed wage rate for the position. In the event the creation of a new position, rank or classification would result in a disagreement between the Department and the Lodge concerning bargaining unit inclusion or exclusion of the position, rank or classification, the matter shall be resolved in accordance with the Illinois Public Labor Relations Act. If the new position, rank or classification is by agreement or appropriate order included into the bargaining unit and if the affected positions, rank or classifications constitute more than one percent (1%) of the bargaining unit, the parties shall bargain collectively for the purpose of determining a rate of pay for employees in the new positions, ranks or classifications unless the job is established under emergency conditions. In such case, bargaining shall commence after the rate is established. Pending agreement, the rate to be paid shall be set by the Department. Nothing in this section changes the bargaining

10

obligations under the Act. Neither party may refer any dispute concerning these issues to interest arbitration prior to the expiration of the collective bargaining agreement in whose term the new positions, ranks or classifications were created.

**3.   Bargaining Unit Integrity**

The Department recognizes the integrity of the bargaining unit, and it will not take any action directed at eroding it. The Department will not request any bargaining unit member to perform any act which would constitute a violation of this agreement.

**4.   Reorganization of Unit**

In the event an officer is to be reclassified due to a reorganization, the affected officer shall be placed in an open position within the district in which he resides. If a position is not available within that district, the officer will be placed in an open position in another district as close to his home as possible. An officer returning to a district position shall be placed in an open position in the district and may not exercise seniority rights to bid for shift assignment until the district's next bidding period.

**5.   Exclusive Bargaining Relationship**

The Department agrees not to collectively bargain or negotiate terms of conditions of employment of bargaining unit members with any other organization, group or persons so long as the Lodge remains the exclusive collective bargaining representative of the officers.

## ARTICLE 3

### Non-Discrimination

1. **Prohibition Against Discrimination**
   The Department and the Lodge agree not to discriminate against any employee on the basis of race, sex, creed, religion, color, marital status, age, national origin, mental or physical handicap or disability. The Department shall not discriminate against an employee as a result of activities in support of or on behalf of the Lodge or membership in the Lodge.

   Officers shall not be transferred, assigned or reassigned or have their duties changed for reasons prohibited by this Section.

2. **Equal Employment**
   The Lodge recognizes the Department's obligation to comply with federal and state equal employment laws.

3. **Political Activity**
   The Department shall not prohibit an officer from or discriminate against him for engaging in political activities, campaigning while off duty or expressing political beliefs, provided the officer does not:

   A.   wear a uniform or any part thereof which would identify the individual as an officer or use property of the Department;
   B.   display or otherwise lead others to believe he is carrying a gun or a star;
   C.   hold himself out as a police officer.

4. **Leaves of Absence**
   An officer who runs for political office shall not be required to take a leave of absence. An officer who attains political office shall not be required to take a leave of absence unless the Director determines with good cause that the holding of such office interferes with or is incompatible with the performance of duties of his position. Officers running for office shall notify the Department prior to engaging in such activity.

4. **Fair Share Obligation**

Pursuant to Section 3(g) of the Illinois Public Labor Relations Act effective July 1, 1984, the parties agree that if the Lodge has or attains majority Lodge membership, or receives a majority decision by referendum as set forth below, the following shall be applicable:

Officers covered by this Agreement who are not members of the Lodge or do not make application for membership, within fifteen (15) days of employment, shall be required to pay, in lieu of dues, their proportionate share of the cost of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and conditions of employment, but not to exceed the amount of dues uniformly required of members. The proportionate share payment, as certified by the Lodge pursuant to Section 6(e) of the Illinois Public Labor Relations Act, shall be deducted by the Comptroller from the earnings of the non-member officers and shall be remitted semi-monthly to the Lodge. Majority status shall be verified by the Comptroller's Office or by mutually agreeable means through the calculation of employees making dues deductions as of January 1, 1988, or any time thereafter. If such certification by the Comptroller's Office or other mutually agreeable means shows a majority status of bargaining unit employees being Lodge members, the proportionate share provision shall be implemented during the pay period following such certification.

Where the Lodge has fair share via majority Lodge membership, if the Department has reason to believe that the Lodge no longer has such majority membership status, it may request membership certification from the Comptroller. The parties shall meet within ten (10) days of such certification, to verify the majority status or lack thereof.

If less than a majority status is verified, the Lodge will be given thirty (30) days, which may be extended by mutual agreement, in which to secure the needed additional membership to secure majority status.

Should the Lodge fail to secure a majority within the above thirty (30) days or agreed extensions thereof, fair share deductions shall cease.

Should any officer be unable to pay their contribution to the Lodge

18

## ARTICLE 6

### Dues Deduction and Fair Share Payments

1. **Dues Deduction**

   The Department agrees to deduct from the pay of those officers who individually request Lodge membership dues, assessments or fees. Request for any of the above shall be made on a form agreed to by the parties and shall be made within the provisions of the State Salary and Annuity Withholding Act and/or other applicable State statutes and/or procedures established by the Comptroller.

   Upon receipt of an appropriate written authorization from an officer, such authorized deductions shall be made in accordance with law and the procedures of the Comptroller and shall be remitted semi-monthly to the Lodge in accordance with the current procedures, and at the address designated in writing to the Comptroller by the Lodge. The Lodge shall advise the Department of any increase in dues or other approved deductions in writing at least thirty (30) days prior to its effective date. During the term of this agreement, dues shall be increased by a percentage matching each increase in the basic salary schedule as provided for in Article 20 of this Agreement.

2. **Revocation**

   All officers covered by this Agreement who have signed Lodge dues checkoff cards prior to the effective date of this Agreement or who signed such cards after such date shall only be allowed to cancel such dues deduction within the prescribed procedures of the Comptroller.

3. **Fair Share Payment**

   Pursuant to Section 3(g) of the Illinois Public Labor Relations Act effective July 1, 1984, the parties agree that the Lodge certified proportionate share, which shall not exceed the amount of dues uniformly required of members, shall be deducted from the earnings of the non-member employees as their share of the cost of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and conditions of employment subject to terms and provisions of any such fair share agreement. The amount so deducted shall be remitted semi-monthly to the Union.

based upon bona fide religious tenets or teachings of a church or religious body of which such officer is a member, such amount equal to their fair share shall be paid to a non-religious charitable organization mutually agreed upon by the officer affected and the Lodge. If the Lodge and officer are unable to agree on the matter, such payment shall be made to a charitable organization from an approved list of charitable organizations established by the Illinois State Labor Relations Board. The officer shall, on a monthly basis, furnish a written receipt to the Lodge that such payment has been made.

Where the Lodge does not have a majority of officers as being Lodge members, the Lodge may request a referendum of Lodge members to determine whether or not the proportionate share provision shall apply to non-Lodge members. The referendum will be conducted within sixty (60) days of the Lodge's request by the American Arbitration Association. Such election shall be conducted by secret mail ballot and any cost associated with the process shall be assumed by the Lodge. If it is determined by the normal and standardized ballot and election procedures established by the AAA that a majority of valid votes cast favor the proportionate share provision, such provision shall be implemented in the pay period following the certification of election results. Such proportionate share provision shall remain in effect for the duration of the Agreement. If the majority of valid votes cast do not favor the proportionate share provision, such provisions shall not be implemented and the Lodge is precluded from requesting another election within one year of the certification of election results. The question on the ballot shall be "Shall the officers in this Lodge who are not members of the exclusive bargaining agent, FOP, pay a proportionate share of the cost of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and conditions of employment?"

For purposes of determining majority membership, or eligibility to vote in an election, the count or voter list will be based on those officers on the payroll in the most recent pay period.

The parties shall request the Comptroller to provide to the Lodge a monthly computer tape for the bargaining unit listing each officer and the amount deducted for dues or fair share fees.

19

Subject to the foregoing, the Department shall, with respect to any officer in whose behalf the Department has not received a written authorization as provided for above, deduct from the wages of the officer, the fair share financial obligation, including any retroactive amount due and owing, provided the Lodge has certified to the Department that the affected officer has been given a reasonable opportunity to prepare and submit any objections to the payment and has been afforded an opportunity to have said objections adjudicated before an impartial arbitrator for the purpose of determining and resolving any objections the officer may have to the fair share fees.

5.   **Liability**
The Lodge agrees to indemnify, defend and hold harmless the Department for any and all claims, demands, suits or liabilities arising from its good faith efforts to comply with any of the terms of this Article or the deduction, collection and payment of funds hereunder.

# ARTICLE 8

## Grievance and Arbitration Procedure

1.  **Procedure**

    Any dispute or difference of opinion raised by the Lodge or any employee involving the meaning, interpretation or application of the provisions of this Agreement, except as otherwise provided in Section 2 and Section 3 hereof, shall be processed in accordance with the following procedure, it being mutually agreed that an earnest effort shall be made by the parties, predicated on the exercise of good faith, to settle such difference as expeditiously as possible. Each grievance filed under this Article shall be sent by the Department to the Lodge office.

    Should any employee elect to file and process a grievance without the intervention of the Lodge according to his rights as set forth in the Act, the Lodge office shall be informed in writing by the Department that such a grievance has been raised. The Lodge shall also be notified by the Department and afforded the opportunity to be present at any meeting(s) concerning such grievance, and no settlement or adjustment of any grievance shall be inconsistent with the terms of this Agreement. Should the Lodge believe that any such adjustment is inconsistent with the terms of this Agreement the Lodge may file a grievance in accord with this Article.

    At the second step, the Lodge may amend or modify the grievance as it was filed in the First Step. Such modified grievances may be returned by the Department to the First Step for further review in the appropriate case, but the time for processing the grievance shall continue to advance.

    **Time Limits:** Any time period set forth herein is to be strictly enforced unless mutually extended in writing. Any failure by the Lodge or an officer to process a grievance within the time limits herein at the various steps shall be deemed a waiver of the grievance, unless good cause is established. Should the Department fail to respond within a time limit set forth at the various steps, it shall be deemed a denial of the grievance, and the Lodge may take the grievance to the next step of the procedure. All "days" expressed in

this Article shall mean calendar days unless otherwise stated to the contrary.

**First Step:** The officer, with or without a Lodge representative, at his discretion, must present the grievance in writing to his immediate non-bargaining unit supervisor within fourteen (14) calendar days of the events giving rise to the grievance or when the officer knew or should have known of the events giving rise thereto. Such written grievance shall set forth the alleged facts upon which the grievance is based, the article(s) alleged to be violated and a statement of the grievant's argument as to why such article(s) is/(are) violated by such alleged facts.

The supervisor shall then attempt to adjust such grievance. Such settlement may not be collaterally attacked in any subsequent grievance. The supervisor shall answer the grievance within fourteen (14) calendar days of its submission.

If the supervisor denies the grievance, in whole or in part, it may be taken to the:

**Second Step:** Only the Lodge may advance the grievance to the officer's regional/area commander, or equivalent, or his designee. Such action must be taken within ten (10) calendar days of the First Step answer. A meeting will be held within ten (10) days for the purpose of discussing the grievance after it has been referred to the Second Step. After the meeting and within ten (10) days, the regional/area commander will record his disposition and date and sign and serve upon the Lodge same. If the Lodge is not satisfied with the disposition, it may, within ten (10) calendar days of service, take the grievance to the:

**Third Step:** The Lodge may take the grievance to the Director or his designee and the meeting shall be held by the Director or his designee with Lodge representatives within ten (10) days after receipt of the grievance at a convenient time and place selected by the Department. The purpose of the meeting is to discuss the grievance. After said meeting and within ten (10) days, the Director or his designee shall rule on the grievance in writing.

**Arbitration:** If the matter remains unadjusted after the Third Step, the Lodge may take the grievance, within ten (10) days of service of the Third Step response, to impartial arbitration, provided it is the type of case on which the arbitrator is authorized to rule, before an arbitrator who shall be appointed by mutual agreement of the parties within ten (10) days from the date the Lodge has notified the Department in writing that it desires to submit the grievance to arbitration.

By joint agreement, the parties may establish a panel of arbitrators to utilize. In the event the parties are unable to agree on the arbitrator, they shall request the Federal Mediation Conciliation Service (FMCS) to submit the names of seven (7) recognized and qualified arbitrators who are members of the National Academy of Arbitrators. Each party shall have the right to reject one (1) entire panel received from FMCS. The order of alternate striking shall be determined by a coin toss. Such striking shall take place in a meeting of the parties' representatives which shall occur within ten (10) days of the receipt of the list from FMCS. The Lodge shall have the right to strike from this list three (3) names and the Department shall strike from the list three (3) names, and the remaining person shall be designated arbitrator. The designation of the arbitrator shall be accomplished within ten (10) days of the receipt by the Department and the Lodge of the list from the FMCS.

The arbitrator shall hear the matter in controversy and shall take such evidence as he deems necessary. Grievances of a like nature may be consolidated upon agreement of the parties. The proceedings may be transcribed by a court reporter. If only one (1) party requests transcripts, that party shall bear the full cost associated with such transcription and shall be under no obligation to provide copy thereof to the other party. If the other party subsequently utilizes such transcript, it shall assume one-half (1/2) of the cost of such transcription and the arbitrator's copy. Each party shall bear its own costs of arbitration. The arbitrator shall render a written decision within thirty (30) days after the close of the hearing.

The arbitrator shall have no power to add to, subtract from, or modify any of the terms of this Agreement or any supplements to this

31

Agreement specifically referred to herein. The arbitrator shall have no authority to grant relief for any period prior to the occurrence of the events giving rise to the filing of the grievance or beyond thirty (30) days after the close of the hearing.

The decision of the arbitrator shall be final and binding on the parties.

Each party shall bear its own costs, but shall share equally the fees and expenses of the arbitration, including the costs of the room. Each party shall be responsible for compensating the person(s) representing each party's case, and its witnesses at the hearing. The parties shall agree upon the time and the place of the arbitration hearing.

Once the grievance is submitted to arbitration, each party shall designate in writing, no later than ten (10) days after the matter is submitted to arbitration, one (1) or more representatives vested with authority to settle the grievance. No other person shall be authorized to bind a party for purposes of settlement.

2. **Cases Involving Merit Board**
   Notwithstanding the foregoing, any action which is subject to the Merit Board's jurisdiction, pursuant to 20 ILCS 2610/13 and 2610/14, shall not be subject to arbitration under Section 1 unless and until the officer involved has petitioned the Merit Board for review of the action and, in those cases where it is permitted to do so, it declines review of the petition. While such a matter is pending before the Merit Board on the petition for review, processing of the grievance shall be suspended.

   If the officer involved does not appeal to either the Merit Board or to an arbitration proceeding as provided in this Article, the officer shall be permitted to utilize up to thirty (30) days of accumulated time off which has been accrued as of the date of any suspension period, other than sick time, to satisfy the period of any suspension in lieu of days off without pay, without affecting his seniority dates as defined in Section 1, Article 18.

3. **Cases Involving Summary Punishment**

32

Disciplinary action consisting of an oral or written reprimand or suspensions of two days or less, is hereby defined as summary punishment. Notwithstanding the foregoing, it is agreed that any disciplinary action consisting of a one (1) or two (2) day suspension is eligible for review by an Internal Review Panel. Summary punishment, shall not be subject to review under Paragraph 1, but may be submitted for consideration pursuant to such internal review procedures as are established and maintained by the Department. The internal review will be conducted by a panel of sworn officers randomly selected from a list of officers from the affected officer's region or its equivalent, but not the same work unit, district or zone. The panel shall not include Representatives or Officers of the Lodge. The Lodge shall be provided a list of panel members and may exclude any panel member for cause up to three (3) members per panel. Additional exclusions may be allowed by mutual consent. The list of panel members shall be provided by the Region Commanders (or their equivalent), consisting of one (1) officer of equal rank to the officer appealing, and one (1) officer of the next two (2) higher ranks. The affected officer may be represented by an FOP representative in such internal review procedures.

If the officer involved does not appeal the summary suspension to the Internal Review Panel, the officer shall be permitted to utilize accumulated time off which has been accrued as of the date of any suspension period, other than sick time, to satisfy the period of any suspension in lieu of days off without pay, without affecting his seniority dates as defined in Section 1, Article 18.

If the officer does not appeal the summary suspension to the Internal Review Panel, the officer shall have the option of electing to accept a documented non-economic suspension to satisfy any period of summary suspension in lieu of days off without pay or through the utilization of accumulated time off, other than sick time. This option is available to an officer who has not had any period of suspension for twenty four (24) months.

If the officer appeals the summary punishment and it is not rescinded, the officer shall be permitted to utilize accumulated time off which has been accrued as the date of any suspension period, other than sick time, to satisfy the period of any suspension in lieu of days off without

pay and without affecting his seniority date as defined in Section 1, Article 18. The second or subsequent IRP within a two (2) year period resulting in "sustained" findings will result in a loss of seniority for all suspensions after the first sustained IRP. The officer shall utilize accumulated time off to attend the IRP. If the summary punishment is rescinded, the accumulated time used by the officer to attend the IRP shall be restored.

After summary punishment has been administered three (3) times within a twelve (12) month period, an officer who wishes to contest the application of summary punishment on a fourth occasion within the last twelve (12) months may contest the fourth and/or succeeding applications of summary punishment by timely challenge through the internal review process and Section 2 above. The penalties for each such violation shall be uniformly applied.

4.    **Expedited Arbitration**
The Department and the Lodge shall create an expedited arbitration procedure for the purpose of resolving grievances that require resolution prior to the Department taking an action and that, during the term of this agreement, the parties mutually agree to present to expedited arbitration. The process of selecting and holding an expedited arbitration shall be agreed to by the parties. The arbitrator shall be instructed to issue the award prior to the commencement date of the protested employer action.

## ARTICLE 37

### Duration

1. **Term of Agreement**

   This Agreement and its provisions shall be effective on July 1, 2012, except as otherwise provided herein, and continue in full force and effect until 12:00 midnight on the 30th day of June, 2015, or any June 30th thereafter. It shall continue in effect from year to year thereafter unless Notice of Intent to Terminate or Modify is sent in accordance with this Article. Notices referred to herein shall be considered to have been given as of the date of receipt by the other party. Notices shall be delivered either personally or by certified mail, return receipt requested.

2. **Notice of Intent to Terminate or Modify**

   Should either party desire to terminate this Agreement or enter into negotiations concerning modifications to the terms of this Agreement, either may deliver to the other a Notice to that effect, not earlier than one hundred twenty (120) days and not later than ninety (90) days prior to the expiration date set forth in Paragraph 1 above. In the event that such Notice is delivered, negotiations between the parties shall commence within fifteen (15) days of the receipt of Notice, unless otherwise mutually agreed.

Exhibit 4

# Collective Bargaining Agreeement





**Department of Military Affairs**
**And**
**Service Employees International Union**
**Local 73**

**October 1, 2012 thru June 30, 2015**

# TABLE OF CONTENTS

| Article | Title | Page |
|---|---|---|
| | PREAMBLE | 1 |
| I | RECOGNITION | 1 |
| II | MANAGEMENT RIGHTS | 1 |
| III | NON-DISCRIMINATION | 2 |
| IV | UNION SECURITY AND DUES CHECK-OFF | 2 |
| | Section 1. Notification | 2 |
| | Section 2. Deduction | 2 |
| | Section 3. Authorization | 2 |
| | Section 4. Remittance | 2 |
| | Section 5. Indemnification | 2 |
| | Section 6. Fair Share Agreement | 2 |
| V | GRIEVANCE PROCEDURE | 3 |
| | Section 1. Definition | 3 |
| | Section 2. Grievance Steps | 4 |
| | Section 3. Time Limits | 6 |
| | Section 4. Stewards | 7 |
| | Section 5. Time Off, Meeting Space and Telephone Use | 7 |
| VI | UNION RIGHTS | 8 |
| | Section 1. Union Activity During Working Hours | 8 |
| | Section 2. Access to Employer's Premises by Union Representative | 8 |
| | Section 3. Union Bulletin Boards | 8 |
| | Section 4. Information Provided to Union | 8 |
| | Section 5. Time Off for Union Activities | 8 |
| | Section 6. Union Meetings on Employer's Premises | 9 |
| | Section 7. Rate of Pay | 9 |
| VII | LABOR MANAGEMENT MEETINGS | 9 |
| VIII | WORK RULES | 9 |
| | Section 1. Work Rules | 9 |
| | Section 2. Leave Slips | 10 |
| IX | DISCIPLINE | 10 |
| | Section 1. Definitions | 10 |
| | Section 2. Manner of Discipline | 10 |

i

Section 3. Pre-Disciplinary Meeting .................................................... 10
Section 4. Notification and Measure of Disciplinary
Action ......................................................................... 11
Section 5. Removal of Discipline .................................................... 11
Section 6. Polygraph ............................................................... 11
Section 7. Suspension Pending Discharge ......................................... 12
Section 8. Formal Counseling ..................................................... 12

X    VACATIONS ........................................................................ 12
Section 1. Amounts ................................................................. 13
Section 2. Vacation Usage ......................................................... 13
Section 3. Vacation and Loss of Earned Vacation ............................... 14
Section 4. Salary in Lieu of Vacation ............................................. 14
Section 5. Vacation Benefits on Separation of
Employee ..................................................................... 14
Section 6. Vacation Schedules by Seniority........................................ 14
Section 7. Interrupted Service...................................................... 15

XI    HOLIDAYS ......................................................................... 15
Section 1. Authorized Holidays .................................................... 15
Section 2. Holiday during Vacation ............................................... 15
Section 3. Working Holidays........................................................ 16
Section 4. Cash Payment ........................................................... 16
Section 5. Equivalent Time Off .................................................... 16
Section 6. Holiday Pay ............................................................. 16
Section 7. Holiday Observance ..................................................... 16
Section 8. Payment upon Separation ............................................. 16

XII   HOURS OF WORK AND OVERTIME ............................................ 17
Section 1. Definition ............................................................... 17
Section 2. Overtime ................................................................ 17
Section 3. Overtime Scheduling ................................................... 17
Section 4. Meal and Break Periods ............................................... 18
Section 5. Limitations .............................................................. 18
Section 6. Work Schedules ......................................................... 18
Section 7. Call Back Pay ........................................................... 18
Section 8. Supplementary Agreements ............................................ 18
Section 9. Daylight Savings Time .................................................. 18
Section 10. Switching Shifts ......................................................... 19

XIII  SENIORITY ........................................................................ 19
Section 1. Definition ............................................................... 19
Section 2. Application .............................................................. 19
Section 3. Shift Preference ......................................................... 19
Section 4. Layoff ................................................................... 19
Section 5. Recall ................................................................... 20

Section 6.  Transfers ............................................................ 20

XIV  LEAVES OF ABSENCE ..................................................... 20
Section 1.  Leave for Personal Business ............................... 20
Section 2.  Sick Leave ........................................................ 20
Section 3.  Service Connected Injury and Illness ................... 22
Section 4.  Illness and Injury Leave ..................................... 23
Section 5.  Attendance in Court ........................................... 24
Section 6.  Leaves of Absence without Pay ........................... 24
Section 7.  Employee Rights after Leave ............................... 25
Section 8.  Failure to Return from Leave ............................... 25
Section 9.  Military Leave .................................................... 25
Section 10. Maternity/Paternity Leave .................................. 25
Section 11. Family Responsibility Leave and Family
             and Medical Leave Act .................................... 26

XV  PERSONNEL FILES ........................................................ 26
Section 1.  Employee Review............................................... 26
Section 2.  Current Address................................................. 26
Section 3.  Telephone Numbers............................................ 26

XVI  HEALTH AND SAFETY .................................................... 27
Section 1.  Health & Safety.................................................. 27
Section 2.  State Health & Safety Program............................ 27
Section 3.  Damage to Personal Property............................... 27
Section 4.  Privacy............................................................. 27
Section 5.  Equipment & Clothing......................................... 27

XVII  EVALUATIONS .............................................................. 28
Section 1.  Scope .............................................................. 28
Section 2.  Preparation of Evaluation ................................... 28
Section 3.  Peer Review ..................................................... 28

XVIII  JOB CLASSIFICATION AND DUTIES ............................... 28
Section 1.  National Guard Membership ................................ 28
Section 2.  Retired National Guard Membership ..................... 29
Section 3.  Maintenance of Standards ................................... 29
Section 4.  Duties ............................................................. 29
Section 5.  Maintenance of Illinois Driver's License/Operator's
             License............................................................. 29

XIX  TRAINING ..................................................................... 30
Section 1.  Policy............................................................... 30
Section 2.  Training Information............................................ 31
Section 3.  Employee Requested Training............................... 31

| | | |
|---|---|---|
| XX | SUBCONTRACTING | 31 |
| | Section 1. Policy | 31 |
| | Section 2. Application | 31 |
| | Section 3. Successors | 31 |
| | | |
| XXI | TEMPORARY ASSIGNMENTS | 32 |
| | Section 1. Temporary Assignment | 32 |
| | Section 2. Payment | 32 |
| | | |
| XXII | MISCELLANEOUS | 32 |
| | Section 1. Supplemental Agreements | 32 |
| | Section 2. Chain of Command | 32 |
| | Section 3. Sick Leave Bank | 32 |
| | Section 4. Fitness For Duty | 32 |
| | Section 5. Medical Examination | 33 |
| | | |
| XXIII | WAGES | 33 |
| | Section 1. Pay Schedule | 33 |
| | Section 2. Department of Military Service Pay | 33 |
| | Section 2. Promotions | 33 |
| | Section 3. Shift Differential | 34 |
| | Section 4. Step Movement | 34 |
| | Section 5. Direct Deposit | 34 |
| | | |
| XXIV | HEALTH INSURANCE AND PENSIONS | 34 |
| | | |
| XXV | NO STRIKE OR LOCKOUT | 35 |
| | Section 1. No Strike | 35 |
| | Section 2. Employer/Employee Rights | 35 |
| | Section 3 No Lockout | 35 |
| | | |
| XXVI | WAIVER OR ADDITIONAL BARGAINING | 35 |
| | | |
| XXVII | PARTIAL INVALIDITY | 36 |
| | | |
| XXVIII | TERMINATION | 36 |
| | | |
| | Appendix A | 37 |
| | | |
| | Appendix B | 38 |

Memorandum of Understanding ........................................................... 39
    Work Schedules................................................................................... 39
    Light Duty........................................................................................... 40

Side Letter............................................................................................ 41
    Military Security Police....................................................................... 41
    Health Insurance ................................................................................. 41

## PREAMBLE

In order to establish harmonious employment relations and in accordance with the public policy of the State of Illinois to grant public employees full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating wages, hours and other conditions of employment or other mutual aid or protection, the parties agree as follows:

## ARTICLE I
## RECOGNITION

The Employer recognizes the Union as the sole and exclusive bargaining representative in all matters establishing and pertaining to positions of Military Security Police I/II (MSPI/II) and Military Crash Fire Rescue I and II (MCFRI/II). Such recognition excludes all managerial, supervisory, and confidential employees, as well as those persons on military status.

When the Employer establishes a new position or modifies a current position classification that is not supervisory, managerial or confidential in nature and such action would affect the current positions and titles represented by the Union, the Employer shall notify the Union in writing of the effective date of the implementation of such classification changes.

The Employer recognizes the integrity of the bargaining unit and will not take any action directed at eroding it.

## ARTICLE II
## MANAGEMENT RIGHTS

Except as amended, changed or modified by this Agreement, the Employer retains the exclusive right to manage its operations, determine its policies, budget and operations, the manner of exercise of its statutory functions and the direction of its working forces, including but not limited to: The right to hire, promote, transfer, evaluate, allocate and assign employees; to discipline, suspend and discharge for just cause; to relieve employees from duty because of lack of work or other legitimate reasons; to determine the size and composition of the work force, to make and enforce reasonable rules of conduct and regulations; to determine the departments, divisions and sections and work to be performed therein; to determine the number of hours of work and shifts per work week; to establish and change work schedules and assignments; to introduce new methods of operation; to eliminate, contract, and relocate or transfer work and maintain efficiency.

## ARTICLE III
## NON-DISCRIMINATION

The parties recognize the Employer's obligation to comply with Federal, Military and State equal employment and affirmative action laws. The Employer and Union shall not discriminate against, interfere with, restrain or coerce employees because of lawful union activities.

## ARTICLE IV
## UNION SECURITY AND DUES CHECK-OFF

**Section 1.    Notification**
The Union shall be advised in writing on a monthly basis of the name and job title of all newly hired employees who are covered by this Agreement.

**Section 2.    Deduction**
The Employer, upon receipt of a payroll deduction authorization card signed by the employee, shall deduct from each paycheck the amount of union dues.

**Section 3.    Authorization**
Deduction from payroll for the purpose of using Local 73 credit union and SEIU vision care shall be made upon proper written authorization.

**Section 4.    Remittance**
Properly authorized payroll deduction shall be remitted to the Union at the address designated in writing by the Union in accordance with the practices and procedures of the Comptroller's Office.

**Section 5.    Indemnification**
The Union shall indemnify, defend and hold the Employer harmless against any claim, demand, suit or liability arising from any action taken by the Employer in complying with this Article.

**Section 6.    Fair Share Agreement**
Pursuant to Section 3(g) of the Illinois Public Labor Relations Act effective 1 July 1984, the parties agree that effective with this Agreement, if the unit has a majority of union members, as verified by the Comptroller's Office through the calculation of employees making dues deductions or other mutually agreed upon method of verification, non-union members in the unit shall be required to pay their proportionate share of the costs of the collective bargaining process, contract administration, and/or pursuing matters affecting wages, hours and other conditions of employment, but not to exceed the amount of dues uniformly required of members. Such proportionate share, once certified by the exclusive bargaining agent, shall be deducted from the employee's paycheck. Such fair share provision shall remain in

effect for the duration of the labor agreement or until it can be demonstrated to the Employer that fewer than a majority of employees are union members.

If the unit does not have a majority of employees as union members, the exclusive bargaining agent may request an election of the bargaining unit employees to determine whether the fair share shall be applied to non-union members. Such election shall be conducted by the Illinois State Department of Labor or some other neutral third party upon which the parties can mutually agree. Such election shall be conducted by security mail ballot and any costs associated with the process shall be assumed by the exclusive representative. If it is determined by the normal and standardized balloting and election procedures established by the third party that a majority of bargaining unit employees who vote favor the fair share provision, such fair share provision, subject to the same conditions listed above, shall be implemented on the pay period following the certification of election results and shall remain in effect for the duration of the labor agreement. If the majority of employees in the bargaining unit who vote do not favor the fair share provision, such provision shall not be implemented and the exclusive representative is precluded from requesting another election within one year of the certification of election results.

If, at any time during the duration of this Agreement, the exclusive representative, through certification of the Comptroller's Office or other mutually agreed upon method of verification, can show that a majority of bargaining unit employees are union members, the fair share provision shall be implemented during the pay period following such certification and shall remain in effect for the duration of the agreement or until it can be demonstrated to the Employer a majority of employees in the bargaining unit are not union members.

## ARTICLE V
## GRIEVANCE PROCEDURE

**Section 1.   Definition**
The parties agree that every effort will be made to expedite and settle grievances at the lowest possible level. As most grievances arise from misunderstandings or disputes. They can be settled promptly and satisfactorily on an informal basis at the immediate supervisory level.

a.    A grievance is defined as any difference, complaint or dispute between the Employer and the Union or any employee regarding the application, meaning or interpretation of this Agreement. A grievance shall contain a statement of the grievance by indicating the issue involved, the relief sought, the date of the incident or alleged violation took place, an approximation if actual date is not known and the specific Article and Section of the collective bargaining agreement involved. Any grievance submitted without the above information and unsigned by the grievant and/or appropriate Union Representative shall be considered incomplete. The steward may alter the grievance in

3

order to comply as long as this is done within the current time frame and the grievance is returned to the steward within the timeframe.

b.      Grievances may be processed on behalf of a group of employees by the Union provided such are timely filed and set forth the names of the employees and the specific facts and circumstances giving rise to the grievance. Either party may have the grievant, or one grievant representing a group of grievants, present at any step of the grievance procedure. The resolution of a grievance filed on behalf of a group of employees shall be made applicable to the appropriate employees within the group.

c.      If the nature of the grievance is beyond the scope of authority of the management representative at any step of the grievance procedure the grievance may be advanced by mutual written agreement, to the appropriate step of the grievance procedure.

## Section 2.   Grievance Steps
**Step 1.**      (Informal) <u>Immediate Supervisor</u>

The employee and/or the Union shall present the grievance orally to the immediate supervisor explaining its nature and circumstances. The employee or Union Representative shall inform the supervisor that this discussion constitutes the first step of the grievance procedure. All grievances must be presented within ten (10) days (unless otherwise noted, throughout this Agreement references to days shall mean calendar days) of the date the employee became aware of the circumstances giving rise to the grievance. However, any grievance filed more than forty-five (45) days after the incident in dispute shall be considered untimely. The supervisor shall render an oral response to the grievance within seven (7) days after the grievance is presented. If the oral grievance is not resolved at Step 1, the immediate supervisor shall sign the written statement of grievance prepared for submission to Step 2 acknowledging discussion of the grievance. In those circumstances where securing the signature of the first level supervisor, (who is physically not available to sign), would have adversely affected a timely submittal to Step 2, the grievance will be submitted to the appropriate employer representative without such signature. A copy of the grievance shall subsequently be provided to the first level supervisor for such signature. The parties recognize that variations between the original oral grievance to the written form, where mutually agreeable, may exist. Matters not included in the Step 1 grievance shall not be addressed at a subsequent step of the same grievance, unless relevant to the grievance.

**Step 2.**      (Formal) <u>Security Chief or Fire Chief</u>

If the grievance is not resolved, or no answer is given within seven (7) days after oral presentation at Step 1, the Union shall present the grievance, in writing, to the Security Chief or Fire Chief, or his/her designated representative, within seven (7) days of the Step 1 response or the day such reply was due, whichever occurs first. Within ten (10) days after the grievance is presented at Step 2, the Chief, or his/her designated representative, shall discuss the grievance with the Union. Within seven (7) days after such discussion is held, the Chief or designee shall render a written answer to the

grievance and provide a copy to the Union. The written grievance shall be signed and dated by the grievant.

**Step 3.**   (Formal) Mission Support Group Commander

If the grievance is not resolved, or no answer is given within seven (7) days after discussion at Step 2, the Union shall present the grievance in writing to the Mission Support Group Commander, or his/her designee, within seven (7) days of the Step 2 response or the day such reply was due, whichever occurs first. Within ten (10) days after the written grievance is represented at Step 3, the Mission Support Group Commander, or his/her designee, shall discuss the grievance with the Union. Within seven (7) days after such discussion is held, the Mission Support Group Commander or his/her designee shall render a written answer to the grievance and provide a copy to the Union. The written grievance shall be signed and dated by the grievant.

**Step 4.**   (Formal) Wing Commander

If the grievance is not resolved, or no answer is given within seven (7) days after discussion at Step 3, the Union shall present the grievance in writing to the Wing Commander or his/her designee, within seven (7) days of the Step 3 response or the day such reply was due, whichever occurs first. Within ten (10) days after the written grievance is presented at Step 4, the Wing Commander or his/her designee shall discuss the grievance with the Union, unless mutually agreed otherwise. Within seven (7) days after such discussion is held, the Wing Commander or his/her designee shall render a written answer to the grievance and provide a copy to the Union. The written grievance shall be signed and dated by the grievant.

**Step 5.**

Arbitration.

a.    Filing: If the matter is not resolved at Step 4, or no answer is given within the time specified, the Union, by written notice to the Employer within ten (10) days after the Step 4 answer, or after such answer was due, whichever occurs first, may appeal the grievance to a pre-arbitration staff meeting. Such notification sent to the person designated by The Adjutant General, shall include a copy of the written grievance with all responses and signatures obtained as a result of the grievance process and a list of dates available for arbitrator selection. It is agreed that appeals postmarked within the ten (10) days time limit are timely.

b.    Pre-arbitration staff meeting: In an effort to resolve cases listed for arbitration which are capable of resolution, the Employer and Union shall meet in an attempt to resolve the grievances. Such staff shall have full authority to resolve those cases listed for arbitration. If the grievance has been resolved, the parties shall sign the resolution within seven (7) days. If no resolution is reached, the Union must move the grievance to arbitration within seven (7) days of the pre-arbitration staff meeting by notifying in writing the person designated by The Adjutant General of its decision to proceed to arbitration.

c.  Arbitration:  Representatives of the Employer and the Union shall meet to select an arbitrator from a list of mutually agreed upon arbitrators.  The parties shall alternately strike the names of three arbitrators, taking turns as to the first strike.  The person whose name remains shall be the arbitrator provided that either party, before striking any names, shall have the right to reject one (1) panel of arbitrators.  The arbitrator shall be notified of his/her selection by a joint letter from the Employer and Union requesting that he/she set a time and place for the hearing, subject to the availability of the Employer and Union representatives and shall be notified of the issue where mutually agreed by the parties.

d.  Arbitration Procedures:  Both parties agree to attempt to arrive at a joint stipulation of the facts and issues to be submitted to the arbitrator.

1.  The Employer and Union shall have the right to request the arbitrator to require the presence of witnesses and/or documents.  Each party shall bear the expense of its own witnesses who are not employees of the Employer.

2.  Questions of arbitrability shall be decided by the arbitrator.  The arbitrator shall make a preliminary determination on the question of arbitrability.  Once a determination is made that the matter is arbitrable, or if such preliminary determination cannot be reasonably made, the arbitrator shall then proceed to determine the merits of the dispute.  The arbitrator shall not amend, modify, nullify, ignore, add or subtract from the provisions of this Agreement.

3.  The expenses and fees of the arbitrator shall be shared equally by the parties.  The cost of hearing rooms, if any, shall be shared equally.  Nothing in this Article shall preclude the parties from agreeing to the appointment of a permanent arbitrator(s) during the term of this Agreement or to use the expedited arbitration procedures of the American Arbitration Association.

4.  The decision and award of the arbitrator shall be final and binding on the Employer, the Union, and the employee or employees involved.

5.  If either party desires a verbatim record of the proceeding, it may cause such a record to be made, providing it pays for the record and makes a copy available without charge to the arbitrator.  If the other party desires a copy, it shall pay for the cost of its copy.

**Section 3.  Time Limits**
a.  Grievances may be withdrawn at any step of the grievance procedure without prejudice.  Grievances not appealed within the designated time limits will be treated as withdrawn.  Failure of the Employer to respond within the designated time limits at any step of the grievance procedure shall not cause a finding in favor of the

grievant but shall permit the Union to move the grievance to the next step within the designated time limits, except to Step 4.

b.     The time limits at any step or for any hearing may be extended by mutual agreement of the parties involved at that particular step.

c.     Grievances concerning suspensions and/or discharge of any employee shall be initiated at Step 4 of the grievance procedure. Both parties agree that Step 4 grievance meetings involving suspension and/or discharge should be held expeditiously. It is understood by the parties that the time limits for filing a grievance on a timely basis for disciplinary action shall begin on the date the employee receives notification of the action.

d.     A grievance may, by mutual agreement, be filed at an advanced step of the grievance procedure. Mutual agreement must occur between the parties responsible for holding the grievance at the step where it is desired to be filed.

### Section 4.  Stewards
There shall be one Union steward per shift per location, plus one alternate.  The Union shall designate the Union stewards and shall notify the Employer in writing of any changes in such.

### Section 5.  Time Off, Meeting Space and Telephone Use
a.     Time Off:  The grievant(s) and/or Union steward(s), upon prior approval of the Employer, will be permitted reasonable time without loss of pay during his/her hours to investigate and process grievances, subject to the operating needs of the Employer. A grievant(s) called back on a different shift or on his/her day off as a result of the Employer scheduling a grievance meeting shall have such time spent in the meeting considered as time worked. Witnesses who are members of the bargaining unit whose testimony is pertinent to the Union's presentation or argument will be permitted reasonable time without loss of pay to attend grievance meetings and/or respond to the Union's presentation.

b.     Meeting Space and Telephone and Computer Use:  Upon request, the employee and Union representative shall be allowed use of an available appropriate room while investigating or processing a grievance; and, upon approval, shall be permitted the reasonable use of telephone and/or computer facilities for the purpose of investigating or processing grievances. Such use shall not include any long distance or toll calls at the expense of the Employer.

c.     Stewards shall be released, without loss of pay, for a reasonable period of time subject to the operating needs of the Employer.

d.     Expenses:  The Employer shall not be responsible for any travel or subsistence expenses incurred by employees or Union representatives in the processing of grievances.

e.   Grievance Processing:  The parties agree that the Employer may require reasonable documentation of time spent in processing grievances, including time spent using the telephone for these purposes, when there is suspected abuse of these privileges by a Union Steward.

## ARTICLE VI
## UNION RIGHTS

### Section 1.   Union Activity During Working Hours
Employees shall, after giving appropriate notice to their supervisor, be allowed reasonable time off with pay during working hours to attend grievance hearings, labor management meetings, committee meetings (and activities) if such committees have been established by this contract, or meetings called or agreed to by the Employer, if such employees are entitled or required to attend such meetings by virtue of being Union representatives, stewards, witnesses, or grievants and if such attendance does not interfere with the Employer's operations.  The union agrees to provide a current listing of all union representatives and stewards to the Employer.

### Section 2.   Access to Employer's Premises by Union Representative
The Union recognizes that access to the work sites is subject to the authority of the Employer.  Union representatives shall request approval prior to arrival at the work site.  The Employer reserves the right to designate a meeting place or to provide a representative to accompany a Union representative.  Such visitations shall be for the reason of the administration of this Agreement.

### Section 3.   Union Bulletin Boards
The Employer shall provide bulletin boards or space in each work location for the purposes of posting Union material.  Items posted shall not be political, partisan or defamatory in nature, and any such items may be removed at the discretion of the Employer.  The purpose of these bulletin boards is solely for the administration of this Agreement.

### Section 4.   Information Provided to Union
At least once each month, the Employer shall notify the Union in writing of the following personnel transactions involving bargaining unit employees on a work location basis:  new hires, promotions, layoff, reemployment, transfers, leaves, returns from leaves, suspensions, discharges and terminations.

### Section 5.   Time Off for Union Activities
Local Union representatives who are employed at the Department of Military Affairs shall be allowed time off without pay for legitimate Union business such as contract negotiations, union meetings, State or area wide Union committee meetings, State or international conventions, provided such representative(s) shall give reasonable advance notice to his/her supervisor of such absence and shall be allowed such time off if it does not substantially interfere with the operating needs of the

Military Crash, Fire, Rescue I/II personnel will make the following additional contributions to the pension system: 5.5% of compensation effective 1 April 2006.

Military Security Police I/II will make the following contributions to the pension system: 4% of compensation effective 1 April 2006.

## ARTICLE XXV
## NO STRIKE OR LOCKOUT

**Section 1.   No Strike**

During the term of this Agreement there shall be no strikes, work stoppages or slow downs. No officer or representative of the Union shall authorize, institute, instigate, aid or condone any such activities.

**Section 2.   Employer/Employee Rights**

The Employer has the right to discipline, up to and including discharge, its employees for violating the provisions of the Article.

**Section 3.   No Lockout**

No lockout of employees shall be instituted by the Employer or their representatives during the term of this Agreement.

## ARTICLE XXVI
## WAIVER OR ADDITIONAL BARGAINING

The parties hereby acknowledge that the terms and conditions included in this Agreement represents the full and complete understanding between the parties. The Employer and the Union, for the life of this Agreement, each waives any obligation to bargain collectively with respect to any subject or matter that may or may not have been known to either or both of the parties at the time this Agreement was negotiated or signed and that any bargaining will be limited to a successor Agreement, except as otherwise provided or that with the written mutual consent of both parties, such matters maybe discussed and the Agreement modified. Benefits not otherwise covered by this Agreement may not be reduced.

## ARTICLE XXVII
### PARTIAL INVALIDITY

Should any part of this Agreement or any provisions contained herein be judicially determined to be contrary to law, such invalidation of such part or provision shall not invalidate the remaining portions hereof and they shall remain in full force and effect. The parties shall attempt to renegotiate the invalidated part or provisions. The parties recognize that the provisions of this contract cannot supersede law.

## ARTICLE XXVIII
### TERMINATION

This Agreement shall be effective 1 October 2012 and shall continue in full force and effect until midnight 30 June 2015, and thereafter from year to year, unless not more than 180 days, but not less than 90 days prior to 30 June, either party gives written notice to the other of its intention to amend or terminate this Agreement. Upon termination, all obligations are automatically canceled except that the provisions of the Grievance Procedure shall continue in effect for such period of time as is necessary to complete the processing of any grievance presented prior to the termination of the Agreement.

Daniel M. Krumrei

By William D Cobetto                          _____
_____                     Local 73 SEIU
Department of Military Affairs
June 26, 2013                                 4/26/2013
Date                                          Date

36

Exhibit 5



**Council 31**
**AFSCME**

**AFSCME / State of Illinois**
**CONTRACT GRIEVANCE**

549130

| Employee's Name | AFSCME C. 31 | Agency | All | AFSCME Local No. | C.31 | Date Raised at Step 1 | 3-5-15 |

| Job Title | All Affected | RC | All | Facility or Office | Statewide |

**STEP 1 - Oral Step**

Signature of Immediate supervisor acknowledging discussion of grievance.

(Date of Discussion)

Signature of employee or union acknowledging discussion of grievance.

(Date)

**STEP 2** – (To be submitted within 5 work days after supervisor's answer given or due, whichever occurs first.)
**Statement of Grievance** (Include facts of the complaint, sections of the Agreement violated – if applicable, and relief requested):

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and other agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by the Union.

This Executive Order violates the Agreement by negating the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. It also violates the provisions of the Agreement which requires the State to remit fair share fees to the Union, (cont.)

Employee _____

AFSCME hereby appeals the grievance to Step 2 _____

(Union Representative) (Date)

Date received by Intermediate Administrator or Designee _____

(DATE) (INITIALS)

Answer (to be given within 15 working days of receipt – use attachment if additional space is required)

Date settlement meeting held _____

FILED DIRECTLY TO STEP 4

Signature _____ Date _____

(Employer Representative)

☐ Accepted by Union  ☐ Rejected by Union  Signature _____ Date _____

(Union Representative)

**STEP 3 - To be submitted to Agency Head** (certified mail - return receipt recommended) within 15 working days after Step 2 answer was given or due, whichever occurs first. Local must send copy to Council 31 (include fact sheets, information and documentation with Union copy only.)

AFSCME hereby appeals the grievance to STEP 3  Signature _____ Date _____

(Union Representative)

**STEP 4 - To be submitted to Director of Central Management Services within 15 days after Step 3 sign off.**

AFSCME hereby appeals the grievance to STEP 4.  Signature _____ Date _____

(Union Representative)

Grievance 549130 (cont.)

and violates all other pertinent provisions of the Agreement.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the Union and enticing new hires not to join the union.

This grievance is being filed directly to Step 4 of the grievance procedure. Step 4 is the appropriate step pursuant to the Agreement because the action being grieved was initiated by Governor Rauner. Unless the Employer is prepared to grant the grievance, the Union is requesting that the grievance be submitted to arbitration immediately.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1) The Union demands that the Employer immediately cease implementation of the Executive Order.

2) The Union demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Exhibit 6



**Illinois Department
of Transportation**

Technical Employee Request for
Grievance Review -
Professional/Technical (Union)

Class Grievance _____    Various _____

        Employee Name                                    Position Title

_____    JP Fyans _____

    District/Division/Office/Bureau                            Union Representative

**Statement of Grievance (Include Citation(s) of Alleged Violations):**

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Article I (Recognition) and Article III (Checkoff-Fair Share) of the current Collective Bargaining Agreement.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the Agreement which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table

**Relief Requested:**

The Union demands to be made whole in all ways, including but not limited to the following:

1.    The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.

2.    The Union demands that the Employer immediately cease implementation of the Executive Order.

3.    The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs

**Step 1 (Oral Discussion By Employee or Union Representative with Immediate Supervisor):**

*"We the undersigned have discussed this matter orally on the date noted below and were unable to resolve the grievance"*

_____    _____    _____
    Date Discussed                     Immediate Supervisor              Employee or Union Representative

**Step 2 (Director/District Engineer/Bureau Chief or Designee):**

*"My grievance, as stated above, remains unresolved and is herewith submitted for your review"*

_____    _____    _____
    Date Submitted                 Employee or Union Representative         Date of Meeting (if meeting held)

**Employer Response:**

---

| _____ | _____ | _____ |
| Date | Director/District Engineer/Bureau Chief or Designee | Employee or Union Representative |
| | | ☐ Accepted ☐ Rejected |

Page 1 of 2

LR 1468A ( Rev. 10/08)

---

**Step 3 (Secretary of Transportation or Designee):**

*"My grievance remains unresolved and is herewith submitted for your review."*

3/5/2015
_____
Date Submitted

_____
Employee or Union Representative

**Employer Response:**

| _____ | _____ | _____ |
| Date | Secretary of Transportation or Designee | Employee or Union Representative |
| | | ☐ Accepted ☐ Rejected |

**Step 4 (Union Employer Grievance Committee/Arbitration):**

(a)    If the grievance remains unresolved or is unsatisfactory after receiving the response of the Secretary of Transportation or Designee, the Union may, by written notice to the Department of Central Management Services, Office of Labor Relations, request a review of the grievance by the Union-Employer Grievance Committee.

(b)    If the 4(a) response remains unsatisfactory or the grievance is not resolved, the Union may appeal the grievance to arbitration.

**CMS** ILLINOIS
**DEPARTMENT OF CENTRAL**
**MANAGEMENT SERVICES**

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | | SOC. SEC. NO. | AGENCY |
|---|---|---|---|---|
| Class Grievance | Various | | | CMS |
| WORK ADDRESS | | BARGAINING AGENT (IF ANY) JP Fyans | | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attachment "A."

| | | |
|---|---|---|
| **STEP 1** | DATE SUBMITTED | |
| | DATE OF RESPONSE | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE. |
| | SUPERVISOR'S SIGNATURE | EMPLOYEE'S SIGNATURE |
| **STEP 2** | DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: |
| | DATE OF RESPONSE | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | EMPLOYEE'S SIGNATURE |
| **STEP 2a** | DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE): |
| | DATE OF RESPONSE | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | |
| | MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE |
| **STEP 3** | DATE SUBMITTED 3/5/2015 | RESPONSE OF AGENCY HEAD: |
| | DATE OF RESPONSE | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | |
| | AGENCY HEAD'S SIGNATURE | EMPLOYEE'S SIGNATURE |
| **STEP 4** | I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION. | | |
| | DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |

CMS-409 (Rev. 7/99)    IL 401-0735

# ATTACHMENT A

**STATEMENT OF GRIEVANCE**

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Article I (Recognition) and Article III (Check off-Fair Share) of the current Collective Bargaining Agreement.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the Agreement which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

**RELIEF REQUESTED:**

The Union demands to be made whole in all ways, including but not limited to the following:

1.     The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.

2.     The Union demands that the Employer immediately cease implementation of the Executive Order.

3.     The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.



**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| Class Grievance | Various | | Dept of Natural Resources |

| WORK ADDRESS | BARGAINING AGENT (IF ANY) |
|---|---|
| | JP Fyans |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attachment "A."

**STEP 1**

| DATE SUBMITTED | |
|---|---|
| DATE OF RESPONSE | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE. |
| SUPERVISOR'S SIGNATURE | EMPLOYEE'S SIGNATURE |

**STEP 2**

| DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: |
|---|---|
| DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | EMPLOYEE'S SIGNATURE |

**STEP 2a**

| DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE): |
|---|---|
| DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | |
| MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE |

**STEP 3**

| DATE SUBMITTED | RESPONSE OF AGENCY HEAD: |
|---|---|
| 3/5/15 DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | |
| AGENCY HEAD'S SIGNATURE | EMPLOYEE'S SIGNATURE |

**STEP 4**

I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION.

| DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |
|---|---|---|

CMS-408 (Rev. 7/93)   IL 401-0726

# ATTACHMENT A

**STATEMENT OF GRIEVANCE**

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Article I (Recognition) and Article III (Check off-Fair Share) of the current Collective Bargaining Agreement.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the Agreement which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table

**RELIEF REQUESTED:**

The Union demands to be made whole in all ways, including but not limited to the following:

1.     The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.

2.     The Union demands that the Employer immediately cease implementation of the Executive Order.

3.     The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

Exhibit 7

**CMS** ILLINOIS
**DEPARTMENT OF**
**CENTRAL MANAGEMENT**
**SERVICES**

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM,
RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES
TO IMMEDIATE SUPERVISOR.

**GRIEVANCE REPORT AND RECORD**

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| Teamsters Local 700 | On Behalf of All Affected Members | DNA | IDOT |
| WORK ADDRESS | | BARGAINING AGENT (IF ANY) | |
| 1300 W. Higgins Park Ridge, IL. 60068 | | Teamsters Local 700 | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attached Documentation. Please consider attached as part of this grievance

**STEP 1**

DATE SUBMITTED
Initiated at Level 3

DATE OF REPONSE

SUPERVISOR'S SIGNATURE — EMPLOYEES SIGNATURE

**STEP 2**

DATE SUBMITTED — RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR:

DATE OF REPONSE

RESPONSE: ☐ ACCEPTED  ☐ REJECTED — EMPLOYEE'S SIGNATURE

**STEP 2a**

DATE SUBMITTED — RESPONSE OF MANAGER (WHERE APPLICABLE)

DATE OF REPONSE

RESPONSE: ☐ ACCEPTED  ☐ REJECTED
MANAGER'S SIGNATURE — EMPLOYEE'S SIGNATURE

**STEP 3**

DATE SUBMITTED — RESPONSE OF AGENCY HEAD
5-Mar-15

DATE OF REPONSE

RESPONSE: ☐ ACCEPTED  ☐ REJECTED
AGENCY HEAD'S SIGNATURE — EMPLOYEE'S SIGNATURE   TL700

I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION

**STEP 4**

| DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |
|---|---|---|
| | | |





# TEAMSTERS LOCAL 700

Affiliated with the International Brotherhood of Teamsters

Phone (847) 939-9700 • Fax (847) 939-6495 • www.Teamsters Local 700.com
1300 W. Higgins Road • Suite 301 • Park Ridge, Illinois 60068

BECKY STRZECHOWSKI, President • MICHAEL G. MELONI, Secretary-Treasurer

05 March 2015

Re:  Grievance Challenging Agency Action to not remit fair share fees to Teamsters Local 700

Dear Jennifer Broughton,

Enclosed please find a grievance we are filing on behalf of all Teamsters Local 700 bargaining unit members employed by the Illinois Department of Transportation. The grievance contests the Governor's directive to all State agency heads that they refuse to comply with fair share contract provisions. This action is a violation of Articles 2 and 5 of the Local 700 collective bargaining agreement and the Fair Share Supplemental Agreement.

Pursuant to Article 6.9 of the collective bargaining agreement, we are requesting your consent to file this grievance at an advanced step because it contests a violation which will occur at the agency level. Please confirm whether you consent to advance filing as soon as possible but no later than March 12, 2015.

Very truly yours,

Thomas J Wilcox
Business Representative
Teamsters Local 700



# TEAMSTERS LOCAL 700





05 March 2015

Re:  Grievance Challenging Agency Action to not remit fair share fees to Teamsters Local 700

Dear Tricia Pineda,

Enclosed please find a grievance we are filing on behalf of all Teamsters Local 700 bargaining unit members employed by the Illinois Department of Central Management Services.  The grievance contests the Governor's directive to all State agency heads that they refuse to comply with fair share contract provisions.  This action is a violation of Articles 2 and 5 of the Local 700 collective bargaining agreement and the Fair Share Supplemental Agreement.

Pursuant to Article 6.9 of the collective bargaining agreement, we are requesting your consent to file this grievance at an advanced step because it contests a violation which will occur at the agency level.  Please confirm whether you consent to advance filing as soon as possible but no later than March 12, 2015.

Very truly yours,

Thomas J Wilcox
Business Representative
Teamsters Local 700

# CMS ILLINOIS

## DEPARTMENT OF
## CENTRAL MANAGEMENT
## SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

### GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| Teamsters Local 700 | On Behalf of All Affected Members | DNA | Illinois Central Management Services |
| WORK ADDRESS | | BARGAINING AGENT (IF ANY) | |
| 1300 W. Higgins Park Ridge, IL. 60068 | | Teamsters Local 700 | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attached Documentation. Please consider attached as part of this grievance

**STEP 1**

DATE SUBMITTED
Initiated at Level 3

DATE OF RESPONSE

SUPERVISOR'S SIGNATURE:

EMPLOYEE'S SIGNATURE

**STEP 2**

DATE SUBMITTED

RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR:

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED

EMPLOYEE'S SIGNATURE

**STEP 2a**

DATE SUBMITTED

RESPONSE OF MANAGER (WHERE APPLICABLE)

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED

MANAGER'S SIGNATURE

EMPLOYEE'S SIGNATURE

**STEP 3**

DATE SUBMITTED
5-Mar-15

RESPONSE OF AGENCY HEAD

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED

AGENCY HEAD'S SIGNATURE

EMPLOYEE'S SIGNATURE

**STEP 4**

I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION

| DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |
|---|---|---|



# TEAMSTERS LOCAL 700

Affiliated with the International Brotherhood of Teamsters

Phone: (847) 919-9700 • Fax: (847) 518-8895 • www.TeamstersLocal700.com
1300 W. Higgins Road • Suite 301 • Park Ridge, Illinois 60068

BECKY STRZECHOWSKI, PRESIDENT • MICHAEL G. MELONE, SECRETARY-TREASURER



05 March 2015

Re: Grievance Challenging Agency Action to not remit fair share fees to Teamsters Local 700

Dear Phillip Cobb,

Enclosed please find a grievance we are filing on behalf of all Teamsters Local 700 bargaining unit members employed by the Illinois Department of Employment Security. The grievance contests the Governor's directive to all State agency heads that they refuse to comply with fair share contract provisions. This action is a violation of Articles 2 and 5 of the Local 700 collective bargaining agreement and the Fair Share Supplemental Agreement.

Pursuant to Article 6.9 of the collective bargaining agreement, we are requesting your consent to file this grievance at an advanced step because it contests a violation which will occur at the agency level. Please confirm whether you consent to advance filing as soon as possible but no later than March 12, 2015.

Very truly yours,

Thomas J Wilcox
Business Representative
Teamsters Local 700

**CMS** ILLINOIS

**DEPARTMENT OF**
**CENTRAL MANAGEMENT**
**SERVICES**

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM.
RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES
TO IMMEDIATE SUPERVISOR.

**GRIEVANCE REPORT AND RECORD**

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| Teamsters Local 700 | On Behalf of All Affected Members | DNA | Illinois Dept. Employment Security |
| WORK ADDRESS | | BARGAINING AGENT (IF ANY) | |
| 1300 W. Higgins Park Ridge, IL. 60068 | | Teamsters Local 700 | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attached Documentation. Please consider attached as part of this grievance

| | | | |
|---|---|---|---|
| **STEP 1** | DATE SUBMITTED<br>Initiated at Level 3 | | |
| | DATE OF REPONSE | | |
| | SUPERVISOR'S SIGNATURE | | EMPLOYEE'S SIGNATURE |
| **STEP 2** | DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: | |
| | DATE OF REPONSE | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | EMPLOYEE'S SIGNATURE |
| **STEP 2a** | DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE) | |
| | DATE OF REPONSE | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | |
| | MANAGER'S SIGNATURE | | EMPLOYEE'S SIGNATURE |
| **STEP 3** | DATE SUBMITTED<br>5-Mar-15 | RESPONSE OF AGENCY HEAD | |
| | DATE OF REPONSE | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | |
| | AGENCY HEAD'S SIGNATURE | | EMPLOYEE'S SIGNATURE |

I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION

| | | | |
|---|---|---|---|
| **STEP 4** | DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |



# TEAMSTERS LOCAL 700

Affiliated with the International Brotherhood of Teamsters

Phone: (847) 939-9700 • Fax (847) 939-6495 • www.teamsterslocal700.com
1300 W. Higgins Road • Suite 301 • Park Ridge, Illinois 60068

BECKY STRZECHOWAKI, PRESIDENT • MICHAEL G. MELONE, SECRETARY TREASURER



05 March 2015

Re: Grievance Challenging Agency Action to not remit fair share fees to Teamsters Local 700

Dear Laron Cole,

Enclosed please find a grievance we are filing on behalf of all Teamsters Local 700 bargaining unit members employed by the Illinois Department of Human Services. The grievance contests the Governor's directive to all State agency heads that they refuse to comply with fair share contract provisions. This action is a violation of Articles 2 and 5 of the Local 700 collective bargaining agreement and the Fair Share Supplemental Agreement.

Pursuant to Article 6.9 of the collective bargaining agreement, we are requesting your consent to file this grievance at an advanced step because it contests a violation which will occur at the agency level. Please confirm whether you consent to advance filing as soon as possible but no later than March 12, 2015.

Very truly yours,

Thomas J Wilcox
Business Representative
Teamsters Local 700

**CMS** ILLINOIS
**DEPARTMENT OF**
**CENTRAL MANAGEMENT**
**SERVICES**

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

**GRIEVANCE REPORT AND RECORD**

| EMPLOYEE NAME: | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| Teamsters Local 700 | On Behalf of All Affected Members | DNA | Department of Human Services |
| WORK ADDRESS | | BARGAINING AGENT (IF ANY) | |
| 1300 W. Higgins Park Ridge, IL. 60068 | | Teamsters Local 700 | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attached Documentation. Please consider attached as part of this grievance

| | | | |
|---|---|---|---|
| **STEP 1** | DATE SUBMITTED<br>Initiated at Level 3<br>DATE OF REPONSE | | |
| | SUPERVISOR'S SIGNATURE | | EMPLOYEES SIGNATURE |
| **STEP 2** | DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: | |
| | DATE OF REPONSE | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | EMPLOYEE'S SIGNATURE |
| **STEP 2a** | DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE) | |
| | DATE OF REPONSE | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | |
| | MANAGER'S SIGNATURE | | EMPLOYEE'S SIGNATURE |
| **STEP 3** | DATE SUBMITTED<br>5-Mar-15<br>DATE OF REPONSE | RESPONSE OF AGENCY HEAD | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | |
| | AGENCY HEAD'S SIGNATURE | | EMPLOYEE'S SIGNATURE<br>_TL700_ |
| **STEP 4** | I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION | | |
| | DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |

Exhibit 8

ILLINOIS STATE POLICE
MASTER SERGEANT CBA GRIEVANCE

Grievant's Name Teamsters Local 700 - Chief Steward M/Sgt Robert Piennzsie          I.D. Number 4061

Rank     Master Sergeant                                    Division/Work Location DIR/labor Relations

Date dispute occurred: March 5, 2015                       Home Phone     #847-939-9700

Statement of Grievance (Include facts of the complaint, Sections of the Agreement violated [if applicable] and relief requested.)
Attach additional pages as needed.

SEE ATTACHED

_____
_____
_____
_____
_____
_____
_____
_____
_____

Union Representative _M/SGTROBE_ 4061        Employee _M/SGT ROBE_ 4061
                  (Signature Optional)                        (Signature)

                                          Department Grievance Number _____

Date and time grievance presented to immediate supervisor or lieutenant via email to Lt. Chris Campbell on:

Step I – response to be given within fourteen (14) calendar days from the date the grievance was first presented.

_____
_____
_____

                          Signature _____     Date _____

Grievant's Initials _____ date _____ and time _____ acknowledging receipt of Step I response.

Signature _____     Date _____   of union representative requesting that the grievance be advanced to Step II.

Step II – response to be given within ten (10) days of the meeting held to discuss the grievance.

_____
_____
_____

                          Signature _____     Date _____

Signature _____     Date _____   of union representative requesting that the grievance be advanced to Step III.

Step III – response to be given within ten (10) days of the meeting held to discuss the grievance.

_____
_____
_____

                          Signature _____     Date _____

## ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Illinois State Police to violate Articles 2 and 6 of the Collective Bargaining Agreement.

Specifically, the Executive Order unilaterally negates the Fair Share provision of the Agreement, which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Third Step of the Grievance procedure as soon as possible. If the grievance is not resolved at the Third Step, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

Exhibit 9



# TEAMSTERS LOCAL UNION NO. 330
## GENERAL CHAUFFEURS SALESDRIVERS AND HELPERS
### AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS



2400 BIG TIMBER ROAD, BUILDING B, SUITE 201, ELGIN, ILLINOIS 60124 • 847-695-1516 • FAX 847-695-1579

DOMINIC ROMANAZZI *President / Principal Officer*

March 5, 2015

Ms. Jennifer Broughton
Illinois Department of Transportation
2300 S. Dirksen Parkway - Room 124
Springfield, IL 62764

Re: Grievance Challenging Agency Action to not remit fair share fees to Teamsters Local 330

Dear Ms. Broughton,

Enclosed please find a grievance we are filing on behalf of all Teamsters Local 330 bargaining unit members employed by the Department of Transportation. The grievance contests the Governor's directive to all State agency heads that they refuse to comply with fair share contract provisions. This action is a violation of Articles 1 and 4 of the Local 330 collective bargaining agreement and the Fair Share Supplemental Agreement.

Pursuant to Article 6.9 of the collective bargaining agreement, we are requesting your consent to file this grievance at an advanced step because it contests a violation which will occur at the agency level. Please confirm whether you consent to advance filing as soon as possible but no later than March 12, 2015.

Sincerely,

Dominic Romanazzi
President

Sent via E-Mail, Certified & Regular US Mail



**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| Teamsters Local 330 | | | Department of Transportation |
| WORK ADDRESS | BARGAINING AGENT (IF ANY) | | |
| Various | Teamsters Local 330 | | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attachment

**STEP 1**

DATE SUBMITTED
3/5/15

DATE OF RESPONSE

WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE.
( ADVANCED TO STEP #3 )

SUPERVISOR'S SIGNATURE

EMPLOYEE'S SIGNATURE

**STEP 2**

DATE SUBMITTED

RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR:

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED

EMPLOYEE'S SIGNATURE

**STEP 2a**

DATE SUBMITTED

RESPONSE OF MANAGER (WHERE APPLICABLE):

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED

MANAGER'S SIGNATURE

EMPLOYEE'S SIGNATURE

**STEP 3**

DATE SUBMITTED

RESPONSE OF AGENCY HEAD:

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED

AGENCY HEAD'S SIGNATURE

EMPLOYEE'S SIGNATURE

**STEP 4**

I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION.

| DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |
|---|---|---|

CMS-402 (Rev 7/88)   IL 401-0778

ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Articles 1 and 4 of the Collective Bargaining Agreement and the Fair Share Supplemental Agreement.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA and the Supplemental Agreement, which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.



# TEAMSTERS LOCAL UNION NO. 330

## GENERAL CHAUFFEURS SALESDRIVERS AND HELPERS
### AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS



2400 BIG TIMBER ROAD, BUILDING B, SUITE 201, ELGIN, ILLINOIS 60124 • 847-695-1516 • FAX 847-695-1579

**DOMINIC ROMANAZZI** *President / Principal Officer*

March 5, 2015

Mr. Christopher Campbell
Illinois Department of State Police
801 South 7th Street
Springfield, IL 62703

Re: Grievance Challenging Agency Action to not remit fair share fees to Teamsters Local 330

Dear Mr. Campbell,

Enclosed please find a grievance we are filing on behalf of all Teamsters Local 330 bargaining unit members employed by the Department of State Police. The grievance contests the Governor's directive to all State agency heads that they refuse to comply with fair share contract provisions. This action is a violation of Articles 1 and 4 of the Local 330 collective bargaining agreement and the Fair Share Supplemental Agreement.

Pursuant to Article 6.9 of the collective bargaining agreement, we are requesting your consent to file this grievance at an advanced step because it contests a violation which will occur at the agency level. Please confirm whether you consent to advance filing as soon as possible but no later than March 12, 2015.

Sincerely,

Dominic Romanazzi
President

Sent via E-Mail, Certified & Regular US Mail



**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS
FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT
OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| Teamsters Local 330 | | | Illinois State Police |

| WORK ADDRESS | BARGAINING AGENT (IF ANY) |
|---|---|
| Various | Teamsters Local 330 |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attachment

**STEP 1**

DATE SUBMITTED: 3/5/15

DATE OF RESPONSE: ADVANCED TO STEP #3

WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE.

SUPERVISOR'S SIGNATURE

EMPLOYEE'S SIGNATURE

**STEP 2**

DATE SUBMITTED

RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR:

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED

EMPLOYEE'S SIGNATURE

**STEP 2a**

DATE SUBMITTED

RESPONSE OF MANAGER (WHERE APPLICABLE):

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED

MANAGER'S SIGNATURE

EMPLOYEE'S SIGNATURE

**STEP 3**

DATE SUBMITTED

RESPONSE OF AGENCY HEAD:

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED

AGENCY HEAD'S SIGNATURE

EMPLOYEE'S SIGNATURE

**STEP 4**

I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION.

DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE

CMS-402 (Rev 7/95)   IL 401-0728

ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Articles 1 and 4 of the Collective Bargaining Agreement and the Fair Share Supplemental Agreement.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA and the Supplemental Agreement, which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.




# TEAMSTERS LOCAL UNION NO. 330

## GENERAL CHAUFFEURS SALESDRIVERS AND HELPERS

### AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

2400 BIG TIMBER ROAD, BUILDING B, SUITE 201, ELGIN, ILLINOIS 60124 • 847-695-1518 • FAX 847-695-1579

DOMINIC ROMANAZZI *President / Principal Officer*

March 5, 2015

Mr. Laron Cole
Illinois Department of Human Services
100 South Grand Avenue East
Springfield, Illinois 62762

Re: Grievance Challenging Agency Action to not remit fair share fees to Teamsters Local 330

Dear Mr. Cole,

Enclosed please find a grievance we are filing on behalf of all Teamsters Local 330 bargaining unit members employed by the Department of Human Services. The grievance contests the Governor's directive to all State agency heads that they refuse to comply with fair share contract provisions. This action is a violation of Articles 1 and 4 of the Local 330 collective bargaining agreement and the Fair Share Supplemental Agreement.

Pursuant to Article 6.9 of the collective bargaining agreement, we are requesting your consent to file this grievance at an advanced step because it contests a violation which will occur at the agency level. Please confirm whether you consent to advance filing as soon as possible but no later than March 12, 2015.

Sincerely,

Dominic Romanazzi
President

Sent via E-Mail, Certified & Regular US Mail



**CMS** ILLINOIS
**DEPARTMENT OF CENTRAL**
**MANAGEMENT SERVICES**

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

### GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | | BDC. SEC. NO. | AGENCY |
|---|---|---|---|---|
| Teamsters Local 330 | | | | Department of Human Services |
| WORK ADDRESS | | BARGAINING AGENT (IF ANY) | | |
| Various | | Teamsters Local 330 | | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS)

See Attachment

**STEP 1**

DATE SUBMITTED
3/5/15

DATE OF RESPONSE
( ADVANCED TO STEP #3 )

WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE.

SUPERVISOR'S SIGNATURE                    EMPLOYEE'S SIGNATURE

**STEP 2**

DATE SUBMITTED          RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR:

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED  ☐ REJECTED          EMPLOYEE'S SIGNATURE

**STEP 2a**

DATE SUBMITTED          RESPONSE OF MANAGER (WHERE APPLICABLE):

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED  ☐ REJECTED

MANAGER'S SIGNATURE                    EMPLOYEE'S SIGNATURE

**STEP 3**

DATE SUBMITTED          RESPONSE OF AGENCY HEAD:

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED  ☐ REJECTED

AGENCY HEAD'S SIGNATURE                    EMPLOYEE'S SIGNATURE

**STEP 4**

I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION.

DESIGNATED REPRESENTATIVE          DATE          EMPLOYEE'S SIGNATURE

CMS-602 (Rev. 7/95)   IL 401-0726

## ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Articles 1 and 4 of the Collective Bargaining Agreement and the Fair Share Supplemental Agreement.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA and the Supplemental Agreement, which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.



# TEAMSTERS LOCAL UNION NO. 330
## GENERAL CHAUFFEURS SALESDRIVERS AND HELPERS
### AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS



2400 BIG TIMBER ROAD, BUILDING B, SUITE 201, ELGIN, ILLINOIS 60124 • 847-695-1516 • FAX 847-695-1579

**DOMINIC ROMANAZZI** *President / Principal Officer*

March 5, 2015

Mr. Edward Jackson
Illinois Department of Corrections
1301 Concordia Court
P.O. Box 19277
Springfield, Illinois 62794-9277

Re: Grievance Challenging Agency Action to not remit fair share fees to Teamsters Local 330

Dear Mr. Jackson,

Enclosed please find a grievance we are filing on behalf of all Teamsters Local 330 bargaining unit members employed by the Department of Corrections. The grievance contests the Governor's directive to all State agency heads that they refuse to comply with fair share contract provisions. This action is a violation of Articles 1 and 4 of the Local 330 collective bargaining agreement and the Fair Share Supplemental Agreement.

Pursuant to Article 6.9 of the collective bargaining agreement, we are requesting your consent to file this grievance at an advanced step because it contests a violation which will occur at the agency level. Please confirm whether you consent to advance filing as soon as possible but no later than March 12, 2015.

Sincerely,

Dominic Romanazzi
President

Sent via E-Mail, Certified & Regular US Mail

**CMS** ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM. RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| Teamsters Local 330 | | | Department of Corrections |

| WORK ADDRESS | BARGAINING AGENT (IF ANY) |
|---|---|
| Various | Teamsters Local 330 |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attachment

**STEP 1**
DATE SUBMITTED: 3/5/15
DATE OF RESPONSE:
WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE.
( ADVANCED TO STEP #3 )
SUPERVISOR'S SIGNATURE
EMPLOYEE'S SIGNATURE

**STEP 2**
DATE SUBMITTED:
RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR:
DATE OF RESPONSE:
RESPONSE: ☐ ACCEPTED ☐ REJECTED
EMPLOYEE'S SIGNATURE

**STEP 2a**
DATE SUBMITTED:
RESPONSE OF MANAGER (WHERE APPLICABLE):
DATE OF RESPONSE:
RESPONSE: ☐ ACCEPTED ☐ REJECTED
MANAGER'S SIGNATURE
EMPLOYEE'S SIGNATURE

**STEP 3**
DATE SUBMITTED:
RESPONSE OF AGENCY HEAD:
DATE OF RESPONSE:
RESPONSE: ☐ ACCEPTED ☐ REJECTED
AGENCY HEAD'S SIGNATURE
EMPLOYEE'S SIGNATURE

**STEP 4**
I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION.
DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE

CMS-402 (Rev. 7/98)  IL 401-0755

ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Articles 1 and 4 of the Collective Bargaining Agreement and the Fair Share Supplemental Agreement.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA and the Supplemental Agreement, which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

 

# TEAMSTERS LOCAL UNION NO. 330

## GENERAL CHAUFFEURS SALESDRIVERS AND HELPERS
### AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

2400 BIG TIMBER ROAD, BUILDING B, SUITE 201, ELGIN, ILLINOIS 60124 • 847-695-1516 • FAX 847-695-1579

**DOMINIC ROMANAZZI** *President / Principal Officer*

March 5, 2015

Ms. Tricia Pineda
Illinois Department of Central Management Services
Stratton Bldg. RM 715
401 S. Spring Street
Springfield, IL 62706-4100

Re: Grievance Challenging Agency Action to not remit fair share fees to Teamsters Local 330

Dear Ms. Pineda,

Enclosed please find a grievance we are filing on behalf of all Teamsters Local 330 bargaining unit members employed by the Department of Central Management Services. The grievance contests the Governor's directive to all State agency heads that they refuse to comply with fair share contract provisions. This action is a violation of Articles 1 and 4 of the Local 330 collective bargaining agreement and the Fair Share Supplemental Agreement.

Pursuant to Article 6.9 of the collective bargaining agreement, we are requesting your consent to file this grievance at an advanced step because it contests a violation which will occur at the agency level. Please confirm whether you consent to advance filing as soon as possible but no later than March 12, 2015.

Sincerely,

Dominic Romanazzi
President

Sent via E-Mail, Certified & Regular US Mail



**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT; COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS
FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT
OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| Teamsters Local 330 | | | Central Management Services |

| WORK ADDRESS | BARGAINING AGENT (IF ANY) |
|---|---|
| Various | Teamsters Local 330 |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attachment

**STEP 1**

DATE SUBMITTED
3/5/15

DATE OF RESPONSE
( ADVANCED TO STEP #3 )

WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE.

SUPERVISOR'S SIGNATURE

EMPLOYEE'S SIGNATURE

**STEP 2**

DATE SUBMITTED

RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR:

DATE OF RESPONSE

RESPONSE:  ☐ ACCEPTED  ☐ REJECTED

EMPLOYEE'S SIGNATURE

**STEP 2a**

DATE SUBMITTED

RESPONSE OF MANAGER (WHERE APPLICABLE):

DATE OF RESPONSE

RESPONSE:  ☐ ACCEPTED  ☐ REJECTED

MANAGER'S SIGNATURE

EMPLOYEE'S SIGNATURE

**STEP 3**

DATE SUBMITTED

RESPONSE OF AGENCY HEAD:

DATE OF RESPONSE

RESPONSE:  ☐ ACCEPTED  ☐ REJECTED

AGENCY HEAD'S SIGNATURE

EMPLOYEE'S SIGNATURE

**STEP 4**

I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION.

DESIGNATED REPRESENTATIVE          DATE          EMPLOYEE'S SIGNATURE

CMS-402 (Rev. 7/82)   B. 401-0726

ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Articles 1 and 4 of the Collective Bargaining Agreement and the Fair Share Supplemental Agreement.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA and the Supplemental Agreement, which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.




# TEAMSTERS LOCAL UNION NO. 330

## GENERAL CHAUFFEURS SALESDRIVERS AND HELPERS

AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

2400 BIG TIMBER ROAD, BUILDING B, SUITE 201, ELGIN, ILLINOIS 60124 • 847-695-1516 • FAX 847-695-1579

**DOMINIC ROMANAZZI** *President / Principal Officer*

March 5, 2015

Mr. Pete Romano
Department of Veterans Affairs
833 S. Spring
Box 19432
Springfield, Illinois 62794-9432

Re: Grievance Challenging Agency Action to not remit fair share fees to Teamsters Local 330

Dear Mr. Romano,

Enclosed please find a grievance we are filing on behalf of all Teamsters Local 330 bargaining unit members employed by the Department of Veterans Affairs. The grievance contests the Governor's directive to all State agency heads that they refuse to comply with fair share contract provisions. This action is a violation of Articles 1 and 4 of the Local 330 collective bargaining agreement and the Fair Share Supplemental Agreement.

Pursuant to Article 6.9 of the collective bargaining agreement, we are requesting your consent to file this grievance at an advanced step because it contests a violation which will occur at the agency level. Please confirm whether you consent to advance filing as soon as possible but no later than March 12, 2015.

Sincerely,

Dominic Romanazzi
President

Sent via E-Mail, Certified & Regular US Mail

**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS
FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT
OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME Teamsters Local 330 | POSITION TITLE | | BOG, SEG. NO. | AGENCY Department of Veterans Affairs |
|---|---|---|---|---|
| WORK ADDRESS Various | | BARGAINING AGENT (IF ANY) Teamsters Local 330 | | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attachment

| | DATE SUBMITTED 3/5/15 | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE. | |
|---|---|---|---|
| **STEP 1** | DATE OF RESPONSE | ( ADVANCED TO STEP #3 ) | |
| | SUPERVISOR'S SIGNATURE | | EMPLOYEE'S SIGNATURE |
| **STEP 2** | DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: | |
| | DATE OF RESPONSE | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | EMPLOYEE'S SIGNATURE |
| **STEP 2a** | DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE): | |
| | DATE OF RESPONSE | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | |
| | MANAGER'S SIGNATURE | | EMPLOYEE'S SIGNATURE |
| **STEP 3** | DATE SUBMITTED | RESPONSE OF AGENCY HEAD: | |
| | DATE OF RESPONSE | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | EMPLOYEE'S SIGNATURE |
| | AGENCY HEAD'S SIGNATURE | | |
| **STEP 4** | I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION. | | |
| | DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |

CMS-409 (Rev. 7/99)   IL 451-0728

## ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Articles 1 and 4 of the Collective Bargaining Agreement and the Fair Share Supplemental Agreement.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA and the Supplemental Agreement, which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

Exhibit 10

# TEAMSTERS LOCAL UNION NO. 627

KEITH E. GLEASON
President

GREGORY A. WHEET
Secretary - Treasurer

DEAN W. McCOY
Vice - President

CHRISTOPHER T. HOPKINS
Recording Secretary

## AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

7101 NORTH ALLEN ROAD • PEORIA, ILLINOIS 61614
(309) 689-9090 • FAX (309) 689-0037



Trustees
BARRY E. MEIERKORD
JEFFREY A. GAUWITZ
EVONNE L. JOHNSON

March 5, 2015

Mr. Harry F. Sawyer, Interim Director
Illinois Department of Veterans Affairs
833 S. Spring Street
Springfield, IL  62704

Re:   Grievance Challenging Agency Action to not remit fair share fees to Teamsters
      Downstate Illinois State Employee Negotiating Committee

Dear Director Sawyer:

I am writing to you in my capacity as the Downstate Director, Teamsters
Downstate Illinois State Employee Negotiating Committee.  As you are aware,
Teamsters Downstate Illinois State Employee Negotiating Committee and the
Departments of Central Management Services, Corrections, Human Services, State
Police, Veterans' Affairs, Natural Resources and Transportation are signatories to a
collective bargaining agreement which expires June 30, 2015.  Pursuant to this
collective bargaining agreement, Teamsters Downstate Illinois State Employee
Negotiating Committee represents employees who work in your agency.

Enclosed please find a grievance we are filing on behalf of all bargaining unit
members against this agency. The grievance contests the Governor's directive to all
State Agency heads that they refuse to comply with fair share contract provisions.  This
action is a violation of Article 1 and the Supplemental Agreement and Fair Share Side
Letter of the Teamsters Downstate Illinois State Employee Negotiating Committee
Collective Bargaining Agreement.  Pursuant to Article 6.9, we are requesting your
consent to file this grievance at an advanced step because it contests a violation which
will occur at the agency level. Please confirm whether you consent to advance filing as
soon as possible but no later than March 12, 2015.

Sincerely,

Keith Gleason, Downstate Director
Teamsters Downstate Illinois State Employee
Negotiating Committee

**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS
FORM. RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT
OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| Teamsters Downstate IL Neg. Cmte. | | | Department of Veterans Affairs |

| WORK ADDRESS | BARGAINING AGENT (IF ANY) | |
|---|---|---|
| Various | Teamsters Downstate IL State Employee Negotiating Committee | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS)

See Attachment

### STEP 1

| DATE SUBMITTED | |
|---|---|
| DATE OF RESPONSE | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THIS GRIEVANCE. |
| SUPERVISOR'S SIGNATURE | EMPLOYEE'S SIGNATURE |

### STEP 2

| DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR |
|---|---|
| DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | EMPLOYEE'S SIGNATURE |

### STEP 2a

| DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE) |
|---|---|
| DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | |
| MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE |

### STEP 3

| DATE SUBMITTED | RESPONSE OF AGENCY HEAD |
|---|---|
| DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | |
| AGENCY HEAD'S SIGNATURE | EMPLOYEE'S SIGNATURE |

### STEP 4

I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION.

| DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |
|---|---|---|

CMS-402 (Rev. 7/99)    IL 401-0270

ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Article 1 of the Collective Bargaining Agreement, the Fair Share Supplemental Agreement and the Fair Share Side Letter.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA, the Supplemental Agreement and the Fair Share Side Letter, which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

# TEAMSTERS LOCAL UNION NO. 627

KEITH F. GLEASON
President

GREGORY A. WHEET
Secretary - Treasurer

DEAN W. McCOY
Vice - President

CHRISTOPHER T. HOPKINS
Recording Secretary

## AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

7101 NORTH ALLEN ROAD • PEORIA, ILLINOIS 61614
(309) 689-9090 • FAX (309) 689-0037

March 5, 2015



Trustees
BARRY E. MEIERKORD
JEFFREY A. BAUWITZ
EVONNE L. JOHNSON

Mr. Gregory M. Bassi, Acting Secretary
Illinois Department of Human Services
100 S. Grand Ave. E
Springfield, IL. 62762

Re:  Grievance Challenging Agency Action to not remit fair share fees to Teamsters
Downstate Illinois State Employee Negotiating Committee

Dear Acting Secretary Bassi:

I am writing to you in my capacity as the Downstate Director, Teamsters Downstate Illinois State Employee Negotiating Committee.  As you are aware, Teamsters Downstate Illinois State Employee Negotiating Committee and the Departments of Central Management Services, Corrections, Human Services, State Police, Veterans' Affairs, Natural Resources and Transportation are signatories to a collective bargaining agreement which expires June 30, 2015.  Pursuant to this collective bargaining agreement, Teamsters Downstate Illinois State Employee Negotiating Committee represents employees who work in your agency.

Enclosed please find a grievance we are filing on behalf of all bargaining unit members against this agency.  The grievance contests the Governor's directive to all State Agency heads that they refuse to comply with fair share contract provisions.  This action is a violation of Article 1 and the Supplemental Agreement and Fair Share Side Letter of the Teamsters Downstate Illinois State Employee Negotiating Committee Collective Bargaining Agreement.  Pursuant to Article 6.9, we are requesting your consent to file this grievance at an advanced step because it contests a violation which will occur at the agency level.  Please confirm whether you consent to advance filing as soon as possible but no later than March 12, 2015.

Sincerely,

Keith Gleason, Downstate Director
Teamsters Downstate Illinois State Employee
Negotiating Committee

**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM. RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | | SOC. SEC. NO. | AGENCY |
|---|---|---|---|---|
| Teamsters Downstate IL Neg. Cmte. | | | | Department of Human Services |
| WORK ADDRESS | | BARGAINING AGENT (IF ANY) | | |
| Various | | Teamsters Downstate IL State Employee Negotiating Committee | | |

STATEMENT OF GRIEVANCE AND/OR RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS)

See Attachment

**STEP 1**

| DATE SUBMITTED | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE |
|---|---|
| DATE OF RESPONSE | |
| SUPERVISOR'S SIGNATURE | EMPLOYEE'S SIGNATURE |

**STEP 2**

| DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: |
|---|---|
| DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | EMPLOYEE'S SIGNATURE |

**STEP 2a**

| DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE): |
|---|---|
| DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | EMPLOYEE'S SIGNATURE |
| MANAGER'S SIGNATURE | |

**STEP 3**

| DATE SUBMITTED | RESPONSE OF AGENCY HEAD: |
|---|---|
| DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | EMPLOYEE'S SIGNATURE |
| AGENCY HEAD'S SIGNATURE | |

**STEP 4**

I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION.

| DESIGNATED REPRESENTATIVE | | DATE | EMPLOYEE'S SIGNATURE |
|---|---|---|---|

CMS-402 (Rev. 1/88)   IL 401-0729

ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Article 1 of the Collective Bargaining Agreement, the Fair Share Supplemental Agreement and the Fair Share Side Letter.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA, the Supplemental Agreement and the Fair Share Side Letter, which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.

2. The Union demands that the Employer immediately cease implementation of the Executive Order.

3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

## TEAMSTERS LOCAL UNION NO. 627

KEITH E. GLEASON
President

GREGORY A. WHEET
Secretary - Treasurer

SEAN W. McCOY
Vice - President

CHRISTOPHER T. HOPKINS
Recording Secretary

### AFFILIATED WITH THE INTERNATIONAL
### BROTHERHOOD OF TEAMSTERS

7101 NORTH ALLEN ROAD • PEORIA, ILLINOIS 61614
(309) 689-9090 • FAX (309) 689-0037



Trustees
BARRY E. MEIERKORD
JEFFREY A. SAUWITZ
EVONNE L. JOHNSON

March 5, 2015

Mr. Wayne Rosenthal, Acting Director
Illinois Department of Natural Resources
1 Natural Way
Springfield, IL  62702

Re:    Grievance Challenging Agency Action to not remit fair share fees to Teamsters
        Downstate Illinois State Employee Negotiating Committee

Dear Acting Director Rosenthal:

I am writing to you in my capacity as the Downstate Director, Teamsters
Downstate Illinois State Employee Negotiating Committee.   As you are aware,
Teamsters Downstate Illinois State Employee Negotiating Committee and the
Departments of Central Management Services, Corrections, Human Services, State
Police, Veterans' Affairs, Natural Resources and Transportation are signatories to a
collective bargaining agreement which expires June 30, 2015.  Pursuant to this
collective bargaining agreement, Teamsters Downstate Illinois State Employee
Negotiating Committee represents employees who work in your agency.

Enclosed please find a grievance we are filing on behalf of all bargaining unit
members against this agency. The grievance contests the Governor's directive to all
State Agency heads that they refuse to comply with fair share contract provisions.  This
action is a violation of Article 1 and the Supplemental Agreement and Fair Share Side
Letter of the Teamsters Downstate Illinois State Employee Negotiating Committee
Collective Bargaining Agreement.  Pursuant to Article 6.9, we are requesting your
consent to file this grievance at an advanced step because it contests a violation which
will occur at the agency level.  Please confirm whether you consent to advance filing as
soon as possible but no later than March 12, 2015.

Sincerely,

Keith Gleason, Downstate Director
Teamsters Downstate Illinois State Employee
Negotiating Committee

**CMS** ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | | SOC. SEG. NO. | AGENCY |
|---|---|---|---|---|
| Teamsters Downstate IL Neg. Cmte. | | | | Dept. of Natural Resources |
| WORK ADDRESS | | BARGAINING AGENT (IF ANY) | | |
| Various | | Teamsters Downstate IL State Employee Negotiating Committee | | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATION(S))

See Attachment

| | | | | |
|---|---|---|---|---|
| **STEP 1** | DATE SUBMITTED | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE. | | |
| | DATE OF RESPONSE | | | |
| | SUPERVISOR'S SIGNATURE | | EMPLOYEE'S SIGNATURE | |
| **STEP 2** | DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR | | |
| | DATE OF RESPONSE | | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | EMPLOYEE'S SIGNATURE | |
| **STEP 2a** | DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE) | | |
| | DATE OF RESPONSE | | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | | |
| | MANAGER'S SIGNATURE | | EMPLOYEE'S SIGNATURE | |
| **STEP 3** | DATE SUBMITTED | RESPONSE OF AGENCY HEAD | | |
| | DATE OF RESPONSE | | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | | |
| | AGENCY HEAD'S SIGNATURE | | EMPLOYEE'S SIGNATURE | |
| **STEP 4** | I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION. | | | |
| | DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE | |

CMS-462 (Rev. 1/86) II AD-4754

ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Article 1 of the Collective Bargaining Agreement, the Fair Share Supplemental Agreement and the Fair Share Side Letter.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA, the Supplemental Agreement and the Fair Share Side Letter, which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it endles new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

# TEAMSTERS LOCAL UNION NO. 627

KEITH E. GLEASON
President

GREGORY A. WHEET
Secretary - Treasurer

DEAN W. McCOY
Vice - President

CHRISTOPHER T. HOPKINS
Recording Secretary

## AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

7101 NORTH ALLEN ROAD • PEORIA, ILLINOIS 61614
(309) 689-9090 • FAX (309) 689-0037

March 5, 2015



Trustees
BARRY E. MEIERKORD
JEFFREY A. GAUWITZ
EVONNE L. JOHNSON

Mr. Randall S. Blankenhorn, Acting Secretary
Illinois Department of Transportation
2300 S. Dirksen Parkway
Springfield, IL. 62764

Re:    Grievance Challenging Agency Action to not remit fair share fees to Teamsters
Downstate Illinois State Employee Negotiating Committee

Dear Acting Secretary Blankenhorn:

I am writing to you in my capacity as the Downstate Director, Teamsters
Downstate Illinois State Employee Negotiating Committee. As you are aware,
Teamsters Downstate Illinois State Employee Negotiating Committee and the
Departments of Central Management Services, Corrections, Human Services, State
Police, Veterans' Affairs, Natural Resources and Transportation are signatories to a
collective bargaining agreement which expires June 30, 2015. Pursuant to this
collective bargaining agreement, Teamsters Downstate Illinois State Employee
Negotiating Committee represents employees who work in your agency.

Enclosed please find a grievance we are filing on behalf of all bargaining unit
members against this agency. The grievance contests the Governor's directive to all
State Agency heads that they refuse to comply with fair share contract provisions. This
action is a violation of Article 1 and the Supplemental Agreement and Fair Share Side
Letter of the Teamsters Downstate Illinois State Employee Negotiating Committee
Collective Bargaining Agreement. Pursuant to Article 6.9, we are requesting your
consent to file this grievance at an advanced step because it contests a violation which
will occur at the agency level. Please confirm whether you consent to advance filing as
soon as possible but no later than March 12, 2015.

Sincerely,

Keith Gleason, Downstate Director
Teamsters Downstate Illinois State Employee
Negotiating Committee

**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM. RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | SOC SEC. NO. | AGENCY |
|---|---|---|---|
| Teamsters Downstate IL Neg. Cmte. | | | Department of Transportation |

| HOME ADDRESS | BARGAINING AGENT (IF ANY) |
|---|---|
| Various | Teamsters Downstate IL State Employee Negotiating Committee |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attachment

**STEP 1**

| DATE SUBMITTED | | |
|---|---|---|
| DATE OF RESPONSE | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE. | |
| SUPERVISOR'S SIGNATURE | EMPLOYEE'S SIGNATURE | |

**STEP 2**

| DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR |
|---|---|
| DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | EMPLOYEE'S SIGNATURE |

**STEP 2A**

| DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE) |
|---|---|
| DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | |
| MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE |

**STEP 3**

| DATE SUBMITTED | RESPONSE OF AGENCY HEAD |
|---|---|
| DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | |
| AGENCY HEAD'S SIGNATURE | EMPLOYEE'S SIGNATURE |

**STEP 4**

| I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION. | | |
|---|---|---|
| DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |

CMS-402 (Rev 7/93)

ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Article 1 of the Collective Bargaining Agreement, the Fair Share Supplemental Agreement and the Fair Share Side Letter.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA, the Supplemental Agreement and the Fair Share Side Letter, which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1.  The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.

2.  The Union demands that the Employer immediately cease implementation of the Executive Order.

3.  The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

TEAMSTERS LOCAL UNION NO. 627

KEITH E. GLEASON
President

GREGORY A. WHEET
Secretary - Treasurer

DEAN W. McCOY
Vice - President

CHRISTOPHER T. HOPKINS
Recording Secretary

AFFILIATED WITH THE INTERNATIONAL
BROTHERHOOD OF TEAMSTERS

7101 NORTH ALLEN ROAD • PEORIA, ILLINOIS 61614
(309) 689-9090 • FAX (309) 689-0037

March 5, 2015



TRUSTEES
BARRY E. MEIERKORD
JEFFREY A. GAUWITZ
EVONNE L. JOHNSON

Mr. Salvador A. Godinez, Director
Illinois Department of Corrections
1301 Concordia Court
P. O. BOX 19277
Springfield, IL  62794-9277

Re:  Grievance Challenging Agency Action to not remit fair share fees to Teamsters
Downstate Illinois State Employee Negotiating Committee

Dear Director Godinez:

I am writing to you in my capacity as the Downstate Director, Teamsters
Downstate Illinois State Employee Negotiating Committee.  As you are aware,
Teamsters Downstate Illinois State Employee Negotiating Committee and the
Departments of Central Management Services, Corrections, Human Services, State
Police, Veterans' Affairs, Natural Resources and Transportation are signatories to a
collective bargaining agreement which expires June 30, 2015.  Pursuant to this
collective bargaining agreement, Teamsters Downstate Illinois State Employee
Negotiating Committee represents employees who work in your agency.

Enclosed please find a grievance we are filing on behalf of all bargaining unit
members against this agency.  The grievance contests the Governor's directive to all
State Agency heads that they refuse to comply with fair share contract provisions.  This
action is a violation of Article 1 and the Supplemental Agreement and Fair Share Side
Letter of the Teamsters Downstate Illinois State Employee Negotiating Committee
Collective Bargaining Agreement.  Pursuant to Article 6.9, we are requesting your
consent to file this grievance at an advanced step because it contests a violation which
will occur at the agency level.  Please confirm whether you consent to advance filing as
soon as possible but no later than March 12, 2015.

Sincerely,

Keith Gleason, Downstate Director
Teamsters Downstate Illinois State Employee
Negotiating Committee

**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM. RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | | RDG. SEC. NO. | AGENCY |
|---|---|---|---|---|
| Teamsters Downstate IL Neg. Cmte. | | | | Department of Corrections |
| WORK ADDRESS | | BARGAINING AGENT (DRAFT) | | |
| Various | | Teamsters Downstate IL State Employee Negotiating Committee | | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALL SPECIFIC RULE VIOLATIONS)

See Attachment

| | | | | |
|---|---|---|---|---|
| **STEP 1** | DATE SUBMITTED | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE | | |
| | DATE OF RESPONSE | | | |
| | SUPERVISOR'S SIGNATURE | | EMPLOYEE'S SIGNATURE | |
| **STEP 2** | DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: | | |
| | DATE OF RESPONSE | | | |
| | | | EMPLOYEE'S SIGNATURE | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | | |
| **STEP 2a** | DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE) | | |
| | DATE OF RESPONSE | | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | EMPLOYEE'S SIGNATURE | |
| | MANAGER'S SIGNATURE | | | |
| **STEP 3** | DATE SUBMITTED | RESPONSE OF AGENCY HEAD: | | |
| | DATE OF RESPONSE | | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | EMPLOYEE'S SIGNATURE | |
| | AGENCY HEAD'S SIGNATURE | | | |
| **STEP 4** | I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION | | | |
| | DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE | |

CMS-400 (Rev. 3/94)   IL 411-0773

ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Article 1 of the Collective Bargaining Agreement, the Fair Share Supplemental Agreement and the Fair Share Side Letter.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA, the Supplemental Agreement and the Fair Share Side Letter, which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

KEITH E. GLEASON
President

GREGORY A. WHEET
Secretary – Treasurer

DEAN W. McCOY
Vice – President

CHRISTOPHER T. HOMUNS
Recording Secretary

## TEAMSTERS LOCAL UNION NO. 627

### AFFILIATED WITH THE INTERNATIONAL
### BROTHERHOOD OF TEAMSTERS

7101 NORTH ALLEN ROAD • PEORIA, ILLINOIS 61614
(309) 689-9090 • FAX (309) 689-0037

March 5, 2015



Trustees
BARRY E. MEIERKORD
JEFFREY A. GAUWITZ
EVIINNE L. JOHNSON

Mr. Thomas Tyrrell, Director
Central Management Services
401 S. Spring Street
Stratton Building Rm. 702
Springfield, IL 62706-4100

Re:  Grievance Challenging Agency Action to not remit fair share fees to Teamsters
     Downstate Illinois State Employee Negotiating Committee

Dear Director Tyrrell:

I am writing to you in my capacity as the Downstate Director, Teamsters
Downstate Illinois State Employee Negotiating Committee.  As you are aware,
Teamsters Downstate Illinois State Employee Negotiating Committee and the
Departments of Central Management Services, Corrections, Human Services, State
Police, Veterans' Affairs, Natural Resources and Transportation are signatories to a
collective bargaining agreement which expires June 30, 2015.  Pursuant to this
collective bargaining agreement, Teamsters Downstate Illinois State Employee
Negotiating Committee represents employees who work in your agency.

Enclosed please find a grievance we are filing on behalf of all bargaining unit
members against this agency. The grievance contests the Governor's directive to all
State Agency heads that they refuse to comply with fair share contract provisions.  This
action is a violation of Article 1 and the Supplemental Agreement and Fair Share Side
Letter of the Teamsters Downstate Illinois State Employee Negotiating Committee
Collective Bargaining Agreement.  Pursuant to Article 6.9, we are requesting your
consent to file this grievance at an advanced step because it contests a violation which
will occur at the agency level.  Please confirm whether you consent to advance filing as
soon as possible but no later than March 12, 2015.

Sincerely,

Keith Gleason, Downstate Director
Teamsters Downstate Illinois State Employee
Negotiating Committee

**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM. RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | | SOC. SEC. NO. | AGENCY |
|---|---|---|---|---|
| Teamsters Downstate IL Neg. Cmte. | | | | Central Management Services |
| WORK ADDRESS | | BARGAINING AGENT (IF ANY) | | |
| Various | | Teamsters Downstate IL State Employee Negotiating Committee | | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED INCLUDING CITATION OF ALLEGED RULE VIOLATION(S):

See Attachment

| | | | | |
|---|---|---|---|---|
| **STEP 1** | DATE SUBMITTED | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE. | | |
| | DATE OF RESPONSE | | | |
| | SUPERVISORS SIGNATURE | | EMPLOYER'S SIGNATURE | |
| **STEP 2** | DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: | | |
| | DATE OF RESPONSE | | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | EMPLOYEE'S SIGNATURE | |
| **STEP 2a** | DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE): | | |
| | DATE OF RESPONSE | | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | EMPLOYEE'S SIGNATURE | |
| | MANAGER'S SIGNATURE | | | |
| **STEP 3** | DATE SUBMITTED | RESPONSE OF AGENCY HEAD: | | |
| | DATE OF RESPONSE | | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | EMPLOYEE'S SIGNATURE | |
| | AGENCY HEAD'S SIGNATURE | | | |
| **STEP 4** | I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION. | | | |
| | DESIGNATED REPRESENTATIVE | DATE | EMPLOYER'S SIGNATURE | |

CMS-425 (Rev. 1998)    ( 691-0726

ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Article 1 of the Collective Bargaining Agreement, the Fair Share Supplemental Agreement and the Fair Share Side Letter.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA, the Supplemental Agreement and the Fair Share Side Letter, which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

# TEAMSTERS LOCAL UNION NO. 627

KEITH E. GLEASON
President

GREGORY A. WHEET
Secretary - Treasurer

DEAN W. McCOY
Vice - President

CHRISTOPHER T. HOPKINS
Recording Secretary

### AFFILIATED WITH THE INTERNATIONAL
### BROTHERHOOD OF TEAMSTERS

7101 NORTH ALLEN ROAD • PEORIA, ILLINOIS 61614
(309) 689-9090 • FAX (309) 689-0037



Trustees
BARRY E. MEIENKORD
JEFFREY A. GAUWITZ
EVONIE L. JOHNSON

March 5, 2015

Mr. Leo P. Schmitz, Director
Illinois State Police
Office of the Director
801 South Seventh Street, Suite 1100-S
Springfield, IL 62703

Re:   Grievance Challenging Agency Action to not remit fair share fees to Teamsters
Downstate Illinois State Employee Negotiating Committee

Dear Director Schmitz:

I am writing to you in my capacity as the Downstate Director, Teamsters Downstate Illinois State Employee Negotiating Committee. As you are aware, Teamsters Downstate Illinois State Employee Negotiating Committee and the Departments of Central Management Services, Corrections, Human Services, State Police, Veterans' Affairs, Natural Resources and Transportation are signatories to a collective bargaining agreement which expires June 30, 2015. Pursuant to this collective bargaining agreement, Teamsters Downstate Illinois State Employee Negotiating Committee represents employees who work in your agency.

Enclosed please find a grievance we are filing on behalf of all bargaining unit members against this agency. The grievance contests the Governor's directive to all State Agency heads that they refuse to comply with fair share contract provisions. This action is a violation of Article 1 and the Supplemental Agreement and Fair Share Side Letter of the Teamsters Downstate Illinois State Employee Negotiating Committee Collective Bargaining Agreement. Pursuant to Article 6.9, we are requesting your consent to file this grievance at an advanced step because it contests a violation which will occur at the agency level. Please confirm whether you consent to advance filing as soon as possible but no later than March 12, 2015.

Sincerely,

Keith Gleason, Downstate Director
Teamsters Downstate Illinois State Employee
Negotiating Committee

**CMS** ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM. RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| Teamsters Downstate IL Neg. Cmte. | | | Illinois State Police |

| | BARGAINING AGENT (IF ANY) |
|---|---|
| WORK ADDRESS: Various | Teamsters Downstate IL State Employee Negotiating Committee |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attachment

| | | | |
|---|---|---|---|
| **STEP 1** | DATE SUBMITTED | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE. | |
| | DATE OF RESPONSE | | |
| | SUPERVISOR'S SIGNATURE | | EMPLOYEE'S SIGNATURE |
| **STEP 2** | DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: | |
| | DATE OF RESPONSE | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | EMPLOYEE'S SIGNATURE |
| **STEP 2A** | DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE): | |
| | DATE OF RESPONSE | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | EMPLOYEE'S SIGNATURE |
| | MANAGER'S SIGNATURE | | |
| **STEP 3** | DATE SUBMITTED | RESPONSE OF AGENCY HEAD: | |
| | DATE OF RESPONSE | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | EMPLOYEE'S SIGNATURE |
| | AGENCY HEAD'S SIGNATURE | | |
| **STEP 4** | I HEREBY SUBMITTING GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION | | |
| | DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |

CMS-432 (Rev 7/03)  C 483-0726

ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Article 1 of the Collective Bargaining Agreement, the Fair Share Supplemental Agreement and the Fair Share Side Letter.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA, the Supplemental Agreement and the Fair Share Side Letter, which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

Exhibit 11



# *Teamsters Local Union 705*

Chartered as

Truck Drivers, Oil Drivers, Filling Station and Platform Workers Local Union No. 705
AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

1645 WEST JACKSON BLVD. • CHICAGO, ILLINOIS 60612 • Phone: (312) 738-2800

Executive Board

JUAN C. CAMPOS
Secretary-Treasurer

JOSEPH M. BAKES
President

GREGORY H. POSTER
Vice-President

KENNETH J. EMAMULLSON
Recording Secretary

JANETTE M. SPARKLE
Trustee

SCOTT W. HEBY
Trustee

WILLIAM J. SULLIVAN
Trustee

Elected Business Agents

KIMBERLY OONEY
RICHARD HOFF
JOHN SEBERT
TOM SWIATOWIEC

VIA CERTIFIED MAIL,
REGULAR MAIL, AND EMAIL
TO PETE.ROMANO@ILLINOIS.GOV

March 5, 2015

Pete Romano
Department of Veterans Affairs
833 S Spring
Box 19432
Springfield, Illinois 62794-9432

Re: Grievance Challenging Agency Action to not remit fair share fees to
Teamsters Local Union No. 705

Mr Romano:

Enclosed please find a grievance we are filing on behalf of all Teamsters Local Union
No. 705 bargaining unit members employed by the Department of Veterans Affairs.
The grievance contests the Governor's directive to all State agency heads that they
refuse to comply with fair share contract provisions.  This action is a violation of
Articles 1 and 4 of the Local 330/Local 705 collective bargaining agreement and the
Fair Share Supplemental Agreement

Pursuant to Article 6.9 of the collective bargaining agreement, we are requesting your
consent to file this grievance at an advanced step because it contests a violation which
will occur at the agency level.  Please confirm whether you consent to advance filing as
soon as possible but no later than March 12, 2015.

Very truly yours,

Joseph M. Bakes
President

*EMPLOY UNION LABOR—INVEST IN THE BEST*

1000 (314)

**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS
FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT
OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| Teamsters Local Union No. 705 | | | Department of Veterans Affairs |

| WORK ADDRESS | BARGAINING AGENT (IF ANY) |
|---|---|
| Illinois Veterans Home in Manteno | Teamsters Local Union No. 705 |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attachment

| | | |
|---|---|---|
| **STEP 1** | DATE SUBMITTED | |
| | DATE OF RESPONSE | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE |
| | SUPERVISOR'S SIGNATURE | EMPLOYEE'S SIGNATURE |
| **STEP 2** | DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: |
| | DATE OF RESPONSE | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | EMPLOYEE'S SIGNATURE |
| **STEP 2a** | DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE): |
| | DATE OF RESPONSE | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | |
| | MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE |
| **STEP 3** | DATE SUBMITTED 3/5/15 | RESPONSE OF AGENCY HEAD: |
| | DATE OF RESPONSE | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | |
| | AGENCY HEAD'S SIGNATURE | EMPLOYEE'S SIGNATURE |
| **STEP 4** | I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION. | | |
| | DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |

CMS-402 (Rev. 7/93)    IL 401-0799

ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 conflicts with Articles 1 and 4 of the Collective Bargaining Agreement and the Fair Share Supplemental Agreement.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA and the Supplemental Agreement, which require any non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect all dues and any proportionate share fees as required by the Agreement.



# Teamsters Local Union 705

chartered as

Truck Drivers, Oil Drivers, Filling Station and Platform Workers Local Union No. 705
AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

1645 WEST JACKSON BLVD • CHICAGO, ILLINOIS 60612 • Phone: (312) 738-2800

Executive Board

JUAN F. CAMPOS
Secretary-Treasurer

JOSEPH M. BAKES
President

GREGORY H. FOSTER
Vice President

KENNETH J. EMANUELSON
Recording Secretary

SANTOS M. MINIREZ
Trustee

SCOTT W. HIPP
Trustee

WILLIAM F. SULLIVAN
Trustee

Elected Business Agents

KIMBERLY OBNEY
RICHARD ROHE
JOHN GILBERT
TOM SWIATOWIEC

VIA CERTIFIED MAIL,
REGULAR MAIL AND EMAIL TO
LARON.COLE@ILLINOIS.GOV

March 5, 2015

Laron Cole
Department of Human Services
100 S. Grand Ave. E.
Floor 003
Springfield, Illinois 62762

Re: Grievance Challenging Agency Action to not remit fair share fees to Teamsters Local Union No. 705

Mr. Cole:

Enclosed please find a grievance we are filing on behalf of all Teamsters Local Union No. 705 bargaining unit members employed by the Department of Human Services. The grievance contests the Governor's directive to all State agency heads that they refuse to comply with fair share contract provisions. This action is a violation of Articles 1 and 4 of the Local 330/Local 705 collective bargaining agreement and the Fair Share Supplemental Agreement.

Pursuant to Article 6.9 of the collective bargaining agreement, we are requesting your consent to file this grievance at an advanced step because it contests a violation which will occur at the agency level. Please confirm whether you consent to advance filing as soon as possible but no later than March 12, 2015.

Very truly yours,

Joseph M. Bakes
President

**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS
FORM. RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT
OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | | SOC. SEC. NO. | AGENCY |
|---|---|---|---|---|
| Teamsters Local Union No. 705 | | | | Department of Human Services |
| WORK ADDRESS | | BARGAINING AGENT (IF ANY) | | |
| Shapiro Developmental Center in Kankakee | | Teamsters Local Union No. 705 | | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attachment

| | | |
|---|---|---|
| **STEP 1** | DATE SUBMITTED | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE. |
| | DATE OF RESPONSE | |
| | SUPERVISOR'S SIGNATURE | EMPLOYEE'S SIGNATURE |
| **STEP 2** | DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: |
| | DATE OF RESPONSE | |
| | RESPONSE: ☐ ACCEPTED  ☐ REJECTED | EMPLOYEE'S SIGNATURE |
| **STEP 2a** | DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE) |
| | DATE OF RESPONSE | |
| | RESPONSE: ☐ ACCEPTED  ☐ REJECTED | |
| | MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE |
| **STEP 3** | DATE SUBMITTED  3/5/15 | RESPONSE OF AGENCY HEAD: |
| | DATE OF RESPONSE | |
| | RESPONSE: ☐ ACCEPTED  ☐ REJECTED | |
| | AGENCY HEAD'S SIGNATURE | EMPLOYEE'S SIGNATURE |
| **STEP 4** | I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION. | | |
| | DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |

CMS-461 (Rev. 7/85)   IL 401-0125

## ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 conflicts with Articles 1 and 4 of the Collective Bargaining Agreement and the Fair Share Supplemental Agreement.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA and the Supplemental Agreement, which require any non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect all dues and any proportionate share fees as required by the Agreement.



# *Teamsters* **Local Union 705**

chartered as

Truck Drivers, Oil Drivers, Filling Station and Platform Workers Local Union No. 705

AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

1645 WEST JACKSON BLVD · CHICAGO, ILLINOIS 60612 · Phone: (312) 738-2800

**Executive Board**

JUAN C. CAMPOS
*Secretary-Treasurer*

JOSEPH M. BAKES
*President*

GREGORY R. FOSTER
*Vice-President*

KENNETH J. EMMRICHSON
*Recording Secretary*

SANTOS M. MARNEZ
*Trustee*

SCOTT W. REIN
*Trustee*

WILLIAM J. SULLIVAN
*Trustee*

**Elected Business Agents**

KIMBERLY ODMEY
RICHARD ROPE
JOHN SIEBERT
TOM SWIATOWIEC

**VIA CERTIFIED MAIL,
REGULAR MAIL, AND EMAIL TO
JENNIFER.BROUGHTON@ILLINOIS.GOV**

March 5, 2015

Jennifer Broughton
Illinois Department of Transportation
2300 S. Dirksen Parkway
Springfield, Illinois 62764

> Re:   Grievance Challenging Agency Action to not remit fair share fees to Teamsters Local Union No. 705

Ms. Broughton:

Enclosed please find a grievance we are filing on behalf of all Teamsters Local Union No. 705 bargaining unit members employed by the Department of Transportation. The grievance contests the Governor's directive to all State agency heads that they refuse to comply with fair share contract provisions. This action is a violation of Articles 1 and 4 of the Local 330/Local 705 collective bargaining agreement and the Fair Share Supplemental Agreement.

Pursuant to Article 6.9 of the collective bargaining agreement, we are requesting your consent to file this grievance at an advanced step because it contests a violation which will occur at the agency level. Please confirm whether you consent to advance filing as soon as possible but no later than March 12, 2015.

Very truly yours,

Joseph M. Bakes
President

*EMPLOY UNION LABOR—INVEST IN THE BEST*



**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS
FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT
OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | | DOC. SEC. NO. | AGENCY |
|---|---|---|---|---|
| Teamsters Local Union No. 705 | | | | Department of Transportation |
| WORK ADDRESS | | BARGAINING AGENT (IF ANY) | | |
| Illinois Department of Transportation in Kankakee | | Teamsters Local Union No. 705 | | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See Attachment

| | DATE SUBMITTED | | | | |
|---|---|---|---|---|---|
| **STEP 1** | DATE OF RESPONSE | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE. | | | |
| | SUPERVISOR'S SIGNATURE | | | EMPLOYEE'S SIGNATURE | |
| **STEP 2** | DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: | | | |
| | DATE OF RESPONSE | | | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | | EMPLOYEE'S SIGNATURE | |
| **STEP 2a** | DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE): | | | |
| | DATE OF RESPONSE | | | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | | | |
| | MANAGER'S SIGNATURE | | | EMPLOYEE'S SIGNATURE | |
| **STEP 3** | DATE SUBMITTED  3/5/15 | RESPONSE OF AGENCY HEAD: | | | |
| | DATE OF RESPONSE | | | | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | | | | |
| | AGENCY HEAD'S SIGNATURE | | | EMPLOYEE'S SIGNATURE | |
| **STEP 4** | I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION. | | | | |
| | DESIGNATED REPRESENTATIVE | | DATE | EMPLOYEE'S SIGNATURE | |

CMS-400 (Rev. 1-95)   IL 401-0722

ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 conflicts with Articles 1 and 4 of the Collective Bargaining Agreement and the Fair Share Supplemental Agreement.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA and the Supplemental Agreement, which require any non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect all dues and any proportionate share fees as required by the Agreement.

Exhibit 12

ILLINOIS STATE POLICE
RC 164 CONTRACT GRIEVANCE

Grievant's Name __President Steve Clemente__    I.D. Number __4319__

Rank __Sgt__    Division/Work Location __FOP__

Date dispute or difference of opinion occurred: __On-Going__    Home Phone # __847-308-1619__

Statement of Grievance (include facts of the complaint, Sections of the Agreement violated [if applicable] and relief requested.) Attach additional pages as needed.

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining, and by improperly encouraging union members to resign their membership in the Union and enticing new hires not to join the union.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.

Lodge Representative _____    Employee _Steve M Clemente_ (Signature)
                        (Signature Optional)

Grievance Number _____

Date and time grievance presented to immediate non-bargaining unit supervisor _____

Step I - response to be given within ten (10) calendar days from the date the grievance was first presented.

_____
_____
_____

Signature _____    Date _____

Grievant's initials _____ date _____ and time _____ acknowledging receipt of Step I response.

Signature _____    Date _____ of lodge representative requesting that the grievance be advanced to Step II.

Step II - response to be given within ten (10) days of the meeting held to discuss the grievance.

_____
_____
_____

Signature _____    Date _____

Signature _____    Date _____ of lodge representative requesting that the grievance be advanced to Step III.

Step III - response to be given within ten (10) days of the meeting held to discuss the grievance.

_____
_____
_____

Signature _____    Date _____

IL 403-0364    ISP 2-286 (12/09)

## ILLINOIS STATE POLICE

## RC 164 CONTRACT GRIEVANCE ADDENDUM FORM

2. The Union demands that the Employer immediately cease implementation of the Executive Order.

3. The Union demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

OFFICER- _Stan W. Clementi_          DATE _____          PAGE ___ OF ___

ILLINOIS STATE POLICE
SRC-018    CONTRACT GRIEVANCE

Grievant's Name  Cory Rishveit                                    I.D. Number  4656

Rank  Lt                          Division/Work Location  DOO

Date dispute or difference of opinion occurred:  On-Going          Home Phone #  018-442-5989

Statement of Grievance (Include facts of the complaint, Sections of the Agreement violated (if applicable) and relief requested.) Attach additional pages as needed.

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the Union and enticing new hires not to join the union.

Requested Remedies:
The Union demands to be made whole in all ways, including but not limited to the following:
1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.

Lodge Representative _Lt. CA Rishveit_ 4656 _____   Employee _Lt CA Rishveit_ 4456
                        (Signature Optional)                              (Signature)

                                                        Grievance Number _____

Date and time grievance presented to immediate non-bargaining unit supervisor _____
Step I – response to be given within ten (1 0) calendar days from the date the grievance was first presented.

_____
_____
_____
_____

                          Signature _____        Date _____
Grievant's Initials _____  date _____   and time _____ acknowledging receipt of Step I response.
                                                  of lodge representative requesting that the grievance be advanced to Step 11.
Signature _____  Date _____

Step II – response to be given within ten (10) days of the meeting held to discuss the grievance.

_____
_____
_____
_____

                          Signature _____        Date _____
                                                  of lodge representative requesting that the grievance be advanced to Step I 11.
Signature _____  Date _____

Step III – response to be given within ten (1 0) days of the meeting held to discuss the grievance.

_____
_____
_____

                          Signature _____        Date _____

IL 803-0984                                                          ISP-3-260 (12/90)

# ILLINOIS STATE POLICE

## SRC-018   CONTRACT GRIEVANCE ADDENDUM FORM

2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

OFFICER _Lt. C.A. Pietrull_ 4/6/12 DATE _____     PAGE 2 OF 2

Exhibit 13

**ILLINOIS NURSES ASSOCIATION**

*Empowering Nurses Through ...*
*Education, Advocacy & Political Action*

| Please Print or Type all information except Signature | | | | |
|---|---|---|---|---|
| Employee Name | Position Title | | Facility Name | Agency |
| Class Action - IDOC | CNT, CNI, and CNII | | all | Corrections |
| Work Address | | Bargaining Agent (if any) | | |
| 911 S. 2nd Street Springfield, Ill. 62704 | | RC-23 | | |
| Work Phone | | Home/Cell Phone | 618-319-3740 | |

Statement of Grievance and Relief Requested (including citation of alleged rule violations)

SEE ATTACHED

Signature of Grievant:

**Step 1**

| Date of Response | | Signature of Grievant: NA |
|---|---|---|
| Employee Representative | | Employee's Signature |

**Step 2**

| Date Submitted | Response of Agency Head |
| --- | --- |
| 3/5/15 | |
| Date of Response | |

| Response: | Accepted | |
| --- | Rejected | |
| Manager's Signature | | Employee's Signature |

**Step 3a**

| Date Submitted | Response of CMS (where applicable) |
| --- | --- |
| Date of Response | |

| Response: | Accepted | |
| --- | Rejected | |
| Manager's Signature | | Employee's Signature |

**Arbitration (3b)**

| Date Submitted | Decision Award |
| --- | --- |

All CNT's, CNI's, CNII's and the INA grieve violation of Article I, Section 3 (fair share agreement) and any and all other pertinent articles, rules, and/or laws.

Specifically, on February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the INA and enticing new hires not to join the Union.

Requested Remedies:

INA demands to be made whole in all ways, including but not limited to the following.

1. INA requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, INA requests that the case be submitted to arbitration immediately.
2. INA demands that the Employer immediately cease implementation of the Executive Order.
3. INA demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Illinois Nurses Association

by _____

**ILLINOIS NURSES ASSOCIATION**

*Empowering Nurses Through*
*Education, Advocacy & Political Action*

| Please Print or Type all information except Signature | | | |
|---|---|---|---|
| Employee Name | Position Title | Facility Name | Agency |
| Class Action - DCFS | CWNS | all | Check/Monthly Retention |
| Work Address | | Bargaining Agent (if any) | |
| 911 S. 2nd Street Springfield, Ill. 62704 | | RC-23 | |
| Work Phone | | Home Cell Phone | 616-319-3749 |

Statement of Grievance and Relief Requested including citation of alleged rule violations.

SEE ATTACHED

Signature of Grievant:

<table>
<tr><td>Step 1</td><td>Date Submitted</td><td colspan="2"></td></tr>
<tr><td></td><td>Date of Response</td><td colspan="2">NA</td></tr>
<tr><td></td><td>Employee Representative</td><td>Employee's Signature</td></tr>
</table>

| Step 2 | Date Submitted | Response of agency (tba) | |
|---|---|---|---|
| | 3/5/15 Date of Response | | |
| | Response: ☐ Accepted ☐ Rejected | | |
| | Manager's Signature | Employee's Signature | |

| Step 3a | Date Submitted | Response of CMS (where applicable) | |
|---|---|---|---|
| | Date of Response | | |
| | Response: ☐ Accepted ☐ Rejected | | |
| | Manager's Signature | Employee's Signature | |

| Arbitration (3b) | Date Submitted | Decision Award | |
|---|---|---|---|
| | | | |

All CWNS's and the INA grieve violation of Article I, Section 3 (fair share agreement) and any and all other pertinent articles, rules, and/or laws.

Specifically, on February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the INA and enticing new hires not to join the Union.

Requested Remedies:

INA demands to be made whole in all ways, including but not limited to the following:

1. INA requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, INA requests that the case be submitted to arbitration immediately.
2. INA demands that the Employer immediately cease implementation of the Executive Order
3. INA demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Illinois Nurses Association

By _Denis Best_

3/5/15

**(ina)** **ILLINOIS NURSES ASSOCIATION**

*Empowering Nurses Through Education, Advocacy & Political Action*

| Employer Name | Position Title | Tandem Name | Agency |
|---|---|---|---|
| Class Action - DJJ | CNT, CNi, and CNII | all | Juvenile Justice |
| **Work Address** | | **Bargaining Agent (if any)** | |
| 911 S. 2nd Street Springfield, Ill, 62704 | | RC-23 | |
| **Work Phone** | | **Home/Cell Phone** 616-319-3749 | |

Statement of Grievance and Relief Requested (including citation of alleged rule violations)

SEE ATTACHED

Signature of Grievant:

| | | NA |
|---|---|---|

**Step 1**

| Date Submitted | | |
|---|---|---|
| Date of Response | | |
| Employer Representative | | Employee's Signature |

**Step 2**

| Date Submitted 3/5/15 | Response of Agency Head | |
|---|---|---|
| Date of Response | | |
| Response: Accepted Rejected | | |
| Manager's Signature | | Employee's Signature |

**Step 3a**

| Date Submitted | Response of CMS (where applicable) | |
|---|---|---|
| Date of Response | | |
| Response: Accepted Rejected | | |
| Manager's Signature | | Employee's Signature |

**Arbitration (3b)**

| Date Submitted | Decision Award |
|---|---|
| | |

All CNI's, CNII's and the INA grieve violation of Article I, Section 3 (fair share agreement) and any and all other pertinent articles, rules, and/or laws.

Specifically, on February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the INA and enticing new hires not to join the Union.

Requested Remedies:

INA demands to be made whole in all ways, including but not limited to the following:

1. INA requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, INA requests that the case be submitted to arbitration immediately.

2. INA demands that the Employer immediately cease implementation of the Executive Order.

3. INA demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Illinois Nurses Association

by _____

3/3/15

**(ina) ILLINOIS NURSES ASSOCIATION**

Empowering Nurses Through
Education, Advocacy & Political Action

911 S. 2nd Street Springfield, Illinois 62704

| Please Print or Type all information except Signature | | | |
|---|---|---|---|
| Employee Name | Position Title | Facility Name | Agency |
| Class Action - HFS | HFSN | all | Health and Family Services |
| Work Address | | Bargaining Agent (if any) | |
| 911 S. 2nd Street Springfield, Ill, 62704 | | RC-23 | |
| Work Phone | | Bargaining Phone 618-316-3749 | |

Statement of Grievance and Relief Requested (including citation of alleged rule violation).

SEE ATTACHED

Signature of Grievant

| Step 1 | Date Submitted | | Signature of Grievant |
|---|---|---|---|
| | Time of Response | | $NA$ |
| | Employee Representative | | Employee Signature |

| Step 2 | Date Submitted 3/5/15 | Response of Agency Head. | |
|---|---|---|---|
| | Time of Response | | |
| | Response: ☐ Accepted ☐ Rejected | | |
| | Manager's Signature | | Employee Signature |

| Step 3a | Date Submitted | Response of CMS (where applicable) | |
|---|---|---|---|
| | Date of Response | | |
| | Response: ☐ Accepted ☐ Rejected | | |
| | Manager's Signature | | Employee Signature |

| Arbitration (3b) | Date Submitted | Decision Award. | |
|---|---|---|---|

All HFSN's and the INA grieve violation of Article I, Section 3 (fair share agreement) and any and all other pertinent articles, rules, and/or laws.

Specifically, on February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the INA and enticing new hires not to join the Union.

Requested Remedies:

INA demands to be made whole in all ways, including but not limited to the following:

1. INA requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, INA requests that the case be submitted to arbitration immediately.
2. INA demands that the Employer immediately cease implementation of the Executive Order.
3. INA demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Illinois Nurses Association

by _____

3. Sara

ILLINOIS NURSES ASSOCIATION

STATE OF ILLINOIS

DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANCE

Date: March _9_, 2015

Agency: Department of Central Management Services; Illinois Dept. of Veterans Affairs

Contract Provisions: Article I Section 3 and any other language that may apply. _____

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the INA and enticing new hires not to join the Union.

Requested Remedies:

INA demands to be made whole in all ways, including but not limited to the following:

1. INA requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 3A of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 3A, INA requests that the case be submitted to arbitration immediately.
2. INA demands that the Employer immediately cease implementation of the Executive Order.
3. INA demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Illinois Nurses Association

by _____

ILLINOIS NURSES ASSOCIATION

STATE OF ILLINOIS

DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANCE

Date: March 5, 2015

Agency: Department of Central Management Services; Illinois Dept. of Human Services

Contract Provisions: Article I Section 3 and any other language that may apply._____

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the INA and enticing new hires not to join the Union.

Requested Remedies:

INA demands to be made whole in all ways, including but not limited to the following:

1. INA requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 3A of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 3A, INA requests that the case be submitted to arbitration immediately.
2. INA demands that the Employer immediately cease implementation of the Executive Order.
3. INA demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Illinois Nurses Association

by _____

ILLINOIS NURSES ASSOCIATION

STATE OF ILLINOIS

DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANCE

Date: March _5_, 2015

Agency: Department of Central Management Services; Illinois Dept. of Public Health

Contract Provisions: Article ___ Section _3_ and any other language that may apply._____

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the INA and enticing new hires not to join the Union.

Requested Remedies

INA demands to be made whole in all ways, including but not limited to the following:

1.  INA requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 3A of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 3A, INA requests that the case be submitted to arbitration immediately.
2.  INA demands that the Employer immediately cease implementation of the Executive Order.
3.  INA demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Illinois Nurses Association

by _____

ILLINOIS NURSES ASSOCIATION

STATE OF ILLINOIS

DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANCE

Date: March 5, 2015

Agency: Department of Central Management Services;

Contract Provisions: Article I Section 3 and any other language that may apply_____

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the INA and enticing new hires not to join the Union.

Requested Remedies:

INA demands to be made whole in all ways, including but not limited to the following:

1. INA requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 3A of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 3A, INA requests that the case be submitted to arbitration immediately.
2. INA demands that the Employer immediately cease implementation of the Executive Order.
3. INA demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Illinois Nurses Association

by_____



ILLINOIS NURSES ASSOCIATION
STATE OF ILLINOIS
DEPARTMENT OF CENTRAL MANAGEMENT SERVICES
GRIEVANCE

Date: March 5, 2015

Agency: Department of Central Management Services; Department of
Healthcare and Family Services

Grievants: Illinois Nurses Association on its own behalf and on behalf
of all its RC 16 bargaining unit employees, including but not
necessarily limited to Avery Gerstein, Martin Feldman, Daniel Falb,
Thomas Patrick Murray, Henry Soltysinski, and Matthew Rogind

Contract Provisions: Article VIII, Sections 1-3; all other relevant
provisions

Statement of Grievance:
On February 9, 2015, Governor Rauner issued Executive Order 15-13.
This Executive Order directs DCMS to immediately cease the enforcement
of contractual provisions for the collection of fair share fees from
employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check off and Fair Share
provision of the Agreement which requires non-members to pay the
proportionate share of the costs of the collective bargaining process,
contract administration and the pursuance of matters affecting wages,
hours and working conditions.

The Executive Order undermines the representative status of the Union
and its strength to bargain for and represent its members, by
demonstrating the Governor's belief that the State is bound by neither
the law nor the commitments it makes through collective bargaining and
by improperly encouraging union members to resign their membership in
the INA and enticing new hires not to join the Union.

Requested Remedies:
    INA demands to be made whole in all ways, including but not
limited to the following:
    1. INA requests that the Employer waive meetings at the initial
       steps of the grievance procedure and agree to meet at Step 4
       of the Grievance procedure as soon as possible. If the
       grievance is not resolved at Step 4, the Union requests that
       the case be submitted to arbitration immediately.
    2. INA demands that the Employer immediately cease implementation
       of the Executive Order.
    3. INA demands that the Employer continue to collect
       proportionate share fees and to remit them to INA at the same
       time it remits dues check-offs.

                              Illinois Nurses Association

                        by _____

Exhibit 14



# Illinois Federation of Public Employees
## Grievance Form

| Employee Name IFPE Loral 4408 AFT, AFL CIO | Position Title All bargaining unit titles in the RC 29 bargaining unit represented by IFPE Local 4408 AFT, AFL-CIO | Grievance No: | Agency CMS, Corrections, EPA, Commerce Commission, Natural Resources, Agriculture, Revenue, IDOT, Public Health, Veterans Affairs, State Police, State Fire Marshall, financial and Professional Regulation. |
|---|---|---|---|

| Work Address CMS Room 503, Stratton State Office Building, Springfield, Illinois. | Collective Bargaining Unit: IFPE #: RC 29 |
|---|---|

Statement of Grievance and Relief Requested (including citation of alleged Violation) On or about February 9, 2015 Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement, Article 5 sections 1, 2 and 3 and all other Articles and sections that may apply, during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 3, the Union requests that the case be submitted to arbitration immediately.

2. The Union demands that the Employer immediately cease implementation of the Executive Order.

3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

| S T E P 1 | Date Submitted: | We the undersigned have discussed this matter orally and have not resolved the grievance. | |
|---|---|---|---|
| | Date of Response: | | |
| | Supervisor's Signature | | Employee's Signature |
| S T E P 2 | Date Submitted: | Response of the next higher level supervisor: | |
| | Date of Response: | | |
| | Response: | | |

| ☐Accepted<br><br>☐Rejected | |
|---|---|
| Manager's Signature | Employee's Signature |

**STEP 3**

I hereby submit this grievance to the Director of Central Management Services for review prior to submission to arbitration.

| Designated Representative: | Date:<br>March 5, 2015 | Signature of IFPE |
|---|---|---|
| | | *Terry Reed* |

Exhibit 15



# Illinois Federation of Public Employees
## Grievance Form

| Employee Name<br>IFPE Local 4408 AFT, AFL-CIO | Position Title All titles represented in RC 45 by the IFPE Local 4408 AFT, AFL-CIO | Grievance No: | Agency CMS, IDOT, Corrections. |
|---|---|---|---|
| Work Address<br>CMS, 503 Stratton State Office Building, Springfield, Illinois. | | Collective Bargaining Unit:<br><br>IFPE #: RC 45 | |

Statement of Grievance and Relief Requested (including citation of alleged Violation) On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement, Article 5 section 5 and all other Articles and sections that may apply, during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 3, the Union requests that the case be submitted to arbitration immediately.

2. The Union demands that the Employer immediately cease implementation of the Executive Order.

3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

| | Date Submitted | We the undersigned have discussed this matter orally and have not resolved the grievance. |
|---|---|---|
| S T E P | Date of Response: | |
| | Supervisor's Signature | Employee's Signature |
| S T | Date Submitted | Response of the next higher level supervisor: |

| E D 2 | Date of Response: | | |
|---|---|---|---|
| | Response: ☐Accepted ☐Rejected | | |
| | Manager's Signature | | Employee's Signature |

| S T E P 3 | I hereby submit this grievance to the Director of Central Management Services for review prior to submission to arbitration. | | |
|---|---|---|---|
| | Designated Representative: | Date: March 5, 2015 | Signature of IFPE For IFPE Terry Reed |

IFPELocal4408—05/04

Exhibit 16



# Illinois Federation of Public Employees
## Grievance Form

| Employee Name IFPE Local 4408 AFT, AFL-CIO | Position Title. All titles represented by IFPE Local 4408 AFT, AFL-CIO in the RC 56 bargaining unit. | Grievance No: | Agency CMS, Natural Resources, Veterans Affairs, Human Services, Historic Preservation. |
|---|---|---|---|

| Work Address CMS Room 503 Stratton State Office Building, Springfield, Illinois. | Collective Bargaining Unit: IFPE #: RC 56 |
|---|---|

Statement of Grievance and Relief Requested (including citation of alleged Violation) On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement, Article 6 sections 1,2 and 3 and all other Articles and sections that apply, during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1.  The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.

2.  The Union demands that the Employer immediately cease implementation of the Executive Order.

3.  The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

| S T E P | Date Submitted: | We the undersigned have discussed this matter orally and have not resolved the grievance. | |
|---|---|---|---|
| | Date of Response: | | |
| I | Supervisor's Signature | | Employee's Signature |
| S T | Date Submitted: | Response of the next higher level supervisor: | |

ATTACHMENT

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS and all agencies to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions. Executive Order 15-13 has caused and will cause the Agency to violate Article 1 of the Collective Bargaining Agreement, the Fair Share Supplemental Agreement and the Fair Share Side Letter.

Specifically, the Executive Order unilaterally negates the Fair Share provisions of the CBA, the Supplemental Agreement and the Fair Share Side Letter, which require non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at the Step 3 of the Grievance procedure as soon as possible. If the grievance is not resolved at the Step 3, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.



# Illinois Federation of Public Employees
## Grievance Form

| Employee Name IFPE Local 4408 AFT, AFL-CIO | Position Title All titles represented by IFPE Local 4408 AFT, AFL-CIO in the RC 56 bargaining unit. | Grievance No: | Agency CMS, Natural Resources, Veterans Affairs, Human Services, Historic Preservation. |
|---|---|---|---|
| Work Address CMS Room 503 Stratton State Office Building, Springfield, Illinois. | | Collective Bargaining Unit: IFPE #: RC 56 | |

Statement of Grievance and Relief Requested (including citation of alleged Violation) On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. The Union anticipates that the Employer will violate the Agreement, Article 6 sections 1,2 and 3 and all other Articles and sections that apply, during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1.  The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.

2.  The Union demands that the Employer immediately cease implementation of the Executive Order.

3.  The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

| S T E D | Date Submitted: | We the undersigned have discussed this matter orally and have not resolved the grievance. |
|---|---|---|
| | Date of Response: | |
| 1 | Supervisor's Signature | Employee's Signature |
| S T | Date Submitted: | Response of the next higher level supervisor: |

IFPELocal4408--05/04

| S T E P 2 | Date of Response: | | |
| | Response: ☐Accepted ☐Rejected | | |
| | Manager's Signature | | Employee's Signature |

| S T E P 3 | I hereby submit this grievance to the Director of Central Management Services for review prior to submission to arbitration. | | |
| | Designated Representative: | Date: March 5, 2015 | Signature of IFPE For IFPE Terry Reed |

IFPELocal4408--05/04

Exhibit 17



**ILLINOIS**
**DEPARTMENT OF CENTRAL**
**MANAGEMENT SERVICES**

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| All Affected | All Affected Titles | | All Covered Agencies |

| WORK ADDRESS | BARGAINING AGENT (IF ANY) |
|---|---|
| All Covered Work Locations | VR-704 |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF **ALLEGED RULE VIOLATIONS**):

Issue: See attached.

Remedy Requested: See attached.

| | | | |
|---|---|---|---|
| **STEP 1** | DATE SUBMITTED | | |
| | DATE OF RESPONSE | | |
| | SUPERVISOR'S SIGNATURE | EMPLOYEE'S SIGNATURE | |
| **STEP 2** | DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: | |
| | DATE OF RESPONSE | | |
| | Response: __ Accepted __ Rejected | EMPLOYEE'S SIGNATURE | |
| **STEP 2a** | DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE): | |
| | DATE OF RESPONSE | | |
| | Response: __ Accepted __ Rejected | | |
| | MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE | |
| **STEP 3** | DATE SUBMITTED | RESPONSE OF AGENCY HEAD: | |
| | DATE OF RESPONSE | | |
| | Response: __ Accepted __ Rejected | | |
| | MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE | |
| **STEP 4** | DESIGNATED REPRESENTATIVE Michael R Stout | DATE 3/5/2015 | EMPLOYEE'S SIGNATURE Mint Offer For Union |

CMS-462 (REV. 7/95) IL 401-0726

STATE OF ILLINOIS

DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANCE REPORT AND RECORD

Date: March 5, 2015

Grievant: All Affected Employees who are members of the VR-704 Agreement and ISEA, Laborers' Local 2002

Agency: All Agencies where Affected Employees under VR-704 are present

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs the Department of Central Management Services to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-Off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours, and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

The Union grieves under Article 6 of the VR-704 bargaining agreement as well as any other Articles, Laws, Rules, or Practices that may apply

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.





**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF
THIS FORM, RETAIN PINK COPY FOR YOUR RECORDS
AND SUBMIT OTHER COPIES TO IMMEDIATE
SUPERVISOR.

**GRIEVANCE REPORT AND RECORD**

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| All Affected | All Affected Titles | | All Covered Agencies |

| WORK ADDRESS | BARGAINING AGENT (IF ANY) |
|---|---|
| All Covered Work Locations | VR-706 |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

Issue: See attached.

Remedy Requested: See attached.

| | | |
|---|---|---|
| **STEP 1** | DATE SUBMITTED | |
| | DATE OF RESPONSE | |
| | SUPERVISOR'S SIGNATURE | EMPLOYEE'S SIGNATURE |
| **STEP 2** | DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: |
| | DATE OF RESPONSE | |
| | Response: __ Accepted __ Rejected | EMPLOYEE'S SIGNATURE |
| **STEP 2a** | DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE): |
| | DATE OF RESPONSE | |
| | Response: __ Accepted __ Rejected | |
| | MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE |
| **STEP 3** | DATE SUBMITTED | RESPONSE OF AGENCY HEAD: |
| | DATE OF RESPONSE | |
| | Response: __ Accepted __ Rejected | |
| | MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE |
| **STEP 4** | DESIGNATED REPRESENTATIVE _Michael R Strat_ | DATE 3/5/2015  EMPLOYEE'S SIGNATURE _Michael R Flood_  For Union |

CMS-402 (REV. 7/95) IL 401 6720

STATE OF ILLINOIS

DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANCE REPORT AND RECORD

Date: March 5, 2015

Grievant: All Affected Employees who are members of the VR-706 Agreement and ISEA, Laborers' Local 2002

Agency: All Agencies where Affected Employees under VR-706 are present

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs the Department of Central Management Services to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-Off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours, and working conditions. The Union anticipates that the Employer will violate the Agreement during the next pay period by failing to deduct and remit proportionate share fees with dues from Union check-off.

The Executive Order improperly encourages union members to cease their membership in the Union and it entices new hires not to join the Union and is an attempt to undermine the representative status of the Union and its strength at the bargaining table.

The Union grieves under Article 6 of the VR-706 bargaining agreement as well as any other Articles, Laws, Rules, or Practices that may apply

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect proportionate share fees and to remit them to the Union at the same time it remits dues check-offs.

Exhibit 18



**LOCAL 73**

**SEIU**

Stronger Together

SERVICE EMPLOYEES
INTERNATIONAL UNION
LOCAL 73
www.seiu73.org

CHRISTINE BOARDMAN
President

MATT BRANDON
Secretary-Treasurer

BETTIE BOLES
Vice President

DALE HILLIER
Vice President

TIM MC DONALD
Vice President

TAAUB-DIN ZIYAD
Vice President

CHICAGO
300 South Ashland Ave
Suite 400
Chicago, Illinois
60607-2746

312.787-5868
FAX: 312.337-7768

VIA EMAIL AND 1ST CLASS MAIL

March 5, 2015

Mr. Jim Hafliger
Director of Mines and Minerals
Department of Natural Resources
One Natural Resources Way
Springfield, IL 62702

**Re.  SEIU Local 73 and Department of Natural Resources**
     **Grievance contesting Executive Order 15-13 concerning Fair Share**

Dear Mr. Hafliger:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the Union and enticing new hires not to join the union.

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.

2. The Union demands that the Employer immediately cease implementation of the Executive Order.

3. The Union demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Signed: _____ Date: 3/5/2015

Exhibit 19



**LOCAL 73**

**SEIU**

Stronger Together

SERVICE EMPLOYEES
INTERNATIONAL UNION
LOCAL 73
www.seiu73.org

CHRISTINE BOARDMAN
*President*

MATT BRANDON
*Secretary-Treasurer*

BETTIE BOLES
*Vice President*

DALE HILLIER
*Vice President*

TIM MC DONALD
*Vice President*

TAALIB-DIN ZIYAD
*Vice President*

CHICAGO
300 South Ashland Ave
Suite 400
Chicago, Illinois
60607-2746

312.787.5868
FAX: 312.337.7768

**VIA EMAIL AND 1ST CLASS MAIL**

March 5, 2015

Stephen Horcharik                              Bart Ridings
183 Security Forces Squadron          182nd Airlift Wing
3101 J. David Jones Parkway            2416 South Falcon Boulevard
Springfield, IL 62707-5001                Peoria, IL 61607

Re.  SEIU Local 73 and Department of Military Affairs
     Grievance contesting Executive Order 15-13 concerning Fair Share

Dear Messrs. Horcharik and Ridings:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the Union and enticing new hires not to join the union.

The Union demands to be made whole in all ways, including but not limited to the following:

1.  The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.

2.  The Union demands that the Employer immediately cease implementation of the Executive Order.

3.  The Union demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Signed: *Karen Kleinhans*          Date: 3-5-15

Exhibit 20

## GRIEVANCE

(use additional sheets where necessary)

Date Filed: **03/05/2015**
Department: **State of Illinois, Dept. of Central Management Services;**
**Department of Natural Resources**

Grievant's Name: **Illinois Fraternal Order of Police Labor Council**

| Last | First | M.I. |
|------|-------|------|

### STEP ONE

Date of Incident or Date Knew of Facts Giving Rise to Grievance: **February 9, 2015 and continuing**
Article(s)/Sections(s) violated: **Article 6 and any other applicable sections**
Briefly state the facts: **(Please see attached sheet.)**

Remedy Sought: **The Union demands to be made whole in all ways, including but not limited to the following: (Please see attached sheet.).**

Given To: _____  Date: _____

_____          _____
Grievant's Signature                FOP Representative Signature

### EMPLOYER'S RESPONSE

_____          _____
Employer Representative Signature        Position

_____
Person to Whom Response Given            Date

### STEP TWO

Reasons for Advancing Grievance: _____

Given To: _____  Date: _____

_____          _____
Grievant's Signature                FOP Representative Signature

### EMPLOYER'S RESPONSE

_____          _____
Employer Representative Signature        Position

_____
Person to Whom Response Given            Date

Lodge/Unit No. / Year / Grievance No.

**ATTACHMENT SHEET**

Date:          March 5, 2015

Grievant:      Illinois Fraternal Order of Police Labor Council

Agency:        State of Illinois, Department of Central Management Services; Department of Natural Resources

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the Union and enticing new hires not to join the union. This violation of the collective bargaining agreement is ongoing.

Requested Remedies:

1.    The Union requests that the Employer waive meetings at the initial steps of the grievance procedures and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.

2.    The Union demands that the Employer immediately cease implementation of the Executive Order.

3.    The Union demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Exhibit 21



## CONSERVATION POLICE LODGE RC-110 GRIEVANCE FORM
STATE OF ILLINOIS
DEPARTMENT OF CENTRAL MANAGEMENT SERVICES .
GRIEVANCE REPORT AND RECORD

Date: March 5, 2015
Grievant: Conservation Police Lodge, IL PBPA
Agency: Department of Central Management Services; Department of Natural Resources
Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive
Order directs DCMS to immediately cease the enforcement of contractual provisions for
the collection of fair share fees from employees in bargaining units represented by
Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the
Agreement which requires non-members to pay the proportionate share of the costs of the
collective bargaining process, contract administration and the pursuance of matters
affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to
bargain for and represent its members, by demonstrating the Governor's belief that the
State is bound by neither the law nor the commitments it makes through collective
bargaining and by improperly encouraging union members to resign their membership in
the Union and enticing new hires not to join the union.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the
following:

1. The Union requests that the Employer waive meetings at the initial steps of
the grievance procedure and agree to meet at Step 4 of the Grievance
procedure as soon as possible. If the grievance is not resolved at Step 4, the
Union requests that the case be submitted to arbitration immediately.

2. The Union demands that the Employer immediately cease implementation of
the Executive Order.

3. The Union demands that the Employer continue to collect and remit all dues
and proportionate share fees as required by the Agreement.

4.

Given To: _____          Date/Time: 3/5/15 _____

_____
CPL Representative's Signature

Exhibit 22

STATE OF ILLINOIS

DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANCE REPORT AND RECORD

Date: March 5, 2015

Grievant: Chicago Regional Council of Carpenters

Agency: Department of Central Management Services; [any other agency that might apply]

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the Union and enticing new hires not to join the union.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

STATE OF ILLINOIS

DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANCE REPORT AND RECORD

Date: March 5, 2015

Grievant: Mid-Central Illinois Regional Council of Carpenters

Agency: Department of Central Management Services; [any other agency that might apply]

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the Union and enticing new hires not to join the union.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

STATE OF ILLINOIS

DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANCE REPORT AND RECORD

Date: March 5, 2015

Grievant: St. Louis District Council of Carpenters

Agency: Department of Central Management Services; [any other agency that might apply]

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the Union and enticing new hires not to join the union.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Exhibit 23

# CMS ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | | SOC. SEC. NO. | AGENCY |
|---|---|---|---|---|
| Grievant - IBEW | | | | |

| WORK ADDRESS | BARGAINING AGENT (IF ANY) |
|---|---|
| 8174 Cass Avenue, Darien, IL 60561 | Sixth District IBEW - Lonnie R. Stephenson IVP |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

Filed on behalf of all IBEW represented employees working under the agreement between the Department of Central Management Services of the state of Illinois and the International Brotherhood of Electrical Workers. (see attached)

**STEP 1**

| DATE SUBMITTED | |
|---|---|
| DATE OF RESPONSE | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE. |

SUPERVISOR'S SIGNATURE | EMPLOYEE'S SIGNATURE

**STEP 2**

| DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: |
|---|---|
| DATE OF RESPONSE | |

RESPONSE: ☐ ACCEPTED ☐ REJECTED | EMPLOYEE'S SIGNATURE

**STEP 2a**

| DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE): |
|---|---|
| DATE OF RESPONSE | |

RESPONSE: ☐ ACCEPTED ☐ REJECTED
MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE

**STEP 3**

| DATE SUBMITTED | RESPONSE OF AGENCY HEAD: |
|---|---|
| DATE OF RESPONSE | |

RESPONSE: ☐ ACCEPTED ☐ REJECTED
AGENCY HEAD'S SIGNATURE | EMPLOYEE'S SIGNATURE

**STEP 4**

I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION.

| DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |
|---|---|---|
| Lonnie Stephenson | 3/5/15 | |

CMS-402 (Rev. 7/95)   IL 401-0726

STATE OF ILLINOIS
DEPARTMENT OF CENTRAL MANAGEMENT SERVICES
GRIEVANCE REPORT AND RECORD

Date: March 5, 2015

Grievant: International Brotherhood of Electrical Workers, AFL-CIO

Agency: Department of Central Management Services

Statement of Grievance:

  On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS immediately to cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

  This Executive Order negates the Dues Check-off and Fair Share provision of the IBEW/DCMS Agreement, which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions, and requires the Employer to deduct Union Dues and proportionate share fees from the payroll checks of all employees who have authorized such deductions and to remit the deductions to the Union on a semi-monthly basis.

  The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the Union and enticing new hires not to join the union.

Requested Remedies:

  The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.

2. The Union demands that the Employer immediately cease implementation of the Executive Order.

3. The Union demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Exhibit 24

STATE OF ILLINOIS
DEPARTMENT OF CENTRAL MANAGEMENT SERVICES
GRIEVANCE REPORT AND RECORD

Date: March 5, 2015

Grievant: Service Employees International Union, Local 1, Firemen and Oilers Division

Agency: Department of Central Management Services; Department of Corrections and Department of Veteran Services

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by the Union.

This Executive Order negates the Dues Check-off and Fair Share provision of the parties' Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the Union and enticing new hires not to join the union.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Respectfully submitted,

Timothy Healy, SEIU Local 1

Exhibit 25

**STATE OF ILLINOIS**
**DEPARTMENT OF CENTRAL MANAGEMENT SERVICES**
**GRIEVANCE REPORT AND RECORD**

Date:        March 5, 2015

Grievant:    Local 881 United Food and Commercial Workers

Agency:      Department of Central Management Services
             Illinois Department of Corrections

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions, including Local 881 United Food and Commercial Workers.

This Executive Order negates the Dues Check-Off and Fair Share provision of the Agreement which requires non-members to pay the proportionate shares of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members. If further demonstrates the Governor's belief that the state is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging Union members to resign their membership in the Union and enticing new hires not to join the Union.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.

2. The Union demands that the Employer immediately cease implementation of the Executive Order.

3. The Union demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Marina Faz-Huppert

Exhibit 26



**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS
FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT
OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| All affected | All affected titles | | All coverd agencies |
| WORK ADDRESS | BARGAINING AGENT (IF ANY) | | |
| All Locations | LIUNA | | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

See attached sheet.

**STEP 1**

| DATE SUBMITTED | |
|---|---|
| DATE OF RESPONSE | |
| SUPERVISOR'S SIGNATURE | EMPLOYEE'S SIGNATURE |

**STEP 2**

| DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: |
|---|---|
| DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | EMPLOYEE'S SIGNATURE |

**STEP 2a**

| DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE): |
|---|---|
| DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | |
| MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE |

**STEP 3**

| DATE SUBMITTED | RESPONSE OF AGENCY HEAD: |
|---|---|
| DATE OF RESPONSE | |
| RESPONSE: ☐ ACCEPTED ☐ REJECTED | |
| AGENCY HEAD'S SIGNATURE | EMPLOYEE'S SIGNATURE |

**STEP 4**

I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION.

| DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE |
|---|---|---|
| | 3/5/15 | Paul P. Connolly for Union |

CMS-402 (Rev. 7/95)    IL 401-0726

STATE OF ILLINOIS

DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANCE REPORT AND RECORD

Date: March 5, 2015

Grievant: Laborers' International Union of North America ("LIUNA")

Agency: Department of Central Management Services;

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions and which requires the Employer to promptly remit proportionate share fees to the Union.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the Union and enticing new hires not to join the union.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Exhibit 27



**CMS** ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| IUOE | | | CMS |

| WORK ADDRESS | BARGAINING AGENT (IF ANY) |
|---|---|
| All locations employing IUOE members | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

Please see attached statement of grievance

**STEP 1**

DATE SUBMITTED

DATE OF RESPONSE

WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE.

SUPERVISOR'S SIGNATURE | EMPLOYEE'S SIGNATURE

**STEP 2**

DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR:

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED | EMPLOYEE'S SIGNATURE

**STEP 2a**

DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE):

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED

MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE

**STEP 3**

DATE SUBMITTED | RESPONSE OF AGENCY HEAD:

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED

AGENCY HEAD'S SIGNATURE | EMPLOYEE'S SIGNATURE

**STEP 4**

I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION.

DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE

CMS-402 (Rev. 7/95)    IL 481-0726

State of Illinois
Department of Central Management Services
Grievance Report and Record

March 5, 2015

Grievant:     International Union of Operating Engineers
Agency:       Department of Central Management Services

Statement of Grievance:

On February 9, 2015, Governor Bruce Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions. Further, the Executive Order negates the requirement for the Employer to deduct Union Dues and initiation fees from the payroll checks of all employees who have authorized the deduction in an amount certified by the Union, and to remit such deductions to the Union on a semi-monthly basis.

The Executive Order is an attempt to undermine the representative status of the Union and its strength at the bargaining table by demonstrating the Governor's belief that the State is bound by neither the law or the commitments it makes through collective bargaining, and by improperly encouraging union members to cease their membership in the Union and entices new hires not to join the Union.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1.    The Union request that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union request that the case be submitted to arbitration immediately.

2.    The Union demands that the Employer immediately cease implementation of the Executive Order.

Exhibit 28

STATE OF ILLINOIS

DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANCE REPORT AND RECORD

Date: March 5, 2015

Grievant: International Union of Painters and Allied Trades ("IUPAT")

Agency: Department of Central Management Services ("DCMS")

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

If and when implemented, this Executive Order would negate the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order attempts to undermine the representative status of IUPAT and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the contractual commitments it makes, thereby improperly encouraging union members to resign their membership and enticing new hires not to join the union.

Requested Remedies:

IUPAT demands to be made whole in all ways, including but not limited to the following:

1. IUPAT asks that DCMA waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, IUPAT requests that the case be submitted to arbitration immediately.

2. IUPAT demands that DCMS immediately cease implementation of the Executive Order.

3. IUPAT demands that DCMS continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Your response should be directed to:

> Joseph E. Kolick, Jr.
> IUPAT General Counsel
> 7234 Parkway Drive
> Hanover, MD 21076
> jkolick@iupat.org
> and to:
>
> John Toomey
> Counsel for IUPAT
> Arnold & Kadjan
> 203 N. LaSalle Street
> Suite 1650
> Chicago, IL 60601
> jtoomey100@hotmail.com

Sincerely,

Joseph E. Kolick, Jr.

Exhibit 29

STATE OF ILLINOIS

DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANCE REPORT AND RECORD

Date: March 5, 2015

Grievant: Bakery Workers, Local 1

Agency: Department of Central Management Services

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions and which requires the Employer to promptly remit proportionate share fees to the Union.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the Union and enticing new hires not to join the union.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.
3. The Union demands that the Employer continue to collect and remit all dues and proportionate share fees as required by the Agreement.

Exhibit 30



**CMS** ILLINOIS
**DEPARTMENT OF CENTRAL**
**MANAGEMENT SERVICES**

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | | SOC. SEC. NO. | AGENCY |
|---|---|---|---|---|
| Union Grievance | | | | All |

| WORK ADDRESS | BARGAINING AGENT (IF ANY) |
|---|---|
| 1177 Kylemore Dr., Lake Zurich, IL. 60047 | United Association of Journeymen & Apprentices Plumb & Pipe Industry |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

On February 25, 2015, the United Association ("Union") was served with a complaint filed by Governor Rauner seeking to void the Union's Dues Check-Off and Fair Share provision in its collective bargaining agreement ("Agreement") with CMS through a declaratory judgment. In addition, the Union believes that the Employer will shortly, in an upcoming pay period, move to unilaterally halt the remittance of fair share fees to the Union in violation of its Agreement. Executive Order 15-13 issued by the Governor on February 9, 2015 directs the Department of Central Management Services to cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by the Union.

By engaging in the above actions the Employer has unilaterally changed the terms and conditions of employment under the Agreement and violated the Fair Share clause therein. The Union demands that the Employer continue to deduct and remit to the Union fair share fees, cease the implementation of the Executive Order and make the Union whole for any fair share fees not remitted. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the procedure. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration.

| | | | |
|---|---|---|---|
| **STEP 1** | DATE SUBMITTED | | |
| | DATE OF RESPONSE | WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE. | |
| | SUPERVISOR'S SIGNATURE | | EMPLOYEE'S SIGNATURE |

| | | |
|---|---|---|
| **STEP 2** | DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR: |
| | DATE OF RESPONSE | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | EMPLOYEE'S SIGNATURE |

| | | |
|---|---|---|
| **STEP 2a** | DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE): |
| | DATE OF RESPONSE | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | |
| | MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE |

| | | |
|---|---|---|
| **STEP 3** | DATE SUBMITTED | RESPONSE OF AGENCY HEAD: |
| | DATE OF RESPONSE | |
| | RESPONSE: ☐ ACCEPTED ☐ REJECTED | |
| | AGENCY HEAD'S SIGNATURE | EMPLOYEE'S SIGNATURE |

| | |
|---|---|
| **STEP 4** | I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION. |

| DESIGNATED REPRESENTATIVE | PH # | DATE | EMPLOYEE SIGNATURE |
|---|---|---|---|
| CURTIS L CADE | 847·433·1700 | 3-5-15 | REPRESENTATIVE Curtis L. Cade |

CMS-402 (Rev. 7/95)   IL 401-0726

Exhibit 31



**ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES**

GRIEVANT: COMPLETE 1 SET (WHITE, CANARY, PINK) OF THIS FORM, RETAIN PINK COPY FOR YOUR RECORDS AND SUBMIT OTHER COPIES TO IMMEDIATE SUPERVISOR.

## GRIEVANCE REPORT AND RECORD

| EMPLOYEE NAME | POSITION TITLE | SOC. SEC. NO. | AGENCY |
|---|---|---|---|
| | | | |

| WORK ADDRESS | BARGAINING AGENT (IF ANY) |
|---|---|
| | |

STATEMENT OF GRIEVANCE AND RELIEF REQUESTED (INCLUDING CITATION OF ALLEGED RULE VIOLATIONS):

International Union of Bricklayers & Allied Craftworkers, erroneously named in the contract as "Illinois State Bricklayers & Allied Craftworkers, files this grievance by and through counsel, Bridget O'Connor, General Counsel, International Union of Bricklayers a& Allied Craftworkers, ph 202-383-3156; email boconnor@bacweb.org

See attached grievance detail

**STEP 1**

DATE SUBMITTED

DATE OF RESPONSE — WE THE UNDERSIGNED HAVE DISCUSSED THIS MATTER ORALLY AND HAVE NOT RESOLVED THE GRIEVANCE.

SUPERVISOR'S SIGNATURE | EMPLOYEE'S SIGNATURE

**STEP 2**

DATE SUBMITTED | RESPONSE OF NEXT HIGHER LEVEL SUPERVISOR:

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED | EMPLOYEE'S SIGNATURE

**STEP 2a**

DATE SUBMITTED | RESPONSE OF MANAGER (WHERE APPLICABLE):

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED

MANAGER'S SIGNATURE | EMPLOYEE'S SIGNATURE

**STEP 3**

DATE SUBMITTED | RESPONSE OF AGENCY HEAD:

DATE OF RESPONSE

RESPONSE: ☐ ACCEPTED ☐ REJECTED

AGENCY HEAD'S SIGNATURE | EMPLOYEE'S SIGNATURE

**STEP 4**

I HEREBY SUBMIT THIS GRIEVANCE TO THE DIRECTOR OF CENTRAL MANAGEMENT SERVICES FOR REVIEW AND FINAL DETERMINATION.

DESIGNATED REPRESENTATIVE | DATE | EMPLOYEE'S SIGNATURE

CMS-402 (Rev. 7/95)   IL 401-0726

STATE OF ILLINOIS

DEPARTMENT OF CENTRAL MANAGEMENT SERVICES

GRIEVANCE REPORT AND RECORD

Date: March 5, 2015

Grievant: International Union of Bricklayers & Allied Craftworkers Local 8 Illinois (erroneously named in the contract as Illinois State Bricklayers & Allied Craftworkers).

Agency: Department of Central Management Services;

Statement of Grievance:

On February 9, 2015, Governor Rauner issued Executive Order 15-13. This Executive Order directs DCMS to immediately cease the enforcement of contractual provisions for the collection of fair share fees from employees in bargaining units represented by Unions.

This Executive Order negates the Dues Check-off and Fair Share provision of the Agreement which requires non-members to pay the proportionate share of the costs of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and working conditions.

The Executive Order undermines the representative status of the Union and its strength to bargain for and represent its members, by demonstrating the Governor's belief that the State is bound by neither the law nor the commitments it makes through collective bargaining and by improperly encouraging union members to resign their membership in the Union and enticing new hires not to join the union.

Requested Remedies:

The Union demands to be made whole in all ways, including but not limited to the following:

1. The Union requests that the Employer waive meetings at the initial steps of the grievance procedure and agree to meet at Step 4 of the Grievance procedure as soon as possible. If the grievance is not resolved at Step 4, the Union requests that the case be submitted to arbitration immediately.
2. The Union demands that the Employer immediately cease implementation of the Executive Order.

## VERIFICATION

My name is Michael Carrigan. I hold the position of President of the Illinois AFL-CIO. I am familiar with the allegations of the Verified Complaint with respect to the Illinois AFL-CIO.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

Michael Carrigan
President
Illinois AFL-CIO

## VERIFICATION

My name is Mike Newman. I hold the position of Deputy Director of AFSCME Council 31. I am a Vice President of the Illinois AFL-CIO and I am a Vice-President of AFSCME International. I am familiar with the facts alleged in Parts I and II of the Complaint, with the history and structure of public sector bargaining in the State of Illinois and with the allegations of the Complaint which relate specifically to AFSCME Council 31.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct with respect to the matters listed in the first paragraph , except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

[Mike Newman]

Dated: 3/5/15

## VERIFICATION

My name is Steven Clemente. I hold the position of President of Troopers Lodge No. 41, Fraternal Order of Police ("Troopers Lodge 41"). I am familiar with the allegations of the Verified Complaint with respect to Troopers Lodge 41.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

03/03/15

Steven Clemente
President
Troopers Lodge 41

## VERIFICATION

My name is Alice J. Johnson. I hold the position of Executive Director with the Illinois Nurses Association ("INA"). I am familiar with the allegations of the Verified Complaint with respect to INA.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Dated: March 2, 2015

_____
Alice J. Johnson

**VERIFICATION**

My name is Terry Reed. I am a Field Service Representative for the Illinois Federation of Teachers. One of my responsibilities is to assist Local 4408 of the IFT to administer and negotiate the various collective bargaining agreements it has with the State of Illinois. These agreements cover the RC-29, RC-45 and RC-56 bargaining unit. I am familiar with the facts alleged in the Verified Complaint which concern Local 4408.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint with respect to IFT Local 4408 are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

_____
Terry Reed

Dated: March 5, 2015

## VERIFICATION

My name is Tony Barr. I hold the position of President with General Teamsters/Professional & Technical Employees Local Union No. 916. I am familiar with the allegations of the Verified Complaint with respect to General Teamsters/Professional & Technical Employees Local Union No. 916.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

_____
Tony Barr

_____
Date

## Verification

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that I am the President of Plaintiff Teamsters Local 700, and that I have read the foregoing Verified Complaint and that the statements set forth in this instrument relating to Teamsters Local 700 are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that I verily believe the same to be true.

Becky Strzechowski

## Verification

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that I am the President of Plaintiff Teamsters Local 330, and that I have read the foregoing Verified Complaint and that the statements set forth in this instrument relating to Teamsters Local 330 are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that I verily believe the same to be true.

Dominic Romanazzi

## Verification

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that I am the President of Plaintiff Teamsters Local Union No. 705, Affiliated with the International Brotherhood of Teamsters ("Local 705"), and that I have read the foregoing Verified Complaint and that the statements set forth in this instrument relating to Local 705 are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that I verily believe the same to be true.

Joseph Bakes

## Verification

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that I am the Downstate Director of Plaintiff Teamsters Downstate Illinois State Employee Negotiating Committee, and that I have read the foregoing Verified Complaint and that the statements set forth in this instrument relating to the Downstate Teamsters are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that I verily believe the same to be true.

Keith Gleason

## VERIFICATION

My name is Tyson Roan. I hold the position of General Counsel with Service Employees International Union ("SEIU"), Local 73. I am familiar with the allegations of the Verified Complaint with respect to SEIU Local 73.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

_____

Tyson Roan

## Verification

My name is Michael R. Stout. I hold the position of Business Manager with Illinois State Employees Association (ISEA) Laborers Local 2002 an affiliated union of the Laborers International Union of North America, Midwest Region, Southern and Central Illinois Laborers District Council. I am familiar with the allegations of the Verified Complaint with respect to ISEA Laborers Local 2002.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.



## VERIFICATION

My name is Sean Smoot. I hold the position of Director and Chief Legal Counsel of Police Benevolent and Protective Association ("PBPA"). I am familiar with the allegations of the Verified Complaint with respect to the Conservation Police Lodge, IL PBPA.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except as matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

Sean Smoot
Director and Chief Legal Counsel
PBPA

## VERIFICATION

My name is Tamara L. Cummings. I hold the position of General Counsel with the Illinois FOP Labor Council. I am familiar with the allegations of the Verified Complaint with respect to Illinois FOP Labor Council.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

Tamara L. Cummings

## VERIFICATION

My name is JOSEPH R. MAZZONE. I hold the position of Chief Counsel for Metropolitan Alliance of Police. I am familiar with the allegations of the Verified Complaint with respect to Metropolitan Alliance of Police.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

JOSEPH R. MAZZONE, Chief Counsel
Metropolitan Alliance of Police

JOSEPH R. MAZZONE
Chief Counsel for Metropolitan Alliance of Police
3033 W. Jefferson Street, Suite 208
Joliet, IL 60435
Phone (815)725-7000
Fax (815)725-7141
E-mail mnplaw@comcast.net

**VERIFICATION**

My name is Frank Libby,,. I hold the position of President/Executive Secretary-Treasurer of the Chicago Regional Council of Carpenters. I am familiar with the allegations of the Verified Complaint with respect to the Chicago Regional Council of Carpenters.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

Frank T. Libby

## VERIFICATION

My name is Terry Nelson. I hold the position of Executive Secretary Treasurer with the St. Louis District Council of Carpenters. I am familiar with the allegations of the Verified Complaint with respect to St. Louis District Council of Carpenters.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

Terry Nelson

Terry Nelson

## VERIFICATION

My name is Steve Heckwine. I hold the position of Executive Secretary-Treasurer of the Mid-Central Regional Council of Carpenters. I am familiar with the allegations of the Verified Complaint with respect to Mid-Central Regional Council of Carpenters.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters herein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

Steve Heckwine

## VERIFICATION

My name is Victoria Louise Bor. I am an attorney for the International Brotherhood of Electrical Workers, AFL-CIO ("IBEW"). I am familiar with the allegations of the Verified Complaint with respect to the IBEW.

Under the penalties prescribed by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, I verify that the statements set forth in this Complaint with respect to the IBEW are true and correct, except to matters therein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe same to be true.

Victoria Louise Bor

## VERIFICATION

My name is Thomas Balanoff. I hold the position of President with Service Employees International Union, Local 1. I am familiar with the allegations of the Verified Complaint with respect to Service Employees International Union, Local 1, Fireman and Oilers Division.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

Thomas Balanoff, President

## VERIFICATION

My name is Ronald E. Powell. I am President of Local 881 United Food and Commercial Workers. I am familiar with the allegations of the Verified Complaint with respect to Local 881.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.


Ronald E. Powell

## VERIFICATION

My name is Paul Connolly. I hold the position of Business Manager/Secretary-Treasurer with Local 4 of the Laborers' International Union of North America ("LIUNA"). I am familiar with the allegations of the Verified Complaint with respect to LIUNA.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

Paul P. Connolly

Paul Connolly

## VERIFICATION

My name is Martin P. Barr. I am an attorney in the law firm Carmell Charone Widmer Moss and Barr, Ltd. As an attorney, I have become familiar with certain representational activities of the International Union of Operating Engineers, Local 399, and its parent union, the International Union of Operating Engineers. Accordingly, I am familiar with the allegations of the Verified Complaint with respect to the International Union of Operating Engineers.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, I verify that the statements set forth in this Complaint with respect to the International Union of Operating Engineers are true and correct, except to matters therein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe same to be true.

Martin P. Barr
_____
Martin P. Barr

## VERIFICATION

My name is Joseph E. Kolick, Jr. I hold the position of General Counsel with the International Union of Painters and Allied Trades, AFL-CIO ("IUPAT"). I am familiar with the allegations of the Verified Complaint with respect to IUPAT.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

Joseph E. Kolick, Jr.

## VERIFICATION

My name is Curtis L. Cade. I hold the position of International Representative with the United Association of Journeymen and Apprentices of the Plumbing and Pipe Industry of the United States and Canada ("United Association"). I am familiar with the allegations of the Verified Complaint with respect to the United Association.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

*Curtis L. Cade*

Curtis L. Cade



# LOCAL UNION No. 1
### Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, AFL-CIO-CLC

7310 WEST 39TH STREET – SUITE 200
LYONS, ILLINOIS 60534
TELEPHONE: 708-442-3636   FAX: 708-442-4393

## VERIFICATION

My name is Donald Woods. I am the President of Local 1 of the Bakery, Confectionary, Tobacco and Grain Millers Union, Local 1. I am familiar with the allegations of the Complaint which relate specifically to the Bakery Workers Union.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint with respect to Bakery Workers Union true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

Donald Woods

Dated: 3/4/15

Donald Woods

## VERIFICATION

My name is Bridget O'Connor. I hold the position of General Counsel with the International Union of Bricklayers & Allied Craftworkers ("BAC"). I am familiar with the allegations of the Verified Complaint with respect to BAC local Union 8 Illinois ("Local 8").

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

Bridget O'Connor, General Counsel
International Union of Bricklayers
& Allied Craftworkers

**VERIFICATION**

My name is Mark Schneider. I hold the position of General Counsel with the International Association of Machinists and Aerospace Workers ("IAM"). I am familiar with the allegations of the Verified Complaint with respect to the IAM.

Under the penalties prescribed by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned verifies that the statements set forth in this Complaint are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true

Mark Schneider