# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BRUCE RAUNER, in his official capacity as    )
Governor of the State of Illinois,    )
   )
       Plaintiff,    )   Case No. 15-cv-1235
   )
AMERICAN FEDERATION OF STATE,    )   Hon. Robert W. Gettleman
COUNTY AND MUNICIPAL    )
EMPLOYEES, COUNCIL 31, AFL-CIO,    )
*et al.*,    )
   )
       Defendants.    )

---

## ILLINOIS ATTORNEY GENERAL'S SUPPLEMENTAL MEMORANDUM ADDRESSING THE COURT'S LACK OF JURISDICTION TO GRANT GOVERNOR'S MOTION TO FILE AMENDED COMPLAINT AND EMPLOYEES' MOTION TO INTERVENE

---

**LISA MADIGAN**, Attorney General of Illinois, on behalf of the **PEOPLE of the STATE of ILLINOIS**, Intervenor

R. Douglas Rees
Gary S. Caplan
Richard S. Huszagh
Assistant Attorneys General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-3498

April 30, 2015

# TABLE OF CONTENTS

Introduction......................................................................................................................1

Background .....................................................................................................................2

Argument ........................................................................................................................4

I.  Because This Court Lacks Jurisdiction Over The Governor's Original Action,
    The Court Cannot Grant The Employees' Motion To Intervene Or The Governor's
    Motion To Amend His Complaint. ............................................................................4

    A.  Because There Is No Jurisdiction Over The Original Action, The Court Cannot
        Grant The Employees' Motion To Intervene. .....................................................6

    B.  With No Jurisdiction Over The Original Action, The Court Cannot Grant
        The Governor's Motion To Amend His Complaint To Add New Plaintiffs. .......8

II. The Court Should Reject The Governor's Proposed Amended Claims Because
    The Governor Lacks Standing And His Claims Do Not Warrant Supplemental Jurisdiction.....12

    A.  The Governor Does Not Have Standing To Assert The Claims In His Proposed
        First Amended Complaint. .................................................................................12

    B.  This Court Should Not Exercise Supplemental Jurisdiction Over Governor
        Rauner's Claims..................................................................................................15

        1.  Governor Rauner's Claims Present Novel and Complex Questions of State Law. .........17

        2.  The State-Court Suit Provides a Preferable Vehicle to Resolve Governor Rauner's
            Claims. .......................................................................................................19

        3.  Governor Rauner's Claims Predominate Over the Employees' Claims .......................20

        4.  The Governor's Procedural Maneuvering Further Counsels Against Exercising
            Supplemental Jurisdiction Over His Claims. ............................................21

Conclusion .....................................................................................................................22

# TABLE OF AUTHORITIES

**Cases:**

*Acela, Inc. v. S.C. Dept. of Labor, Licensing & Reg.*,
No. 3:11-cv-3326, 2011 WL 6817870 (D.S.C. Dec. 28, 2011) ....................................................11

*AFSCME v. Scott*,
278 F.R.D. 664 (S.D. Fla. 2011) ....................................................14

*Annulli v. Panikkar*,
200 F.3d 189 (3d Cir. 1999)....................................................19

*Autotech Tech. LP v. Integral Research & Dev. Corp.*,
499 F.3d 737 (7th Cir. 2007) ....................................................5

*Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*,
277 F.3d 882 (7th Cir. 2001) ....................................................17

*Broughton-Irving v. Saphir*,
No. 09-cv-7979, 2010 WL 4810605 (N.D. Ill. Nov. 18, 2010) ....................................................7

*Camsoft Data Sys., Inc. v. S. Elec. Supply, Inc.*,
756 F.3d 327 (5th Cir. 2014) ....................................................11

*Cardillo v. Cardillo*,
360 F. Supp. 2d 402 (D.R.I. 2005)....................................................19

*Carnegie-Mellon University v. Cohill*,
484 U.S. 343 (1988)....................................................17, 21

*Carver v. Nassau Cnty. Interim Fin. Auth.*,
730 F.3d 150 (2d Cir. 2013)....................................................18

*Che v. Massachusetts Bay Transp. Auth.*,
342 F.3d 31 (1st Cir. 2003)....................................................17, 19

*City of Chicago v. Int'l College of Surgeons*,
522 U.S. 156 (1997)....................................................16, 17, 20

*City of S. Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency*,
625 F.2d 231 (9th Cir. 1980) ....................................................13

*ConnectU LLC v. Zuckerberg*,
522 F.3d 82 (1st Cir. 2008) ....................................................9, 11

ii

*Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*,
770 F.3d 586 (7th Cir. 2014) ......................................................................4

*Cronson v. Clark,*
810 F.2d 662 (7th Cir. 1987) ...............................................................13, 15

*Donelon v. Louisiana Div. of Admin. Law ex rel. Wise*,
522 F.3d 564 (5th Cir. 2008) ....................................................................13

*Dream Palace v. County of Maricopa*,
384 F.3d 990 (9th Cir. 2004) ....................................................................18

*Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*,
805 F.2d 732 (7th Cir. 1986) ................................................................9, 12

*Enochs v. Lampasas County*,
641 F.3d 155 (5th Cir. 2011) ....................................................................21

*Ervin v. OS Restaurant Servs., Inc.*,
632 F.3d 971 (7th Cir. 2011) ....................................................................20

*Falise v. Am. Tobacco Co.*,
241 B.R. 63 (E.D.N.Y. 1999) ....................................................................11

*Finch v. Miss. State Med. Ass'n*,
585 F.2d 765 (5th Cir. 1978) ....................................................................13

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*,
463 U.S. 1 (1983) ........................................................................................4

*Gamel v. City of Cincinnati*,
625 F.3d 949 (6th Cir. 2010) ....................................................................22

*Giordano v. City of New York*,
274 F.3d 740 (2d Cir. 2001) .....................................................................21

*Groce v. Eli Lilly & Co.*,
193 F.3d 496 (7th Cir. 1999) ....................................................................16

*Grupo Dataflux v. Atlas Global Grp., L.P.*,
541 U.S. 567 (2004) ....................................................................................5

*Guzzino v. Felterman*,
191 F.3d 588 (5th Cir. 1999) ....................................................................19

*Hofheimer v. McIntee*,
179 F.2d 789 (7th Cir. 1950) ..............................................................6, 7, 8

*In re Katrina Canal Breaches Litig.*,
342 Fed. Appx. 928 (5th Cir. 2009) ........................................................................10

*Jacobs v. Patent Enforcement Fund, Inc.*,
230 F.3d 565 (2d Cir. 2000) ..............................................................................5, 6

*Jaffree v. Wallace*,
837 F.2d 1461  (11th Cir. 1988) .............................................................................10

*Johnson v. U.S. Office of Personnel Mgmt.*,
___ F.3d ___, 2015 WL 1637617 (7th Cir., April 14, 2015) ..................................13

*Legislature of the Virgin Islands v. DeJongh*,
645 F. Supp. 2d 452 (D.V.I. 2009) .........................................................................13

*Ligas ex rel. Foster v. Maram*,
478 F.3d 771 (7th Cir. 2007) ..................................................................................7

*Martinez v. Haleas*,
No. 07-C-6112, 2010 WL 1337555 (N.D. Ill. Mar. 30, 2010) ................................9

*Mazanec v. North Judson-San Pierre Sch. Corp.*,
 763 F.2d 845 (7th Cir. 1985) ................................................................................15

*Mills v. State of Maine*,
118 F.3d 37 (1st Cir. 1997) ....................................................................................10

*Mollan v. Torrance*,
22 U.S. (9 Wheat.) 537 (1824) ................................................................................5

*Newman-Green, Inc. v. Alfonzo-Larrain*,
490 U.S. 826 (1989) ..........................................................................................5, 10

*People ex rel. Lockyer v. County of Santa Cruz*,
416 F. Supp. 2d 797 (N.D. Cal. 2006) ....................................................................19

*Pressroom Unions-Printers League Income Sec. Fund v. Continental Assur. Co.*,
700 F.2d 889 (2d Cir. 1983) ...................................................................................10

*Rice v. Sunrise Express, Inc.*,
209 F.3d 1008 (7th Cir. 2000) ................................................................................9

*Sachs v. City of Detroit*,
 257 F. Supp. 2d 903 (E.D. Mich. 2003) ..................................................................19

*Sai v. Clinton*,
778 F. Supp. 2d 1 (D.D.C. 2011) ............................................................6

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*,
731 F. Supp. 2d 849 (E.D. Wis. 2010).................................................19

*Scotts Co. LLC v. Seeds, Inc.*,
688 F.3d 1154 (9th Cir. 2012) ...............................................................20

*Seabrook v. Jacobson*,
153 F.3d 70 (2d Cir. 1998)......................................................................18

*Summit Office Park, Inc. v. United States Steel Corp.*,
639 F.2d 1278 (5th Cir. 1981) ...............................................................10

*Sutterfield v. City of Milwaukee*,
751 F.3d 542 (7th Cir. 2014) .................................................................20

*Swartz v. Prudential Healthcare, Inc.*,
78 Fed. Appx. 598 (9th Cir. 2003)........................................................11

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*,
140 F.3d 478 (3d Cir. 1998)....................................................................18

*United States ex rel. Tex. Portland Cement Co. v. McCord*,
233 U.S. 157 (1914).....................................................................................6

*U.S. ex rel Stone v. Rockwell Intern. Corp.*,
282 F.3d 787 (10th Cir. 2002) .............................................................4, 5

*Vill. of Oakwood v. State Bank & Trust Co.*,
481 F.3d 364 (6th Cir. 2007) ..........................................................6, 7, 8

*Whitmire v. Victus Ltd.*,
212 F.3d 885 (5th Cir. 2000) .............................................................10, 11

*Wong v. Colvin*, No. 3:13-cv-2209,
2014 WL 4230079 (D. Ore. June 10, 2014) .......................................11

**Other Authorities:**

Charles Alan Wright, *et al*., Fed. Prac. & Proc. (3d ed.) § 1917 ......................................................6

Charles Alan Wright, *et al*., Fed. Prac. & Proc. (3d ed.) § 1474 .................................................10

Charles Alan Wright, *et al*., Fed. Prac. & Proc. (3d ed.) § 1688 ....................................................9

3 Moore's Fed. Prac. § 15.14 (3d ed.) .........................................................................................10

## Introduction

Faced with the clear prospect of having his action dismissed for lack of federal jurisdiction, Governor Rauner sought to cure the problem by filing a proposed amended complaint that would add federal claims by three nonunion employees who pay fair share fees to two unions (the "Employees"). (Dkt. 97.) He wants the Court to exercise original jurisdiction over the Employees' claims and supplemental jurisdiction over his claims. (Dkt. 111 at1, 10–11; Dkt. 102 ¶¶ 13–14.) In the meantime, the Employees moved to intervene to present their claims as part of the Governor's original action, apparently with the same goal. (Dkt. 91.)

This procedural maneuvering led the Court to order supplemental briefing on two questions: (1) whether the Employees' motion to intervene can be granted if there is no federal jurisdiction over the original action; and (2) whether the Governor can amend his complaint to add new parties to create jurisdiction that did not exist originally. (4/2/15 Tr. at 5–6, 10; Dkt. 106, 4/2/15 Order.) The answer to both questions is no because the Court lacks jurisdiction over Governor Rauner's original complaint.

Even if the Court could allow intervention or an amendment of Governor Rauner's complaint to add plaintiffs who have claims within the Court's original jurisdiction, that still would not support keeping the Governor's claims in the case. His lack of standing to pursue those claims prevents the Court from entertaining them. And even if the Governor had standing to assert any of his proposed amended claims, the Court should decline to exercise supplemental jurisdiction over those claims because they present novel and complex questions of state law concerning the structure of Illinois state government, they predominate over the Employees' claims, the issues raised by the Governor are now being adjudicated in a pending state court action, and the Governor's evident forum shopping should not be encouraged or rewarded.

For the reasons discussed below, the most appropriate action is for the Court to dismiss the Governor's original complaint for lack of subject matter jurisdiction, deny the Employees' motion to intervene, deny the Governor's motion to "confirm" his proposed amended complaint, and let the Employees to file a new complaint that omits the Governor's claims.

## Background

Even though fair share fees paid by full-time public workers to support the costs of collective bargaining are authorized by Illinois law, required under current collective bargaining agreements, and constitutional under binding United States Supreme Court precedent, Governor Rauner believes those fees are unconstitutional. Based on that personal belief, the Governor issued an Executive Order to suspend the fees and filed this action requesting the Court to declare that his Executive Order is within his powers under the Illinois constitution, and to declare that the fair share contract provisions authorized under the Illinois Public Labor Relations Act are unconstitutional. (Dkt. 1 at 21.)

The Attorney General intervened and moved to dismiss because the Governor lacks standing and this Court lacks subject matter jurisdiction. (Dkt. 51-1, 51-2.)[1] The motion to dismiss demonstrated that the Governor lacks standing because he is not seeking to remedy any concrete injury to his own First Amendment rights, but instead is seeking to vindicate First Amendment rights of employees who object to paying the fair share fees themselves. It also pointed out that the Governor may not use this federal action as a preemptive strike against an anticipated state court suit against him.  The Unions moved to dismiss on similar grounds. (Dkt. 40, 42.)

---

[1] The Attorney General also asked the Court to abstain based on its discretion under the Declaratory Judgment Act and under the *Colorado River* and *Pullman* doctrines.

The Governor's description of the procedural background omits any mention of the Unions' parallel litigation pending in St. Clair County. As the Governor anticipated when he filed this action, the Unions sued him and other state officials in state court, where they have asked that court to issue a declaratory judgment that the Governor's Executive Order exceeds his constitutional and statutory authority under Illinois law. The Unions also have asked the state court to enjoin the implementation of the Executive Order pending arbitration of labor grievances filed under the Illinois Uniform Arbitration Act and the Illinois Public Labor Relations Act. (Dkt. 51-1, Ex. B.)

After the Unions brought that state court action, Governor Rauner removed the case to the United States District Court for the Southern District of Illinois. The Unions promptly moved to remand the case. Less than a week later, on March 23, the district court remanded the case "on its own initiative" for lack of federal subject matter jurisdiction. (Dkt. 43, Case No. 3:15-cv-00271-SMY-SCW, Southern District of Illinois, *Illinois AFL-CIO v. Bruce Rauner*.) The court concluded that the federal constitutional issues were not "necessarily raised" in the Unions' complaint, and existed only as an anticipated defense under the well-pleaded complaint rule. *Id.* at 3.

After remand, on April 10, 2015, the state court entered an agreed order by which the Governor and the other defendants will continue to honor the fair share fee provisions of the current collective bargaining agreements, and the parties also agreed to "expedited resolution" of the claims.

On April 24, the Governor answered the state court complaint and raised affirmative defenses and counterclaims asserting that the fair share fees violate the First Amendment. Thus, the key issues the Governor seeks to present here concerning the constitutionality of the fair share fees that are authorized under the Illinois Public Labor Relations Act and required under

the collective bargaining agreements, as well as the validity of the Governor's Executive Order under Illinois law, are squarely before the state court to decide.

Argument

## I. Because This Court Lacks Jurisdiction Over The Governor's Original Action, The Court Cannot Grant The Employees' Motion To Intervene Or The Governor's Motion To Amend His Complaint.

The Governor all but concedes that his original complaint did not establish federal jurisdiction. He seeks to evade that problem by arguing that the Court should allow the Employees to join the case, either by granting the Employees' motion to intervene or by granting his motion to amend, so that the Court can exercise original jurisdiction over the Employees' claims and supplemental jurisdiction over his. The Governor and the Employees fail to explain how the Court can grant either motion when the Court lacks federal jurisdiction at the outset.

As demonstrated in the motion to dismiss, Governor Rauner's original complaint was not within the Court's subject matter jurisdiction because he did not have standing to assert his First Amendment claim and because the Governor raised that claim defensively against the Unions' anticipated breach of contract claim under state law. (Dkt. 54, 55.) The well-pleaded complaint rule dictates that federal question jurisdiction under Section 1331 exists only where federal law is an essential element to a claim for affirmative relief, and not in cases in which federal law is implicated only by an alleged defense to a state-law claim. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8–12 (1983).

Faced with the Unions' and the Attorney General's Rule 12(b)(1) motions, the Governor "bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). A plaintiff cannot meet its burden by offering nothing more than a conclusory declaration that the court has subject matter jurisdiction. *U.S. ex rel Stone v. Rockwell Intern. Corp.*, 282 F.3d 787, 797–98

(10th Cir. 2002). That is all the Governor has done here. The Governor does not meaningfully respond to the jurisdictional challenges to his complaint. Instead, he merely asserts that "[w]hile the original complaint established subject matter jurisdiction, the amended complaint does so even more clearly." (Dkt. 111 at 3.) His brief does not mention the well-pleaded complaint rule, let alone explain how it would allow his original pleading. Having not even attempted to carry his burden to establish jurisdiction over his complaint, Governor Rauner must accept the result compelled by the well-pleaded complaint rule: a finding by this Court that there is no federal jurisdiction over his complaint as originally filed.

Confronted with a lack of subject matter jurisdiction over the Governor's action, the Governor and the Employees seek to create jurisdiction through motions to add new plaintiffs, either by intervention or by a proposed amended complaint. Both motions disregard that "[i]t has long been the case that 'the jurisdiction of the court depends on the state of things at the time the action is brought.' This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure." *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 57–71 (2004) (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)) (internal citation and footnote omitted). Under the time-of-filing rule, a federal court cannot proceed if it lacked jurisdiction over the complaint as originally filed. *Autotech Tech. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 742–43 (7th Cir. 2007).

The limited exceptions to this rule do not apply here. For example, federal courts have "the authority to cure a jurisdictional defect by dismissing a dispensable nondiverse party." *Grupo Dataflux*, 541 U.S. at 573 (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)). Similarly, 28 U.S.C. § 1653 allows a plaintiff to cure jurisdictionally *deficient allegations* in a pending complaint if it can establish that the necessary jurisdictional facts existed at the time the complaint was filed. *Jacobs v. Patent Enforcement Fund, Inc.*, 230 F.3d

565, 567 (2d Cir. 2000). Neither exception applies here. There is no precedent for setting aside the time-of-filing rule based on the belated addition of new parties seeking to assert their own claims (and then, in turn, to use their introduction into the case as a basis to support supplemental jurisdiction over the jurisdictionally deficient state-law claim of the original party).

## A. Because There Is No Jurisdiction Over The Original Action, The Court Cannot Grant The Employees' Motion To Intervene.

The Employees do not challenge the basic rule that intervention is not possible in a case where the court lacks jurisdiction. They argue instead that even if the Court lacks subject matter jurisdiction over Governor Rauner's original complaint, it "can and should grant the Employees leave to intervene and permit them to continue the action." (Dkt. 109 at 2.) This argument is contrary to binding precedent.

The Supreme Court has long held that intervention "presuppose[s] an action duly brought" and that intervention cannot "cure [the] vice in the original suit" and must instead "abide the fate of that suit." *United States ex rel. Tex. Portland Cement Co. v. McCord*, 233 U.S. 157, 163–64 (1914). The Seventh Circuit likewise has held that "[a]n existing suit within the court's jurisdiction is a prerequisite of an intervention. . . ." *Hofheimer v. McIntee*, 179 F.2d 789, 790–91 (7th Cir. 1950) (internal quotation omitted). Indeed, numerous courts have held that "a court requires an already-existing suit within its jurisdiction as a prerequisite to the 'ancillary proceeding' of intervention." *Vill. of Oakwood v. State Bank & Trust Co.*, 481 F.3d 364, 367 (6th Cir. 2007) (citing authorities and stating that "[t]his uncontroversial procedural premise finds explicit support from nearly every other circuit."); *see also Sai v. Clinton*, 778 F. Supp. 2d 1, 8 (D.D.C. 2011) ("Because Plaintiff has not presented the Court with any justiciable claims, the Court must also dismiss the pending motions for intervention under Rule 24."); Charles Alan Wright, *et al*., Fed. Prac. & Proc. (3d ed.) ("Wright & Miller") § 1917.

A denial of the Employees' motion to intervene is consistent with the time-of-filing rule, discussed *infra* at pages 5 and 8, which holds that when the court lacks jurisdiction over the original action, it should deny discretionary motions. The decision whether to grant a Rule 24 motion is subject to the district court's discretion. *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 775 (7th Cir. 2007). As even Governor Rauner concedes, when the court lacks jurisdiction over the originally filed complaint, the time-of-filing rule forecloses motions that "require the court to exercise discretion." (Dkt. 111 at 5.)

Some courts have "recognized a narrow exception to this general rule." *Vill. of Oakwood*, 481 F.3d at 367. For example, in *Village of Oakwood*, the Sixth Circuit instructed that "[i]n a case where the intervening party brings separate claims, and the district court has an independent basis to exercise jurisdiction over those claims, that scenario calls for the district court to dismiss the original claims in the action for lack of subject matter jurisdiction while retaining jurisdiction over the intervenor's claims only." *Id.* The Seventh Circuit, however, has not recognized that exception. In *Hofheimer*, a litigant sought to intervene in a case that already had been dismissed for want of prosecution. Even though the Seventh Circuit assumed that the proposed intervenor had an independent basis for asserting standing and thus a right to intervene under Rule 24, the Seventh Circuit nevertheless held that intervention would be improper because "whenever a suit ceases to exist by virtue of dismissal by the court, there remains no longer any action in which there can be intervention." 179 F.2d at 792; *see also Broughton-Irving v. Saphir*, No. 09-cv-7979, 2010 WL 4810605, at *4 (N.D. Ill. Nov. 18, 2010) (ruling that court was without jurisdiction to consider FDIC's motion to intervene to assert federal claims). Although the Employees maintain that the Seventh Circuit's approach "illogically elevate[s] form over substance" (Dkt. 109 at 7, internal quotation omitted), it remains the law in the Seventh Circuit.

Since *Hofheimer*, the Seventh Circuit has not considered the exception that would allow a new plaintiff to intervene where the court lacks jurisdiction over the original action. But even if the exception applied, the Employees propose to use it improperly. They seek not merely to intervene and assert their own claims, but also to have the Court then exercise supplemental jurisdiction over Governor Rauner's jurisdictionally deficient state-law claim that preceded their intervention. (Dkt. 109 at 10, 12.) That is not how the "narrow exception" operates. The exception calls for the court to "dismiss the original claims in the action for lack of subject matter jurisdiction while retaining jurisdiction over the intervenor's claims only." *Vill. of Oakwood*, 481 F.3d at 367. At a minimum, therefore, this Court must first dismiss Governor Rauner's state-law claim before determining whether it can or should allow the Employees to proceed separately as intervenors in his absence.[2]

### B. With No Jurisdiction Over The Original Action, The Court Cannot Grant The Governor's Motion To Amend His Complaint To Add New Plaintiffs.

The Court also should reject Governor Rauner's motion to "confirm" his amended complaint to add new plaintiffs in an effort to create a basis for supplemental jurisdiction over his own claims. Rule 15 does not create an exception to the time-of-filing rule discussed above. As with the Employees' argument, binding Seventh Circuit precedent forecloses Governor Rauner's procedural approach.

Governor Rauner concedes that the time-of-filing rule forecloses consideration of motions that "require the court to exercise discretion." (Dkt. 111 at 5.) Governor Rauner then tries to avoid that discretion by asserting that his motion to amend was "as of right" under Rule 15(a)(1)(B). (Dkt. 111 at 4–5.) But the Governor then concedes, as he must, that when a plaintiff seeks to amend its complaint to add new parties, Seventh Circuit precedent requires the plaintiff

---

[2] If the Court allows the Employees to proceed with their own action, the Attorney General would maintain the right to raise all challenges to that action.

to obtain leave of court. (*Id*. at 7–8.) Indeed, the Seventh Circuit has held that amendments that seek to add new parties are not governed by Rule 15, but by Rule 21, which requires leave of court. *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 736 (7th Cir. 1986). As recognized by Wright & Miller, "[m]ost courts have held that the specific provision relating to joinder in Rule 21 governs over the more general text of Rule 15, and that an amendment changing parties requires leave of court even though made at a time when Rule 15 indicates it could be done as a matter of course." Wright & Miller § 1688. This distinction is a critical one. While Governor Rauner may have been able to amend his own claims as of right under Rule 15, he is required to seek leave of court before adding parties under Rule 21.

Whether to allow the addition of new parties under Rule 21 is always within the district court's discretion. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000); *Martinez v. Haleas*, No. 07-C-6112, 2010 WL 1337555, *2 (N.D. Ill. Mar. 30, 2010). Governor Rauner concedes that when a federal court lacks subject matter jurisdiction over the originally filed complaint, it cannot consider motions that "require the court to exercise discretion." (Dkt. 111 at 5.) The First Circuit recognized this rule in *ConnectU LLC v. Zuckerberg*, where it stated: "A motion for leave to file an amended complaint necessarily implicates a district court's authority to grant or deny the motion. When confronted with such a motion, there is a strong argument that a court ordinarily should consider any threshold jurisdictional concerns raised by the parties before ruling on the motion. Although we leave the question open, taking some other course might be thought an exercise of hypothetical jurisdiction." 522 F.3d 82, 95 (1st Cir. 2008).

Even if there were not Seventh Circuit precedent holding that Rule 21 applies here instead of Rule 15, the Governor still would not be entitled to use Rule 15 to create federal jurisdiction by adding new parties. Under Rule 15, "[a] plaintiff may not amend the complaint to substitute a new plaintiff in order to cure a lack of jurisdiction because a plaintiff may not create

jurisdiction by amendment when none exists." 3 Moore's Fed. Prac. § 15.14 (3d ed.). "The longstanding and clear rule is that if jurisdiction is lacking at the commencement of a suit, it cannot be aided by the intervention of a plaintiff with a sufficient claim." *Pressroom Unions-Printers League Income Sec. Fund v. Continental Assur. Co.*, 700 F.2d 889, 893 (2d Cir. 1983) (internal quotation omitted*); accord Jaffree v. Wallace*, 837 F.2d 1461, 1466 (11th Cir. 1988) (rejecting argument that a Rule 15 motion to amend as of right is proper where the plaintiff seeks to add new plaintiffs in an effort to overcome a fatal jurisdictional bar). As the Fifth Circuit explained in *Summit Office Park, Inc. v. United States Steel Corp.*, "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." 639 F.2d 1278, 1282 (5th Cir. 1981).

This limitation on the relief traditionally available under Rule 15 follows from the close relationship between Rule 15 and 28 U.S.C. § 1653. Wright & Miller § 1474. Section 1653 provides that "defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. This section "speaks of amending '*allegations* of jurisdiction,'" and therefore "addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989) (emphasis in original). Accordingly, it is well established that "section 1653 does not authorize the addition or elimination of parties in order to create jurisdiction where jurisdiction does not exist." *Mills v. State of Maine*, 118 F.3d 37, 53 (1st Cir. 1997); *accord In re Katrina Canal Breaches Litig.*, 342 Fed. Appx. 928, 932 (5th Cir. 2009) (holding that federal claims added in amended complaint did not create federal jurisdiction if federal jurisdiction did not exist over original complaint); *Whitmire v. Victus Ltd.*, 212 F.3d 885, 888 (5th Cir. 2000) (noting that if a plaintiff's motion to amend "seeks not to remedy technically

inadequate jurisdictional allegations, but rather to substitute new causes of action over which there would be jurisdiction," it must be denied "[b]ecause section 1653 is limited to curing technical defects only").[3]

None of the Governor's cited cases establish that Rule 15 reaches beyond Section 1653 to authorize amendments that remedy a jurisdictionally defective complaint by adding new plaintiffs asserting new federal claims. (*See* Dkt. 111 at 4-6, discussing *ConnectU*, 522 F.3d at 95; *Wong v. Colvin*, No. 3:13-cv-2209, 2014 WL 4230079, at *4 (D. Ore. June 10, 2014); *Acela, Inc. v. S.C. Dept. of Labor, Licensing & Reg.*, No. 3:11-cv-3326, 2011 WL 6817870, at *4 (D.S.C. Dec. 28, 2011).) Each of those cases involved a plaintiff's amendment to add its own new claims, rather than to add new plaintiffs with their own separate claims. Even the court in *ConnectU*, the principal authority cited by the courts in *Wong* and *Acela*, noted that "there is a strong argument" that when a plaintiff seeks to amend after a defendant has filed a motion to dismiss pursuant to Rule 12(b)(1), "a court ordinarily should consider any threshold jurisdictional concerns raised by the parties before ruling on the motion [to amend]." *ConnectU*, 552 F.3d at 96. Although the Governor characterizes that caveat as "dicta" and a vestige of a prior version of Rule 15 (Dkt. 111 at 5, 6), it is consistent with a district court's obligation to consider its own jurisdiction when it becomes aware of a possible jurisdictional defect.

---

[3] *See also Camsoft Data Sys., Inc. v. S. Elec. Supply, Inc.*, 756 F.3d 327, 337 (5th Cir. 2014) (stating that "[a]lthough 28 U.S.C. § 1653 and Rule 15(a) allow amendments to cure defective jurisdictional allegations, these rules do not permit the creation of jurisdiction when none existed at the time the original complaint was filed."); *Swartz v. Prudential Healthcare, Inc.*, 78 Fed. Appx. 598, 599 (9th Cir. 2003) ("28 U.S.C. § 1653 in conjunction with Rule 15(a) allows defective allegations of jurisdiction to be amended" so long as they are not futile); *Falise v. Am. Tobacco Co.*, 241 B.R. 63 (E.D.N.Y. 1999) (Weinstein, J.) (observing that "[w]ith respect to amendments involving issues of subject matter jurisdiction, Rule 15(a) is read together with section 1653 of title 28."). In rejecting the plaintiffs' effort "to create an entirely new jurisdictional basis to provide competence in a court which lacked authority over the case *ab initio*," the court in *Falise* stated: "This tactic is prohibited by section 1653 and by Rule 15(a), as these provisions have consistently been interpreted."

Thus, even if Rule 15 governed the Governor's proposed amendment (instead of Rule 21, as required under *Ed Miniat*, 805 F.2d at 736), the Court should reject the Governor's effort to amend his complaint to create jurisdiction by adding new parties.

## II.     The Court Should Reject The Governor's Proposed Amended Claims Because The Governor Lacks Standing And His Claims Do Not Warrant Supplemental Jurisdiction.

The Employees and the Governor contend that the jurisdictional problems that infect the Governor's original action can be cured by the proposed First Amended Complaint because if the Court exercises federal question jurisdiction over the Employees' claims, it could choose to exercise supplemental jurisdiction over the Governor's claims. (Dkt. 109 at 10–12; Dkt. 111 at 1, 10–11.) The Court should reject this approach because the Governor's proposed amendment does not solve the Governor's standing problems. In addition, the proposed amended complaint does not warrant the Court's discretionary exercise of supplemental jurisdiction.

### A.   The Governor Does Not Have Standing To Assert The Claims In His Proposed First Amended Complaint.

The Governor's proposed amended complaint continues to seek judicial declarations that the fair share fees required under the Illinois Public Labor Relations Act are unconstitutional and that his Executive Order is "within the Governor's powers under the Illinois constitution." (Dkt. 102 at 29.) He now adds a request for a third declaration that his performance under the collective bargaining agreements "is impossible" because the fair share fees are supposedly unconstitutional. (*Id.*) The Governor continues to predicate each claim for relief on his personal belief that the fair share fees are unconstitutional, despite Supreme Court precedent to the contrary. (Dkt. 102 ¶¶ 133–134.)

As the Attorney General demonstrated before, Governor Rauner's personal opposition to fair share fees does not give him standing to challenge the validity of properly enacted state laws

that require those fees. *Donelon v. Louisiana Div. of Admin. Law ex rel. Wise*, 522 F.3d 564, 566–68 (5th Cir. 2008); *City of S. Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency*, 625 F.2d 231, 237 (9th Cir. 1980); *Finch v. Miss. State Med. Ass'n*, 585 F.2d 765, 774 (5th Cir. 1978); *Legislature of the Virgin Islands v. DeJongh*, 645 F. Supp. 2d 452, 459–63 (D.V.I. 2009). "Indignation that the law is not being obeyed, sympathy for the victims of that disobedience, a passionate desire to do one's legal duty—none of these emotions, however laudable, sincere, and intense, will support a federal lawsuit." *Cronson v. Clark,* 810 F.2d 662, 664 (7th Cir. 1987). Nor does "political" injury to an elected official's reputation as a result of following the law provide standing to challenge that law. *Johnson v. U.S. Office of Personnel Mgmt.*, ___ F.3d ___, 2015 WL 1637617, *11 (7th Cir., April 14, 2015).

The Governor now contends that he has standing under the Declaratory Judgment Act, 28 U.S.C. § 2201, because he purportedly has a "concrete dispute" with the Unions in light of their "adverse legal interests in the collective bargaining agreements." (Dkt. 111 at 12.) He notes that "parties to a contract may request a declaratory judgment stating whether a valid contract exists, and if so, what its provisions mean," and he maintains that a controversy exists between him and the Unions regarding the collection and payment of fair share fees under the collective bargaining agreements. (*Id*. at 13, citations omitted.) Governor Rauner's arguments fail for a simple reason: he is not a party to the collective bargaining agreements.

In Paragraph 3 of his proposed First Amended Complaint, Governor Rauner admits that the Illinois Department of Central Management Services ("CMS"), not the Governor, is a party to the collective bargaining agreements. He also acknowledges in his brief that "[t]he signatory for the State on the contracts with the Unions is the Director of CMS." (Dkt. 111 at 12 n. 2.) He nowhere suggests that, contrary to this arrangement, the Governor, as opposed to CMS and its Director, has any direct role in implementing these agreements. Nothing in the Illinois

Constitution or other Illinois law makes the Governor a party to contracts by state executive agencies. Certainly the Governor does not want or expect to be named as a party in every contract dispute involving his agencies. Governor Rauner's attempt to inject himself into the middle of the contractual relationship between CMS and the Unions based on his professed concern for the First Amendment rights of nonmembers of the Unions who pay fair-share fees does not change the substantive nature of the contractual relationship at issue. And because Governor Rauner is not a party to the collective bargaining agreements, he cannot rely on case law under the Declaratory Judgment Act in which parties to a contract have standing to determine their own contractual rights and obligations.

The Governor also does not have standing to seek a declaration that his "Executive Order 15-13 is within the Governor's powers under the Illinois constitution." (Dkt. 102 at 29 and ¶¶ 130–38; Dkt. 111 at 14.) The Governor contends that his declaratory action "seeks to resolve a concrete dispute over a particular Executive Order that only he has the authority to issue." (Dkt. 111 at 15.) But the Governor's Executive Order is nothing more than a formal expression of his personal belief that the fair share fees are unconstitutional. As discussed above, Governor Rauner's stated desire not to violate his personal belief does not give him standing to challenge the validity of properly enacted state laws.

Governor Rauner incorrectly cites *AFSCME v. Scott*, 278 F.R.D. 664, 670–71 (S.D. Fla. 2011), for the proposition that he "has standing because of his unique interest in the enforcement of his executive orders." (Dkt. 111 at 14.) But in *Scott*, the court held that the *plaintiff union* had standing to address the constitutionality of the Florida governor's executive order requiring drug testing because of an injury-in-fact to union members. 278 F.R.D. at 668–69. The case did not involve the Florida governor's attempt to preemptively raise the constitutionality of his executive order, and the court did not rule on his standing to do so. Here, the Governor's Executive Order

can have no effect on the outcome of any dispute over the validity under the First Amendment of the fair share fee provisions of CMS's agreements with the Unions. Those provisions are either valid or invalid under the First Amendment. The Executive Order does not change that result.

Even if the Court were to accept that the Governor has standing to seek a declaration concerning the validity of his Executive Order, the Court should exercise its discretion under the Declaratory Judgment Act to decline to become involved in on what amounts to an "intramural dispute" within Illinois government about the Governor's powers. The Seventh Circuit has made clear that "federal courts do not sit to resolve intramural disputes among state officials over the bounds of their authority under state law," *Cronson*, 810 F.2d at 665, and "should not get involved unnecessarily in what may be intramural struggles of state government even if invited to do so by one of the contenders." *Mazanec v. North Judson-San Pierre Sch. Corp.*, 763 F.2d 845, 848 (7th Cir. 1985). The issues concerning the validity of the Governor's Executive Order and the constitutionality of the fair share fees are squarely before the state court to decide. There is no reason for this Court to involve itself in that dispute as well.

### B. This Court Cannot Exercise Supplemental Jurisdiction Over Governor Rauner's Claims.

Even if the Governor had standing to assert his claims, the Court should refuse the Governor's invitation to use the Employees' federal claims as a springboard to exercise supplemental jurisdiction over his claims under 28 U.S.C. § 1367. The Governor's claims do not warrant the Court's exercise of supplemental jurisdiction because they present novel and complex questions of state law, the same questions and claims are the subject of pending state court litigation, the Governor's claims predominate over the claims of the Employees, and the Governor's procedural maneuvering should not be rewarded.

It is unusual, to say the least, for a party whose complaint does not come within a federal court's original jurisdiction to attempt to stay in federal court by the device of adding other plaintiffs who do allege a federal claim, and then invoking the court's supplemental jurisdiction over his original claim. Such a maneuver is even more uncommon where supplemental jurisdiction is asserted to support a declaratory judgment claim seeking a finding of nonliability under state law. And it is especially unusual where, as here, supplemental jurisdiction is invoked for claims that involve many more parties than those within the court's original jurisdiction, and all of the additional parties are the subject of a pending state-court action. The Court should not accept this strained attempt to keep the Governor's claims in federal court. If the Court declines to exercise supplemental jurisdiction over the Governor's claims, he will not suffer any prejudice because the same key issues are pending in state court.

Section 1367(c) of the Judicial Code provides that even when a federal court can exercise supplemental jurisdiction over claims not within its original jurisdiction, it may "decline to exercise" that jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Whether to decline supplemental jurisdiction under Section 1367(c) is entrusted to the court's discretion based on the specific circumstances of each individual case. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173–74 (1997); *accord Groce v. Eli Lilly & Co.*, 193 F.3d 496, 499–500 (7th Cir. 1999). In *International College of Surgeons*, the Supreme Court

explained that "district courts may decline to exercise jurisdiction over supplemental state law claims" based on "a host of factors, . . . including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." 522 U.S. at 173. The Court added that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Id.* (citation and internal quotation marks omitted). Other relevant factors include whether the same claims are pending in state court, *e.g.*, *Che v. Massachusetts Bay Transp. Auth.*, 342 F.3d 31, 37 (1st Cir. 2003), and whether the party invoking supplemental jurisdiction is engaging in forum shopping or procedural manipulation. *e.g.*, *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357 (1988). In this case, the relevant factors demonstrate that the Court should decline supplemental jurisdiction over Governor Rauner's claims, even if the Court could adjudicate them.

### 1. Governor Rauner's Claims Present Novel and Complex Questions of State Law.

Governor Rauner's attempt to precipitate a dispute over fair share fees paid by state employees who are not union members, and then to inject himself into that dispute, is built on multiple propositions of Illinois law that are far from being clearly established and, accordingly, should be resolved by an Illinois state court. In similar circumstances, courts have declined to exercise supplemental jurisdiction, especially where, as here, the state-law issues concern important aspects of the administration of state government.

The Seventh Circuit has recognized that a district court may decline supplemental jurisdiction over claims "involving difficult and unresolved issues of state law," which may be adjudicated "more accurately . . . in a state court." *Bilow v. Much Shelist Freed Denenberg*

*Ament & Rubenstein, P.C.*, 277 F.3d 882, 896 (7th Cir. 2001) (citation and internal quotation marks omitted).

Declining to exercise supplemental jurisdiction over claims that present novel or complex question of state law is particularly warranted for questions involving the authority of government agencies or officials, including the division of authority between different branches or parts of government. As the Second Circuit declared in *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998), "[w]here a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts." *Accord Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 153-56 (2d Cir. 2013) (affirming refusal to exercise supplemental jurisdiction over claims relating to state statute establishing interim financial authority for distressed county where claim "implicates significant state interests"); *Dream Palace v. County of Maricopa*, 384 F.3d 990, 1021-22 (9th Cir. 2004) (affirming decision not to exercise supplemental jurisdiction for claims implicating "delicate issues of state law" relating to "the balance of power between state and local authorities"); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 487 (3d Cir. 1998) ("Clearly, the question of whether the proposed funding scheme [for the proposed highway] violates the New Jersey Constitution is a complex issue of state law which is better left to the New Jersey courts to determine."); *People ex rel. Lockyer v. County of Santa Cruz*, 416 F. Supp. 2d 797, 801 (N.D. Cal. 2006) ("The case is essentially an internal dispute between two segments of the California state government, the Attorney General and the County of Santa Cruz. . . . [C]omity overwhelmingly favors allowing California to handle its internal disputes in its own court system.").

Those circumstances are present here. The Governor's claims include a request that the Court determine whether his state law authority includes the power to issue executive orders like the one he issued relating to fair share fees. This claim presents a quintessential example of a novel and complex question of state law going to the heart of state government functions that federal courts should not decide unless doing so is necessary to the resolution of a claim within their original jurisdiction. This very issue is now being adjudicated in the pending state court litigation between the Governor and the Unions, making it unnecessary and inadvisable for this Court to consider it. *See People ex rel. Lockyer v. Cty. of Santa Cruz*, 416 F. Supp. 2d 797, 800–01 (N.D. Cal. 2006) (refusing to exercise supplemental jurisdiction where question whether plaintiff state official had standing to pursue claim itself presented "a novel issue of state law."). Governor Rauner's professed standing to assert a First Amendment challenge the fair share fees in the collective bargaining agreements also depends on uncertain questions of state law concerning the nature of his relationship to those contracts by virtue of his official status as the State's Governor. These issues too are best left to the Illinois courts to decide.

### 2. The State-Court Suit Provides a Preferable Vehicle to Resolve Governor Rauner's Claims.

Declining supplemental jurisdiction over Governor Rauner's claims also makes sense because those same claims are pending in state court. In similar circumstances, where the same claims are pending before a state court that is fully capable of resolving them, federal courts have refused to exercise supplemental jurisdiction. *See Che v. Massachusetts Bay Transp. Auth.*, 342 F.3d 31, 37 (1st Cir. 2003); *Annulli v. Panikkar*, 200 F.3d 189, 203 (3d Cir. 1999); *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 731 F. Supp. 2d 849, 850 (E.D. Wis. 2010); *Cardillo v. Cardillo*, 360 F. Supp. 2d 402, 412 (D.R.I. 2005); *Sachs v. City of Detroit*, 257 F. Supp. 2d 903, 915-916 (E.D. Mich. 2003). The

justification for such a refusal is strengthened where, as here, the relevant claim seeks a declaratory judgment regarding an issue that is pending before a state court. *Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154, 1158 (9th Cir. 2012).

The pendency of the state court suit weighs strongly against the Court's exercise of supplemental jurisdiction over the Governor's claims in this case. State courts are not inferior tribunals; they are entrusted under our legal system with adjudicating federal constitutional issues and other significant matters. *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 573 (7th Cir. 2014). As already noted, the issues Governor Rauner wants to have this Court decide under its supplemental jurisdiction are fully presented in the pending state court suit between him and the Unions. Having this Court also address those issues would offend "the values of judicial economy, convenience, fairness, and comity" that animate a decision whether to exercise supplemental jurisdiction in a particular case. *Int'l College of Surgeons*, 522 U.S. at 173.

### 3. Governor Rauner's Claims Predominate Over the Employees' Claims Within the Court's Supplemental Jurisdiction.

This Court also should refuse to entertain Governor Rauner's claims because those claims predominate over the Employees' claims. The focus of inquiry is to ensure that the federal action is not merely "an appendage to the more comprehensive state action." *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 980–81 (7th Cir. 2011) (internal quotation omitted). The Court also should compare the comprehensiveness of the relief sought. *See Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001).

Here, three Employees belonging to two unions present a relatively straightforward claim against those unions under the First Amendment (albeit one without merit under current Supreme Court precedent). The Governor's claims, by contrast, seek system-wide relief affecting *all* state employees who are not union members but are covered by a bargaining unit, as well as *all* of the

unions who represent them pursuant to the Illinois Public Labor Relations Act and the collective bargaining agreements. The issues relevant to the Governor's claims include whether the Governor has standing to assert the First Amendment rights of other persons; whether he has authority under Illinois law to issue executive orders like the one he relies on here; and whether he has named all necessary parties, including union nonmembers who have no ideological opposition to unions generally, but simply prefer to reap the benefits of union representation without having to pay the additional costs of union membership. These issues go far beyond the Employees' core First Amendment claim. The Court should not allow the Employees' limited claims to serve as a toehold for exercising supplemental jurisdiction over a massively greater number of parties and issues that the Governor wishes to present in federal court.

### 4. The Governor's Procedural Maneuvering Further Counsels Against Exercising Supplemental Jurisdiction Over His Claims.

Finally, this Court should not exercise supplemental jurisdiction over the Governor's claims in light of his obvious effort to maneuver them into federal court. Courts have repeatedly considered procedural maneuvering, including forum shopping, as a reason to decline supplemental jurisdiction. Addressing this issue, the United States Supreme Court in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357 (1988), instructed that a "district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case. If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case." *Accord Gamel v. City of Cincinnati*, 625 F.3d 949, 951–52 (6th Cir. 2010); *Enochs v. Lampasas County*, 641 F.3d 155, 159 (5tth Cir. 2011). This factor looms large here and cuts against the Court's exercise of supplemental jurisdiction over the Governor's claims.

## Conclusion

For these reasons, the Attorney General respectfully requests the Court to enter an order (1) dismissing Governor Rauner's claims for lack of standing and lack of subject matter jurisdiction, (2) denying the Employees' motion to intervene, and (3) denying Governor Rauner's motion to "confirm" his proposed First Amended Complaint.

April 30, 2015

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois, on behalf of the
PEOPLE of the STATE of ILLINOIS

*/s/R. Douglas Rees*
R. Douglas Rees
Gary S. Caplan
Richard S. Huszagh
Clifford W. Berlow
Assistant Attorneys General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-3498