**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRUCE RAUNER, Governor of the State of Illinois, | ) | Case No. 1:15-CV-01235 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Judge: |
| | ) | Honorable Robert W. Gettleman |
| AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES COUNCIL 31, *et al.*, | ) | Magistrate Judge: |
| | ) | Honorable Daniel G. Martin |
| | ) | |
| Defendants. | ) | |
| | ) | |

**UNION DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION
TO DISMISS AND SUPPLEMENTAL MEMORANDUM OF LAW
PURSUANT TO COURT ORDER OF APRIL 2, 2015**

**INTRODUCTION**

The Governor's attempt to avoid his own state courts in favor of this one has created a procedural thicket. But there is a clear path out.

First, the Governor's own claims, even as pleaded in his First Amended Complaint, do not "aris[e] under" federal law, and the Governor also lacks standing to sue in federal court because the state law and state contracts do not affect him in his personal capacity. The addition of three state employees as plaintiffs — whether by intervention or by amendment — would not cure the jurisdictional defects in the Governor's own claims. The Court should therefore grant the Unions' motion to dismiss the Governor's claims for lack of jurisdiction.

Second, the three individual employees cannot intervene in the Governor's case because there is no federal jurisdiction over the Governor's own claims. But because the individual

employees assert an independent basis for federal jurisdiction, the Court may grant them leave to file their proposed complaint in intervention, which would become the operative pleading. The remaining defendants should be granted 21 days to respond to the complaint in intervention. The Governor's request to add the employees as additional parties to his complaint should be denied as futile and unnecessary.

## ARGUMENT

### I. THE COURT SHOULD DISMISS THE GOVERNOR'S CLAIMS FOR LACK OF JURISDICTION

#### A. The Governor's Claims Do Not "Aris[e] Under" Federal Law

The Governor provides no response to the Unions' demonstration that the Court lacks subject-matter jurisdiction over his declaratory judgment claims because the sole federal question the Governor identifies — whether fair-share fees violate the First Amendment — would arise only as a defense to the Unions' state law proceeding to enforce their contracts and state law. *See* Dkt. 42 (Unions' Mot. to Dismiss) at 3–7.

Indeed, the U.S. District Court for the Southern District of Illinois recently rejected, for exactly this reason, the Governor's attempt to remove to federal court the Unions' parallel state court action. In the pending state court complaint, the Unions allege that the Governor exceeded his authority under the Illinois Constitution by promulgating an executive order that violates the Illinois Public Labor Relations Act ("IPLRA"), and the Unions seek an injunction in aid of arbitration of the Unions' grievances for breach of contract pursuant to the Illinois Uniform Arbitration Act and the IPLRA. *See* Dkt. 102-4 (State Ct. Compl.) at 39, 42. The state court defendants — the Governor, two state agencies, and other state officials — attempted to remove the case to federal court on the basis of the same First Amendment defense asserted here. The District Court remanded the case for lack of federal jurisdiction, reasoning that "'a case may not

be removed to federal court on the basis of a federal defense,'" and that the First Amendment issue "is not 'necessarily raised' in Plaintiffs' Complaint because [the] federal issue is not an essential element of Plaintiffs' state-law causes of action." (Dkt. 43, Case No. 3:15-cv-00271-SMY-SCW, Southern District of Illinois, Illinois AFL-CIO v. Bruce Rauner.)

The Governor's First Amended Complaint in this action includes a new claim alleging impossibility of contractual performance. *See* Dkt. 102 (FAC) at ¶¶ 139–45. But that claim does not provide a basis for federal court jurisdiction. The gravamen of the claim is still the Governor's contention that the fair-share provisions of the state collective bargaining agreements violate the First Amendment. As a result, the Governor seeks a declaration that contractual performance "is impossible," and any "non-performance" "is therefore excused." FAC at ¶ 145. The issue whether performance is legally impossible would arise only as a defense to a state court claim for breach of contract. *See PI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 403 Ill. App. 3d 1, 2 (2010) ("impossibility of performance . . . is an affirmative defense to a breach of contract claim"). A potential federal defense does not create federal jurisdiction.

## B. The Governor Also Lacks Standing To Challenge State Law

The Unions' motion to dismiss also demonstrated that the Governor lacks federal court standing to challenge the constitutionality of the IPLRA and the fair-share contractual provisions that the IPLRA authorizes. *See* Dkt. 42 (Unions' Mot. to Dismiss) at 7–9. State officials lack standing to challenge the constitutionality of state law in federal court where the officials are not personally adversely affected — that is, where their interest is official, rather than personal. The Governor's effort to distinguish the controlling case law is unpersuasive.

The Governor submits that he "has a concrete dispute with the unions touching their adverse interests in the collective bargaining agreements." *See* Dkt. 111 (Governor's Br.) at 12.

But the Governor is not a party to any collective bargaining agreement in his personal capacity. In fact, the Governor is not a party to the collective bargaining agreements at all. The agreements are between the Unions and the Illinois Department of Central Management Services ("CMS") and the Illinois State Police.[1] *See* Dkt. 102 (FAC) ¶ 56. That the Director of CMS reports to the Governor does not give the Governor a "personal, and not an official, interest" in the contracts' enforcement. *Smith v. Indiana*, 191 U.S. 138, 149 (1903); *see also Finch v. Miss. St. Med. Ass'n*, 585 F.2d 765, 774 (5th Cir. 1978) (Mississippi Governor lacked standing to challenge constitutionality of state law because he had no "personal stake in the outcome").

The cases the Governor cites regarding the existence of an "actual controversy" between parties to a contract are not about public official standing. *See* Dkt. 111 (Governor's Br.) at 12. Public official standing is a particular application of the Article III "case or controversy" requirement, which is designed to ensure that the parties "have the 'personal stake and interest' necessary to satisfy Article III." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 622 (2007) (quoting *Flast v. Cohen*, 392 U.S. 83, 101–02 (1968)) (discussing taxpayer standing). To address these concerns in the specific context of public officials, federal courts require that the issue affect the official personally, such as by "reduc[ing] [his] pay or benefits," *D'Amico v. Schweiker*, 698 F.2d 903, 905 (7th Cir. 1983), or putting him in "danger of expulsion from office," *Finch*, 585 F.2d at 774. The Governor has identified no such impact here.

The Governor's involvement in the "controversy" here is the product of nothing more than his personal opinion that fair-share fees violate the Constitution. "The mental disposition of the

---

[1] Contrary to the Governor's assertion, *see* Dkt. 111 (Governor's Br.) at 13, the Unions have not sued him personally for breaching the collective bargaining agreements. Count II of the state court complaint names only CMS and the Illinois State Police, not the Governor, as the parties to the collective bargaining agreements the Unions seek to enforce. *See* Dkt. 102-4 (State Ct. Compl.) at 42.

Governor is all that gives him cause to complain; were he to change his mind tomorrow and decide, rightly or wrongly, that the state statute [and state contracts are] valid, he would no longer have any interest in the case." *Finch*, 585 F.2d at 774. Such a controversy does not give rise to federal court standing. The cases cited in the Unions' motion to dismiss each involved the same type of "controversy" in which a public official sought to challenge state law, but had no personal stake in the matter and, therefore, no standing. *See* Dkt. 42 (Unions' Mot. to Dismiss) at 7–9.

The Governor also contends that he has a personal interest in the enforcement of his executive order. The Governor does not, however, issue executive orders in his personal capacity. Although the Governor's office may have an institutional interest in whether an executive order prevails over contrary state law, the answer to that question is "of no personal benefit to him," *Smith*, 191 U.S. at 148, and is thus not a basis for federal court standing. The Governor's office would have the same institutional interest in defending the legality of any other action taken by the Governor in his official capacity.

Nor does the Governor's role as a defendant in the Unions' state court lawsuit confer upon him federal court standing to challenge state law. In *Smith v. Indiana*, a public official was sued in a state mandamus action for refusing to enforce a state law. The parties did not question in state court the power of Smith, a public official "who is charged by law with the duty of" enforcing state law, to assert "the unconstitutionality of the act." *Smith*, 191 U.S. at 148. But the U.S. Supreme Court dismissed Smith's appeal for lack of federal court standing, holding that "different considerations . . . apply" under Article III. *Id.* That Smith had been named a defendant in a state court lawsuit (and had been ordered by the state court to carry out state law) did not provide him with standing to challenge the constitutionality of the state law in federal court. Moreover, like the administrative law judges in *D'Amico v. Schweiker*, the Governor cannot confer standing upon

himself "bootstrap fashion," by issuing an executive order to "disobey[] [state law], and then complaining that [his] disobedience" has subjected him to suit. 698 F.2d at 906.[2]

Finally, the Governor's assertion in his First Amended Complaint of a new claim for impossibility of contractual performance does not provide federal court standing. As explained above, the claim is just another way of alleging that the fair-share provisions of the collective bargaining agreements violate the First Amendment. *See* Dkt. 102 (FAC) at ¶ 139–45. These agreements are with CMS, not with the Governor. And the Governor acts in an official, not personal, capacity in enforcing state law and state contracts.

### C. The Addition Of The Employee Plaintiffs Would Not Cure The Jurisdictional Defects In the Governor's Claims

#### 1. The Governor would still lack standing

The Governor contends that the addition of three individual employee plaintiffs — who assert their own basis for federal-question jurisdiction — would enable the Court to exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. But the addition of the employee plaintiffs, whether by amendment or intervention, would not cure the Governor's lack of standing to assert claims on his own behalf. As such, the Governor's claims must be dismissed for lack of jurisdiction.

#### 2. Even if the employees were parties, the exercise of supplemental jurisdiction would be inappropriate

Even apart from the Governor's lack of standing, this would not be an appropriate case in which to exercise supplemental jurisdiction. The decision whether to exercise supplemental

---

[2] The Governor faces no risk of liability in his personal capacity for enforcing state law. As the Governor concedes, the fair-share provisions are lawful under *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977). He would therefore have immunity from 42 U.S.C. § 1983 liability. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (no liability unless the "right at issue was 'clearly established'").

jurisdiction over state law claims is committed to the Court's discretion. *See Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007). It would not be appropriate for the Court to exercise supplemental jurisdiction over the Governor's claims because they "raise[] a novel or complex issue of State law"; they "substantially predominate[] over the" employees' claims; and "there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

   **a.**  The Governor's claims raise "novel" and "complex" questions regarding the scope of the Governor's authority under the Illinois Constitution. 28 U.S.C. § 1367(c)(1). Before reaching any First Amendment defense, the Court would be faced with the threshold state law question whether the Governor may defend his refusal to follow the IPLRA by raising an argument that the state law violates the federal Constitution. *See, e.g., Lockyer v. City & Cnty. of San Francisco*, 33 Cal. 4th 1055, 1082, 1105 (2004) (explaining that the "general rule applied in the overwhelming majority of cases" is that public officials cannot refuse to enforce statutes based on their own opinions that the statutes are unconstitutional); *see also People ex rel. Atty. Gen. v. Salomon*, 54 Ill. 39, 45–46 (1870) (stating that once enacted, state law becomes binding on "every . . . public officer in the State, and to all the people" and no public official may "assume[] the responsibility of declaring the law unconstitutional" or "set up [his] own judgment as superior to the expressed will of the legislature," and that doing so "would be subversive of the great objects and purposes of . . . civil government, one of whose cardinal principles is, subjection to the laws.").

   Similarly, the Governor seeks a declaration that the executive order "is within the Governor's powers under Article V, Section 8, or other provisions of the Illinois Constitution" and that it is "lawful under Illinois law." Dkt. 102 (FAC) ¶ 137. That state law question is also squarely presented by the Unions' state court complaint, which alleges that the Governor "usurped the constitutional power of the legislative branch by promulgating an Executive Order that effectively

repeals a duly passed" state law. *See* Dkt. 102-4 (State Ct. Compl.) ¶ 98. The IPLRA requires state agencies to honor fair-share contractual provisions. *See* 5 ILCS 315/6(e). Further, the IPLRA and "any collective bargaining agreement negotiated thereunder" shall "prevail and control" over any "executive order or administrative regulation." 5 ILCS 315/15(a).

The Governor's claims thus necessarily present "complex" and "novel" questions of Illinois law, which are already pending before an appropriate state tribunal, making it inappropriate for the Court to exercise supplemental jurisdiction.

> **b.** The Governor's claims also "substantially predominate[] over" the claims of the three employees. 28 U.S.C. § 1367(c)(2). The employees allege that the Unions that represent them violate their First Amendment rights by collecting fair-share fees. *See* Dkt. 102 (FAC) ¶ 153. Employees Janus and Quigley are represented by AFSCME Council 31. FAC ¶¶ 18–19. Employee Trygg is represented by Teamsters Local 916. FAC ¶ 20. The employees have claims, therefore, against only two of the 28 Union defendants named in the Governor's First Amended Complaint.

Although a "simple disparity in numbers" may not "lead a court to the conclusion that a state claim 'substantially predominates' over the" federal one, there may be situations in which the number of parties involved in only the state law claims would "so far outnumber those engaged in the" federal claims "that 'the federal action [is] an appendage to the more comprehensive state action.'" *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 980 (7th Cir. 2011) (quoting *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 312 (3d Cir. 2003)). This is such a case. The employees' claims involve only two Unions. The Governor's state law claims involving 26 additional defendants — each of which has a separate collective bargaining agreement, most of whom have separate

counsel, and all of whom are currently suing the Governor in state court — would "substantially predominate[]" over the more straightforward claims of three employees.

      **c.**    Finally, there are "compelling reasons" for declining to exercise supplemental jurisdiction over the Governor's declaratory judgment claims because a state court coercive action is pending. 28 U.S.C. § 1367(c)(4).

      "[T]here is . . . nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (citation and quotation marks omitted). The Court has "substantial discretion in deciding whether to declare the rights of litigants" under the Declaratory Judgment Act. *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010). The Seventh Circuit has condemned the use of "the Declaratory Judgment Act [as] a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) (citation and quotation marks omitted). A declaratory action "aimed solely at wresting the choice of forum from the 'natural' plaintiff will ordinarily be dismissed and the coercive case will be allowed to proceed in the usual way." *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994) (citation and quotation marks omitted). Moreover, dismissal of the Governor's declaratory judgment claims in favor of the pending state court action is appropriate regardless of which action was filed first. "Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952).

Equally to the point, a dispute between the Governor and the legislature over the Governor's power to issue an executive order that conflicts with a state statute is precisely the kind of "intramural dispute" that the federal courts should avoid. "The federal courts do not sit to resolve intramural disputes among state officials over the bounds of their authority under state law." *Cronson v. Clark*, 810 F.2d 662, 665 (7th Cir. 1987); *see also Mazanec v. North Judson-San Pierre Sch. Corp.*, 763 F.2d 845, 848 (7th Cir. 1985) (federal courts "should not get involved unnecessarily in what may be intramural struggles of state government even if invited to do so by one of the contenders").

The Unions have brought the dispute over the Governor's executive order to the proper state court forum. Last week, the Governor answered the Unions' state court complaint and counterclaimed with the same claims he asserts here. An expedited scheduling order is in place in that case, with a hearing on dispositive motions set for July.[3] Agreed Order at 2. The state court also ordered the Governor, pending resolution of that case, not to enforce the executive order and to continue to remit fair-share fees pursuant to the Unions' collective bargaining agreements and the IPLRA. *Id.* at 1.

There is nothing to be gained from exercising supplemental jurisdiction over the Governor's claims here. Rather, there would be a serious risk of inconsistent adjudications because the Governor asks this Court to allow him to enforce his executive order, while the state court has already ordered him not to do so. These are "compelling reasons" to decline to exercise supplemental jurisdiction.

---

[3] For the Court's convenience, a copy of this Order is attached as Exhibit A hereto.

## II.    THE COURT MAY ALLOW THE EMPLOYEES TO PROCEED SEPARATELY ON THEIR COMPLAINT IN INTERVENTION

A party cannot, as a general rule, intervene if there is no federal jurisdiction over the original action. The "right[] to intervene . . . presuppose[s] an action duly brought." *U.S. ex rel. Texas Portland Cement Co. v. McCord*, 233 U.S. 157, 163 (1914).

> The logic that underlies this rule is clear enough. Intervention is a procedural means for entering an existing federal action. The Federal Rules of Civil Procedure "do not extend or limit the jurisdiction of the district courts." Fed R. Civ. P. 82. That is, Rule 24 does not itself provide a basis for jurisdiction. Accordingly, since intervention contemplates an existing suit in a court of competent jurisdiction and because intervention is ancillary to the main cause of action, intervention will not be permitted to breathe life into a "nonexistent" lawsuit.

*Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012) (citations and quotation marks omitted); *see also Hofheimer v. McIntee*, 179 F.2d 789, 792 (7th Cir. 1950) ("An existing suit within the court's jurisdiction is a prerequisite of an intervention;" thus, where the original "suit ha[s] been rightfully necessarily dismissed, . . . there [i]s nothing left in which the movant could intervene" (citation and quotation marks omitted)).

Nonetheless, courts have recognized that "where the intervening party brings separate claims, and the district court has an independent basis to exercise jurisdiction over those claims," the district court may "dismiss the original claims in the action for lack of subject matter jurisdiction while retaining jurisdiction over the intervenor's claims only." *Vill. of Oakwood v. St. Bank & Trust Co.*, 481 F.3d 364, 367 (6th Cir. 2007); *see also Miller & Miller Auctioneers, Inc. v. G. W. Murphy Indus., Inc.*, 472 F.2d 893, 895 (10th Cir. 1973) ("A court has discretion to treat pleadings of an intervenor as a separate action to adjudicate claims raised by the intervenor."). "This discretionary procedure is properly utilized in a case in which it appears that the intervenor has a separate and independent basis for jurisdiction. . . . By allowing the suit to continue with respect to the intervening party, the court can avoid the senseless 'delay and expense of a new suit,

11

which . . . will merely bring the parties to the point where they now are.'" *Fuller v. Volk*, 351 F.2d 323, 328–29 (3d Cir. 1965) (citation omitted).

The three employees have, in their proposed complaint in intervention, asserted an independent basis for the Court's jurisdiction. *See* Dkt. 92-2 (Intervenor's Compl.) ¶ 3. They have likewise expressed a desire to proceed with their claims even if "the Court dismisses the Governor due to some alleged jurisdictional or standing defect." *See* Dkt. 109 (Employees' Br.) at 2. The Court may therefore grant the employees leave to file their complaint in intervention as the operative pleading, while at the same time dismissing the Governor's claims. The remaining defendants should be granted 21 days to respond to the complaint in intervention.[4]

## III. THE COURT SHOULD DENY, AS FUTILE AND UNNECESSARY, THE GOVERNOR'S REQUEST TO ADD ADDITIONAL PLAINTIFFS TO HIS OWN COMPLAINT

The Governor is mistaken that he does not need leave from the Court to amend his complaint to add additional plaintiffs. "Although Federal Rule of Civil Procedure 15(a) permits a party to freely amend its complaint in a timely fashion, Federal Rule 21 requires a court order to add or drop parties." *Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.*, 805 F.2d 732, 736 (7th Cir. 1986). "Because Rule 21 specifically provides for the addition or elimination of parties and Rule 15(a) simply sets forth a general amendment procedure, the former provision should be controlling. . . . 'Thus when a proposed amendment to a complaint seeks to effect a change in the parties to the action, Rule 21 . . . controls and, to that extent, limits Rule 15(a).'" 6 Fed. Prac. & Proc. Civ. § 1479 (3d ed. 2014) (citation omitted); *see also Williams v. U.S. Postal Serv.*, 873 F.2d 1069, 1073 n.2 (7th Cir. 1989) (Rule 15(a) "allows one amendment 'as a matter of course' when the opposing

---

[4] The Unions do not concede that the employees have stated valid claims. The Unions reserve their rights to move to dismiss the employees' claims if the complaint in intervention is filed.

party has not yet filed a responsive pleading. Although defendants had not filed a responsive pleading here, a plaintiff cannot add new defendants through a complaint amended as a matter of course" (citation omitted)); *Velyov v. Frontier Airlines*, No. 14-C-71, 2014 WL 1379920, at *1 (E.D. Wis. Apr. 7, 2014) ("[D]espite the timing of Roter Velyov's motion," within 21 days of service, "leave of the Court is required to add a new Defendant."); *Rowe v. Mize*, No. 10-CV-362, 2010 WL 2245565, at *1 (S.D. Ind. June 1, 2010) ("The plaintiff was entitled to amend his complaint once as a matter of right before the defendants filed their answer. Despite this rule, however, leave of court is required to add a defendant.").

Even under the most liberal amendment standards, "a district court may deny leave for a variety of reasons, including . . . futility." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "When an amendment will not cure the legal deficiencies of the original complaint, the district court does not abuse its discretion by refusing to grant leave to amend. Failure to remedy the jurisdictional defects of a complaint is one example of where an amendment would prove futile." *Williams*, 873 F.2d at 1072. As explained above, the Governor has no standing to press his claims in federal court; the Court lacks original jurisdiction over the Governor's claims; and, even if the employees were added as plaintiffs, it would be inappropriate for the Court to exercise supplemental jurisdiction over the Governor's claims. Because amending the complaint to add additional parties fails to cure the jurisdictional problems with the Governor's claims, his motion for leave to add additional parties should be denied as futile.

Granting the motion to add additional parties to the Governor's complaint is also unnecessary because, as explained above, the Court may allow the employees to proceed independently on the basis of their complaint in intervention. While the Court could, alternatively,

13

grant the Governor leave to amend his complaint to add the employees as plaintiffs, and then dismiss the Governors' own claims for lack of jurisdiction, that would leave in place an operative pleading that is unclear as to which parties and claims remain. It makes more sense to use the proposed complaint in intervention as the operative pleading.

## CONCLUSION

The Court should grant the Unions' motion to dismiss the Governor's claims for lack of jurisdiction. The Court should allow the employees to file their complaint in intervention as the operative pleading and allow the remaining defendants 21 days to respond to the complaint in intervention. The Governor's request to add plaintiffs to his complaint should be denied.

Dated: April 30, 2015            Respectfully submitted,

/s/ Stephen A. Yokich                               /s/ Joel Abbott D'Alba

Stephen A. Yokich, Esq.                            Joel Abbott D'Alba, Esq.

Melissa J. Auerbach, Esq.                      Asher, Gittler, Greenfield, Cohen & D'Alba, Ltd.

Cornfield and Feldman LLP                    200 West Jackson Boulevard, Suite 1900

25 East Washington Street, Suite 1400      Chicago, IL 60606

Chicago, Illinois 60602-1803                  (312) 263-1500

(312) 236-7800

*Attorneys for American Federation of State,*
*County, and Municipal Employees, Council*
*31, AFL-CIO; Illinois Federation of Public*
*Employees, Local 4408, IFT/AFT; Illinois*
*Federation of Teachers, Local #919; and*
*International Union of Bakery, Confectionery*
*and Tobacco Workers*

*Attorneys for Troopers' Lodge No. 41, FOP;*
*International Association of Machinist and*
*Aerospace Workers District 8; Service*
*Employees International Union, Local 73;*
*Conservation Police Lodge, Illinois Police*
*Benevolent and Protective Association;*
*International Association of Sheet Metal, Air,*
*Rail, & Transportation Workers (SMART); and*
*Metropolitan Alliance of Police, Chapter 294*

-15-

Stanley Eisenstein, Esq.
Joshua M. File, Esq.
Katz, Friedman, Eagle, Eisenstein & Johnson
77 West Washington Street - 20th Floor
Chicago, Illinois 60602-2801
(312) 263-6330

*Attorneys for Illinois Nurses Association*

Daniel Zapata, Esq.
Service Employees International Union,
    Local 73
300 South Ashland Avenue, Suite 400
Chicago, IL 60607
(312) 588-7488

*Attorneys for Service Employees International Union, Local 73*

Ellen J. Schanzle-Haskins
General Counsel to the Vice President &
    Regional Manager
Midwest Region Laborers' International
    Union of North America
1 North Old State Capitol Plaza, Suite 525
Springfield, Illinois 62701
(217) 331-5528

*Attorneys for Illinois State Employees Association, Local 2002 and the Southern and Central Illinois Laborers' District Council*

Joseph V. Healy, Esq.
Law Offices of Joseph V. Healy
3841 South Halsted, Suite 2
Chicago, Illinois 60609
(312) 841-1092

*Attorneys for Laborer's International Union of North America*

Terrance Bryan McGann, Esq.
Gregory Nathan Freerksen, Esq.
Karen M. Rioux, Esq.
Travis J. Ketterman, Esq.
Whitfield McGann & Ketterman
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 251-9700

*Attorneys for United Brotherhood of Carpenters and Joiners of America (on behalf of Chicago Regional Council of Carpenters, Mid-Central Illinois Regional Council, and St. Louis Missouri District Council)*

Emil Patrick Totonchi
General Counsel, IBT Local 705
1645 West Jackson Boulevard, 7th Floor
Chicago, IL 60612
(312) 738-5264

*Attorneys for Teamsters Local 705*

Carl R. Draper, Esq.
FeldmanWasser
1307 South 7th Street
Springfield, Illinois 62703
P.O. Box 2418
Springfield, Illinois 62705
(217) 544-3403

*Attorneys for General Teamsters, Professional & Technical Employees Local Union No. 916*

Linda Martin, Esq.
Alaine S. Williams, Esq.
Amy R. Rosenberger, Esq.
Willig, Williams & Davidson, Of Counsel
1845 Walnut Street, 24th Floor
Philadelphia, Pennsylvania 19103
(215) 656-3622

*Attorneys for Teamsters Downstate Illinois Employee Negotiating Committee; Teamsters Local 700; and Teamsters Local 330*

Tamara Cummings, General Counsel
John R. Roche, Jr., Esq.
5600 South Wolf Road, Suite 120
Western Springs, Illinois 60558-2268
(708) 784-1010

*Attorneys for Illinois Fraternal Order of Police Labor Council*

Robert E. Bloch, Esq.
Ronald M. Willis, Esq.
Dowd, Bloch & Bennett
8 South Michigan Avenue, 19th Floor
Chicago, IL 60603
(312) 372-1361

*Attorneys for Service Employees International Union, Local 1, Fireman and Oilers Division*

Martin Phillip Barr, Esq.
William A. Widmer III, Esq.
Carmell Charone Widmer Moss & Barr
One East Wacker Drive, Suite 3300
Chicago, Illinois 60601
(312) 236-8033

Brian A. Powers
General Counsel
International Union of Operating Engineers
1125 17th Street, NW
Washington, DC 20036
Of Counsel
(202) 778-2675

*Attorneys for International Union of Operating Engineers*

John J. Toomey, Esq.
Arnold and Kadjan
203 North LaSalle Street, Suite 1650
Chicago, Illinois 60601
(312) 236-0415

*Attorneys for International Union of Painters and Allied Trades*

Joseph Edward Mallon, Esq.
William P. Callinan, Esq.
Johnson & Krol, LLC
300 South Wacker Drive, Suite 1313
Chicago, Illinois 60606
(312) 372-8587

Francis Jude Martorana, Esq.
O'Donoghue & O'Donoghue LLP
4748 Wisconson Avenue NW
Washington DC 20016
(202) 362-0041

*Attorneys for United Association of Journeymen and Apprentices of the Plumbing and Pipefittingh Industry of U.S.A. and Canada*

Jonathan D. Karmel, Esq.
Karmel Law Firm
221 North LaSalle Street, Suite 2900
Chicago, Illinois 60601
(312) 641-2910

*Attorneys for International Union of United
Food and Commercial Workers*

Margaret A. Angelucci, Esq.
Asher, Gittler, Greenfield, Cohen &
  D'Alba, Ltd.
200 West Jackson Boulevard, Suite 1900
Chicago, IL 60606
(312) 263-1500

*Attorneys for International Union Bricklayers
and Allied Craftworkers, Local 8, Illinois; and
International Brotherhood of Electrical
Workers*

Bridget O'Connor
International Union Bricklayers and
  Craftworkers
620 F Street, NW
Washington, DC 20004
(202) 383-3156

*Attorneys for International Union Bricklayers
and Allied Craftworkers*

Victoria Louise Bor
Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300

*Attorneys for International Brotherhood of
Electrical Workers*

## IN THE CIRCUIT COURT OF THE 20TH JUDICIAL CIRCUIT

## ST. CLAIR COUNTY, ILLINOIS

Illinois AFL-CIO, et al.,                     )
                                              )
       Plaintiffs,                        )
                                              )
      v.                                 )     Case No. 15-CH-171
                                              )
Bruce Rauner, Governor of the State of Illinois;   )
Tom Tyrrell, Acting Director of the Illinois        )
Department of Central Management Services;          )
Illinois Department of Central Management           )
Services; Leo Schmitz, Director of the Illinois     )
State Police; and the Illinois State Police,        )
                                              )
       Defendants.                       )

FILED
ST. CLAIR COUNTY
APR 1 0 2015
CIRCUIT CLERK

### <u>AGREED ORDER</u>

This cause having come before the Court and the Court being duly advised in the premises and the parties being in agreement; It is hereby ordered:

1. Defendants will remit fair share fees and dues pending the resolution of this case. In exchange, Plaintiffs will not seek a TRO or Preliminary Injunction based upon the allegations in the Verified Complaint.

2. Defendants agree to transmit the correct payroll information to the Comptroller regarding gross earnings and appropriate fair share and dues deductions for employees covered by the collective bargaining agreements between Plaintiff Unions and the State.

3. Defendants will remit any fair share dues that were left in agency operating budgets pursuant to the Barclay Memorandum of March 17, 2015.

4. The parties waive any defense to the enforcement of the collective bargaining



EXHIBIT
A

agreements in this matter based on the failure to fully exhaust the grievance and arbitration procedures of their agreements under Section 16 of the Illinois Public Labor Relations Act, 5 ILCS 315/16. In the interests of clarity, the Defendants do not waive any other defense or claim. Plaintiffs agree to withdraw their current grievances without prejudice or precedent.

5. As set forth below, the parties agree to expedite resolution of claims in this litigation.

6. The parties agree to the following expedited schedule for the filing of responsive pleadings and dispositive motions.

a) Defendants will file an answer to the Verified Complaint by April 24, 2015;

b) The parties disagree about whether discovery is needed to resolve the issues in this case. Thus, Plaintiffs reserve the right to object to any and all discovery on all appropriate grounds, including relevance, privilege, abuse, or that the discovery imposes an undue burden and they reserve the right to seek a protective order if appropriate. The parties agree to meet and confer regarding discovery issues. This agreement does not indicate whether discovery is allowed or prohibited.

c) The parties will file dispositive motions by June 5, 2015;

d) The parties will respond to the dispositive motions by July 2, 2015;

e) Replies, if any, by July 17, 2015;

f) After the filing of responsive pleadings, the parties will appear before the Court in July 2015 to set a date for hearing on the dispositive motions.

SO ORDERED.

Dated: ___4/10/15___          _____
                                                    Judge

Prepared by:

Matthew R. Ford (ARDC #6292833)
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 W. Hubbard Street, Suite 300
Chicago, Illinois 60654
Phone: 312-494-4400
Email: matthew.ford@bartlit-beck.com

Stephen A. Yokich, Esq.
ARDC No. 6181707
Cornfield and Feldman LLP
25 East Washington Street, Suite 1400
Chicago, Illinois 60602-1803
Phone: 312-236-7800
Email: syokich@cornfieldandfeldman.com

## CERTIFICATE OF SERVICE

I, Stephen A. Yokich, an attorney, hereby certify that on April 30, 2015, I caused the foregoing **UNION DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO DISMISS AND SUPPLEMENTAL MEMORANDUM OF LAW PURSUANT TO COURT ORDER OF APRIL2, 2015** to be filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

I further certify that as of April 30, 2015, there are no non-registered participants upon whom service by U.S. Mail is required.

/s/ Stephen A. Yokich
Stephen A. Yokich