IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK JANUS, MARIE QUIGLEY, and BRIAN TRYGG, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, COUNCIL 31; GENERAL TEAMSTERS/PROFESSIONAL & TECHNICAL EMPLOYEES LOCAL UNION NO. 916; TOM TYRRELL, Director of the Illinois Department of Central Management Services, in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants, | ) ) ) |
| LISA MADIGAN, Attorney General of the State of Illinois, | ) ) ) ) |
| Intervenor-Defendant. | ) |

No. 1:15-CV-01235

Judge Robert W. Gettleman

Magistrate Daniel G. Martin

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs, MARK JANUS, MARIE QUIGLEY and BRIAN TRYGG, for their First Amended Complaint, allege as follows:

1. Plaintiffs are employed by the State of Illinois. They are each exclusively represented by one of the Defendant unions (the "Unions"), but they are not members of the Unions. The Plaintiffs are being forced to pay compulsory union fees to the Unions as a condition of their employment pursuant to Illinois' Public Labor Relations Act ("IPLRA"), 5 ILCS 315/6.

2. The Plaintiffs submit that this collection of compulsory fees from them violates

1

their rights under the First Amendment to the United States Constitution. They seek: (a) a declaratory judgment against the Director of Central Management Services and the Unions (collectively, "Defendants") to this effect; (b) injunctive relief that prohibits Defendants from seizing compulsory fees from them in the future; and (c) damages from the Unions for compulsory fees wrongfully seized from them.

## JURISDICTION AND VENUE

3. This is an action under the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation, under color of state law, of rights, privileges and immunities secured to Plaintiffs by the Constitution of the United States, particularly the First and Fourteenth Amendments.

4. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331, because they arise under the United States Constitution, and 28 U.S.C. § 1343, because the Plaintiffs seek relief under 42 U.S.C. § 1983. This Court has authority under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and other relief based thereon.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this district, and because the Unions operate or do business in this judicial district, thus residing in this district for purposes of 28 U.S.C. §§ 1391(c)(2) and 1391(d).

## PARTIES

6. Plaintiff Marie Quigley resides in Sangamon County, Illinois. She is employed by Illinois' Department of Public Health in a bargaining unit exclusively represented by AFSCME Council 31. However, Quigley is not a member of the Union.

7. Plaintiff Mark Janus resides in Sangamon County, Illinois. He is employed by

Illinois' Department of Healthcare and Family Services in a bargaining unit exclusively represented by AFSCME Council 31. However, Janus is not a member of the Union.

8. Plaintiff Brian Trygg resides in Edgar County, Illinois. He is employed by Illinois' Department of Transportation in a bargaining unit exclusively represented by Teamsters Local 916. However, Trygg is not a member of the Union.

9. Defendant American Federation of State, County, and Municipal Employees Council 31 ("AFSCME Council 31"), AFL-CIO, is a labor union that exclusively represents over 35,000 public employees in Illinois, and has an office located at 205 N. Michigan Ave., Suite 2100, Chicago, Illinois 60601.

10. Defendant General Teamsters/Professional & Technical Employees Local Union No. 916 ("Teamsters Local 916") is a labor union that exclusively represents over 2,700 public employees in Illinois, and has an office located at 3361 Teamster Way, Springfield, Illinois 62702.

11. On information and belief, the Illinois Department of Central Management Services ("CMS"), under the control and direction of its Director, administers programs and services to state agencies. The Bureau of Personnel within the Department develops and administers the State's Personnel Code, Personnel Rules, Pay Plan, Position Classification Plan, current collective bargaining agreements, and other applicable laws.

12. CMS is a party to the collective bargaining agreements under which the Plaintiffs pay compulsory union fees.

13. Defendant Tom Tyrrell is the Director of CMS, with an office located at JRTC Suite 4-500, 100 W. Randolph, Chicago IL, 60601-3219.

14. Intervenor-Defendant Lisa Madigan is the Attorney General of the State of

Illinois.

## FACTUAL ALLEGATIONS

**I.      Plaintiffs Are Forced to Pay Compulsory Union Fees Pursuant to State Law and Union Contracts.**

15.     Section 6 of IPLRA, 5 ILCS 315/6, grants a designated or recognized union the legal authority to act as "the exclusive representative for the employees of [a bargaining] unit for the purpose of collective bargaining with respect to rates of pay, wages, hours and other conditions of employment not excluded by Section 4 of this Act." 5 ILCS 315/6(c). These terms and conditions of employment include, among other things, health care coverage, retirement benefits, and pensions.

16.     The mandatory and permissive subjects of collective bargaining under the IPLRA concern matters of political and public concern over which employees and other citizens may have divergent views and opinions.

17.     On information and belief, exclusive representation is not necessary to maintain order and peace amongst employees in public workplaces because, among other things, public employers have other means to ensure workplace discipline.

18.     On information and belief, exclusive representation assists unions with recruiting and retaining members because, among other things: (a) employees are more likely to join and support a union that has authority over their terms of employment, as opposed to a union that does not; (b) exclusive representatives are entitled to information about all employees in the unit; and (c) exclusive representatives can negotiate contract terms that facilitate recruiting and retaining members, such as contract terms providing for union orientations for all employees and automatic deduction of union dues from employees' paychecks.

19.     Under Section 6 of the IPLRA, collective bargaining agreements covered by the

IPLRA may require state employees who are not full members of the Unions ("nonmembers") to pay compulsory union fees. Specifically, Section 6(e) provides that:

> When a collective bargaining agreement is entered into with an exclusive representative, it may include in the agreement a provision requiring employees covered by the agreement who are not members of the organization to pay their proportionate share of the costs of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and conditions of employment, as defined in Section 3(g), but not to exceed the amount of dues uniformly required of members. The organization shall certify to the employer the amount constituting each nonmember employee's proportionate share which shall not exceed dues uniformly required of members. In such case, the proportionate share payment in this Section shall be deducted by the employer from the earnings of the nonmember employees and paid to the employee organization.

5 ILCS 315/6(e). The union fee seizures authorized by § 6(e) of the IPLRA shall hereinafter be referred to as "compulsory fees."

20. With the exception of the public employer of public employees who are court reporters, "public employer" or "employer" is defined in § 3(o) of the IPLRA Section as:

> the State of Illinois; any political subdivision of the State, unit of local government or school district; authorities including departments, divisions, bureaus, boards, commissions, or other agencies of the foregoing entities; and any person acting within the scope of his or her authority, express or implied, on behalf of those entities in dealing with its employees.

5 ILCS 315/3(o).

21. CMS, an Illinois state agency within the direction and control of the Governor of Illinois, has entered into collective bargaining agreements under the IPLRA with the Unions that require the deduction of compulsory fees from the earnings of the nonmembers, with the fees then paid to the Unions (hereinafter, "Fair Share Contract Provisions").

22. CMS is a party to a collective bargaining agreement with AFSCME Council 31

effective from June 30, 2012 to June 30, 2015, which is incorporated by reference herein.[1] The contract requires semi-monthly deduction of compulsory fees from the earnings of nonmember employees. *Id*. at Art. IV, § 3.

23.   CMS is a party to a collective bargaining agreement with Teamsters Local 916 effective from June 30, 2012 to June 30, 2015, which is incorporated by reference herein.[2] The contract requires that compulsory fees be deducted from the earnings of nonmember employees. *Id*. at Art. III, § 1.

24.   Since times before June 30, 2012, the Plaintiffs have had compulsory fees deducted from their earnings pursuant to the aforementioned contracts.

25.   On information and belief, CMS directly or indirectly made these deductions, acting under the direction and control of Defendant Tyrell or his predecessor Directors at CMS.

26.   Janus currently has $23.48 deducted from his paycheck every pay period, and estimates that several thousand dollars of compulsory fees have been deducted in total.

27.   Quigley currently has approximately $19.75 deducted from her paycheck every pay period, and estimates that approximately $1,660 of compulsory fees have been deducted in total.

28.   Trygg currently has $60.86 deducted from his paycheck every pay period, and estimates that approximately $7,100 of compulsory fees have been deducted in total.

29.   Section 6(f) of the IPLRA requires that "[w]here a collective bargaining agreement is terminated, or continues in effect beyond its scheduled expiration date pending the

---

[1]   The document is available at http://www.illinois.gov/cms/Employees/Personnel/Documents/emp_afscme1.pdf (last visited June 1, 2015), and is attached as Exhibit 1.

[2]   The document is available at http://www.illinois.gov/cms/Employees/Personnel/Documents/emp_pt916.pdf (last visited June 1, 2015), and is attached as Exhibit 2.

negotiation of a successor agreement . . . the employer shall continue to honor and abide by any dues deduction or fair share clause contained therein until a new agreement is reached including dues deduction or a fair share clause." 5 ILCS 315/6(f).

30. Accordingly, Illinois law requires that the Plaintiffs continue to pay compulsory fees to AFSCME Council 31 and Teamsters Local 916 after the aforementioned contracts expire.

31. On information and belief, compulsory fees are not necessary to maintain order or labor peace in the workplace, because, among other reasons, exclusive representation does not depend on the right to collect a fee from non-members.

32. Even those nonmembers who object to the payment of the compulsory fees because of bona fide religious beliefs may nonetheless "be required to pay an amount equal to their fair share, determined under a lawful fair share agreement, to a nonreligious charitable organization mutually agreed upon by the employees affected and the exclusive bargaining representative to which such employees would otherwise pay such service fee." 5 ILCS 315/6(g).

## II. Union Fee Calculations and Procedures.

33. When a union collects compulsory fees from an employee, it must annually provide the employee with a "*Hudson*" notice that, among other things, explains how the union calculated the fee. *See Chicago Teachers Union v. Hudson*, 475 U.S. 292 (1986). A union calculates a compulsory fee by first defining which types of activities it will deem "chargeable" and "nonchargeable" to nonmember employees, and by then determining what percentage of the union's expenses in a prior fiscal year were chargeable and non-chargeable. The compulsory fee is set at the prior fiscal year's chargeable percentage.

34. The above calculation must be based on an audit of union expenditures. However, auditors do not confirm whether the union has properly classified its expenditures as chargeable

or non-chargeable.

35. If a non-member disagrees with a union's classification of expenses as chargeable, the non-member may challenge the classification either through arbitration or in a court of law.

36. On information and belief, CMS directly deducts compulsory fees, in the amount set by a union, from the earnings of State employees and remits those monies to the union. The Unions here act under color of state law by causing, participating in, and accepting the compulsory deduction of fees from monies owed to non-member State employees.

37. On information and belief, rather than sending individual *Hudson* notices to every employee, AFSCME Local 31 posts a "Notice to All Nonmember Fair Share Fee Payors" ("AFSCME Notice") on union bulletin boards in some workplaces. AFSCME's Notice is attached as Exhibit 3 and is hereby incorporated by reference into this pleading.

38. On information and belief, the attached AFSCME Notice is the current notice posted by AFSCME Council 31, and is the basis for the compulsory fees it collected in 2014 and through 2015 to date. Also on information and belief, the attached AFSCME Notice accurately describes AFSCME Council 31's compulsory fee, its calculation thereof, and union's policies related to those fees.

39. AFSCME states in the AFSCME Notice that, among other uses, its compulsory fees are used for "lobbying for the negotiation, ratification, or implementation of a collective bargaining agreement," "paying technicians in labor law, economics, and other subjects for services used (a) in negotiating and administering collective bargaining agreements; and (b) in processing grievances," "supporting and paying affiliation fees to other labor organizations which do not negotiate the collective bargaining agreements governing the fair share payor's

employment," "organizing within the bargaining unit in which fair share fee payors are employed," "organizing other bargaining units," "seeking to gain representation rights in units not represented by AFSCME," and "lobbying for purposes other than the negotiation, ratification, or implementation of a collective bargaining agreement."

40. On information and belief, AFSCME charges nonmembers compulsory fees equal to approximately 79% of the total dues charged to members.

41. On information and belief, Teamsters Local 916 charges nonmembers compulsory fees equal to approximately 98% of the total dues charged to members.

### III. The Plaintiffs Oppose Being Forced to Pay Compulsory Fees to the Unions.

42. Janus objects to many of the public policy positions that AFSCME advocates, including the positions that AFSCME advocates for in collective bargaining.

43. For example, he does not agree with what he views as the union's one-sided politicking for only its point of view. Janus also believes that AFSCME's behavior in bargaining does not appreciate the current fiscal crises in Illinois and does not reflect his best interests or the interests of Illinois citizens.

44. But for Illinois law requiring compulsory fees, Janus would not pay any fees or otherwise subsidize AFSCME.

45. Quigley also objects to many of AFSCME's public policy positions, including the positions that AFSCME advocates for in collective bargaining.

46. For example, she disagrees with AFSCME's negotiation of contract terms that favor seniority over employee merit for purposes of layoffs and promotions, is concerned about the effect that AFSCME's bargaining behavior is having on the Illinois budget, believes that union representatives are only looking out for themselves at the expense of union members and

9

the people of Illinois, and does not believe that AFSCME is acting in her best interest or in the best interests of Illinois citizens.

47. But for Illinois law requiring compulsory fees, Quigley would not pay any fees or otherwise subsidize AFSCME.

48. Trygg objects to many of Teamsters Local 916's public policy positions, including the positions that it advocates for in collective bargaining.

49. Trygg has sincere religious objections to associating with Teamsters Local 916 and its agenda. Trygg also believes that Teamsters Local 916 harms Illinois residents by objecting to efforts by the State to reduce costs that would allow public funds to be made available for more important uses. For example, the Union resists any furlough days, despite the State's budget issues.

50. But for Illinois law requiring compulsory fees, Trygg would not pay any fees or otherwise subsidize Teamsters Local 916.

51. On February 9, 2015, Illinois Governor Bruce Rauner issued Executive Order 15-13. The Executive Order directs CMS and other State agencies to cease enforcement of compulsory fee agreements and to direct all compulsory fee deductions into an escrow account until it is determined if those fees are constitutional.

52. On information and belief, enforcement of Executive Order 15-13 has been effectively suspended or deferred, with compulsory fees continuing to be deducted (including from the paychecks of Plaintiffs) and remitted to public employee unions.

53. Under the IPLRA, it is currently permissible for collective bargaining agreements covered by the IPLRA to require nonmembers to pay compulsory union fees. *See* 5 ILCS 315/6. The constitutionality of such provisions was first considered by the United States Supreme Court

in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977). In *Abood*, the Supreme Court held the seizure of compulsory fees in the public sector to be constitutional because the fees were justified by state interests in labor peace and avoiding free riders. However, the *Abood* court failed to subject these ostensible justifications to requisite constitutional scrutiny.

54. Since *Abood*, the Supreme Court has repeatedly acknowledged that compelling a state employee to financially support a public sector union seriously impinges upon free speech and association interests protected by the First Amendment of the United States Constitution.

55. The Supreme Court in *Abood* also distinguished between "chargeable" union expenditures, which may be recouped even from employees who choose not to join a union, and "non-chargeable" expenditures, which can be recouped only from the union's members.

56. But in the years following the *Abood* decision, the Supreme Court "struggled repeatedly with" interpreting *Abood* and determining what qualified as a "chargeable" expenditure and what qualified as a "non-chargeable," or political and ideological, expenditure. *Harris v. Quinn*, __ U.S. __, 134 S. Ct. 2618, 2633 (2014) (citing *Ellis v. Railway Clerks*, 466 U.S. 435 (1984); *Teachers v. Hudson*, 475 U.S. 292 (1986); *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507 (1991); *Locke v. Karass*, 555 U.S. 207 (2009)).

57. In addition, in *Knox v. Service Employees International Union, Local 1000*, __ U.S. __, 132 S. Ct. 2277, 2289 (2012), the Supreme Court also recognized that "a public-sector union takes many positions during collective bargaining that have powerful political and civic consequences." For that reason, "compulsory fees constitute a form of compelled speech and association that imposes a significant impingement on First Amendment rights." *Id.* (internal quotation marks omitted). *Knox* emphasized the "general rule" that "individuals should not be compelled to subsidize private groups or private speech." *Id.* "[C]ompulsory subsidies for

private speech are subject to exacting First Amendment scrutiny and cannot be sustained unless two criteria are met. First, there must be a comprehensive regulatory scheme involving a 'mandated association' among those who are required to pay the subsidy." *Id.* (citation omitted). "Such situations are exceedingly rare because . . . mandatory associations are permissible only when they serve a compelling state interest . . . that cannot be achieved through means significantly less restrictive of associational freedoms." *Id.* (citation omitted).

58. "Second, even in the rare case where a mandatory association can be justified, compulsory fees can be levied only insofar as they are a 'necessary incident' of the 'larger regulatory purpose which justified the required association.'" *Id.* (citation omitted).

59. More recently, in *Harris v. Quinn*, __ U.S. __, 134 S. Ct. 2618 (2014), a majority of the Supreme Court questioned *Abood*'s continued validity on several grounds, and outlined an interpretation of the First Amendment that, in light of the current circumstances of Illinois public sector collective bargaining, is incompatible with nonmembers being compelled to pay compulsory fees such as those required by the Fair Share Contract Provisions.

60. Regarding the "fair share" provisions at issue in that case, the *Harris* majority noted that "'[t]he primary purpose' of permitting unions to collect fees from nonmembers is 'to prevent nonmembers from free-riding on the union's efforts, sharing the employment benefits obtained by the union's collective bargaining without sharing the costs incurred.'" *Harris*, 134 S. Ct. at 2627 (quoting *Knox*, 132 S. Ct. at 2289). The Court continued, however, that "'[s]uch free-rider arguments . . . are generally insufficient to overcome First Amendment objections.'" *Harris*, 134 S. Ct. at 2627 (quoting *Knox*, 132 S. Ct. at 2289).

61. A majority of the Supreme Court also recognized in *Harris* that "fair share" provisions in public employee collective bargaining agreements impose First Amendment

concerns not necessarily presented in the private sector, because the collective bargaining process itself is political when taxpayer funds go to pay the negotiated wages and benefits, especially given the great power of unions in electoral politics and the size of public employee payrolls.

62. On information and belief, in coordination with their express political advocacy, the Unions routinely take positions in the collective-bargaining process that greatly affect the State's budget.

63. On information and belief, since *Abood*, the facts and circumstances of Illinois public sector bargaining since its inception in 1984 under the IPLRA have caused the Fair Share Contract Provisions to impose a significant infringement on the First Amendment rights of Illinois state employees who do not wish to become members of the Unions and other public employee unions in Illinois.

64. On information and belief, when the Unions expend dollars collected pursuant to the Fair Share Contact Provisions to lobby or bargain against reductions to their own benefits packages or to shift more significant reductions to other state programs or services, there is no principled distinction between the Unions and the various special interest groups who must expend money on political activities to protect their own favored programs and services.

65. On information and belief, Illinois public sector labor costs have imposed and will continue to impose a significant impact on the State's financial condition, clearly demonstrating the degree to which Illinois state employee collective bargaining is an inherently political activity.

66. Like the petitioners in *Harris*, Plaintiffs have "the right not to be forced to contribute to the union, with which they broadly disagree." *Harris*, 134 S. Ct. at 2640.

67. The Fair Share Contract Provisions, while permitted by the IPLRA, are nonetheless unconstitutional because they significantly infringe on nonmember Illinois state employees' First Amendment rights, while serving no compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms. Compulsory fees infringe on the First Amendment rights of the Plaintiffs and other employees because compulsory fee requirements compel employees to support speech and petitioning against their will, and to associate with a union against their will.

68. The Plaintiffs submit that *Abood* was wrongly decided and should be overturned by the Supreme Court, and that the seizure of compulsory fees is unconstitutional under the First Amendment. Among other things, there is no justification, much less a compelling one, for mandating that the nonmembers support the Unions, which, on information and belief, are some of the most powerful and politically active organizations in the State.

69. In addition, the inherently political nature of collective bargaining and its consequences in Illinois has further infringed on nonmembers' First Amendment rights to refrain from supporting public sector unions in their organization and collective bargaining activities. Therefore, the First Amendment forbids coercing any money from the nonmembers to pay fees pursuant to Fair Share Contract Provisions.

70. In light of these circumstances, these nonmember fee deductions are coerced political speech, in violation of the First Amendment of the United States Constitution.

71. Under the Supremacy Clause contained in Article VI of the United States Constitution, the First Amendment supersedes any inconsistent purported requirements within Illinois statutes, thus rendering ultra vires any public union collective bargaining agreement provision that would violate nonmembers' First Amendment rights.

## COUNT I

(Compulsory Union Fees Violate 42 U.S.C. § 1983 and the United States Constitution)

72. The Plaintiffs re-allege and incorporate by reference the paragraphs set forth above.

73. By requiring under color of state law that the Plaintiffs pay compulsory fees as a condition of their employment, and by causing such compulsory fees to be withheld from Plaintiffs' wages and remitted to the Unions, CMS under the control and direction of its Director, AFSCME Council 31, and Teamsters Local 916 are violating the Plaintiffs' First Amendment rights to free speech, petitioning, and association, as secured by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

74. As a result, the Plaintiffs are suffering the irreparable harm and injury inherent in a violation of First Amendment rights for which there is no adequate remedy at law. Unless enjoined by this Court, the Plaintiffs will continue to suffer irreparable harm and injury.

75. The following Illinois laws that authorize compulsory fees are unconstitutional, both on their face and as applied to the Plaintiffs: 5 ILCS 315/3(g), 5 ILCS 315/6(a) (final sentence only), 5 ILCS 315/6(e), 5 ILCS 315/6(f), 5 ILCS 315/10(a)(2) (final sentence only), and 5 ILCS 315/10(b)(1) (reference to "fair share" only).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A. Issue a declaratory judgment against the Director of CMS, in his official capacity, AFSCME Council 31, and Teamsters Local 916 that:

    1. it is unconstitutional under the First Amendment, as secured against State infringement by the Fourteenth Amendment and 42 U.S.C. § 1983, to

seize or require payment of compulsory fees from the Plaintiffs and other public employees;

2. the following statutory provisions are unconstitutional under the First Amendment, as secured against State infringement by the Fourteenth Amendment and 42 U.S.C. § 1983, and null, and void: 5 ILCS 315/3(g), 315/6(a) (final sentence only), 5 ILCS 315/6(e), 5 ILCS 315/6(f), 5 ILCS 315/10(a)(2) (final sentence only), and 5 ILCS 315/10(b)(1) (reference to "fair share" only).

3. The sections of AFSCME Council 31 and Teamsters Local 916's contracts with the State that require the seizure of compulsory fees are unconstitutional under the First Amendment, as secured against State infringement by the Fourteenth Amendment and 42 U.S.C. § 1983, and are null and void.

B. Issue preliminary and permanent injunctions against the Director of CMS, in his official capacity, AFSCME Council 31, and Teamsters Local 916 that prohibit the parties from seizing compulsory fees from the Plaintiffs or otherwise requiring that they pay compulsory fees to a union as a condition of their employment.

C. Award Plaintiffs Mark Janus and Marie Quigley nominal and compensatory damages from AFSCME Council 31, and award Plaintiff Brian Trygg nominal and compensatory damages from Teamsters Local 916, for all compulsory fees seized from them under color of state law from the beginning of the applicable statute of limitations to the date of the said award.

D. Pursuant to 42 U.S.C. § 1988, award Plaintiffs their costs, including reasonable

attorneys' fees incurred in the litigation of this case.

E. Order any other legal or equitable relief deemed just and proper.

Dated: June 1, 2015

>Respectfully submitted,
>
>MARK JANUS, MARIE QUIGLEY
>and BRIAN TRYGG
>
>
>By:     /s/ Joseph J. Torres
>         One of Their Attorneys
>
>Dan K. Webb
>Lawrence R. Desideri
>Joseph J. Torres
>Brook R. Long
>WINSTON & STRAWN LLP
>35 West Wacker Dr.
>Chicago, IL 60601
>312.558.7334
>312.558.5700 (fax)
>dwebb@winston.com
>ldesideri@winston.com
>jtorres@winston.com
>blong@winston.com
>
>William L. Messenger (*pro hac vice*)
>Aaron B. Solem*
>c/o National Right to Work Legal Defense
>Foundation
>8001 Braddock Rd., Suite 600
>Springfield, VA 22160
>703.321.8510
>703.321.9319 (fax)
>wlm@nrtw.org
>abs@nrtw.org
>
>Jacob H. Huebert
>Jeffrey M. Schwab
>Liberty Justice Center
>190 S. LaSalle St, Suite 1500
>Chicago, IL 60603

17

312.263.7668  
312.263.7702 (fax)  
jhuebert@libertyjusticecenter.org  
jschwab@libertyjusticecenter.org  

*\* Pro Hac Vice Motion to Be Filed*

# CERTIFICATE OF SERVICE

The undersigned attorney states that on the 1st day of June, 2015, he caused a true and correct copy of the foregoing Plaintiff's First Amended Complaint to be electronically filed with the Clerk of the Court using the CM/ECF system, which may be accessed by counsel for Defendants. The undersigned attorney further certifies that on the 1st day of June, 2015, he caused a true and correct copy of the foregoing to be served by certified and electronic mail on:

>Gary Steven Caplan
>Office of Illinois Attorney General
>100 West Randolph Street
>Chicago, IL 60601
>(312) 814-5661
>gcaplan@atg.state.il.us
>
>*Attorney for Lisa Madigan, Attorney General of the State of Illinois*

By: ____/s/ Joseph J. Torres_____
One of Plaintiffs' Attorneys

Joseph J. Torres
WINSTON & STRAWN LLP
35 West Wacker Dr.
Chicago, IL 60601
312.558.7334
312.558.5700 (fax)
jtorres@winston.com