## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Mark Janus, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:15-CV-01235 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| American Federation of State, County, and | ) | Magistrate Daniel G. Martin |
| Municipal Employees, Council 31, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| | ) | |
| Lisa Madigan, Attorney General of the | ) | |
| State of Illinois, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Joseph J. Torres
Daniel K. Webb
WINSTON & STRAWN LLP
35 West Wacker Dr.
Chicago, IL 60601
312.558.5600
312.558.5700 (fax)
jtorres@winston.com

Jeffrey Schwab
Liberty Justice Center
190 S. LaSalle St., Suite 1500
Chicago, IL 60603
312.263.7668
312.263.7702 (fax)
jschwab@libertyjusticecenter.org

William Messenger
Aaron Solem
c/o National Right to Work Legal
Defense Foundation
8001 Braddock Rd., Suite 600
Springfield, VA 22160
703.321.8510
703.321.9319 (fax)
wlm@nrtw.org
abs@nrtw.org

*Attorneys for the Plaintiff*

## TABLE OF CONTENTS

Page

FACTS ................................................................................................................................1

ARGUMENT .......................................................................................................................2

I.      Summary Judgment Should be Entered Against AFSCME and Janus
Awarded Compensatory Damages and a Declaratory Judgment........................................2

II.    AFSCME Cannot Invoke a Good Faith Defense and, Even if IT Could, AFSCME Did
Not Act in Good Faith........................................................................................................3

    A.    Good Faith Is Not a Defense to a Deprivation of First Amendment Rights or to
AFSCME's Section 1983 Liability for Causing That Deprivation………………………..3

    B.    AFSCME Did Not Act in Good Faith.....................................................................12

    C.    In the Alternative, Janus Should Be Awarded Nominal Damages ..........................14

CONCLUSION.....................................................................................................................15

## TABLE OF AUTHORITIES

Cases                                                                                          Page

*Abood v. Detroit Bd. Of Educ*.,
431 U.S. 209 (1977)......................................................................................................12, 13

*Carey v. Piphus*,
435 U.S. 247 (1978)...............................................................................................................14

*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993).................................................................................................................5

*Clement v. City of Glendale*,
518 F.3d 1090 (9th Cir. 2008) ............................................................................................7, 14

*Crawford-El v. Britton*,
523 U.S. 574 (1998)...............................................................................................................11

*Daniels v. Williams*,
474 U.S. 327 (1986).........................................................................................................10, 11

*Duncan v. Peck*,
844 F.2d 1261 (6th Cir. 1988) ................................................................................................6

*Filarsky v. Delia*,
566 U.S. 377 (2012)............................................................................................................9, 12

*Friedrichs v. California Teachers Association*,
136 S. Ct. 1083 (2016)...........................................................................................................13

*Harris v. Quinn*,
134 S. Ct. 2618 (2014)......................................................................................................10, 12

*Hoffman v. Inslee*,
No. 14-CV-200, 2016 WL 6126016 (W.D. Wash. Oct. 20, 2016) ...............................................10

*Illinois AFL-CIO, et al. v. Bruce Rauner, Governor of the State of Illinois,
et al.*, St. Clair County, Ill.
Case No. 2015 CH 171 ..........................................................................................................13

*Janus v. AFSCME Council 31*,
138 S. Ct. 2448 (2018)...................................................................................................... *passim*

# TABLE OF AUTHORITIES Cont.

Cases                                                                    Page

*Jarvis v. Cuomo*,
660 F. App'x 72 (2d Cir. 2016) ...........................................................................10

*Jordan v. Fox, Rothschild, O'Brien, & Frankel*,
20 F.3d 1250 (3d Cir. 1994)........................................................................7, 8, 14

*Knox v. SEIU Local 1000*,
567 U.S. 310 (2012)............................................................................................12

*Malinowski v. DeLuca*,
177 F.3d 623 (7th Cir. 1999) ...............................................................................9

*OSU Student Alliance v. Ray*,
699 F.3d 1053 (9th Cir. 2012) ..............................................................................5

*Owen v. City of Indep.*,
445 U.S. 622 (1980)........................................................................................4, 12

*Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*,
184 F.3d 623 (7th Cir. 1999) ...............................................................................9

*Pinsky v. Duncan*,
79 F.3d 306 (2d Cir. 1996................................................................................7, 14

*Rehberg v. Paulk*,
566 U.S. 356 (2012)............................................................................................10

*Richardson v. McKnight*,
521 U.S. 399  (1997)...............................................................................5, 6, 8, 9

*Six Star Holdings, LLC v. City of Milwaukee*,
821 F.3d 795 (7th Cir. 2016) ..........................................................................3, 14

*Sherman v. Four Cty. Counseling Ctr.*,
987 F.2d 397 (7th Cir. 1993) ..........................................................................5, 10

*U.S. ex rel. Chandler v. Cook Cty., Ill.*,
277 F.3d 969 (7th Cir. 2002), *aff'd*, 538 U.S. 119 (2003) .............................3

## TABLE OF AUTHORITIES Cont.

Cases                                                                       Page

*Vector Research, Inc. v. Howard & Howard Attorneys P.C.*,
76 F.3d 692 (6th Cir. 1996) ...........................................................................7, 14

*Williams v. O'Leary*,
55 F.3d 320 (7th Cir. 1995) ...................................................................................9

*Winner v. Rauner*,
No. 15-cv-7213, 2016 WL 7374258, at *5–6 (N.D. Ill. Dec. 20, 2016).......................................10

*Wyatt v. Cole*,
994 F.2d 1113  (5th Cir. 1993) .....................................................................4, 7, 8, 14

*Wyatt v. Cole*,
504 U.S. 158 (1992)...............................................................................5, 6, 8, 9, 11

First Amendment .................................................................................. *passim*
Fourteenth Amendment ...............................................................................3

42 U.S.C. § 1983 ................................................................................... *passim*

5 Ill. Comp. Stat. § 315/(6)(e)...................................................................2, 3
5 Ill. Comp. Stat. § 315/(6)(f) ...................................................................2, 3

Ill. Executive Order 15-13, § II(e) .............................................................13

The Supreme Court resolved the merits of this case when it held Illinois' agency fee requirement violates the First Amendment and that unions cannot collect agency fees from employees without their consent. *Janus v. AFSCME Council 31,* 138 S. Ct. 2448, 2486 (2018). The remaining issue in dispute is whether AFSCME Council 31 must pay Mark Janus compensatory damages for the fees it wrongfully seized from him. AFSCME apparently intends to argue that a so-called "good faith defense" permits it to keep the monies it wrongfully seized from Janus. As set forth below, good faith is not a cognizable defense to either a deprivation of First Amendment rights or to AFSCME's liability under 42 U.S.C. § 1983 for causing that deprivation. And AFSCME did not act in good faith in any event. The Court should grant Janus summary judgment and award him compensatory damages, or alternatively nominal damages, and a corresponding declaratory judgment.

## FACTS

Mark Janus was employed by the Illinois' Department of Healthcare and Family Services from March 2007 until July 2018 in a bargaining unit exclusively represented by AFSCME. Pl's Statement of Uncontested Facts 1. Janus chose not to be an AFSCME member. *Id*. at 3.

Nevertheless, until late June 2018, Janus was compelled by his employer and AFSCME to pay agency fees to AFSCME, which were directly deducted from Janus' wages. *Id*. at 4. Janus did not consent to these deductions or to AFSCME's collection of the fees. *Id*. at 5. Janus calculates that, between March 23, 2013 and July 2018, a total of $2,929.56 in agency fees were seized from him. *Id*. at 6.[1]

---

[1] March 23, 2013 marks the beginning of the statute of limitations because Janus filed his initial complaint on March 23, 2015, *see* ECF No. 92-2, and the statute of limitations for a 42 U.S.C. § 1983 action in Illinois is 2 years.

Janus was compelled to pay agency fees during these time periods by Article IV, Section 3 of AFSCME's collective bargaining agreement with Illinois' Department of Central Management Services ("CMS"), effective from June 20, 2012 to June 30, 2015, which mandated that agency fees "be deducted from the earnings of nonmember-employees" and that "[t]he amount so deducted shall be remitted semi-monthly to the union." *Id*. at 7; ECF No. 145-1, Ex. 1 to Second Am. Complaint. Illinois law not only authorized these agency fee deductions, *see* 5 Ill. Comp. Stat. § 315/6(e), but mandated that the deductions continue after the contract expired, *see id*. at § 315/6(f).

Janus alleges that the exaction of agency fees deprived him of his First Amendment rights in violation of 42 U.S.C. § 1983. ECF No. 145, Second Amended Compl. ¶ 70. On June 27, 2018, the Supreme Court agreed with Janus, and held that Illinois' agency fee "arrangement violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." *Janus*, 138 S. Ct. at 2460. The Court further held that Illinois' agency-fee deduction "procedure violates the First Amendment and cannot continue" and that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." *Id*. at 2486.

## ARGUMENT

### I. Summary Judgment Should be Entered Against AFSCME and Janus Awarded Compensatory Damages and a Declaratory Judgment.

Summary judgment is appropriate under Rule 56 because there are no genuine disputes as to any material facts. Under the Supreme Court's decision, only two material facts are needed to show that AFSCME deprived Janus of his First Amendment rights. Namely, that Janus (1) was a

public employee from whom (2) AFSCME seized agency fees without his consent. Both material facts are established here. Thus, Janus is entitled to summary judgment.

The Court should award Janus compensatory damages equal to all agency fees seized from him from the beginning of the statute of limitations period (March 23, 2013), plus interest. "Compensatory damages, designed to make the victim of unconstitutional behavior whole, are a permissible basis of recovery" in section 1983 actions. *U.S. ex rel. Chandler v. Cook Cty., Ill.*, 277 F.3d 969, 977 (7th Cir. 2002), *aff'd*, 538 U.S. 119 (2003). Alternatively, if Janus is not awarded compensatory damages, he at least be should be awarded nominal damages of $1. *See Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 805 (7th Cir. 2016) (affirming award of nominal damages for deprivation of First Amendment rights)

Janus also should be awarded a declaratory judgment that AFSCME's seizure of agency fees deprived him of his First Amendment rights, as secured by section 1983 and the Fourteenth Amendment, and that 5 Ill. Comp. Stat. §§ 315/6(e) and 6(f), which authorized the unconstitutional seizures, are unconstitutional under the First Amendment.

## II. AFSCME Cannot Invoke a Good Faith Defense and, Even if It Could, AFSCME Did Not Act in Good Faith.

### A. Good Faith Is Not a Defense to a Deprivation of First Amendment Rights or to AFSCME's Section 1983 Liability for Causing That Deprivation.

1. *Summary of Argument*

Section 1983 states that "every person" who deprives others of their constitutional rights "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C § 1983. Notwithstanding this language, AFSCME intends to argue that, if it acted in good faith reliance on existing law when it deprived Janus of his First Amendment rights, it is *not* "liable to the party injured in an action at law" for damages. *Id.* AFSCME is mistaken.

3

There is no statutory basis for a good faith defense here, because state of mind is irrelevant to both (1) the deprivation of First Amendment rights, and (2) AFSCME's section 1983 liability for causing that deprivation.

Neither the Supreme Court nor the Seventh Circuit has recognized a good faith defense to section 1983 for private parties. Thus, the starting point for the analysis must be section 1983's text, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Defenses to this statute are not lightly inferred, for "[i]ts language is absolute and unqualified; no mention is made of any privileges, immunities, or defenses that may be asserted." *Owen v. City of Indep.*, 445 U.S. 622, 635 (1980).

There are only two possible statutory bases for a good faith defense. First, state of mind could be an element of, or defense to, the alleged "deprivation of . . . rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. For example, proof of malice is required to show that a defendant's ex parte use of a replevin statute deprived a plaintiff of due process. *See Wyatt v. Cole*, 994 F.2d 1113, 1119–21 (5th Cir. 1993). But no particular state of mind is required to prove that AFSCME deprived Janus of his First Amendment rights by forcing him to subsidize the union's speech without his consent. *See Janus*, 138 S. Ct. at 2486. Good faith is not a defense to the First Amendment deprivation at issue here.

Second, some defendants enjoy a good faith immunity to section 1983 liability for depriving others of constitutional rights. AFSCME is not one of those defendants, for the principal basis for qualified immunity—"to give public officials the peace of mind to exercise discretion in decision

making," *Sherman v. Four Cty. Counseling Ctr.*, 987 F.2d 397, 405 (7th Cir. 1993)—has no application to AFSCME. *See Richardson v. McKnight*, 521 U.S. 399, 403 (1997) (holding private party did not have qualified immunity); *Wyatt v. Cole*, 504 U.S. 158, 164–65 (1992) (same).

Without an immunity, AFSCME's state of mind when it seized agency fees from Janus is irrelevant under section 1983. The statute "contains no independent state-of-mind requirement." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Rather, section 1983 mandates that "every person" who deprives another of constitutional rights "shall be liable to the party injured in an action at law," 42 U.S.C. § 1983. AFSCME, therefore, is liable to Janus in an action for damages.

   2. *State of Mind is Neither an Element of Nor a Defense to the Deprivation of First Amendment Rights at Issue in This Case.*

AFSCME's state of mind when it seized agency fees from non-consenting employees is immaterial to whether its seizures caused a "deprivation of . . . rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. First Amendment "free speech violations do not require specific intent." *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1073–75 (9th Cir. 2012); *see City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993) (holding animus not necessary to show that regulation violated the First Amendment). The First Amendment claim here requires only that AFSCME seized agency fees from Janus without his consent. *Janus*, 138 S. Ct. at 2486. Whether AFSCME acted in good or bad faith when it forced Janus to subsidize the union's speech is irrelevant.

State of mind, however, is relevant to *other* types of constitutional deprivations. For example, a specific intent must be shown in "due process claims for injuries caused by a high-speed chase," "Eighth Amendment claims for injuries suffered during the response to a prison disturbance," and invidious discrimination claims under the Equal Protection clauses. *OSU Student Alliance*, 699 F.3d at 1074. Court decisions allowing private parties to raise a good faith defense did so because

5

state of mind was an element of the alleged constitutional deprivation alleged, as a review of the development of this case law makes clear.

The Sixth Circuit was the first appellate court to find that private parties can raise a "common law good faith defense to malicious prosecution and wrongful attachment cases" brought under section 1983. *Duncan v. Peck*, 844 F.2d 1261, 1267 (6th Cir. 1988). The court did so because malice and lack of probable cause are elements of those types of due process claims. *Id*.

At the time, *Duncan*'s holding conflicted with other appellate court decisions holding that private parties enjoy good faith *immunity* to section 1983 liability. *See id*. at 1265. A "defense" and an "immunity" are different things: a defense rebuts the alleged deprivation of rights, while an immunity is an exemption from section 1983 liability even if there is a deprivation. *See Wyatt*, 504 U.S. at 166–67; *id*. at 172–73 (Kennedy, J., concurring). In other words, "a legal defense may well involve 'the essence of the wrong,' while an immunity frees one who enjoys it from a lawsuit whether or not he acted wrongly." *Richardson*, 521 U.S. at 403 (quoting *Wyatt*, 504 U.S. at 171–72 (Kennedy, J., concurring)). The Sixth Circuit in *Duncan* believed that "courts who endorsed the concept of good faith immunity for private individuals improperly confused good faith immunity with a good faith defense." 844 F.2d at 1266.

The Sixth Circuit was prescient. In 1992, the Supreme Court in *Wyatt* resolved the circuit split and held that private parties generally do not enjoy a good faith immunity to section 1983 liability. 504 U.S. at 161, 168. *Wyatt* involved "private defendants charged with 42 U.S.C. § 1983 liability for invoking state replevin, garnishment, and attachment statutes later declared unconstitutional" for violating due process guarantees. *Id*. at 159. The claim was analogous to "malicious prosecution and abuse of process," and at common law, "private defendants could defeat a malicious prosecution or abuse of process action if they acted without malice and with probable

6

cause . . . ." *Id.* at 164–65. Nevertheless, the Supreme Court concluded that "[e]ven if there were sufficient common law support to conclude that respondents . . . should be entitled to a good faith *defense*, that would still not entitle them to what they sought and obtained in the courts below: the qualified *immunity* from suit accorded government officials . . . ." *Id.* at 165 (first emphasis added). The reason was that the "rationales mandating qualified immunity for public officials are not applicable to private parties." *Id.* at 167. The Court concluded that the private defendants did not have a good faith immunity to section 1983 liability, but left open the question of whether they could raise "an affirmative defense based on good faith and/or probable cause . . . ." *Id.* at 168–69.

On remand, the Fifth Circuit in *Wyatt* held the defendants could raise this defense because malice and lack of probable cause are elements of the due process claim. 994 F.2d 1113, 1119–21 (5th Cir. 1993). The Fifth Circuit recognized that the Supreme Court "focused its inquiry on the elements of these torts," and found "that plaintiffs *seeking to recover on these theories* were required to prove that defendants acted with malice *and* without probable cause." *Id.* at 1119 (first emphasis added).

Several circuit courts subsequently followed the Fifth Circuit's lead and recognized that malice and lack of probable cause are elements of due process claims arising from a private party's ex parte seizure of property. *See Pinsky v. Duncan*, 79 F.3d 306, 312–13 (2d Cir. 1996); *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 698–99 (6th Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien, & Frankel*, 20 F.3d 1250, 1276–77 (3d Cir. 1994); *see also Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008) (recognizing good faith defense in case concerning whether a seizure of property violated due process requirements). The Second Circuit in *Pinsky* required proof of "malice" and "want of probable cause" because "malicious prosecution is the most closely analogous tort and look[ed] to . . . for the elements that must be established in

7

order for [the plaintiff] to prevail on his § 1983 damages claim." 79 F.3d at 312–13. The Third Circuit in *Jordan* required proof of "malice" for the same reason, recognizing that while "section 1983 does not include any *mens rea* requirement in its text, . . . the Supreme Court has plainly read into it a state of mind requirement specific to the particular federal right underlying a § 1983 claim." 20 F.3d at 1277.

These cases recognized only a "rule to govern damage claims for due process violations under § 1983 where the violation arises from a private party's invocation of a state's statutory remedy . . . ." *Pinksy*, 79 F.3d at 313. They did not recognize a blanket good faith defense to all constitutional and statutory claims that can be brought under section 1983. Indeed, the notion that *all* deprivations of constitutional rights and federal statutory rights actionable under section 1983 require proof of malice and lack of probable cause is absurd on its face.

Unlike the due process claims in *Wyatt* and its progeny, malice and lack of probable cause are not elements necessary to show a deprivation of First Amendment rights. *See supra* 6. Consequently, AFSCME's state of mind when it seized agency fees from Janus is irrelevant.

3. *AFSCME Does Not Have Good Faith Immunity to Section 1983 Liability.*

Given that state of mind is not relevant to the deprivation of First Amendment rights AFSCME inflicted, the only other possible statutory basis for a good faith defense is as an immunity to section 1983 liability for causing the deprivation. AFSCME does not enjoy qualified immunity because the government interests that justify the immunity have no application to the union.

Courts "accord[] immunity where a 'tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine'" when it enacted section 1983. *Richardson*, 521 U.S. at 403 (quoting *Wyatt*, 504 U.S. at 164). A private party is entitled to immunity where "a

history of immunity for private actors exists, and the public policy considerations" justify it. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 631 (7th Cir. 1999). These policy considerations are "avoid[ing] 'unwarranted timidity' in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits." *Filarsky v. Delia*, 566 U.S. 377, 389–90 (2012) (citing *Richardson*, 521 U.S. at 409–11).

These interests usually do not justify qualified immunity for private parties, particularly those pursuing their own ends. *See Richardson*, 521 U.S. at 409–11; *Wyatt*, 504 U.S. at 168; *Malinowski v. DeLuca*, 177 F.3d 623, 627 (7th Cir. 1999). However, the interests justify qualified immunity for private persons who are "performing duties [for the government] that would otherwise have to be performed by a public official who would clearly have qualified immunity." *Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995) (citation omitted) (private physician contracted to provide medical services at state prison entitled to qualified immunity); *see, e.g.*, *Filarsky*, 566 U.S. at 393–94 (private attorney retained by a city to conduct an official investigation entitled to qualified immunity).

AFSCME is not entitled to qualified immunity. There is no history of unions enjoying immunity prior to section 1983's enactment in 1871. Public sector unions did not exist at the time. The government's interest in ensuring that public servants are not cowed by threats of personal liability has no application here.

As in *Wyatt*, this case involves "no government agents, no government interests, and no government need for immunity," but rather a private party "using the mechanisms of government to achieve [its] own ends . . . ." *Filarsky*, 566 U.S. at 392–93 (distinguishing *Wyatt* on this basis). "The public interest is not served by allowing the qualified immunity defense 'to encourage private

individuals to redress their differences with another person by conspiring with public officials to deprive that person of his or her constitutional rights.'" *Sherman*, 987 F.2d at 405 (citation omitted). That aptly describes what AFSCME did here: it colluded with the State to seize agency fees from Janus and other non-consenting employees to satiate the union's self-interests. AFSCME is not entitled to qualified immunity.

4. *AFSCME Cannot be Granted Immunity to Section 1983 Liability Under the Guise of a "Defense" Based on Equity and Fairness.*

Given that historical and governmental interests do not entitle AFSCME to qualified immunity, AFSCME may argue that it should be allowed to raise a substantively identical "defense" to section 1983 as a matter of equity and fairness, as was permitted in *Winner v. Rauner*, No. 15-cv-7213, 2016 WL 7374258, at *5–6 (N.D. Ill. Dec. 20, 2016).[2] It should not. Courts "do not have a license to create immunities based on [their] view of sound policy," or "to make [their] own judgment about the need for immunity." *Rehberg v. Paulk*, 566 U.S. 356, 363 (2012).

The principal reason is section 1983's language. "Under the terms of the statute, '[e]very person who acts under color of state law to deprive another of a constitutional right [is] answerable to that person in a suit for damages.'" *Id.* at 361 (alterations in original) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). Section 1983 also "contains no independent state-of-mind requirement." *Daniels*, 474 U.S. at 328. The statute cannot be interpreted to mean that persons who deprive others of constitutional rights are *not* "liable to the injured party in an action at law," 42 U.S.C. § 1983, *unless* they acted with a particular state of mind. The interpretation would defy

---

[2] In addition to *Winner*, two other unpublished opinions recognized a good faith defense to First Amendment claims brought under *Harris v. Quinn*, 134 S. Ct. 2618 (2014), namely *Jarvis v. Cuomo*, 660 F. App'x 72, 75–76 (2d Cir. 2016) and *Hoffman v. Inslee*, No. 14-CV-200, 2016 WL 6126016 (W.D. Wash. Oct. 20, 2016). Neither opinion is persuasive, for they make no attempt to explain how state of mind is an element of the First Amendment deprivations or to section 1983 liability for causing that deprivation.

the statute's unambiguous terms, ignore *Daniels*, and require this court to pencil into section 1983 a state-of-mind requirement absent from its text. Absent a qualified immunity, there is no statutory basis for the proposition that AFSCME's state of mind renders it not "liable to the party injured in an action at law." *Id.*

If section 1983's language does not resolve this matter, then *Wyatt* does. There, the Supreme Court rejected the argument equity and fairness can justify recognizing an immunity not justified by historical and governmental interests.

> Although principles of equality and fairness may suggest . . . that private citizens who rely unsuspectingly on state laws they did not create and may have no reason to believe are invalid should have some protection from liability, as do their government counterparts, such interests are not sufficiently similar to the traditional purposes of qualified immunity to justify such an expansion.

*Wyatt*, 504 U.S. at 168. The Court reiterated this point in *Crawford-El v. Britton*, 523 U.S. 574, 590 n.13 (1998), stating that "[f]airness alone is not, however, a sufficient reason for the immunity defense, and thus does not justify its extension to private parties." *Wyatt* and *Crawford-El* preclude carving into section 1983 an immunity defense for private parties based on notions of equity and fairness.

And such notions would be misplaced here. There is nothing equitable about depriving victims of constitutional wrongs relief for their injuries. Nor is there anything equitable about letting wrongdoers, like AFSCME, keep ill-gotten gains.

Recognizing a good faith immunity to section 1983 liability for private parties would wreak both inequitable results—and wreak them on a massive scale. The new immunity defense would be available to *all* private defendants[3] in *all* section 1983 cases that seek damages, from racial

---

[3] If it existed, a good faith defense to section 1983 liability would also arguably be available to municipalities that lack qualified immunity.

discrimination claims to federal statutory claims. Courts would have to adjudicate in such cases whether the defendant had a good faith belief that its unlawful conduct was lawful. In effect, a sweeping "mistake of law" defense to section 1983 liability would come into existence.

There is also nothing unfair about public servants enjoying qualified immunity, but not AFSCME. The parties are differently situated. Public servants have qualified immunity primarily to ensure that the threat of personal liability does not dissuade individuals from becoming public servants or rendering their services for the public good. *Filarsky*, 566 U.S. at 389–90. That interest does not apply to AFSCME.

AFSCME also differs from persons who enjoy qualified immunity because AFSCME is not an individual, but an entity. Individuals enjoy qualified immunity to section 1983 liability. Entities like municipalities and counties lack such immunity. *See Owen*, 445 U.S. at 655–56. To the extent a comparison can be drawn, AFSCME is more akin to a municipality than to an individual serving as a public official. There is nothing unfair about AFSCME being as liable for constitutional deprivations as a municipality.

### B.  AFSCME Did Not Act in Good Faith.

Even if a good faith immunity defense for AFSCME could be read into section 1983—which it cannot—AFSCME would find no shelter under it. The union's leadership knew, or certainly should have known, that its fee seizures were unconstitutional, but chose to continue seizing fees from employees anyway.

The Supreme Court in *Janus* recognized that "unions have been on notice for years regarding this Court's misgivings about [*Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977).]" 138 S. Ct. at 2484. Six years ago, the Court criticized *Abood* as a "First Amendment 'anomaly.'" *Id.* (quoting *Knox v. SEIU Local 1000*, 567 U.S. 310, 311 (2012)). Four years ago, the Court in *Harris v. Quinn*,

134 S. Ct. 2618 (2014), "cataloged *Abood*'s many weaknesses" and almost overruled it. *Id.* Three

years ago, the Court granted certiorari in *Friedrichs v. California Teachers Association* on the

question of whether to overrule *Abood* and split 4-4 due to the death of Justice Scalia. *Id.* at 2485

(citing *Friedrichs*, 136 S. Ct. 1083 (2016)). And one year ago, the Court granted certiorari in this

case solely to consider whether to overrule *Abood* and hold agency fees unconstitutional. "During

this period of time, any public-sector union seeking an agency-fee provision in a collective-

bargaining agreement must have understood that the constitutionality of such a provision was

uncertain." *Id.*

That is especially true of *this* public sector union. On February 9, 2015, Illinois Governor Bruce

Rauner issued an executive order that recognized the State's agency fee requirements were likely

unconstitutional and that called for the fees to be placed in escrow "so that each such State

Employee will receive the amount deducted from his or her wages upon the determination by any

court of competent jurisdiction that the Fair Share Contract Provisions are unconstitutional." Ill.

Executive Order 15-13, § II(e).

AFSCME, however, did not agree to have agency fees escrowed while their constitutionality

was resolved. AFSCME sued the State to compel it to keep seizing agency fees from employees

and remitting those fees to the union. *See* ECF No. 54, Ex. B, Complaint in *Illinois AFL-CIO, et*

*al. v. Bruce Rauner, Governor of the State of Illinois, et al.*, St. Clair County, Ill. Case No. 2015

CH 171. Nothing required that AFSCME take this action. It could have agreed to have the monies

escrowed until their rightful owner was resolved. AFSCME deliberately rejected this alternative

in order to squeeze out every last dollar it could from Janus and his co-workers before the Supreme

Court finally put a stop to its practice.

13

AFSCME is nothing like the defendants in *Wyatt*, *Jordan*, *Pinsky*, and *Vector Research*, who innocently used replevin, garnishment, or attachment statutes that violated due process guarantees. The union perpetuated a practice with full knowledge that it likely violated employees' First Amendment rights.

Nor is the union anything like the tow truck company in *Clement*, which towed a car based "on instructions from the [police] . . . that specifically called for the tow" and "had no reason to suspect that there would be a constitutional challenge to its actions." 518 F.3d at 1097. The union was not following government orders when it seized agency fees from non-consenting employees. To the contrary, AFSCME bargained for the agency fee requirement and sued the State to enforce it.

AFSCME is not an innocent party. It was on notice at all material times that its agency fee seizures likely violated employees' First Amendment rights, yet it persisted in taking employees' money to support its own expressive activities. The Court should not permit AFSCME to profit from its conduct, but should require AFSCME to return to Janus the monies it wrongfully seized from him.

**C.      In the Alternative, Janus Should be Awarded Nominal Damages.**

In the event AFSCME is not required to compensate Janus for depriving him of his First Amendment rights, AFSCME should at least be required to pay Janus nominal damages. Nominal damages are awarded to "recognize[] the importance to organized society that [constitutional] rights be scrupulously observed . . . ." *Carey v. Piphus*, 435 U.S. 247, 266 (1978). Nominal damage awards are appropriate for deprivations of First Amendment rights. *See Six Star Holdings*, 821 F.3d at 805.

There is even less basis for recognizing a good faith defense to an award of nominal damages than there is for recognizing such a defense to compensatory damage awards. Even if equity somehow favored depriving victims of compensation for their injuries when a wrongdoer acts in

14

good faith, equity would not favor denying the victim nominal damages of $1 to symbolize that his constitutional rights were, in fact, violated. Janus thus should at least be awarded nominal damages.

## CONCLUSION

For the foregoing reasons, the Court should grant Janus summary judgment against AFSCME and award him compensatory damages, or alternatively nominal damages, and a corresponding declaratory judgment.

November 19, 2018

Respectfully submitted,

MARK A. JANUS

By: /s    Joseph J. Torres
        One of His Attorneys

Joseph J. Torres
Daniel K. Webb
WINSTON & STRAWN LLP
35 West Wacker Dr.
Chicago, IL 60601
312.558.5600
312.558.5700 (fax)
jtorres@winston.com

Jeffrey Schwab
Liberty Justice Center
190 S. LaSalle St., Suite 1500
Chicago, IL 60603
312.263.7668
312.263.7702 (fax)
jschwab@libertyjusticecenter.org

William Messenger
Aaron Solem
c/o National Right to Work Legal
Defense Foundation
8001 Braddock Rd., Suite 600
Springfield, VA 22160
703.321.8510
703.321.9319 (fax)
wlm@nrtw.org
abs@nrtw.org

## **CERTIFICATE OF SERVICE**

The undersigned attorney states that on this 19th day of November, 2018, he caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** to be electronically filed with the Clerk of the Court using the CM/ECF system, to which all parties' counsel of record are registered users.

s/ Joseph J. Torres
Joseph J. Torres
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
312.558.5600
312.558.5700 (fax)
jtorres@winston.com

16